# Exhibit "1"

RECORDING REQUESTED BY:
**COMMONWEALTH LAND TITLE**

15392058

Recording Requested By:

Return To:
**FREMONT INVESTMENT & LOAN**
**P.O. BOX 34078**
**FULLERTON, CA 92834-34078**

Prepared By:
**BARBARA LICON**

7000165009

DOC # 2005-0818446

SEP 22, 2005          8:00 AM
OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
GREGORY J. SMITH, COUNTY RECORDER
FEES:          63.00
PAGES:         19          DA:      1

2005-0818446

——————————— [Space Above This Line For Recording Data] ———————————

# DEED OF TRUST

MIN **1001944-7000165009-1**

DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) **"Security Instrument"** means this document, which is dated **September 2, 2005** , together with all Riders to this document.
(B) **"Borrower"** is **STEVEN MOEHLING, A SINGLE MAN**

Borrower's address is **5420 OLD RANCH ROAD , OCEANSIDE, CA 92057**
. Borrower is the trustor under this Security Instrument.
(C) **"Lender"** is **FREMONT INVESTMENT & LOAN**

Lender is a **CORPORATION**
organized and existing under the laws of **CALIFORNIA**

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS   Form 3005 1/01

(VMP)-6A(CA) (0207)
Page 1 of 15          Initials
VMP MORTGAGE FORMS - (800)521-7291



Lender's address is
**2727 EAST IMPERIAL HIGHWAY, BREA CA 92821**
(D) "Trustee" is **FREMONT GENERAL CREDIT CORPORATION, A CALIFORNIA CORPORATION**

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated **September 2, 2005**
The Note states that Borrower owes Lender **Four Hundred Eighty-Four Thousand, Five Hundred and No/100 ---------------------------------** Dollars
(U.S. $     **484,500.00**     ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than    **October 1, 2035**
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider    [ ] Condominium Rider            [ ] Second Home Rider
[ ] Balloon Rider            [ ] Planned Unit Development Rider [ ] 1-4 Family Rider
[ ] VA Rider                 [ ] Biweekly Payment Rider        [ ] Other(s) [specify]

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials: _____

**-6A(CA)** (0207)                    Page 2 of 15                    **Form 3005   1/01**

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the **County** of **SAN DIEGO** :

[Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]

**SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART THEREOF**

Parcel ID Number:  **15735039**                     which currently has the address of
**5420 OLD RANCH RD**                               [Street]
**OCEANSIDE**                     [City], California **92057**     [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

Initials: _____

-6A(CA) (0207)          Page 3 of 15                    Form 3005  1/01

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

Initials: _____

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10

Initials:

days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

Initials: _____

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

Initials: _____

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage**

Initials: _____

Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or

Initials: _____

any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict

Initials: _____

-6A(CA) (0207)                              Page 10 of 15                              Form 3005  1/01

shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

Initials: _____

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Initials: ____

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

Initials: _____

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____                                    _____ (Seal)
                                                                                                  STEVEN MOEHLING                     -Borrower

_____                                    _____ (Seal)
                                                                                                                                                                   -Borrower

_____ (Seal)              _____ (Seal)
                                       -Borrower                                                        -Borrower

_____ (Seal)              _____ (Seal)
                                       -Borrower                                                        -Borrower

_____ (Seal)              _____ (Seal)
                                       -Borrower                                                        -Borrower

State of California
County of San Diego
On ~~9-6-05~~
9-6-2005

before me, Edgar Allen Harris
Steven Moehling   personally appeared

, ~~personally known to me~~
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/~~are~~ subscribed to
the within instrument and acknowledged to me that he/~~she/they~~ executed the same in his/~~her/their~~ authorized
capacity(~~ies~~), and that by his/~~her/their~~ signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)

EDGAR ALLEN HARRIS
Commission # 1411168
Notary Public - California
San Diego County
My Comm. Expires Apr 14, 2007

EDGAR ALLEN HARRIS
Commission # 1411168
Notary Public - California
San Diego County
My Comm. Expires Apr 14, 2007

Initials: _____

# ADJUSTABLE RATE RIDER

THIS ADJUSTABLE RATE RIDER is made this **2nd** day of **September**, **2005**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to **FREMONT INVESTMENT & LOAN**

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

**5420 OLD RANCH ROAD    OCEANSIDE, CA 92057**

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.    Sections 3 and 4 of the Note state as follows:**

**3.    PAYMENTS**

**(A)  Time and Place of Payments**

I will make a payment on the first day of every month, beginning on **November 1, 2005**. Before the First Principal and Interest Payment Due Date, as described in Section 4 of this Note, my payment will equal one-twelfth of one year's interest that would be due on an amount equal to the unpaid principal balance of the Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.

I will make monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal, interest and any other charges that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before principal. If, on **October 1, 2035**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **2727 EAST IMPERIAL HIGHWAY, BREA CA 92821**

or at a different place if required by the Note Holder.

**(B)  Amount of My Initial Monthly Payments**

My initial monthly payment will be in the amount of U.S. $ **2,624.37**. However, if I make a partial principal prepayment prior to the first Change Date, my monthly payment will decrease for the remainder of the term that my scheduled payments consist only of interest.

**(C)  Monthly Payment Changes**

Beginning with the First Principal and Interest Due Date, my monthly payment will change, as described in Section 4 of this Note. The Note Holder will notify me prior to the date of changes in my monthly payment.

**4.    ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A)  Change Dates**

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first

Page 1 of 3

IOARMP1   jxn  06/06/03

day of **October 1, 2007**, and the adjustable interest rate I will pay may change on that date every sixth month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of Interbank offered rates for six-month U.S. dollar-denominated deposits in the London market based on quotations of major banks based on the London Interbank Offered Rate ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index and adjust the Margin, as defined below. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Five and Forty-Two Hundredths** percentage points (**5.4200** %) (the "Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4 (D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **8.500** % or less than **6.5000** %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than **One and One-Half** percentage point(s) (**1.5000** %) from the rate of interest I have been paying for the preceding month. My interest rate will never be greater than **12.5000** % or less than **6.5000** %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after each Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the telephone number of a person who will answer any question I may have regarding the notice.

**(G) Date of First Principal and Interest Payment**

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be the first monthly payment date after the first Change Date.

**B.    TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument is amended to read as follows:

Page 2 of 3

IOARMP2  jxn 06/10/03

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not an natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____   9/6/05
Borrower **STEVEN MOEHLING**   Date

_____   _____
Borrower   Date

_____   _____
Borrower   Date

_____   _____
Borrower   Date

_____

_____

IOARMP3  TG  03/24/04                Page 3 of 3

File No: 15392058

# Exhibit "A"

All that certain real property situate in the County of San Diego, State of California, described as follows:

Lot 39 of Rancho San Geronimo Unit No. 1, in the City of Oceanside, County of San Diego, State of California, according to Map thereof No. 8579, filed in the Office of the County Recorder of San Diego County, May 19, 1977.

Assessor's Parcel Number     **157-350-39-00**

# Exhibit "2"

DOC # 2011-0202579

APR 19, 2011    8:00 AM
OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
Ernest J. Dronenburg, Jr., COUNTY RECORDER
1522
FEES:    22.00
DA:    1

**PAGES:    2**

RECORDING REQUESTED BY:

**RETURN TO**
Prepared by: Cory Messer
Ocwen Loan Servicing, LLC
1661 Worthington Road, Suite 100
West Palm Beach, Florida, 33409
Phone Number: 561-682-8835
6770604923615
Attorney Code: 24110

2011-10405

2111025

**ASSIGNMENT OF DEED OF TRUST
CALIFORNIA**

This **ASSIGNMENT OF DEED OF TRUST** entered into as of the 1ST day of SEPTEMBER, 2010, from **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS)**, as nominee for FREMONT INVESTMENT & LOAN, whose address 1901 E Voorhees Street, Suite C, Danville, IL 61834, its successors and assigns, ("Assignor) to **WELLS FARGO BANK, NATIONAL ASSOCIATION,TRUSTEE POOLING AND SERVICING AGREEMENTDATED AS OF FEBRUARY 1, 2006 SECURITIZED ASSET BACKED RECEIVABLES LLC TRUST 2006-FR1 MORTGAGE PASS-THROUGH CERTIFICATES,SERIES 2006-FR1**, whose address is c/o Ocwen Loan Servicing, LLC, 1661 Worthington Road, Suite 100, West Palm Beach, Florida, 33409, (Assignee) its successors and assigns, all its rights, title and interest in and to a certain mortgage duly recorded in the Office of the County Recorder of **SAN DIEGO** County, State of **CALIFORNIA**, as follows;

Trustor: STEVEN MOEHLING
Trustee: FREMONT GENERAL CREDIT CORPORATION
Beneficiary:  MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ACTING SOLELY AS NOMINEE FOR FREMONT INVESTMENT & LOAN
Document Date: SEPTEMBER 02, 2005
Amount: $ 484,500.00
Date Recorded: SEPTEMBER 22, 2005
Document/Instrument/Entry Number: 2005-0818446
Page: 2463
Property Address: 5420 OLD RANCH ROAD, OCEANSIDE, CA

*Property more particularly described in the above referenced recorded Deed of Trust*

This Assignment is made without recourse, representation or warranty.

DATED: APRIL 06, 2011 .

1523

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS")**

BY: _____

NAME: Christina Carter

TITLE: Vice President

State of FLORIDA

County of PALM BEACH

Lesli Goodman

On APRIL 06, 2011, before me, _____, personally Christina Carter personally known to me to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of Florida that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

_____

Signature of Notary --

Lesli Goodman

Notary Public State of Florida
Lesli D Goodman
My Commission EE025748
Expires 09/13/2014

MIN: 100194470001650091

MERS Ph.#:  (888) 679 – 6377

# Exhibit "3"

**Closed**

# U.S. Bankruptcy Court
## Southern District of California (San Diego)
## Bankruptcy Petition #: 19-03857-LT13

*Assigned to:* Judge Laura S. Taylor
Chapter 13
Voluntary
Asset

*Date filed:* 06/28/2019
*Date terminated:* 04/29/2024
*Debtor discharged:* 04/04/2024
*Plan confirmed:* 08/19/2019
*341 meeting:* 08/02/2019

*Debtor disposition:* Standard Discharge

**Debtor**
**Steven Michael Moehling**
5420 Old Ranch Road
Oceanside, CA 92057
SAN DIEGO-CA
SSN / ITIN: xxx-xx-8925
*aka* **Steve Michael Moehling**

represented by **Andrew Moher**
Moher Law Group
424 F Street
Suite 203
San Diego, CA 92101
619-786-3800
Fax : 619-923-3303
Email: amoher@moherlaw.com

**Trustee**
**Michael Koch**
Chapter 13 Trustee
402 W. Broadway
Ste 1450
San Diego, CA 92101
619-338-4006

**United States Trustee**
**United States Trustee**
Office of the U.S. Trustee
880 Front Street
Suite 3230
San Diego, CA 92101
619-557-5013

| Docket Date | # | Docket Text |
|---|---|---|
| 06/28/2019 | 1 (54 pgs) | Chapter 13 Voluntary Petition for Individuals, Schedules & Statements Fee Amount $ 310.00. Declaration re: ECF due by 07/12/2019, Filed by Andrew Moher of Moher Law Group on behalf of Steven Michael Moehling. (Moher, Andrew) (Entered: 06/28/2019) |
| 06/28/2019 | 2 (8 pgs; 2 docs) | Initial Chapter 13 Plan filed by Andrew Moher on behalf of Steven Michael Moehling. (Moher, Andrew) (Entered: 06/28/2019) |
| 06/28/2019 | 3 (1 pg) | Certificate of Credit Counseling for Debtor filed by Andrew Moher on behalf of Steven Michael Moehling. (Moher, Andrew) (Entered: |

| | | |
|---|---|---|
| | | 06/28/2019) |
| 06/28/2019 | **4**<br>(1 pg) | Declaration Re: Electronic Filing filed by Andrew Moher on behalf of Steven Michael Moehling. (related documents **1** Chapter 13 Voluntary Petition) (Moher, Andrew) (Entered: 06/28/2019) |
| 06/28/2019 | 5 | Receipt of Statement About Your Social Security Number COURT NOTE: The PDF document is a secured image. filed by Andrew Moher on behalf of Steven Michael Moehling. (Moher, Andrew) (Entered: 06/28/2019) |
| 06/28/2019 | 6 | Receipt of Chapter 13 Voluntary Petition( 19-03857-13) [misc,1029] ( 310.00) Filing Fee. Fee Amount 310.00 Receipt number A14911550 (re: Doc# **1**); (U.S. Treasury) (Entered: 06/28/2019) |
| 06/28/2019 | **7**<br>(4 pgs; 2 docs) | Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors & Notice of Appointment of Trustee Billingslea, Thomas H. **341(a) meeting to be held on 8/2/2019 at 11:00 AM at Edward J. Schwartz, Federal Office Bldg., Office of the U.S. Trustee, First Floor, Room 1234 (B), 880 Front Street, San Diego, CA 92101,.** Proof of Claims due by 9/6/2019, Governmental Proof of Claims due by 12/26/2019, Complaint to determine dischargeability of certain debts deadline: 10/1/2019 (Moher, Andrew) (Entered: 06/28/2019) |
| 07/01/2019 | | Notice of Debtor's Prior Filings for debtor Steven Michael Moehling Case Number 14-02757, Chapter 13 filed in California Southern Bankruptcy Court on 04/08/2014 , Dismissed for failure to make plan payments on 01/23/2018.(Admin) (Entered: 07/01/2019) |
| 07/03/2019 | **8**<br>(4 pgs) | BNC Court Certificate of Notice re Bankruptcy Case and Meeting of Creditors. (related documents **7** Notice of Chapter 13 Bankruptcy Case & Meeting of Creditors) Notice Date 07/03/2019. (Admin.) (Entered: 07/03/2019) |
| 07/03/2019 | **9**<br>(8 pgs) | BNC Court Certificate of Notice. (related documents **2** Chapter 13 Plan) Notice Date 07/03/2019. (Admin.) (Entered: 07/03/2019) |
| 07/16/2019 | **10**<br>(1 pg) | Request for Special Notice *REQUEST FOR SPECIAL NOTICE AND INCLUSION IN MAILING LIST PURSUANT TO BANKRUPTCY RULES 2002, 9014 AND 7004* filed by Robert Zahradka on behalf of Wells Fargo Bank, National Association as Trustee for Securitized Asset Backed Receivables LLC Trust 2006-FR1 Mortgage Pass-Through Certificates, Series 2006-FR1. (Zahradka, Robert) (Entered: 07/16/2019) |
| 08/07/2019 | 11 | Meeting of Creditors Held and Concluded. (Billingslea, Thomas) (Entered: 08/07/2019) |
| 08/13/2019 | **12**<br>(2 pgs; 2 docs) | Notice of Requirement to file Financial Management Course Certificate. (Admin) (Entered: 08/13/2019) |
| 08/15/2019 | **13**<br>(2 pgs) | BNC Court Certificate of Notice re Notice of Requirement to File a Statement of Completion of Course in Personal Financial Management (related documents **12** Notice of Requirement to file Certification of Financial Management Course) Notice Date 08/15/2019. (Admin.) (Entered: 08/15/2019) |

| | | |
|---|---|---|
| 08/19/2019 | **14**<br>(3 pgs; 2 docs) | Order Regarding Application for Compensation and Confirmation of Chapter 13 Plan; and Order Thereon for Andrew Moher, Debtor's Attorney, Period: to , Fees awarded: $3900.00, Expenses awarded: $0.00; Awarded on 8/19/2019; with BNC Service (related documents 2 Chapter 13 Plan) signed on 8/16/2019. (Paluso, R.) (Entered: 08/19/2019) |
| 08/21/2019 | **15**<br>(3 pgs) | BNC Court Certificate of Notice. (related documents 14 Order for Confirmation of Chapter 13 Plan) Notice Date 08/21/2019. (Admin.) (Entered: 08/21/2019) |
| 08/22/2019 | **16**<br>(1 pg) | Financial Management Certificate of Education **for Debtor** filed by provider. (Geving, Allison) (Entered: 08/22/2019) |
| 04/01/2020 | **17**<br>(53 pgs; 7 docs) | Motion for Relief from Stay, RS # RPZ-1 Fee Amount $ 181.00 filed by Robert Zahradka on behalf of Wells Fargo Bank, National Association as Trustee for Securitized Asset Backed Receivables LLC Trust 2006-FR1 Mortgage Pass-Through Certificates, Series 2006-FR1 (Attachments: # 1 Declaration in Support of Motion # 2 Exhibit A to Declaration # 3 Exhibit B to Declaration # 4 Exhibit C to Declaration # 5 Exhibit D to Declaration # 6 Exhibit E to Declaration) (Zahradka, Robert) (Entered: 04/01/2020) |
| 04/01/2020 | **18**<br>(2 pgs) | Notice of Filing of a Motion for Relief from Automatic Stay RS # RPZ-1. filed by Robert Zahradka on behalf of Wells Fargo Bank, National Association as Trustee for Securitized Asset Backed Receivables LLC Trust 2006-FR1 Mortgage Pass-Through Certificates, Series 2006-FR1. Notice Served On 4/1/2020. Request for Hearing & Opposition due on 04/13/2020 unless an objector is entitled to additional time under FRBP 9006. (related documents 17 Motion for Relief from Stay) (Zahradka, Robert) (Entered: 04/01/2020) |
| 04/01/2020 | 19 | Receipt of Motion for Relief from Stay( 19-03857-LT13) [motion,185] ( 181.00) Filing Fee. Fee Amount 181.00 Receipt number A15674841 (re: Doc# 17); (U.S. Treasury) (Entered: 04/01/2020) |
| 04/13/2020 | **20**<br>(15 pgs; 2 docs) | Opposition to Motion for Relief from Automatic Stay RS # RPZ-1 *with Declaration of Debtor in Support* filed by Andrew Moher of Moher Law Group on behalf of Steven Michael Moehling. (Attachments: # 1 Declaration of Debtor in Support) (related documents 17 Motion for Relief from Stay) (Moher, Andrew) (Entered: 04/13/2020) |
| 04/13/2020 | **21**<br>(3 pgs) | Request for Hearing on Motion For Relief from Automatic Stay RS # RPZ-1, Wells Fargo Bank, National Association as Trustee for Securitized Asset Backed Receivables LLC Trust 2006-FR1 Mortgage Pass-Through Certificates, Series 2006-FR1 , and Notice of Hearing with Certificate of Service filed by Andrew Moher on behalf of Steven Michael Moehling. **HEARING Scheduled for 4/28/2020 at 02:00 PM at Courtroom 3, Room 129, Weinberger Courthouse** . (related documents 17 Motion for Relief from Stay) (Moher, Andrew) (Entered: 04/13/2020) |
| 04/23/2020 | **22**<br>(1 pg) | **Tentative Ruling.** Department 3: Hearing Date and Time: 04/28/2020 @ 02:00 PM (related document 17 )(Admin.) (Entered: 04/23/2020) |
| 04/24/2020 | **23**<br>(6 pgs) | Stipulation Granting Adequate Protection - RS No. RPZ-1; with Proof of Service filed by Robert Zahradka on behalf of Wells Fargo Bank, National Association as Trustee for Securitized Asset Backed Receivables LLC Trust 2006-FR1 Mortgage Pass-Through Certificates, Series 2006-FR1. |

| | | (related documents 17 Motion for Relief from Stay) (Zahradka, Robert) Modified on 4/24/2020 (Cary, B.). (Entered: 04/24/2020) |
|---|---|---|
| 04/24/2020 | 24 (1 pg) | **Amended Tentative Ruling.** Department 3: Hearing Date and Time: 04/28/2020 @ 02:00 PM (related document 17)(Admin.). Related document(s) 22 Tentative Ruling. Modified on 4/24/2020 (Paluso, R.). (Entered: 04/24/2020) |
| 04/27/2020 | 25 (12 pgs; 2 docs) | Order Regarding Stipulation Granting Adequate Protection - RS No. RPZ-1; with Service by BNC (related documents 17 Motion, 23 Stipulation) Signed on 4/24/2020. (Cary, B.) (Entered: 04/27/2020) |
| 04/28/2020 | 26 (1 pg) | **Minute Order.** Hearing DATE: 04/28/2020, MATTER: MOTION FOR RELIEF FROM STAY, RS # RPZ-1 FILED ON BEHALF OF WELLS FARGO BANK, NATIONAL ASSOCIATION AS TRUSTEE FOR SECURITIZED ASSET BACKED RECEIVABLES LLC TRUST 2006-FR1 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-FR1 **DISPOSITION: See Attached PDF document for details.** (vCal Hearing ID (756207)). (related documents 17 )(RussellPaluso) (Entered: 04/28/2020) |
| 04/29/2020 | 27 (12 pgs) | BNC Court Certificate of Notice. (related documents 25 Order for Adequate Protection) Notice Date 04/29/2020. (Admin.) (Entered: 04/29/2020) |
| 07/02/2020 | doc (8 pgs) | Notice of Mortgage Payment Change (Claim # 5), with Certificate of Service filed by Robert Zahradka on behalf of Wells Fargo Bank, National Association as Trustee for Securitized Asset Backed Receivables LLC Trust 2006-FR1 Mortgage Pass-Through Certificates, Series 2006-FR1. (Zahradka, Robert) (Entered: 07/02/2020) |
| 11/13/2020 | 28 (5 pgs) | Chapter 13 Trustee's Periodic Report to the Debtor an Debtor's Counsel with Certificate of Service filed by Thomas H. Billingslea (Billingslea,Thomas) (Entered: 11/13/2020) |
| 04/15/2021 | doc (8 pgs) | Notice of Mortgage Payment Change (Claim # 5), with Certificate of Service filed by Robert Zahradka on behalf of Wells Fargo Bank, National Association as Trustee for Securitized Asset Backed Receivables LLC Trust 2006-FR1 Mortgage Pass-Through Certificates, Series 2006-FR1. (Zahradka, Robert) (Entered: 04/15/2021) |
| 01/18/2022 | 29 (5 pgs) | Chapter 13 Trustee's Periodic Report to the Debtor and Debtor's Counsel with Certificate of Service filed by Thomas H. Billingslea (Billingslea,Thomas) (Entered: 01/18/2022) |
| 02/04/2022 | doc (9 pgs) | Notice of Mortgage Payment Change (Claim # 5), with Certificate of Service filed by Chad L. Butler on behalf of Wells Fargo Bank, National Association as Trustee for Securitized Asset Backed Receivables LLC Trust 2006-FR1 Mortgage Pass-Through Certificates, Series 2006-FR1. (Butler, Chad) (Entered: 02/04/2022) |
| 12/01/2022 | doc (11 pgs) | Notice of Mortgage Payment Change (Claim # 5), with Certificate of Service filed by Chad L. Butler on behalf of Wells Fargo Bank, National Association as Trustee for Securitized Asset Backed Receivables LLC Trust 2006-FR1 Mortgage Pass-Through Certificates, Series 2006-FR1. (Butler, Chad) (Entered: 12/01/2022) |

| | | |
|---|---|---|
| 05/05/2023 | 30<br>(24 pgs; 4 docs) | Notice of Hearing and Motion for Approval of Modified Plan and Certificate of Service. filed by Andrew Moher on behalf of Steven Michael Moehling. **with hearing to be held on 7/18/2023 at 2:00 pm in Department 3, Room 129**. Notice Served On: 5/5/2023. Opposition due on 06/2/2023 unless an objector is entitled to additional time under FRBP 9006. (Attachments: # 1 Amended Chapter 13 Plan # 2 Amended Schedules I and J # 3 Declaration of Debtor) (Moher, Andrew) Modified on 5/5/2023 (Cary, B.). (Entered: 05/05/2023) |
| 06/01/2023 | 31<br>(2 pgs) | Statement *Of Non-Opposition By Chapter 13 Trustee Re: Debtor's Motion For Order Approving Plan Modification Dated April 12, 2023 (Dk. #30)* filed by Thomas H. Billingslea on behalf of Thomas H. Billingslea. (related documents 30 Notice of Hearing and Motion for Approval of Plan) (Billingslea, Thomas) (Entered: 06/01/2023) |
| 07/09/2023 | 32<br>(1 pg) | *Status* Report *re 7/18/2023 Hearing on Motion for Approval of Modified Plan* filed by Andrew Moher on behalf of Steven Michael Moehling. (related documents 30 Notice of Hearing and Motion for Approval of Plan) (Moher, Andrew) (Entered: 07/09/2023) |
| 07/11/2023 | 33<br>(2 pgs) | Statement *Of Case Status by Chapter 13 Trustee Re: Debtor's Motion For Order Approving Plan Modification Dated April 12, 2023 (Dk. #30)* filed by Thomas H. Billingslea on behalf of Thomas H. Billingslea. (related documents 30 Notice of Hearing and Motion for Approval of Plan) (Billingslea, Thomas) (Entered: 07/11/2023) |
| 07/11/2023 | 34<br>(4 pgs) | Chapter 13 Trustee's Periodic Report to the Debtor and Debtor's Counsel with Certificate of Service filed by Thomas H. Billingslea (Billingslea,Thomas) (Entered: 07/11/2023) |
| 07/12/2023 | 35<br>(1 pg) | **Tentative Ruling.** Department 3 Hearing Date and Time 07/18/2023 2:00 PM, MATTER: MOTION FOR APPROVAL OF MODIFIED CHAPTER 13 PLAN (DATED 4/12/23) AFTER CONFIRMATION FILED ON BEHALF OF STEVE MICHAEL MOEHLING. (related documents 30 (Fearce, K.) (Entered: 07/12/2023) |
| 07/19/2023 | 36<br>(1 pg) | **Minute Order.** Hearing Date 07/18/2023, MATTER: MOTION FOR APPROVAL OF MODIFIED CHAPTER 13 PLAN (DATED 4/12/23) AFTER CONFIRMATION FILED ON BEHALF OF STEVE MICHAEL MOEHLING **DISPOSITION: See Attached PDF document for details.** (related documents 30 Notice of Hearing and Motion for Approval of Plan) (Paluso, R.) (Entered: 07/19/2023) |
| 07/20/2023 | 37<br>(3 pgs; 2 docs) | Order Regarding Motion for Approval of Modified Plan; with BNC Service (Related Doc # 30) Signed on 7/20/2023. (Cary, B.) (Entered: 07/20/2023) |
| 07/22/2023 | 38<br>(4 pgs) | BNC Court Certificate of Notice. (related documents 37 Order re: Motion for Approval of Plan/Disclosure Stmt.) Notice Date 07/22/2023. (Admin.) (Entered: 07/22/2023) |
| 09/19/2023 | doc<br>(10 pgs) | Notice of Mortgage Payment Change (Claim # 5), with Certificate of Service filed by Chad L. Butler on behalf of Wells Fargo Bank, National Association as Trustee for Securitized Asset Backed Receivables LLC Trust 2006-FR1 Mortgage Pass-Through Certificates, Series 2006-FR1. (Butler, Chad) (Entered: 09/19/2023) |

| | | |
|---|---|---|
| 11/24/2023 | 39<br>(4 pgs; 2 docs) | Retirement of Chapter 13 Trustee Thomas H. Billingslea, Jr. and Notice of Appointment of Michael Koch, as Successor Trustee. filed by Tiffany L. Carroll on behalf of United States Trustee. Original document filed in case 16-01955, docket #67. (Emery, JC) (Entered: 11/24/2023) |
| 11/26/2023 | 40<br>(5 pgs) | BNC Court Certificate of Notice. (related documents 39 Reassignment/Retirement of Chapter 13 Trustee and Notice of Appointment of Successor Trustee) Notice Date 11/26/2023. (Admin.) (Entered: 11/26/2023) |
| 12/17/2023 | 41<br>(1 pg) | Chapter 13 Standing Trustees FRBP 2012 Accounting of Prior Administration of Case . (Koch, Michael) (Entered: 12/17/2023) |
| 02/20/2024 | 42<br>(2 pgs) | Notice of Final Cure Payment Re: Claim # 5 filed by Michael Koch on behalf of Michael Koch. (Koch, Michael) (Entered: 02/20/2024) |
| 03/01/2024 | 43<br>(6 pgs; 4 docs) | Notice of Chapter 13 Trustee's Interim Final Report and Time to File Objections and Release from Liability of Trustee with Certificate of Eligibility for Discharge (CSD 2120). . (Koch, Michael) (Entered: 03/01/2024) |
| 03/01/2024 | 44<br>(2 pgs) | Certifications Regarding Domestic Support Obligations, Section 522(q), and Eligibility for Discharge filed by Andrew Moher on behalf of Steven Michael Moehling. (Moher, Andrew) (Entered: 03/01/2024) |
| 03/03/2024 | 45<br>(4 pgs) | BNC Court Certificate of Notice re Certifications re: DSO, §522(q) and Eligibility for Discharge. (related documents 43 Notice of Chapter 13/12 Trustee's Interim Final Report) Notice Date 03/03/2024. (Admin.) (Entered: 03/03/2024) |
| 03/03/2024 | 46<br>(4 pgs) | BNC Court Certificate of Notice. (related documents 43 Notice of Chapter 13/12 Trustee's Interim Final Report) Notice Date 03/03/2024. (Admin.) (Entered: 03/03/2024) |
| 03/04/2024 | 47 | Court Notice Served On: 03/03/2024. Due on 04/01/2024 unless an objector is entitled to additional time under FRBP 9006. (related document 46 Notice of Chapter 13 Trustee's Interim Final Report) (Admin) (Entered: 03/04/2024) |
| 03/11/2024 | 48<br>(6 pgs) | Response to Notice of Final Cure Payment (Claim # 5) with Certificate of Service Filed by Creditor Wells Fargo Bank, National Association as Trustee for Securitized Asset Backed Receivables LLC Trust 2006-FR1 Mortgage Pass-Through Certificates, Series 2006-FR1 filed by Sean C Ferry on behalf of Wells Fargo Bank, National Association as Trustee for Securitized Asset Backed Receivables LLC Trust 2006-FR1 Mortgage Pass-Through Certificates, Series 2006-FR1.(Ferry, Sean) (Entered: 03/11/2024) |
| 04/04/2024 | 49<br>(3 pgs; 2 docs) | Order Discharging Debtor After Completion of Chapter 13 Plan (Admin.) (Entered: 04/04/2024) |
| 04/07/2024 | 50<br>(4 pgs) | BNC Court Certificate of Notice re Discharge of Debtor After Completion of Plan. Notice Date 04/07/2024. (Admin.) (Entered: 04/07/2024) |

| 04/25/2024 | [51](#)<br>(3 pgs; 2 docs) | Chapter 13 Trustee's Final Report and Account . (Koch, Michael) (Entered: 04/25/2024) |
| 04/27/2024 | [52](#)<br>(4 pgs) | BNC Court Certificate of Notice re Chapter 13 Trustee's Final Report and Account. (related documents [51](#) Chapter 13 Trustee's Final Report and Account) Notice Date 04/27/2024. (Admin.) (Entered: 04/27/2024) |
| 04/29/2024 | 53 | Order Approving Account, Discharging Chapter 13 Trustee and Closing Estate. It appearing to the Court that, the Chapter 13 Trustee, has performed all duties required in the administration of this case; the Trustee has made distribution of all funds coming into his possession as required by order of this Court and has rendered a full and complete account, and the Trustee has performed all other duties required of him in the administration of this case; IT IS ORDERED the accounts of the Trustee be approved and allowed; the Trustee be discharged and relieved of his trust; the bond of the Trustee, or blanket bond be canceled and any sureties be released from further liability, except any liability which may have accrued during the time such bond was in effect; and the case is hereby closed. The debtor is relieved of any further responsibility for keeping this Court and the Trustee advised of a current mailing address. Michael Williams, Clerk of Court (Admin.) (Entered: 04/29/2024) |

| **PACER Service Center** | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 08/18/2025 11:02:07 | | | |
| **PACER Login:** | krmem6067 | **Client Code:** | 830902-1269/6067 |
| **Description:** | Docket Report | **Search Criteria:** | 19-03857-LT13 Fil or Ent: entered From: 6/28/2019 To: 8/18/2025 Doc From: 0 Doc To: 99999999 Format: html Page counts for documents: included |
| **Billable Pages:** | 5 | **Cost:** | 0.50 |

# Exhibit "4"

**Fill in this information to identify your case:**

United States Bankruptcy Court for the:

SOUTHERN DISTRICT OF CALIFORNIA

Case number *(if known)* _____

Chapter you are filing under:

☐ Chapter 7

☐ Chapter 11

☐ Chapter 12

■ Chapter 13

☐ Check if this an amended filing

## Official Form 101
# Voluntary Petition for Individuals Filing for Bankruptcy 12/17

The bankruptcy forms use you and Debtor 1 to refer to a debtor filing alone. A married couple may file a bankruptcy case together—called a *joint case*—and in joint cases, these forms use you to ask for information from both debtors. For example, if a form asks, "Do you own a car," the answer would be yes if either debtor owns a car. When information is needed about the spouses separately, the form uses *Debtor 1* and *Debtor 2* to distinguish between them. In joint cases, one of the spouses must report information as *Debtor 1* and the other as *Debtor 2*. The same person must be *Debtor 1* in all of the forms.

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

| Part 1: | Identify Yourself |
|---|---|

|  | About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |
|---|---|---|
| **1. Your full name** <br><br> Write the name that is on your government-issued picture identification (for example, your driver's license or passport). <br><br> Bring your picture identification to your meeting with the trustee. | **Steven** <br> First name <br><br> **Michael** <br> Middle name <br><br> **Moehling** <br> Last name and Suffix (Sr., Jr., II, III) | _____ <br> First name <br><br> _____ <br> Middle name <br><br> _____ <br> Last name and Suffix (Sr., Jr., II, III) |
| **2. All other names you have used in the last 8 years** <br> Include your married or maiden names. | **Steve Michael Moehling** |  |
| **3. Only the last 4 digits of your Social Security number or federal Individual Taxpayer Identification number (ITIN)** | **xxx-xx-8925** |  |

Debtor 1    **Steven Michael Moehling** _____    Case number *(if known)* _____

|  | **About Debtor 1:** | **About Debtor 2 (Spouse Only in a Joint Case):** |
|---|---|---|

**4.** **Any business names and Employer Identification Numbers (EIN) you have used in the last 8 years**

Include trade names and *doing business as* names

■ I have not used any business name or EINs.

_____
Business name(s)

_____
EINs

☐ I have not used any business name or EINs.

_____
Business name(s)

_____
EINs

**5.** **Where you live**

**5420 Old Ranch Road**
**Oceanside, CA 92057**
Number, Street, City, State & ZIP Code

**San Diego**
County

**If your mailing address is different from the one above, fill it in here.** Note that the court will send any notices to you at this mailing address.

_____
Number, P.O. Box, Street, City, State & ZIP Code

**If Debtor 2 lives at a different address:**

_____
Number, Street, City, State & ZIP Code

_____
County

**If Debtor 2's mailing address is different from yours, fill it in here.** Note that the court will send any notices to this mailing address.

_____
Number, P.O. Box, Street, City, State & ZIP Code

**6.** **Why you are choosing *this district* to file for bankruptcy**

*Check one:*

■ Over the last 180 days before filing this petition, I have lived in this district longer than in any other district.

☐ I have another reason.
Explain. (See 28 U.S.C. § 1408.)

*Check one:*

☐ Over the last 180 days before filing this petition, I have lived in this district longer than in any other district.

☐ I have another reason.
Explain. (See 28 U.S.C. § 1408.)

Official Form 101                **Voluntary Petition for Individuals Filing for Bankruptcy**                page 2

Debtor 1    **Steven Michael Moehling**            Case number *(if known)* _____

| Part 2: | Tell the Court About Your Bankruptcy Case |
|---|---|

**7. The chapter of the Bankruptcy Code you are choosing to file under**

*Check one.* (For a brief description of each, see *Notice Required by 11 U.S.C. § 342(b) for Individuals Filing for Bankruptcy (Form 2010)).* Also, go to the top of page 1 and check the appropriate box.

☐ Chapter 7

☐ Chapter 11

☐ Chapter 12

■ Chapter 13

**8. How you will pay the fee**

■ **I will pay the entire fee when I file my petition**. Please check with the clerk's office in your local court for more details about how you may pay. Typically, if you are paying the fee yourself, you may pay with cash, cashier's check, or money order. If your attorney is submitting your payment on your behalf, your attorney may pay with a credit card or check with a pre-printed address.

☐ **I need to pay the fee in installments.** If you choose this option, sign and attach the *Application for Individuals to Pay The Filing Fee in Installments* (Official Form 103A).

☐ **I request that my fee be waived** (You may request this option only if you are filing for Chapter 7. By law, a judge may, but is not required to, waive your fee, and may do so only if your income is less than 150% of the official poverty line that applies to your family size and you are unable to pay the fee in installments). If you choose this option, you must fill out the *Application to Have the Chapter 7 Filing Fee Waived* (Official Form 103B) and file it with your petition.

**9. Have you filed for bankruptcy within the last 8 years?**

☐ No.

■ Yes.

| District | Southern District of CA | When | **4/08/14** | Case number | **14-02757** |
|---|---|---|---|---|---|
| District | | When | | Case number | |
| District | | When | | Case number | |

**10. Are any bankruptcy cases pending or being filed by a spouse who is not filing this case with you, or by a business partner, or by an affiliate?**

■ No

☐ Yes.

| Debtor | | Relationship to you | |
|---|---|---|---|
| District | | When | | Case number, if known | |
| Debtor | | Relationship to you | |
| District | | When | | Case number, if known | |

**11. Do you rent your residence?**

■ No.    Go to line 12.

☐ Yes.    Has your landlord obtained an eviction judgment against you?

     ☐ No. Go to line 12.

     ☐ Yes. Fill out *Initial Statement About an Eviction Judgment Against You* (Form 101A) and file it as part of this bankruptcy petition.

Official Form 101        **Voluntary Petition for Individuals Filing for Bankruptcy**        page 3

| Debtor 1 | Steven Michael Moehling | Case number *(if known)* |
|---|---|---|

---

**Part 3:** **Report About Any Businesses You Own as a Sole Proprietor**

**12. Are you a sole proprietor of any full- or part-time business?**

A sole proprietorship is a business you operate as an individual, and is not a separate legal entity such as a corporation, partnership, or LLC.

If you have more than one sole proprietorship, use a separate sheet and attach it to this petition.

■ No.   Go to Part 4.

☐ Yes.   Name and location of business

_____
Name of business, if any

_____
Number, Street, City, State & ZIP Code

*Check the appropriate box to describe your business:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ None of the above

---

**13. Are you filing under Chapter 11 of the Bankruptcy Code and are you a *small business debtor*?**

For a definition of *small business debtor*, see 11 U.S.C. § 101(51D).

*If you are filing under Chapter 11, the court must know whether you are a small business debtor so that it can set appropriate deadlines.* If you indicate that you are a small business debtor, you must attach your most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. 1116(1)(B).

■ No.   I am not filing under Chapter 11.

☐ No.   I am filing under Chapter 11, but I am NOT a small business debtor according to the definition in the Bankruptcy Code.

☐ Yes.   I am filing under Chapter 11 and I am a small business debtor according to the definition in the Bankruptcy Code.

---

**Part 4:** **Report if You Own or Have Any Hazardous Property or Any Property That Needs Immediate Attention**

**14. Do you own or have any property that poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety? Or do you own any property that needs immediate attention?**

*For example, do you own perishable goods, or livestock that must be fed, or a building that needs urgent repairs?*

■ No.

☐ Yes.

What is the hazard?   _____

If immediate attention is needed, why is it needed?   _____

Where is the property?   _____
Number, Street, City, State & Zip Code

---

| Official Form 101 | **Voluntary Petition for Individuals Filing for Bankruptcy** | page 4 |
|---|---|---|

| Debtor 1 | **Steven Michael Moehling** | Case number *(if known)* |
|---|---|---|

| **Part 5:** | **Explain Your Efforts to Receive a Briefing About Credit Counseling** |
|---|---|

|  | **About Debtor 1:** | **About Debtor 2 (Spouse Only in a Joint Case):** |
|---|---|---|

**15. Tell the court whether you have received a briefing about credit counseling.**

The law requires that you receive a briefing about credit counseling before you file for bankruptcy. You must truthfully check one of the following choices. If you cannot do so, you are not eligible to file.

If you file anyway, the court can dismiss your case, you will lose whatever filing fee you paid, and your creditors can begin collection activities again.

**About Debtor 1:**

*You must check one:*

☑ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, and I received a certificate of completion.**

Attach a copy of the certificate and the payment plan, if any, that you developed with the agency.

☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, but I do not have a certificate of completion.**

Within 14 days after you file this bankruptcy petition, you MUST file a copy of the certificate and payment plan, if any.

☐ **I certify that I asked for credit counseling services from an approved agency, but was unable to obtain those services during the 7 days after I made my request, and exigent circumstances merit a 30-day temporary waiver of the requirement.**

To ask for a 30-day temporary waiver of the requirement, attach a separate sheet explaining what efforts you made to obtain the briefing, why you were unable to obtain it before you filed for bankruptcy, and what exigent circumstances required you to file this case.

Your case may be dismissed if the court is dissatisfied with your reasons for not receiving a briefing before you filed for bankruptcy. If the court is satisfied with your reasons, you must still receive a briefing within 30 days after you file. You must file a certificate from the approved agency, along with a copy of the payment plan you developed, if any. If you do not do so, your case may be dismissed.

Any extension of the 30-day deadline is granted only for cause and is limited to a maximum of 15 days.

☐ **I am not required to receive a briefing about credit counseling because of:**

　☐ **Incapacity.**
　I have a mental illness or a mental deficiency that makes me incapable of realizing or making rational decisions about finances.

　☐ **Disability.**
　My physical disability causes me to be unable to participate in a briefing in person, by phone, or through the internet, even after I reasonably tried to do so.

　☐ **Active duty.**
　I am currently on active military duty in a military combat zone.

If you believe you are not required to receive a briefing about credit counseling, you must file a motion for waiver credit counseling with the court.

**About Debtor 2 (Spouse Only in a Joint Case):**

*You must check one:*

☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, and I received a certificate of completion.**

Attach a copy of the certificate and the payment plan, if any, that you developed with the agency.

☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, but I do not have a certificate of completion.**

Within 14 days after you file this bankruptcy petition, you MUST file a copy of the certificate and payment plan, if any.

☐ **I certify that I asked for credit counseling services from an approved agency, but was unable to obtain those services during the 7 days after I made my request, and exigent circumstances merit a 30-day temporary waiver of the requirement.**

To ask for a 30-day temporary waiver of the requirement, attach a separate sheet explaining what efforts you made to obtain the briefing, why you were unable to obtain it before you filed for bankruptcy, and what exigent circumstances required you to file this case.

Your case may be dismissed if the court is dissatisfied with your reasons for not receiving a briefing before you filed for bankruptcy.

If the court is satisfied with your reasons, you must still receive a briefing within 30 days after you file. You must file a certificate from the approved agency, along with a copy of the payment plan you developed, if any. If you do not do so, your case may be dismissed.

Any extension of the 30-day deadline is granted only for cause and is limited to a maximum of 15 days.

☐ **I am not required to receive a briefing about credit counseling because of**:

　☐ **Incapacity.**
　I have a mental illness or a mental deficiency that makes me incapable of realizing or making rational decisions about finances.

　☐ **Disability.**
　My physical disability causes me to be unable to participate in a briefing in person, by phone, or through the internet, even after I reasonably tried to do so.

　☐ **Active duty.**
　I am currently on active military duty in a military combat zone.

If you believe you are not required to receive a briefing about credit counseling, you must file a motion for waiver of credit counseling with the court.

| Debtor 1 | Steven Michael Moehling | Case number *(if known)* |
|---|---|---|

---

| **Part 6:** | **Answer These Questions for Reporting Purposes** |
|---|---|

**16. What kind of debts do you have?**

**16a.** **Are your debts primarily consumer debts?** *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

☐ No. Go to line 16b.

■ Yes. Go to line 17.

**16b.** **Are your debts primarily business debts?** *Business debts* are debts that you incurred to obtain money for a business or investment or through the operation of the business or investment.

☐ No. Go to line 16c.

☐ Yes. Go to line 17.

**16c.** State the type of debts you owe that are not consumer debts or business debts

_____

---

**17. Are you filing under Chapter 7?**

■ No. I am not filing under Chapter 7. Go to line 18.

**Do you estimate that after any exempt property is excluded and administrative expenses are paid that funds will be available for distribution to unsecured creditors?**

☐ Yes. I am filing under Chapter 7. Do you estimate that after any exempt property is excluded and administrative expenses are paid that funds will be available to distribute to unsecured creditors?

☐ No

☐ Yes

---

**18. How many Creditors do you estimate that you owe?**

| | | |
|---|---|---|
| ■ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
| ☐ 50-99 | ☐ 5001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than100,000 |
| ☐ 200-999 | | |

---

**19. How much do you estimate your assets to be worth?**

| | | |
|---|---|---|
| ☐ $0 - $50,000 | ☐ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| ☐ $50,001 - $100,000 | ☐ $10,000,001 - $50 million | ☐ $1,000,000,001 - $10 billion |
| ☐ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ■ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

---

**20. How much do you estimate your liabilities to be?**

| | | |
|---|---|---|
| ☐ $0 - $50,000 | ☐ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| ☐ $50,001 - $100,000 | ☐ $10,000,001 - $50 million | ☐ $1,000,000,001 - $10 billion |
| ■ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ☐ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

---

| **Part 7:** | **Sign Below** |
|---|---|

**For you**

I have examined this petition, and I declare under penalty of perjury that the information provided is true and correct.

If I have chosen to file under Chapter 7, I am aware that I may proceed, if eligible, under Chapter 7, 11,12, or 13 of title 11, United States Code. I understand the relief available under each chapter, and I choose to proceed under Chapter 7.

If no attorney represents me and I did not pay or agree to pay someone who is not an attorney to help me fill out this document, I have obtained and read the notice required by 11 U.S.C. § 342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I understand making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**/s/ Steven Michael Moehling**

| **Steven Michael Moehling** | Signature of Debtor 2 |
|---|---|
| Signature of Debtor 1 | |

| Executed on **June 28, 2019** | Executed on _____ |
|---|---|
| MM / DD / YYYY | MM / DD / YYYY |

---

| Official Form 101 | **Voluntary Petition for Individuals Filing for Bankruptcy** | page 6 |
|---|---|---|

Debtor 1   **Steven Michael Moehling**                                         Case number *(if known)*

---

**For your attorney, if you are represented by one**

**If you are not represented by an attorney, you do not need to file this page.**

I, the attorney for the debtor(s) named in this petition, declare that I have informed the debtor(s) about eligibility to proceed under Chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each chapter for which the person is eligible.  I also certify that I have delivered to the debtor(s) the notice required by 11 U.S.C. § 342(b) and, in a case in which § 707(b)(4)(D) applies, certify that I have no knowledge after an inquiry that the information in the schedules filed with the petition is incorrect.

| | |
|---|---|
| **/s/ Andrew A. Moher** | Date   **June 28, 2019** |
| Signature of Attorney for Debtor | MM / DD / YYYY |

**Andrew A. Moher 257605**
Printed name

**Moher Law Group**
Firm name

**5560 La Jolla Blvd, Suite D**
**La Jolla, CA 92037**
Number, Street, City, State & ZIP Code

Contact phone   **619-269-6204**          Email address   **amoher@moherlaw.com**

**257605 CA**
Bar number & State

---

Official Form 101                 **Voluntary Petition for Individuals Filing for Bankruptcy**                          page 7

| Fill in this information to identify your case: | |
|---|---|
| Debtor 1 | **Steven Michael Moehling** |
| | First Name       Middle Name       Last Name |
| Debtor 2 (Spouse if, filing) | First Name       Middle Name       Last Name |
| United States Bankruptcy Court for the: | SOUTHERN DISTRICT OF CALIFORNIA |
| Case number (if known) | |

☐ Check if this is an amended filing

# Official Form 106Sum

## Summary of Your Assets and Liabilities and Certain Statistical Information    **12/15**

**Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Fill out all of your schedules first; then complete the information on this form. If you are filing amended schedules after you file your original forms, you must fill out a new *Summary* and check the box at the top of this page.**

| Part 1: | Summarize Your Assets |
|---|---|

**Your assets**
Value of what you own

1. **Schedule A/B: Property** (Official Form 106A/B)
   1a. Copy line 55, Total real estate, from Schedule A/B................................................................... $ **521,742.77**

   1b. Copy line 62, Total personal property, from Schedule A/B....................................................... $ **25,174.00**

   1c. Copy line 63, Total of all property on Schedule A/B.................................................................. $ **546,916.77**

| Part 2: | Summarize Your Liabilities |
|---|---|

**Your liabilities**
Amount you owe

2. *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 106D)
   2a. Copy the total you listed in Column A, *Amount of claim,* at the bottom of the last page of Part 1 of *Schedule D...* $ **425,954.00**

3. *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 106E/F)
   3a. Copy the total claims from Part 1 (priority unsecured claims) from line 6e of *Schedule E/F*................................ $ **9,200.00**

   3b. Copy the total claims from Part 2 (nonpriority unsecured claims) from line 6j of *Schedule E/F*........................... $ **5,062.00**

   **Your total liabilities** $ **440,216.00**

| Part 3: | Summarize Your Income and Expenses |
|---|---|

4. *Schedule I: Your Income* (Official Form 106I)
   Copy your combined monthly income from line 12 of *Schedule I*................................................................ $ **4,524.34**

5. *Schedule J: Your Expenses* (Official Form 106J)
   Copy your monthly expenses from line 22c of *Schedule J*.......................................................... $ **3,946.00**

| Part 4: | Answer These Questions for Administrative and Statistical Records |
|---|---|

6. **Are you filing for bankruptcy under Chapters 7, 11, or 13?**

   ☐ No. You have nothing to report on this part of the form. Check this box and submit this form to the court with your other schedules.

   ☑ Yes

7. **What kind of debt do you have?**

   ☑ **Your debts are primarily consumer debts.** *Consumer debts* are those "incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8). Fill out lines 8-9g for statistical purposes. 28 U.S.C. § 159.

   ☐ **Your debts are not primarily consumer debts**. You have nothing to report on this part of the form. *Check this box* and submit this form to the court with your other schedules.

Official Form 106Sum     **Summary of Your Assets and Liabilities and Certain Statistical Information**     page 1 of 2

Debtor 1    **Steven Michael Moehling**                                        Case number *(if known)* _____

8.  **From the *Statement of Your Current Monthly Income*:** Copy your total current monthly income from Official Form
    122A-1 Line 11; **OR**, Form 122B Line 11; **OR**, Form 122C-1 Line 14.                 $ _____ **5,330.17**

9.  **Copy the following special categories of claims from Part 4, line 6 of *Schedule E/F*:**

|  | Total claim |
|---|---|
| **From Part 4 on *Schedule E/F*, copy the following:** | |
| 9a. Domestic support obligations (Copy line 6a.) | $ 0.00 |
| 9b. Taxes and certain other debts you owe the government. (Copy line 6b.) | $ 9,200.00 |
| 9c. Claims for death or personal injury while you were intoxicated. (Copy line 6c.) | $ 0.00 |
| 9d. Student loans. (Copy line 6f.) | $ 0.00 |
| 9e. Obligations arising out of a separation agreement or divorce that you did not report as priority claims. (Copy line 6g.) | $ 0.00 |
| 9f. Debts to pension or profit-sharing plans, and other similar debts. (Copy line 6h.) | +$ 0.00 |
| 9g. **Total.** Add lines 9a through 9f. | $ 9,200.00 |

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                                                            Best Case Bankruptcy

**Fill in this information to identify your case and this filing:**

| Debtor 1 | **Steven Michael Moehling** | | |
|---|---|---|---|
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the:   SOUTHERN DISTRICT OF CALIFORNIA

Case number _____

☐ Check if this is an amended filing

## Official Form 106A/B
# Schedule A/B: Property
**12/15**

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:** Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

1. **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

   ☐ No. Go to Part 2.

   ■ Yes.  Where is the property?

**1.1**

**5420 Old Ranch Road**
Street address, if available, or other description

| **Oceanside** | **CA** | **92057-0000** |
|---|---|---|
| City | State | ZIP Code |

**San Diego**
County

**What is the property?** Check all that apply

- ■ Single-family home
- ☐ Duplex or multi-unit building
- ☐ Condominium or cooperative
- ☐ Manufactured or mobile home
- ☐ Land
- ☐ Investment property
- ☐ Timeshare
- ☐ Other _____

**Who has an interest in the property?** Check one

- ■ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

**4 Beds / 4 Baths / 2021 sqft**
**FMV = $555,045.50**
  **- 6% Cost of sale ($33,302.73)**

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| **Current value of the entire property?** | **Current value of the portion you own?** |
|---|---|
| **$521,742.77** | **$521,742.77** |

**Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.**

**Fee simple**

☐ **Check if this is community property** (see instructions)

2. **Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here.........................................................................=>**

**$521,742.77**

**Part 2:** Describe Your Vehicles

**Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not?** Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com

Best Case Bankruptcy

| Debtor 1 | Steven Michael Moehling | Case number *(if known)* | |

**3. Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

☐ No

■ Yes

| 3.1 | Make: **BMW** | **Who has an interest in the property?** Check one | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property*. | |
|---|---|---|---|---|
| | Model: **330i** | ■ Debtor 1 only | | |
| | Year: **2001** | ☐ Debtor 2 only | **Current value of the entire property?** | **Current value of the portion you own?** |
| | Approximate mileage: **145,000** | ☐ Debtor 1 and Debtor 2 only | | |
| | Other information: | ☐ At least one of the debtors and another | | |
| | | ☐ Check if this is community property (see instructions) | $4,324.00 | $4,324.00 |

| 3.2 | Make: **Chevrolet** | **Who has an interest in the property?** Check one | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property*. | |
|---|---|---|---|---|
| | Model: **Caprice** | ■ Debtor 1 only | | |
| | Year: **1986** | ☐ Debtor 2 only | **Current value of the entire property?** | **Current value of the portion you own?** |
| | Approximate mileage: **105,000** | ☐ Debtor 1 and Debtor 2 only | | |
| | Other information: | ☐ At least one of the debtors and another | | |
| | | ☐ Check if this is community property (see instructions) | $1,550.00 | $1,550.00 |

**4. Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**
*Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

■ No

☐ Yes

5. Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here..............................................................................=>

| | $5,874.00 |

| **Part 3:** | **Describe Your Personal and  Household Items** |

| **Do you own or have any legal or equitable interest in any of the following items?** | **Current value of the portion you own?** Do not deduct secured claims or exemptions. |
|---|---|

**6. Household goods and furnishings**
*Examples:* Major appliances, furniture, linens, china, kitchenware

☐ No

■ Yes.  Describe.....

| **Used Household Goods and Furnishings** | $1,200.00 |

**7. Electronics**
*Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games

☐ No

■ Yes.  Describe.....

| **Used Electronics** | $750.00 |

**8. Collectibles of value**
*Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles

■ No

☐ Yes.  Describe.....

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

Debtor 1    **Steven Michael Moehling**                                                      Case number *(if known)*

---

9.  **Equipment for sports and hobbies**
    *Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools;
              musical instruments

    ■ No
    ☐ Yes.  Describe.....

10. **Firearms**
    *Examples:* Pistols, rifles, shotguns, ammunition, and related equipment

    ■ No
    ☐ Yes.  Describe.....

11. **Clothes**
    *Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories

    ☐ No
    ■ Yes.  Describe.....

| | |
|---|---|
| Used Clothes | $350.00 |

12. **Jewelry**
    *Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver

    ☐ No
    ■ Yes.  Describe.....

| | |
|---|---|
| Misc Jewlery | $10,000.00 |

13. **Non-farm animals**
    *Examples:* Dogs, cats, birds, horses
    ☐ No
    ■ Yes.  Describe.....

| | |
|---|---|
| 3 Dogs | $0.00 |

14. **Any other personal and household items you did not already list, including any health aids you did not list**
    ■ No
    ☐ Yes.  Give specific information.....

15. **Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for Part 3. Write that number here** ................................................................................

| $12,300.00 |
|---|

| **Part 4:** | **Describe Your Financial Assets** |
|---|---|

| Do you own or have any legal or equitable interest in any of the following? | Current value of the portion you own? Do not deduct secured claims or exemptions. |
|---|---|

16. **Cash**
    *Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition
    ☐ No
    ■ Yes.................................................................................................................

|  |  |
|---|---|
| Paypal Account | $0.00 |
| Metabank Pre-paid Debit Card with Employer | $0.00 |

---

Official Form 106A/B                          Schedule A/B: Property                                    page 3

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                                      Best Case Bankruptcy

| Debtor 1 | **Steven Michael Moehling** | Case number *(if known)* | |

| | EFS National Bank Pre-paid Debit Card with Employer | **$0.00** |

17. **Deposits of money**
    *Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.
    ☐ No
    ■ Yes.......................     Institution name:

| | 17.1. | **Checking** | **Chase Bank** | **$1,000.00** |

18. **Bonds, mutual funds, or publicly traded stocks**
    *Examples:* Bond funds, investment accounts with brokerage firms, money market accounts
    ■ No
    ☐ Yes..................     Institution or issuer name:

19. **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**
    ■ No
    ☐ Yes.  Give specific information about them...................
    Name of entity:     % of ownership:

20. **Government and corporate bonds and other negotiable and non-negotiable instruments**
    *Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
    *Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.
    ■ No
    ☐ Yes. Give specific information about them
    Issuer name:

21. **Retirement or pension accounts**
    *Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans
    ☐ No
    ■ Yes. List each account separately.
    Type of account:     Institution name:

| | **401(k)** | **with employer, through Liberty Mutual** | **$6,000.00** |

22. **Security deposits and prepayments**
    Your share of all unused deposits you have made so that you may continue service or use from a company
    *Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others
    ■ No
    ☐ Yes. .....................     Institution name or individual:

23. **Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)
    ■ No
    ☐ Yes.............     Issuer name and description.

24. **Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
    26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).
    ■ No
    ☐ Yes.............     Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

25. **Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**
    ■ No
    ☐ Yes.  Give specific information about them...

| Official Form 106A/B | Schedule A/B: Property | page 4 |

| Debtor 1 | **Steven Michael Moehling** | Case number *(if known)* |

**26. Patents, copyrights, trademarks, trade secrets, and other intellectual property**
*Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements

■ No
☐ Yes. Give specific information about them...

**27. Licenses, franchises, and other general intangibles**
*Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses

■ No
☐ Yes. Give specific information about them...

| Money or property owed to you? | Current value of the portion you own? Do not deduct secured claims or exemptions. |

**28. Tax refunds owed to you**

■ No
☐ Yes. Give specific information about them, including whether you already filed the returns and the tax years.......

**29. Family support**
*Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement

■ No
☐ Yes. Give specific information......

**30. Other amounts someone owes you**
*Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay,  workers' compensation, Social Security benefits; unpaid loans you made to someone else

■ No
☐ Yes.  Give specific information..

**31. Interests in insurance policies**
*Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance
☐ No
■ Yes. Name the insurance company of each policy and list its value.

| Company name: | Beneficiary: | Surrender or refund value: |
|---|---|---|
| **Term Life Insurance with Employer** no cash value | | **$0.00** |

**32. Any interest in property that is due you from someone who has died**
If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because someone has died.

■ No
☐ Yes.  Give specific information..

**33. Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
*Examples:* Accidents, employment disputes, insurance claims, or rights to sue

■ No
☐ Yes.  Describe each claim.........

**34. Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**

■ No
☐ Yes.  Describe each claim.........

**35. Any financial assets you did not already list**

■ No
☐ Yes.  Give specific information..

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

| Debtor 1 | **Steven Michael Moehling** | Case number *(if known)* |
|---|---|---|

36. **Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached for Part 4. Write that number here.**................................................................................................ | **$7,000.00**

---

**Part 5:** Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1.

37. **Do you own or have any legal or equitable interest in any business-related property?**

■ No. Go to Part 6.

☐ Yes.  Go to line 38.

---

**Part 6**: Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In.
If you own or have an interest in farmland, list it in Part 1.

46. **Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**

■ No. Go to Part 7.

☐ Yes.  Go to line 47.

---

**Part 7:** Describe All Property You Own or Have an Interest in That You Did Not List Above

53. **Do you have other property of any kind you did not already list?**
*Examples:* Season tickets, country club membership

■ No

☐ Yes. Give specific information.........

54. **Add the dollar value of all of your entries from Part 7. Write that number here** ................................... | **$0.00**

---

**Part 8:** List the Totals of Each Part of this Form

| | | |
|---|---|---|
| 55. **Part 1: Total real estate, line 2** ...................................................................................................... | | **$521,742.77** |
| 56. **Part 2: Total vehicles, line 5** | **$5,874.00** | |
| 57. **Part 3: Total personal and household items, line 15** | **$12,300.00** | |
| 58. **Part 4: Total financial assets, line 36** | **$7,000.00** | |
| 59. **Part 5: Total business-related property, line 45** | **$0.00** | |
| 60. **Part 6: Total farm- and fishing-related property, line 52** | **$0.00** | |
| 61. **Part 7: Total other property not listed, line 54** | + **$0.00** | |
| 62. **Total personal property.** Add lines 56 through 61... | **$25,174.00** | Copy personal property total **$25,174.00** |
| 63. **Total of all property on Schedule A/B**. Add line 55 + line 62 | | **$546,916.77** |

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                                        Best Case Bankruptcy

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Steven Michael Moehling** |
| | First Name                    Middle Name                    Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name                    Middle Name                    Last Name |
| United States Bankruptcy Court for the: | SOUTHERN DISTRICT OF CALIFORNIA |
| Case number (if known) | |

☐ Check if this is an amended filing

Official Form 106C

# Schedule C: The Property You Claim as Exempt          4/19

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Using the property you listed on *Schedule A/B: Property* (Official Form 106A/B) as your source, list the property that you claim as exempt. If more space is needed, fill out and attach to this page as many copies of *Part 2: Additional Page* as necessary. On the top of any additional pages, write your name and case number (if known).

**For each item of property you claim as exempt, you must specify the amount of the exemption you claim. One way of doing so is to state a specific dollar amount as exempt. Alternatively, you may claim the full fair market value of the property being exempted up to the amount of any applicable statutory limit. Some exemptions—such as those for health aids, rights to receive certain benefits, and tax-exempt retirement funds—may be unlimited in dollar amount. However, if you claim an exemption of 100% of fair market value under a law that limits the exemption to a particular dollar amount and the value of the property is determined to exceed that amount, your exemption would be limited to the applicable statutory amount.**

| Part 1: | Identify the Property You Claim as Exempt |
|---|---|

1. **Which set of exemptions are you claiming?** *Check one only, even if your spouse is filing with you.*

   ☑ You are claiming state and federal nonbankruptcy exemptions.   11 U.S.C. § 522(b)(3)

   ☐ You are claiming federal exemptions.   11 U.S.C. § 522(b)(2)

2. **For any property you list on *Schedule A/B* that you claim as exempt, fill in the information below.**

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own. Copy the value from *Schedule A/B* | Amount of the exemption you claim. *Check only one box for each exemption.* | Specific laws that allow exemption |
|---|---|---|---|
| **5420 Old Ranch Road Oceanside, CA 92057  San Diego County 4 Beds / 4 Baths / 2021 sqft FMV = $555,045.50  - 6% Cost of sale ($33,302.73)** Line from *Schedule A/B*: **1.1** | $521,742.77 | ☑ $100,000.00 <br> ☐ 100% of fair market value, up to any applicable statutory limit | **C.C.P. § 704.730** |
| **2001 BMW 330i 145,000 miles** Line from *Schedule A/B*: **3.1** | $4,324.00 | ☑ $3,325.00 <br> ☐ 100% of fair market value, up to any applicable statutory limit | **C.C.P. § 704.010** |
| **Used Household Goods and Furnishings** Line from *Schedule A/B*: **6.1** | $1,200.00 | ☑ $1,200.00 <br> ☐ 100% of fair market value, up to any applicable statutory limit | **C.C.P. § 704.020** |
| **Used Electronics** Line from *Schedule A/B*: **7.1** | $750.00 | ☑ $750.00 <br> ☐ 100% of fair market value, up to any applicable statutory limit | **C.C.P. § 704.020** |
| **Used Clothes** Line from *Schedule A/B*: **11.1** | $350.00 | ☑ $350.00 <br> ☐ 100% of fair market value, up to any applicable statutory limit | **C.C.P. § 704.020** |

Official Form 106C                 Schedule C: The Property You Claim as Exempt                 page 1 of 2

| Debtor 1 | **Steven Michael Moehling** | | | Case number (if known) | |
|---|---|---|---|---|---|

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own | Amount of the exemption you claim | | Specific laws that allow exemption |
|---|---|---|---|---|
| | Copy the value from *Schedule A/B* | *Check only one box for each exemption.* | | |
| **Misc Jewlery**<br>Line from *Schedule A/B*: **12.1** | **$10,000.00** | ■ | **$8,725.00** | **C.C.P. § 704.040** |
| | | ☐ | 100% of fair market value, up to any applicable statutory limit | |
| **Checking: Chase Bank**<br>Line from *Schedule A/B*: **17.1** | **$1,000.00** | ■ | **$1,000.00** | **C.C.P. § 704.070** |
| | | ☐ | 100% of fair market value, up to any applicable statutory limit | |
| **401(k): with employer, through Liberty Mutual**<br>Line from *Schedule A/B*: **21.1** | **$6,000.00** | ■ | **$6,000.00** | **C.C.P. § 704.115(a)(1) & (2), (b)** |
| | | ☐ | 100% of fair market value, up to any applicable statutory limit | |

3. **Are you claiming a homestead exemption of more than $170,350?**
(Subject to adjustment on 4/01/22 and every 3 years after that for cases filed on or after the date of adjustment.)

■  No

☐  Yes. Did you acquire the property covered by the exemption within 1,215 days before you filed this case?

☐  No

☐  Yes

Official Form 106C          **Schedule C: The Property You Claim as Exempt**          page 2 of 2

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

**Fill in this information to identify your case:**

| | | | |
|---|---|---|---|
| Debtor 1 | **Steven Michael Moehling** | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | SOUTHERN DISTRICT OF CALIFORNIA | | |
| Case number | | | |
| (if known) | | | |

☐ Check if this is an amended filing

Official Form 106D

# Schedule D: Creditors Who Have Claims Secured by Property        12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

**1. Do any creditors have claims secured by your property?**

☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

■ Yes. Fill in all of the information below.

**Part 1:    List All Secured Claims**

| | Column A | Column B | Column C |
|---|---|---|---|
| **2. List all secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim.  If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name. | **Amount of claim** Do not deduct the value of collateral. | **Value of collateral that supports this claim** | **Unsecured portion** If any |

| | | | |
|---|---|---|---|
| **2.1  California Housing Finance Age** | Describe the property that secures the claim: | $54,000.00 | $521,742.77 | $0.00 |

Creditor's Name

**5420 Old Ranch Road Oceanside, CA 92057  San Diego County**
**4 Beds / 4 Baths / 2021 sqft**
**FMV = $555,045.50**
**  - 6% Cost of sale ($33,302.73)**

**500 Capitol Mall, Ste. 1400 (M Sacramento, CA 95814**

Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim relates to a community debt**

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)    **Second Mortgage**

Date debt was incurred _____        Last 4 digits of account number _____

---

| Official Form 106D | Schedule D: Creditors Who Have Claims Secured by Property | page 1 of 2 |
|---|---|---|

Debtor 1    **Steven Michael Moehling**                                    Case number (if known) _____
        First Name      Middle Name      Last Name

| 2.2 | **Rancho San Geronimo Homeowners** | | $0.00 | $521,742.77 | $0.00 |

Creditor's Name

**Describe the property that secures the claim:**

**5420 Old Ranch Road Oceanside, CA 92057  San Diego County**
**4 Beds / 4 Baths / 2021 sqft**
**FMV = $555,045.50**
**- 6% Cost of sale ($33,302.73)**

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**825 College Blvd Ste 102-422**
**Oceanside, CA 92057**

Number, Street, City, State & Zip Code

**Who owes the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim relates to a community debt**

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)    **Home Owner's Association**

**Date debt was incurred** _____    **Last 4 digits of account number** _____

| 2.3 | **Select Portfolio Servicing Inc** | | $371,954.00 | $521,742.77 | $0.00 |

Creditor's Name

**Describe the property that secures the claim:**

**5420 Old Ranch Road Oceanside, CA 92057  San Diego County**
**4 Beds / 4 Baths / 2021 sqft**
**FMV = $555,045.50**
**- 6% Cost of sale ($33,302.73)**

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Attn: Bankruptcy**
**Po Box 65250**
**Salt Lake City, UT 84165**

Number, Street, City, State & Zip Code

**Who owes the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim relates to a community debt**

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)    **First Mortgage**

**Date debt was incurred** **Opened 09/05  Last Active 2/14/19**    **Last 4 digits of account number** **9180**

| | | |
|---|---|---|
| Add the dollar value of your entries in Column A on this page. Write that number here: | | $425,954.00 |
| If this is the last page of your form, add the dollar value totals from all pages. Write that number here: | | $425,954.00 |

**Part 2:    List Others to Be Notified for a Debt That You Already Listed**

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

Official Form 106D          Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**          page 2 of 2

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Steven Michael Moehling** |
| | First Name — Middle Name — Last Name |
| Debtor 2 (Spouse if, filing) | First Name — Middle Name — Last Name |
| United States Bankruptcy Court for the: | SOUTHERN DISTRICT OF CALIFORNIA |
| Case number (if known) | |

☐ Check if this is an amended filing

Official Form 106E/F

## Schedule E/F: Creditors Who Have Unsecured Claims   12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY claims and Part 2 for creditors with NONPRIORITY claims. List the other party to any executory contracts or unexpired leases that could result in a claim.  Also list executory contracts on Schedule A/B: Property (Official Form 106A/B) and on Schedule G: Executory Contracts and Unexpired Leases (Official Form 106G). Do not include any creditors with partially secured claims that are listed in Schedule D: Creditors Who Have Claims Secured by Property. If more space is needed, copy the Part you need, fill it out, number the entries in the boxes on the left. Attach the Continuation Page to this page. If you have no information to report in a Part, do not file that Part. On the top of any additional pages, write your name and case number (if known).

| Part 1: | List All of Your PRIORITY Unsecured Claims |
|---|---|

**1.** **Do any creditors have priority unsecured claims against you?**

☐ No. Go to Part 2.

■ Yes.

**2.** **List all of your priority unsecured claims.** If a creditor has more than one priority unsecured claim, list the creditor separately for each claim. For each claim listed, identify what type of claim it is. If a claim has both priority and nonpriority amounts, list that claim here and show both priority and nonpriority amounts. As much as possible, list the claims in alphabetical order according to the creditor's name. If you have more than two priority unsecured claims, fill out the Continuation Page of Part 1. If more than one creditor holds a particular claim, list the other creditors in Part 3.

(For an explanation of each type of claim, see the instructions for this form in the instruction booklet.)

| | | | Total claim | Priority amount | Nonpriority amount |
|---|---|---|---|---|---|

**2.1** **Franchise Tax Board**
Priority Creditor's Name
**P.O. Box 2952**
**Sacramento, CA 95812-2952**
Number Street City State Zip Code

**Who incurred the debt?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
■ At least one of the debtors and another
☐ **Check if this claim is for a  community debt**
**Is the claim subject to offset?**
■ No
☐ Yes

Last 4 digits of account number _____     **$1,000.00**   **$1,000.00**   **$0.00**

**When was the debt incurred?** _____

**As of the date you file, the claim is:** Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of PRIORITY unsecured claim:**
☐ Domestic support obligations
■ Taxes and certain other debts you owe the government
☐ Claims for death or personal injury while you were intoxicated
☐ Other. Specify _____
**Income Taxes**

**2.2** **Internal Revenue Service**
Priority Creditor's Name
**P.O. Box 7346**
**Philadelphia, PA 19101-7346**
Number Street City State Zip Code

**Who incurred the debt?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
■ At least one of the debtors and another
☐ **Check if this claim is for a  community debt**
**Is the claim subject to offset?**
■ No
☐ Yes

Last 4 digits of account number _____     **$8,200.00**   **$4,500.00**   **$3,700.00**

**When was the debt incurred?** _____

**As of the date you file, the claim is:** Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of PRIORITY unsecured claim:**
☐ Domestic support obligations
■ Taxes and certain other debts you owe the government
☐ Claims for death or personal injury while you were intoxicated
☐ Other. Specify _____
**Income Taxes**

---

Official Form 106 E/F     Schedule E/F: Creditors Who Have Unsecured Claims     Page 1 of 3

Debtor 1   **Steven Michael Moehling** _____    Case number (if known) _____

| Part 2: | List All of Your NONPRIORITY Unsecured Claims |
|---|---|

**3.   Do any creditors have nonpriority unsecured claims against you?**

☐ No. You have nothing to report in this part. Submit this form to the court with your other schedules.

■ Yes.

**4.   List all of your nonpriority unsecured claims in the alphabetical order of the creditor who holds each claim.** If a creditor has more than one nonpriority unsecured claim, list the creditor separately for each claim. For each claim listed, identify what type of claim it is. Do not list claims already included in Part 1. If more than one creditor holds a particular claim, list the other creditors in Part 3.If you have more than three nonpriority unsecured claims fill out the Continuation Page of Part 2.

|  | | | | **Total claim** |
|---|---|---|---|---|

**4.1**   **Capital One**
Nonpriority Creditor's Name

**Carol Stream, IL 60197**
Number Street City State Zip Code

**Who incurred the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No
☐ Yes

Last 4 digits of account number _____     **$358.00**

**When was the debt incurred?** _____

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify   **Unsecured**

---

**4.2**   **Cavalry SPV I, LLC**
Nonpriority Creditor's Name
**500 Summit Lake Drive Ste 400
Valhalla, NY 10595**
Number Street City State Zip Code

**Who incurred the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No
☐ Yes

Last 4 digits of account number   **4525**     **$139.00**

**When was the debt incurred?** _____

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify   **Unsecured**

---

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                                    Best Case Bankruptcy

Debtor 1    **Steven Michael Moehling**                                    Case number (if known)

| 4.3 | **Toyota Financial Services** | Last 4 digits of account number | **0001** | **$4,565.00** |

Nonpriority Creditor's Name

**Attn: Bankruptcy Dept**
**Po Box 8026**
**Cedar Rapids, IA 52409**

When was the debt incurred?    **Opened 03/12  Last Active 6/13/18**

Number Street City State Zip Code

**As of the date you file, the claim is:** Check all that apply

**Who incurred the debt?** Check one.

■ Debtor 1 only                              ☐ Contingent

☐ Debtor 2 only                              ☐ Unliquidated

☐ Debtor 1 and Debtor 2 only                 ☐ Disputed

☐ At least one of the debtors and another    **Type of NONPRIORITY unsecured claim:**

☐ **Check if this claim is for a  community debt**    ☐ Student loans

**Is the claim subject to offset?**    ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims

■ No    ☐ Debts to pension or profit-sharing plans, and other similar debts

☐ Yes    ■ Other. Specify    **Unsecured**

---

| **Part 3:** | **List Others to Be Notified About a Debt That You Already Listed** |

5. Use this page only if you have others to be notified about your bankruptcy, for a debt that you already listed in Parts 1 or 2. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the original creditor in Parts 1 or 2, then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Parts 1 or 2, list the additional creditors here. If you do not have additional persons to be notified for any debts in Parts 1 or 2, do not fill out or submit this page.

| **Part 4:** | **Add the Amounts for Each Type of Unsecured Claim** |

6. Total the amounts of certain types of unsecured claims. This information is for statistical reporting purposes only. 28 U.S.C. §159. Add the amounts for each type of unsecured claim.

|  |  |  |  | Total Claim |
|---|---|---|---|---|
| **Total claims from Part 1** | 6a. | **Domestic support obligations** | 6a. $ | 0.00 |
|  | 6b. | **Taxes and certain other debts you owe the government** | 6b. $ | 9,200.00 |
|  | 6c. | **Claims for death or personal injury while you were intoxicated** | 6c. $ | 0.00 |
|  | 6d. | **Other.** Add all other priority unsecured claims. Write that amount here. | 6d. $ | 0.00 |
|  | 6e. | **Total Priority.** Add lines 6a through 6d. | 6e. $ | 9,200.00 |

|  |  |  |  | Total Claim |
|---|---|---|---|---|
| **Total claims from Part 2** | 6f. | **Student loans** | 6f. $ | 0.00 |
|  | 6g. | **Obligations arising out of a separation agreement or divorce that you did not report as priority claims** | 6g. $ | 0.00 |
|  | 6h. | **Debts to pension or profit-sharing plans, and other similar debts** | 6h. $ | 0.00 |
|  | 6i. | **Other.** Add all other nonpriority unsecured claims. Write that amount here. | 6i. $ | 5,062.00 |
|  | 6j. | **Total Nonpriority.** Add lines 6f through 6i. | 6j. $ | 5,062.00 |

---

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com    Best Case Bankruptcy

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Steven Michael Moehling** |
| | First Name          Middle Name          Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name          Middle Name          Last Name |
| United States Bankruptcy Court for the: | SOUTHERN DISTRICT OF CALIFORNIA |
| Case number (if known) | |

☐ Check if this is an amended filing

## Official Form 106G

# Schedule G: Executory Contracts and Unexpired Leases     **12/15**

**Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the additional page, fill it out, number the entries, and attach it to this page. On the top of any additional pages, write your name and case number (if known).**

1. **Do you have any executory contracts or unexpired leases?**

   ■ No. Check this box and file this form with the court with your other schedules.  You have nothing else to report on this form.

   ☐ Yes. Fill in all of the information below even if the contacts of leases are listed on *Schedule A/B:Property* (Official Form 106 A/B).

2. **List separately each person or company with whom you have the contract or lease. Then state what each contract or lease is for (for example, rent, vehicle lease, cell phone).** See the instructions for this form in the instruction booklet for more examples of executory contracts and unexpired leases.

| Person or company with whom you have the contract or lease<br>Name, Number, Street, City, State and ZIP Code | State what the contract or lease is for |
|---|---|
| 2.1 _____<br>Name<br><br>_____<br>Number    Street<br><br>_____<br>City          State    ZIP Code | |
| 2.2 _____<br>Name<br><br>_____<br>Number    Street<br><br>_____<br>City          State    ZIP Code | |
| 2.3 _____<br>Name<br><br>_____<br>Number    Street<br><br>_____<br>City          State    ZIP Code | |
| 2.4 _____<br>Name<br><br>_____<br>Number    Street<br><br>_____<br>City          State    ZIP Code | |
| 2.5 _____<br>Name<br><br>_____<br>Number    Street<br><br>_____<br>City          State    ZIP Code | |

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

**Fill in this information to identify your case:**

| Debtor 1 | **Steven Michael Moehling** | | |
|---|---|---|---|
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | SOUTHERN DISTRICT OF CALIFORNIA | | |
| Case number (if known) | | | |

☐ Check if this is an amended filing

# Official Form 106H
# Schedule H: Your Codebtors

**12/15**

Codebtors are people or entities who are also liable for any debts you may have. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, and number the entries in the boxes on the left. Attach the Additional Page to this page. On the top of any Additional Pages, write your name and case number (if known). Answer every question.

**1. Do you have any codebtors?** (If you are filing a joint case, do not list either spouse as a codebtor.)

☐ No
☑ Yes

**2. Within the last 8 years, have you lived in a community property state or territory?** (*Community property states and territories* include Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, and Wisconsin.)

☐ No. Go to line 3.
☑ Yes. Did your spouse, former spouse, or legal equivalent live with you at the time?

☐ No
☑ Yes.

In which community state or territory did you live? ___California___ . Fill in the name and current address of that person.

**Leslie D Griffin**
**5420 Old Ranch Road**
**Oceanside, CA 92057**
Name of your spouse, former spouse, or legal equivalent
Number, Street, City, State & Zip Code

**3. In Column 1, list all of your codebtors.** Do not include your spouse as a codebtor if your spouse is filing with you. List the person shown in line 2 again as a codebtor only if that person is a guarantor or cosigner. Make sure you have listed the creditor on Schedule D (Official Form 106D), Schedule E/F (Official Form 106E/F), or Schedule G (Official Form 106G). Use Schedule D, Schedule E/F, or Schedule G to fill out Column 2.

| *Column 1:* **Your codebtor** Name, Number, Street, City, State and ZIP Code | *Column 2:* **The creditor to whom you owe the debt** Check all schedules that apply: |
|---|---|
| 3.1 **Leslie D Griffin** **5420 Old Ranch Road** **Oceanside, CA 92057** | ☐ Schedule D, line _____ ☑ Schedule E/F, line __2.2__ ☐ Schedule G _____ **Internal Revenue Service** |
| 3.2 **Leslie D Griffin** **5420 Old Ranch Road** **Oceanside, CA 92057** | ☐ Schedule D, line _____ ☑ Schedule E/F, line __2.1__ ☐ Schedule G _____ **Franchise Tax Board** |

| Fill in this information to identify your case: |
|---|

Debtor 1          **Steven Michael Moehling**

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:    SOUTHERN DISTRICT OF CALIFORNIA

Case number
(If known)

Check if this is:
☐ An amended filing
☐ A supplement showing postpetition chapter 13 income as of the following date:

_____
MM / DD/ YYYY

## Official Form 106I
## Schedule I: Your Income                                              **12/15**

**Be as complete and accurate as possible. If two married people are filing together (Debtor 1 and Debtor 2), both are equally responsible for supplying correct information. If you are married and not filing jointly, and your spouse is living with you, include information about your spouse. If you are separated and your spouse is not filing with you, do not include information about your spouse. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.**

| Part 1: | Describe Employment |
|---|---|

1. **Fill in your employment information.**

   If you have more than one job, attach a separate page with information about additional employers.

   Include part-time, seasonal, or self-employed work.

   Occupation may include student or homemaker, if it applies.

|  | **Debtor 1** | **Debtor 2 or non-filing spouse** |
|---|---|---|
| Employment status* | ■ Employed<br>☐ Not employed | ■ Employed<br>☐ Not employed |
| Occupation | **Clerk** | **Caregiver** |
| Employer's name | **Costco Wholesale Corporation** | **State of CA - IHSS** |
| Employer's address | **999 Lake Drive**<br>**Issaquah, WA 98027** | **12000 S. Hawthorne Blvd.**<br>**Hawthorne, CA 90250** |
| How long employed there? | **3.5 years** | **3 years** |

*See Attachment for Additional Employment Information

| Part 2: | Give Details About Monthly Income |
|---|---|

**Estimate monthly income as of the date you file this form.** If you have nothing to report for any line, write $0 in the space. Include your non-filing spouse unless you are separated.

If you or your non-filing spouse have more than one employer, combine the information for all employers for that person on the lines below. If you need more space, attach a separate sheet to this form.

|  |  | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|
| 2. | List monthly gross wages, salary, and commissions (before all payroll deductions). If not paid monthly, calculate what the monthly wage would be. | 2.  $        **3,525.15** | $        **1,037.50** |
| 3. | **Estimate and list monthly overtime pay.** | 3.  +$        **0.00** | +$        **0.00** |
| 4. | **Calculate gross Income.**  Add line 2 + line 3. | 4.  $        **3,525.15** | $        **1,037.50** |

Official Form 106I                    **Schedule I: Your Income**                    page 1

Debtor 1 **Steven Michael Moehling**

Case number (*if known*) _____

| | | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| | **Copy line 4 here** | 4. | $ 3,525.15 | $ 1,037.50 |

5. **List all payroll deductions:**

| | | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| 5a. | **Tax, Medicare, and Social Security deductions** | 5a. | $ 417.08 | $ 89.75 |
| 5b. | **Mandatory contributions for retirement plans** | 5b. | $ 0.00 | $ 0.00 |
| 5c. | **Voluntary contributions for retirement plans** | 5c. | $ 211.51 | $ 0.00 |
| 5d. | **Required repayments of retirement fund loans** | 5d. | $ 67.08 | $ 0.00 |
| 5e. | **Insurance** | 5e. | $ 127.83 | $ 0.00 |
| 5f. | **Domestic support obligations** | 5f. | $ 0.00 | $ 0.00 |
| 5g. | **Union dues** | 5g. | $ 0.00 | $ 21.80 |
| 5h. | **Other deductions.** Specify: **Charity - United Way** | 5h.+ | $ 10.83 + | $ 0.00 |

6. **Add the payroll deductions.** Add lines 5a+5b+5c+5d+5e+5f+5g+5h. — 6. $ 834.33 — $ 111.55

7. **Calculate total monthly take-home pay.** Subtract line 6 from line 4. — 7. $ 2,690.82 — $ 925.95

8. **List all other income regularly received:**

| | | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| 8a. | **Net income from rental property and from operating a business, profession, or farm** Attach a statement for each property and business showing gross receipts, ordinary and necessary business expenses, and the total monthly net income. | 8a. | $ 0.00 | $ 0.00 |
| 8b. | **Interest and dividends** | 8b. | $ 0.00 | $ 0.00 |
| 8c. | **Family support payments that you, a non-filing spouse, or a dependent regularly receive** Include alimony, spousal support, child support, maintenance, divorce settlement, and property settlement. | 8c. | $ 0.00 | $ 0.00 |
| 8d. | **Unemployment compensation** | 8d. | $ 0.00 | $ 0.00 |
| 8e. | **Social Security** | 8e. | $ 0.00 | $ 0.00 |
| 8f. | **Other government assistance that you regularly receive** Include cash assistance and the value (if known) of any non-cash assistance that you receive, such as food stamps (benefits under the Supplemental Nutrition Assistance Program) or housing subsidies. Specify: | 8f. | $ 0.00 | $ 0.00 |
| 8g. | **Pension or retirement income** | 8g. | $ 0.00 | $ 0.00 |
| 8h. | **Other monthly income.** Specify: **York Risk Sevices Group $320.00 biweekly** | 8h.+ | $ 0.00 + | $ 693.33 |
| | **Walmart (2nd job) $232.07 gross/month** | | $ 0.00 | $ 214.24 |

9. **Add all other income.** Add lines 8a+8b+8c+8d+8e+8f+8g+8h. — 9. $ 0.00 — $ 907.57

10. **Calculate monthly income.** Add line 7 + line 9. — 10. $ 2,690.82 + $ 1,833.52 = $ 4,524.34
    Add the entries in line 10 for Debtor 1 and Debtor 2 or non-filing spouse.

11. **State all other regular contributions to the expenses that you list in *Schedule J*.**
    Include contributions from an unmarried partner, members of your household, your dependents, your roommates, and other friends or relatives.
    Do not include any amounts already included in lines 2-10 or amounts that are not available to pay expenses listed in *Schedule J*.
    Specify: _____ — 11. +$ 0.00

12. **Add the amount in the last column of line 10 to the amount in line 11.** The result is the combined monthly income.
    Write that amount on the *Summary of Schedules* and *Statistical Summary of Certain Liabilities* and Related *Data,* if it applies — 12. $ 4,524.34

    **Combined monthly income**

13. **Do you expect an increase or decrease within the year after you file this form?**

    ■ No.
    ☐ Yes. Explain: _____

Debtor 1    **Steven Michael Moehling**                                          Case number (*if known*)

## Official Form B 6I
## Attachment for Additional Employment Information

| Spouse | |
|---|---|
| Occupation | **Clerk** |
| Name of Employer | **Walmart Associates, Inc,** |
| How long employed | **8 years** |
| Address of Employer | **702 S.W. 8th Street**<br>**Bentonville, AR 72716** |

Official Form 106I                              **Schedule I: Your Income**                              page 3

| Fill in this information to identify your case: | | Check if this is: |
| --- | --- | --- |

Debtor 1 __Steven Michael Moehling__

Debtor 2 _____
(Spouse, if filing)

United States Bankruptcy Court for the: __SOUTHERN DISTRICT OF CALIFORNIA__

Case number _____
(If known)

Check if this is:

☐ An amended filing
☐ A supplement showing postpetition chapter 13 expenses as of the following date:

_____
MM / DD / YYYY

# Official Form 106J
# Schedule J: Your Expenses
**12/15**

**Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach another sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.**

## Part 1:  Describe Your Household

1. **Is this a joint case?**

   ☑ No. Go to line 2.
   ☐ Yes. **Does Debtor 2 live in a separate household?**

      ☐ No
      ☐ Yes. Debtor 2 must file Official Form 106J-2, *Expenses for Separate Household* of Debtor 2.

2. **Do you have dependents?** ☑ No

   Do not list Debtor 1 and Debtor 2.

   Do not state the dependents names.

   ☐ Yes. Fill out this information for each dependent..............

| Dependent's relationship to Debtor 1 or Debtor 2 | Dependent's age | Does dependent live with you? |
| --- | --- | --- |
| _____ | _____ | ☐ No  ☐ Yes |
| _____ | _____ | ☐ No  ☐ Yes |
| _____ | _____ | ☐ No  ☐ Yes |
| _____ | _____ | ☐ No  ☐ Yes |

3. **Do your expenses include expenses of people other than yourself and your dependents?**

   ☑ No
   ☐ Yes

## Part 2:  Estimate Your Ongoing Monthly Expenses

**Estimate your expenses as of your bankruptcy filing date unless you are using this form as a supplement in a Chapter 13 case to report expenses as of a date after the bankruptcy is filed. If this is a supplemental *Schedule J*, check the box at the top of the form and fill in the applicable date.**

Include expenses paid for with non-cash government assistance if you know the value of such assistance and have included it on *Schedule I: Your Income* (Official Form 106I.)

|  | **Your expenses** |
| --- | --- |

| | | |
| --- | --- | --- |
| 4. | **The rental or home ownership expenses for your residence.** Include first mortgage payments and any rent for the ground or lot. | 4. $ 1,630.00 |
| | **If not included in line 4:** | |
| 4a. | Real estate taxes | 4a. $ 0.00 |
| 4b. | Property, homeowner's, or renter's insurance | 4b. $ 0.00 |
| 4c. | Home maintenance, repair, and upkeep expenses | 4c. $ 120.00 |
| 4d. | Homeowner's association or condominium dues | 4d. $ 65.00 |
| 5. | **Additional mortgage payments for your residence,** such as home equity loans | 5. $ 0.00 |

Debtor 1  **Steven Michael Moehling** _____  Case number (if known) _____

| | | | | |
|---|---|---|---|---|
| 6. | **Utilities:** | | | |
| | 6a. Electricity, heat, natural gas | 6a. | $ | **172.00** |
| | 6b. Water, sewer, garbage collection | 6b. | $ | **114.00** |
| | 6c. Telephone, cell phone, Internet, satellite, and cable services | 6c. | $ | **140.00** |
| | 6d. Other. Specify: | 6d. | $ | **0.00** |
| 7. | **Food and housekeeping supplies** | 7. | $ | **650.00** |
| 8. | **Childcare and children's education costs** | 8. | $ | **0.00** |
| 9. | **Clothing, laundry, and dry cleaning** | 9. | $ | **200.00** |
| 10. | **Personal care products and services** | 10. | $ | **100.00** |
| 11. | **Medical and dental expenses** | 11. | $ | **75.00** |
| 12. | **Transportation.** Include gas, maintenance, bus or train fare. Do not include car payments. | 12. | $ | **400.00** |
| 13. | **Entertainment, clubs, recreation, newspapers, magazines, and books** | 13. | $ | **100.00** |
| 14. | **Charitable contributions and religious donations** | 14. | $ | **0.00** |
| 15. | **Insurance.** Do not include insurance deducted from your pay or included in lines 4 or 20. | | | |
| | 15a. Life insurance | 15a. | $ | **0.00** |
| | 15b. Health insurance | 15b. | $ | **0.00** |
| | 15c. Vehicle insurance | 15c. | $ | **80.00** |
| | 15d. Other insurance. Specify: | 15d. | $ | **0.00** |
| 16. | **Taxes.** Do not include taxes deducted from your pay or included in lines 4 or 20. Specify: | 16. | $ | **0.00** |
| 17. | **Installment or lease payments:** | | | |
| | 17a. Car payments for Vehicle 1 | 17a. | $ | **0.00** |
| | 17b. Car payments for Vehicle 2 | 17b. | $ | **0.00** |
| | 17c. Other. Specify: | 17c. | $ | **0.00** |
| | 17d. Other. Specify: | 17d. | $ | **0.00** |
| 18. | **Your payments of alimony, maintenance, and support that you did not report as deducted from your pay on line 5, *Schedule I, Your Income* (Official Form 106I).** | 18. | $ | **0.00** |
| 19. | **Other payments you make to support others who do not live with you.** Specify: | 19. | $ | **0.00** |
| 20. | **Other real property expenses not included in lines 4 or 5 of this form or on *Schedule I: Your Income*.** | | | |
| | 20a. Mortgages on other property | 20a. | $ | **0.00** |
| | 20b. Real estate taxes | 20b. | $ | **0.00** |
| | 20c. Property, homeowner's, or renter's insurance | 20c. | $ | **0.00** |
| | 20d. Maintenance, repair, and upkeep expenses | 20d. | $ | **0.00** |
| | 20e. Homeowner's association or condominium dues | 20e. | $ | **0.00** |
| 21. | **Other:** Specify:  **Pet Food & Care** | 21. | +$ | **100.00** |

22. **Calculate your monthly expenses**

| | | | |
|---|---|---|---|
| 22a. Add lines 4 through 21. | | $ | **3,946.00** |
| 22b. Copy line 22 (monthly expenses for Debtor 2), if any, from Official Form 106J-2 | | $ | |
| 22c. Add line 22a and 22b.  The result is your monthly expenses. | | $ | **3,946.00** |

23. **Calculate your monthly net income.**

| | | | |
|---|---|---|---|
| 23a. Copy line 12 *(your combined monthly income)* from Schedule I. | 23a. | $ | **4,524.34** |
| 23b. Copy your monthly expenses from line 22c above. | 23b. | -$ | **3,946.00** |
| 23c. Subtract your monthly expenses from your monthly income. The result is your *monthly net income*. | 23c. | $ | **578.34** |

24. **Do you expect an increase or decrease in your expenses within the year after you file this form?**

For example, do you expect to finish paying for your car loan within the year or do you expect your mortgage payment to increase or decrease because of a modification to the terms of your mortgage?

■ No.

☐ Yes.   Explain here: _____

**Fill in this information to identify your case:**

| | | | |
|---|---|---|---|
| Debtor 1 | **Steven Michael Moehling** | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | SOUTHERN DISTRICT OF CALIFORNIA | | |
| Case number (if known) | | | |

☐ Check if this is an amended filing

Official Form 106Dec

# Declaration About an Individual Debtor's Schedules

12/15

If two married people are filing together, both are equally responsible for supplying correct information.

You must file this form whenever you file bankruptcy schedules or amended schedules. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

| | Sign Below |
|---|---|

**Did you pay or agree to pay someone who is NOT an attorney to help you fill out bankruptcy forms?**

■ No

☐ Yes. Name of person _____ Attach *Bankruptcy Petition Preparer's Notice, Declaration, and Signature* (Official Form 119)

**Under penalty of perjury, I declare that I have read the summary and schedules filed with this declaration and that they are true and correct.**

| X **/s/ Steven Michael Moehling** | X | |
|---|---|---|
| **Steven Michael Moehling** | | Signature of Debtor 2 |
| Signature of Debtor 1 | | |
| Date **June 28, 2019** | Date | |

Official Form 106Dec      **Declaration About an Individual Debtor's Schedules**

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Steven Michael Moehling** |
| | First Name          Middle Name          Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name          Middle Name          Last Name |
| United States Bankruptcy Court for the: | SOUTHERN DISTRICT OF CALIFORNIA |
| Case number (if known) | |

☐ Check if this is an amended filing

## Official Form 107
## Statement of Financial Affairs for Individuals Filing for Bankruptcy          4/19

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information.  If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

| Part 1: | Give Details About Your Marital Status and Where You Lived Before |
|---|---|

**1.  What is your current marital status?**

■ Married
☐ Not married

**2.  During the last 3 years, have you lived anywhere other than where you live now?**

■ No
☐ Yes. List all of the places you lived in the last 3 years. Do not include where you live now.

| Debtor 1 Prior Address: | Dates Debtor 1 lived there | Debtor 2 Prior Address: | Dates Debtor 2 lived there |
|---|---|---|---|

**3.  Within the last 8 years, did you ever live with a spouse or legal equivalent in a community property state or territory?** (*Community property states and territories* include Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington and Wisconsin.)

☐ No
■ Yes. Make sure you fill out *Schedule H: Your Codebtors* (Official Form 106H).

| Part 2 | Explain the Sources of Your Income |
|---|---|

**4.  Did you have any income from employment or from operating a business during this year or the two previous calendar years?**
Fill in the total amount of income you received from all jobs and all businesses, including part-time activities.
If you are filing a joint case and you have income that you receive together, list it only once under Debtor 1.

☐ No
■ Yes. Fill in the details.

| | Debtor 1 | | Debtor 2 | |
|---|---|---|---|---|
| | **Sources of income** Check all that apply. | **Gross income** (before deductions and exclusions) | **Sources of income** Check all that apply. | **Gross income** (before deductions and exclusions) |
| **From January 1 of current year until the date you filed for bankruptcy:** | ■ Wages, commissions, bonuses, tips | $17,831.00 | ☐ Wages, commissions, bonuses, tips | $5,983.92 |
| | ☐ Operating a business | | ☐ Operating a business | |

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

Debtor 1    **Steven Michael Moehling**                                            Case number (*if known*) _____

| | Debtor 1 | | Debtor 2 | |
|---|---|---|---|---|
| | **Sources of income**<br>Check all that apply. | **Gross income**<br>(before deductions and exclusions) | **Sources of income**<br>Check all that apply. | **Gross income**<br>(before deductions and exclusions) |
| **For last calendar year:**<br>(January 1 to December 31, 2018 ) | ■ Wages, commissions, bonuses, tips | $36,864.18 | ☐ Wages, commissions, bonuses, tips | $15,266.80 |
| | ☐ Operating a business | | ☐ Operating a business | |
| **For the calendar year before that:**<br>(January 1 to December 31, 2017 ) | ■ Wages, commissions, bonuses, tips | $45,589.00 | ☐ Wages, commissions, bonuses, tips | |
| | ☐ Operating a business | | ☐ Operating a business | |

5. **Did you receive any other income during this year or the two previous calendar years?**
   Include income regardless of whether that income is taxable. Examples of *other income* are alimony; child support; Social Security, unemployment, and other public benefit payments; pensions; rental income; interest; dividends; money collected from lawsuits; royalties; and gambling and lottery winnings. If you are filing a joint case and you have income that you received together, list it only once under Debtor 1.

   List each source and the gross income from each source separately. Do not include income that you listed in line 4.

   ■ No
   ☐ Yes. Fill in the details.

| | Debtor 1 | | Debtor 2 | |
|---|---|---|---|---|
| | **Sources of income**<br>Describe below. | **Gross income from each source**<br>(before deductions and exclusions) | **Sources of income**<br>Describe below. | **Gross income**<br>(before deductions and exclusions) |

| Part 3: | List Certain Payments You Made Before You Filed for Bankruptcy |
|---|---|

6. **Are either Debtor 1's or Debtor 2's debts primarily consumer debts?**

   ☐ No.   **Neither Debtor 1 nor Debtor 2 has primarily consumer debts.** *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

   During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $6,825* or more?
   ☐ No.   Go to line 7.
   ☐ Yes   List below each creditor to whom you paid a total of $6,825* or more in one or more payments and the total amount you paid that creditor. Do not include payments for domestic support obligations, such as child support and alimony. Also, do not include payments to an attorney for this bankruptcy case.
   * Subject to adjustment on 4/01/22 and every 3 years after that for cases filed on or after the date of adjustment.

   ■ Yes.   **Debtor 1 or Debtor 2 or both have primarily consumer debts.**
   During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $600 or more?

   ■ No.   Go to line 7.
   ☐ Yes   List below each creditor to whom you paid a total of $600 or more and the total amount you paid that creditor. Do not include payments for domestic support obligations, such as child support and alimony. Also, do not include payments to an attorney for this bankruptcy case.

| Creditor's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Was this payment for ... |
|---|---|---|---|---|

Official Form 107                          **Statement of Financial Affairs for Individuals Filing for Bankruptcy**                          page **2**

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                                        Best Case Bankruptcy

Debtor 1   **Steven Michael Moehling**                                    Case number *(if known)* _____

7. **Within 1 year before you filed for bankruptcy, did you make a payment on a debt you owed anyone who was an insider?**
*Insiders* include your relatives; any general partners; relatives of any general partners; partnerships of which you are a general partner; corporations of which you are an officer, director, person in control, or owner of 20% or more of their voting securities; and any managing agent, including one for a business you operate as a sole proprietor. 11 U.S.C. § 101. Include payments for domestic support obligations, such as child support and alimony.

■ No
☐ Yes. List all payments to an insider.

| Insider's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Reason for this payment |
|---|---|---|---|---|

8. **Within 1 year before you filed for bankruptcy, did you make any payments or transfer any property on account of a debt that benefited an insider?**
Include payments on debts guaranteed or cosigned by an insider.

■ No
☐ Yes. List all payments to an insider

| Insider's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Reason for this payment Include creditor's name |
|---|---|---|---|---|

## Part 4:   Identify Legal Actions, Repossessions, and Foreclosures

9. **Within 1 year before you filed for bankruptcy, were you a party in any lawsuit, court action, or administrative proceeding?**
List all such matters, including personal injury cases, small claims actions, divorces, collection suits, paternity actions, support or custody modifications, and contract disputes.

■ No
☐ Yes. Fill in the details.

| Case title Case number | Nature of the case | Court or agency | Status of the case |
|---|---|---|---|

10. **Within 1 year before you filed for bankruptcy, was any of your property repossessed, foreclosed, garnished, attached, seized, or levied?**
Check all that apply and fill in the details below.

■ No. Go to line 11.
☐ Yes. Fill in the information below.

| Creditor Name and Address | Describe the Property  Explain what happened | Date | Value of the property |
|---|---|---|---|

11. **Within 90 days before you filed for bankruptcy, did any creditor, including a bank or financial institution, set off any amounts from your accounts or refuse to make a payment because you owed a debt?**
■ No
☐ Yes. Fill in the details.

| Creditor Name and Address | Describe the action the creditor took | Date action was taken | Amount |
|---|---|---|---|

12. **Within 1 year before you filed for bankruptcy, was any of your property in the possession of an assignee for the benefit of creditors, a court-appointed receiver, a custodian, or another official?**
■ No
☐ Yes

## Part 5:   List Certain Gifts and Contributions

13. **Within 2 years before you filed for bankruptcy, did you give any gifts with a total value of more than $600 per person?**
■ No
☐ Yes. Fill in the details for each gift.

| Gifts with a total value of more than $600 per person  Person to Whom You Gave the Gift and Address: | Describe the gifts | Dates you gave the gifts | Value |
|---|---|---|---|

Official Form 107 | **Statement of Financial Affairs for Individuals Filing for Bankruptcy** | page **3**

Debtor 1 **Steven Michael Moehling**     Case number *(if known)* _____

---

14. **Within 2 years before you filed for bankruptcy, did you give any gifts or contributions with a total value of more than $600 to any charity?**

   ■ No

   ☐ Yes. Fill in the details for each gift or contribution.

| Gifts or contributions to charities that total more than $600<br>**Charity's Name**<br>**Address** (Number, Street, City, State and ZIP Code) | Describe what you contributed | Dates you contributed | Value |
|---|---|---|---|
| | | | |

## Part 6: List Certain Losses

15. **Within 1 year before you filed for bankruptcy or since you filed for bankruptcy, did you lose anything because of theft, fire, other disaster, or gambling?**

   ■ No

   ☐ Yes. Fill in the details.

| Describe the property you lost and how the loss occurred | Describe any insurance coverage for the loss<br>Include the amount that insurance has paid. List pending insurance claims on line 33 of *Schedule A/B: Property.* | Date of your loss | Value of property lost |
|---|---|---|---|
| | | | |

## Part 7: List Certain Payments or Transfers

16. **Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone you consulted about seeking bankruptcy or preparing a bankruptcy petition?**

Include any attorneys, bankruptcy petition preparers, or credit counseling agencies for services required in your bankruptcy.

   ☐ No

   ■ Yes. Fill in the details.

| Person Who Was Paid<br>**Address**<br>**Email or website address**<br>**Person Who Made the Payment, if Not You** | Description and value of any property transferred | Date payment or transfer was made | Amount of payment |
|---|---|---|---|
| **Moher Law Group**<br>**5560 La Jolla Blvd., Suite D**<br>**La Jolla, CA 92037**<br>**amoher@moherlaw.com** | **Court Filing Fee** | **06/2019** | **$310.00** |

17. **Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone who promised to help you deal with your creditors or to make payments to your creditors?**

Do not include any payment or transfer that you listed on line 16.

   ■ No

   ☐ Yes. Fill in the details.

| Person Who Was Paid<br>**Address** | Description and value of any property transferred | Date payment or transfer was made | Amount of payment |
|---|---|---|---|
| | | | |

18. **Within 2 years before you filed for bankruptcy, did you sell, trade, or otherwise transfer any property to anyone, other than property transferred in the ordinary course of your business or financial affairs?**

Include both outright transfers and transfers made as security (such as the granting of a security interest or mortgage on your property). Do not include gifts and transfers that you have already listed on this statement.

   ■ No

   ☐ Yes. Fill in the details.

| Person Who Received Transfer<br>**Address**<br><br>**Person's relationship to you** | Description and value of property transferred | Describe any property or payments received or debts paid in exchange | Date transfer was made |
|---|---|---|---|
| | | | |

---

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com     Best Case Bankruptcy

| Debtor 1 | **Steven Michael Moehling** | Case number *(if known)* |
|---|---|---|

19. **Within 10 years before you filed for bankruptcy, did you transfer any property to a self-settled trust or similar device of which you are a beneficiary?** (These are often called *asset-protection devices.*)

☑ No

☐ Yes. Fill in the details.

| Name of trust | Description and value of the property transferred | Date Transfer was made |
|---|---|---|

**Part 8:**   **List of Certain Financial Accounts, Instruments, Safe Deposit Boxes, and Storage Units**

20. **Within 1 year before you filed for bankruptcy, were any financial accounts or instruments held in your name, or for your benefit, closed, sold, moved, or transferred?**
Include checking, savings, money market, or other financial accounts; certificates of deposit; shares in banks, credit unions, brokerage houses, pension funds, cooperatives, associations, and other financial institutions.

☑ **No**

☐ **Yes. Fill in the details.**

| Name of Financial Institution and Address (Number, Street, City, State and ZIP Code) | Last 4 digits of account number | Type of account or instrument | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|

21. **Do you now have, or did you have within 1 year before you filed for bankruptcy, any safe deposit box or other depository for securities, cash, or other valuables?**

☑ **No**

☐ **Yes. Fill in the details.**

| Name of Financial Institution Address (Number, Street, City, State and ZIP Code) | Who else had access to it? Address (Number, Street, City, State and ZIP Code) | Describe the contents | Do you still have it? |
|---|---|---|---|

22. **Have you stored property in a storage unit or place other than your home within 1 year before you filed for bankruptcy?**

☑ **No**

☐ **Yes. Fill in the details.**

| Name of Storage Facility Address (Number, Street, City, State and ZIP Code) | Who else has or had access to it? Address (Number, Street, City, State and ZIP Code) | Describe the contents | Do you still have it? |
|---|---|---|---|

**Part 9:**   **Identify Property You Hold or Control for Someone Else**

23. **Do you hold or control any property that someone else owns? Include any property you borrowed from, are storing for, or hold in trust for someone.**

☑ **No**

☐ **Yes.  Fill in the details.**

| Owner's Name Address (Number, Street, City, State and ZIP Code) | Where is the property? (Number, Street, City, State and ZIP Code) | Describe the property | Value |
|---|---|---|---|

**Part 10:**   **Give Details About Environmental Information**

**For the purpose of Part 10, the following definitions apply:**

■   *Environmental law* means any federal, state, or local statute or regulation concerning pollution, contamination, releases of hazardous or toxic substances, wastes, or material into the air, land, soil, surface water, groundwater, or other medium, including statutes or regulations controlling the cleanup of these substances, wastes, or material.

■   *Site* means any location, facility, or property as defined under any environmental law, whether you now own, operate, or utilize it or used to own, operate, or utilize it, including disposal sites.

■   *Hazardous material* means anything an environmental law defines as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, contaminant, or similar term.

**Report all notices, releases, and proceedings that you know about, regardless of when they occurred.**

| Official Form 107 | Statement of Financial Affairs for Individuals Filing for Bankruptcy | page **5** |
|---|---|---|

Debtor 1   **Steven Michael Moehling**                                                   Case number *(if known)*

---

24. **Has any governmental unit notified you that you may be liable or potentially liable under or in violation of an environmental law?**

■ **No**
☐ **Yes. Fill in the details.**

| Name of site<br>**Address** (Number, Street, City, State and ZIP Code) | Governmental unit<br>**Address** (Number, Street, City, State and ZIP Code) | Environmental law, if you know it | Date of notice |
|---|---|---|---|

25. **Have you notified any governmental unit of any release of hazardous material?**

■ **No**
☐ **Yes. Fill in the details.**

| Name of site<br>**Address** (Number, Street, City, State and ZIP Code) | Governmental unit<br>**Address** (Number, Street, City, State and ZIP Code) | Environmental law, if you know it | Date of notice |
|---|---|---|---|

26. **Have you been a party in any judicial or administrative proceeding under any environmental law? Include settlements and orders.**

■ **No**
☐ **Yes. Fill in the details.**

| Case Title<br>Case Number | Court or agency<br>Name<br>**Address** (Number, Street, City, State and ZIP Code) | Nature of the case | Status of the case |
|---|---|---|---|

**Part 11:** Give Details About Your Business or Connections to Any Business

27. **Within 4 years before you filed for bankruptcy, did you own a business or have any of the following connections to any business?**

    ☐ **A sole proprietor or self-employed in a trade, profession, or other activity, either full-time or part-time**

    ■ **A member of a limited liability company (LLC) or limited liability partnership (LLP)**

    ☐ **A partner in a partnership**

    ☐ **An officer, director, or managing executive of a corporation**

    ☐ **An owner of at least 5% of the voting or equity securities of a corporation**

☐ **No. None of the above applies.  Go to Part 12.**

■ **Yes. Check all that apply above and fill in the details below for each business.**

| Business Name<br>Address<br>(Number, Street, City, State and ZIP Code) | Describe the nature of the business<br><br>Name of accountant or bookkeeper | Employer Identification number<br>Do not include Social Security number or ITIN.<br><br>Dates business existed |
|---|---|---|
| **Tristar Products LLC<br>5420 Old Ranch Road<br>Oceanside, CA 92057** | **online ecommerce** | **EIN:**<br><br>**From-To   07/2013 - 2015 (dormant)** |

28. **Within 2 years before you filed for bankruptcy, did you give a financial statement to anyone about your business? Include all financial institutions, creditors, or other parties.**

■ **No**
☐ **Yes. Fill in the details below.**

| Name<br>Address<br>(Number, Street, City, State and ZIP Code) | Date Issued |
|---|---|

---

Debtor 1    **Steven Michael Moehling**                                          Case number *(if known)* _____

---

| **Part 12:** | **Sign Below** |

I have read the answers on this *Statement of Financial Affairs* and any attachments, and I declare under penalty of perjury that the answers are true and correct. I understand that making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both.
18 U.S.C. §§ 152, 1341, 1519, and 3571.

**/s/ Steven Michael Moehling**
**Steven Michael Moehling**                                    **Signature of Debtor 2**
**Signature of Debtor 1**

Date    **June 28, 2019**                                        Date _____

**Did you attach additional pages to** *Your Statement of Financial Affairs for Individuals Filing for Bankruptcy* **(Official Form 107)?**
■ No
☐ Yes

**Did you pay or agree to pay someone who is not an attorney to help you fill out bankruptcy forms?**
■ No
☐ Yes. Name of Person _____. Attach the *Bankruptcy Petition Preparer's Notice, Declaration, and Signature* (Official Form 119).

---

Official Form 107                **Statement of Financial Affairs for Individuals Filing for Bankruptcy**                page **7**

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                                    Best Case Bankruptcy

| Fill in this information to identify your case: | |
|---|---|
| Debtor 1 | **Steven Michael Moehling** |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Southern District of California |
| Case number (if known) | |

**Check as directed in lines 17 and 21:**

According to the calculations required by this Statement:

- ■ 1. Disposable income is not determined under 11 U.S.C. § 1325(b)(3).
- ☐ 2. Disposable income is determined under 11 U.S.C. § 1325(b)(3).
- ■ 3. The commitment period is 3 years.
- ☐ 4. The commitment period is 5 years.

☐ Check if this is an amended filing

## Official Form 122C-1
# Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period

**12/15**

**Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for being accurate. If more space is needed, attach a separate sheet to this form. Include the line number to which the additional information applies. On the top of any additional pages, write your name and case number (if known).**

| Part 1: | Calculate Your Average Monthly Income |
|---|---|

1. **What is your marital and filing status?** Check one only.

   ☐ **Not married**. Fill out Column A, lines 2-11.

   ■ **Married.** Fill out both Columns A and B, lines 2-11.

**Fill in the average monthly income that you received from all sources, derived during the 6 full months before you file this bankruptcy case.** 11 U.S.C. § 101(10A). For example, if you are filing on September 15, the 6-month period would be March 1 through August 31. If the amount of your monthly income varied during the 6 months, add the income for all 6 months and divide the total by 6. Fill in the result. Do not include any income amount more than once. For example, if both spouses own the same rental property, put the income from that property in one column only. If you have nothing to report for any line, write $0 in the space.

| | | Column A Debtor 1 | Column B Debtor 2 or non-filing spouse |
|---|---|---|---|
| 2. | **Your gross wages, salary, tips, bonuses, overtime, and commissions** (before all payroll deductions). | $ 3,487.58 | $ 1,842.59 |
| 3. | **Alimony and maintenance payments.** Do not include payments from a spouse if Column B is filled in. | $ 0.00 | $ 0.00 |
| 4. | **All amounts from any source which are regularly paid for household expenses of you or your dependents, including child support.** Include regular contributions from an unmarried partner, members of your household, your dependents, parents, and roommates. Do not include payments from a spouse. Do not include payments you listed on line 3. | $ 0.00 | $ 0.00 |

5. **Net income from operating a business, profession, or farm**

   | | Debtor 1 | | |
   |---|---|---|---|
   | Gross receipts (before all deductions) | $ 0.00 | | |
   | Ordinary and necessary operating expenses | -$ 0.00 | | |
   | Net monthly income from a business, profession, or farm | $ 0.00 | Copy here -> $ 0.00 | $ 0.00 |

6. **Net income from rental and other real property**

   | | Debtor 1 | | |
   |---|---|---|---|
   | Gross receipts (before all deductions) | $ 0.00 | | |
   | Ordinary and necessary operating expenses | -$ 0.00 | | |
   | Net monthly income from rental or other real property | $ 0.00 | Copy here -> $ 0.00 | $ 0.00 |

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com      Best Case Bankruptcy

Debtor 1  **Steven Michael Moehling**                                    Case number (*if known*) _____

|  |  | Column A<br>Debtor 1 | Column B<br>Debtor 2 or<br>non-filing spouse |
|---|---|---|---|
| 7. | **Interest, dividends, and royalties** | $ 0.00 | $ 0.00 |
| 8. | **Unemployment compensation** | $ 0.00 | $ 0.00 |

Do not enter the amount if you contend that the amount received was a benefit under the Social Security Act. Instead, list it here:

For you _____ $ 0.00

For your spouse _____ $ 0.00

9. **Pension or retirement income.** Do not include any amount received that was a benefit under the Social Security Act.     $ 0.00     $ 0.00

10. **Income from all other sources not listed above.** Specify the source and amount. Do not include any benefits received under the Social Security Act or payments received as a victim of a war crime, a crime against humanity, or international or domestic terrorism. If necessary, list other sources on a separate page and put the total below.

| | Column A | Column B |
|---|---|---|
| _____ | $ 0.00 | $ 0.00 |
| _____ | $ 0.00 | $ 0.00 |
| Total amounts from separate pages, if any. | **+** $ 0.00 | $ 0.00 |

11. **Calculate your total average monthly income.** Add lines 2 through 10 for each column. Then add the total for Column A to the total for Column B.

$ **3,487.58**  **+** $ **1,842.59**  **=** $ **5,330.17**

**Total average monthly income**

| Part 2: | Determine How to Measure Your Deductions from Income |
|---|---|

12. **Copy your total average monthly income from line 11.** ...................................................... $ **5,330.17**

13. **Calculate the marital adjustment.** Check one:

☐ You are not married. Fill in 0 below.

☐ You are married and your spouse is filing with you. Fill in 0 below.

☑ You are married and your spouse is not filing with you.

Fill in the amount of the income listed in line 11, Column B, that was NOT regularly paid for the household expenses of you or your dependents, such as payment of the spouse's tax liability or the spouse's support of someone other than you or your dependents.

Below, specify the basis for excluding this income and the amount of income devoted to each purpose. If necessary, list additional adjustments on a separate page.

If this adjustment does not apply, enter 0 below.

| _____ | $ _____ |
| _____ | $ _____ |
| _____ | **+** $ _____ |

Total ...................................  $ **0.00**     Copy here=>   **-** 0.00

14. **Your current monthly income.**  Subtract line 13 from line 12.     $ **5,330.17**

15. **Calculate your current monthly income for the year.**  Follow these steps:

15a.   Copy line 14 here**=>** ................................................................     $ **5,330.17**

Multiply line 15a by 12 (the number of months in a year).     **x** 12

15b.   The result is your current monthly income for the year for this part of the form. .........................................     $ **63,962.04**

Debtor 1    **Steven Michael Moehling**

Case number (*if known*) _____

---

16. **Calculate the median family income that applies to you.** Follow these steps:

    16a. Fill in the state in which you live.                    **CA**

    16b. Fill in the number of people in your household.         **2**

    16c. Fill in the median family income for your state and size of household.        $        **77,167.00**

    To find a list of applicable median income amounts, go online using the link specified in the separate instructions for this form. This list may also be available at the bankruptcy clerk's office.

17. **How do the lines compare?**

    17a. ■    Line 15b is less than or equal to line 16c. On the top of page 1 of this form, check box 1, *Disposable income is not determined under 11 U.S.C. § 1325(b)(3).* **Go to Part 3.** Do NOT fill out *Calculation of Your Disposable Income* (Official Form 122C-2).

    17b. ☐    Line 15b is more than line 16c. On the top of page 1 of this form, check box 2, *Disposable income is determined under 11 U.S.C. § 1325(b)(3).* **Go to Part 3 and fill out Calculation of Your Disposable Income (Official Form 122C-2).** On line 39 of that form, copy your current monthly income from line 14 above.

| Part 3: | Calculate Your Commitment Period Under 11 U.S.C. § 1325(b)(4) |
|---|---|

18. **Copy your total average monthly income from line 11 .**        $        **5,330.17**

19. **Deduct the marital adjustment if it applies.** If you are married, your spouse is not filing with you, and you contend that calculating the commitment period under 11 U.S.C. § 1325(b)(4) allows you to deduct part of your spouse's income, copy the amount from line 13.

    19a. If the marital adjustment does not apply, fill in 0 on line 19a.        -$        **0.00**

    19b. **Subtract line 19a from line 18.**        $        **5,330.17**

20. **Calculate your current monthly income for the year.**  Follow these steps:

    20a. Copy line 19b        $        **5,330.17**

    Multiply by 12 (the number of months in a year).        **x 12**

    20b. The result is your current monthly income for the year for this part of the form        $        **63,962.04**

    20c. Copy the median family income for your state and size of household from line 16c        $        **77,167.00**

21. **How do the lines compare?**

    ■    Line 20b is less than line 20c. Unless otherwise ordered by the court, on the top of page 1 of this form, check box 3, *The commitment period is 3 years.* Go to Part 4.

    ☐    Line 20b is more than or equal to line 20c. Unless otherwise ordered by the court, on the top of page 1 of this form, check box 4, *The commitment period is 5 years.* Go to Part 4.

| Part 4: | Sign Below |
|---|---|

By signing here, under penalty of perjury I declare that the information on this statement and in any attachments is true and correct.

**X  /s/ Steven Michael Moehling**

**Steven Michael Moehling**
Signature of Debtor 1

Date  **June 28, 2019**
        MM / DD  / YYYY

If you checked 17a, do NOT fill out or file Form 122C-2.

If you checked 17b, fill out Form 122C-2 and file it with this form. On line 39 of that form, copy your current monthly income from line 14 above.

---

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com        Best Case Bankruptcy

| Debtor 1 | **Steven Michael Moehling** | | Case number (*if known*) | |

### Current Monthly Income Details for the Debtor

**Debtor Income Details:**
Income for the Period **12/01/2018** to **05/31/2019**.

**Line 2 - Gross wages, salary, tips, bonuses, overtime, commissions**
Source of Income: **Costco**
Year-to-Date Income:
Last Year:
Starting Year-to-Date Income:  **$33,769.23**  from check dated   **11/30/2018**   .
Ending Year-to-Date Income:  **$36,864.18**  from check dated   **12/31/2018**   .

This Year:
Current Year-to-Date Income:  **$17,830.52**  from check dated   **5/31/2019**   .

Income for six-month period (Current+(Ending-Starting)):  **$20,925.47**  .
Average Monthly Income:  **$3,487.58**  .

---

Official Form 122C-1    **Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period**    **page 4**
Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com    Best Case Bankruptcy

| Debtor 1 | **Steven Michael Moehling** | | Case number (*if known*) | |
|---|---|---|---|---|

## Current Monthly Income Details for the Debtor's Spouse

**Spouse Income Details**:
Income for the Period **12/01/2018** to **05/31/2019**.

**Line 2 - Gross wages, salary, tips, bonuses, overtime, commissions**
Source of Income: **State of CA - IHSS**
Year-to-Date Income:
Last Year:
Starting Year-to-Date Income: __$7,986.50__ from check dated __11/30/2018__ .
Ending Year-to-Date Income: __$8,699.50__ from check dated __12/31/2018__ .

This Year:
Current Year-to-Date Income: __$4,790.13__ from check dated __5/31/2019__ .

Income for six-month period (Current+(Ending-Starting)): __$5,503.13__ .
Average Monthly Income: __$917.19__ .

**Line 2 - Gross wages, salary, tips, bonuses, overtime, commissions**
Source of Income: **Walmart**
Year-to-Date Income:
Last Year:
Starting Year-to-Date Income: __$6,368.70__ from check dated __11/30/2018__ .
Ending Year-to-Date Income: __$6,567.30__ from check dated __12/31/2018__ .

This Year:
Current Year-to-Date Income: __$1,193.79__ from check dated __5/31/2019__ .

Income for six-month period (Current+(Ending-Starting)): __$1,392.39__ .
Average Monthly Income: __$232.07__ .

**Line 2 - Gross wages, salary, tips, bonuses, overtime, commissions**
Source of Income: **York Risk Services Group - Walmart**
Income by Month:

| | | |
|---|---|---|
| 6 Months Ago: | 12/2018 | $640.00 |
| 5 Months Ago: | 01/2019 | $640.00 |
| 4 Months Ago: | 02/2019 | $640.00 |
| 3 Months Ago: | 03/2019 | $960.00 |
| 2 Months Ago: | 04/2019 | $640.00 |
| Last Month: | 05/2019 | $640.00 |
| | Average per month: | $693.33 |

Revised: 12/01/17

Name, Address, Telephone No. & I.D. No.

**Andrew A. Moher 257605**
**5560 La Jolla Blvd, Suite D**
**La Jolla, CA 92037**
**619-269-6204**
**257605 CA**

**UNITED STATES BANKRUPTCY COURT**
SOUTHERN DISTRICT OF CALIFORNIA
325 West F Street, San Diego, California 92101-6991

In Re
**Steven Michael Moehling**

**BANKRUPTCY NO.**

Last four digits of Soc. Sec. or                         Debtor.
Individual-Taxpayer I.D. (ITIN)/Complete EIN: **xxx-xx-8925**

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF CALIFORNIA
## RIGHTS AND RESPONSIBILITIES OF CHAPTER 13 DEBTORS
## AND THEIR ATTORNEY
### (Consumer Case)

It is important for debtors in Chapter 13 bankruptcy to understand their rights and responsibilities. It is also important that they know what their attorney's responsibilities are, and appreciate the importance of communicating with their attorney to make the case successful. Debtors can expect their attorney to provide certain services for them. And they should know the costs of attorneys' fees through the life of a plan. To assure that debtors and their attorney understand their rights and responsibilities in the bankruptcy process, the Bankruptcy Court has made the following rights and responsibilities binding on them under Local Bankruptcy Rule 1002-1(c) and General Order 180-A. (Nothing in this agreement should be construed to excuse an attorney from any ethical duties or responsibilities under any other applicable law.)

Debtors' attorneys can be paid in one of two ways: through guideline fees; or by formal fee application. The choice, agreed upon by the debtors and their attorney, must be made at the start of the representation. Once an attorney accepts any type of guideline fee in any amount, guideline fees will apply for the duration of the case. In this case, the attorney [check one]:

■ will be paid guideline fees (subject to increase through a fee application only in atypical cases as discussed below).

☐ waives guideline fees and will instead prepare fee applications for all work done.

**UNLESS THE COURT ORDERS OTHERWISE, in every case – regardless of fee regime – the following rights and responsibilities apply:**

***The debtor must:***
1.  Provide accurate financial information.
2.  Provide information in a timely manner.
3.  Cooperate and communicate with the attorney.
4.  Discuss with the attorney the debtor's objectives in filing the case.
5.  Keep the trustee and attorney informed of the debtor's address and telephone number.
6.  Inform the attorney of any wage garnishments or attachments of assets which occur or continue after the filing of the case.
7.  Contact the attorney promptly if the debtor loses his/her job or has other financial problems.
8.  Let the attorney know immediately if the debtor is sued before or during the case.
9.  Inform the attorney if any tax refunds the debtor is entitled to are seized or not returned to the debtor by the IRS or Franchise Tax Board.

10.   Contact the attorney before buying, refinancing, or selling real property or before entering in to any long-term loan agreements to find out what approvals are required.

11.   Pay any filing fees and filing expenses that may be incurred directly to the attorney.

12.   Pay appropriate attorney's fees commensurate with this agreement and the United States  Bankruptcy Court Guidelines regarding Chapter 13 Attorney Fees. Any future increase or  other change in "additional fees" under the guidelines will also automatically apply to  this case until it is finally closed. If a court order is entered regarding attorney's fees, fees  should be paid in accordance with the court's order.

***To receive $3,900 in "initial fees," under the guidelines, or in the case of all fee applications, the attorney must:***

1.   Meet with the debtor to review the debtor's assets, liabilities, income and expenses.

2.   Analyze the debtor's financial situation, and render advice to the debtor in determining whether to file a petition in bankruptcy.

3.   Counsel the debtor regarding the advisability of filing either a Chapter 7 or Chapter 13 case, discuss both procedures with the debtor, and answer the debtor's questions.

4.   Explain to the debtor how the attorney's fees and trustee's fees are paid.

5.   Explain what payments will be made directly by the debtor and when to make those payments, and what payments will be made through the debtor's chapter 13 plan (with particular attention to mortgage and vehicle loan payments, as well as any other claims with accrued interest).

6.   Explain to the debtor how, when, and where to make the chapter 13 plan payments.

7.   Explain to the debtor that the first plan payment must be made to the Trustee within 30 days of the date the plan is filed.

8.   Advise the debtor of the requirement to attend the § 341(a) Meeting of Creditors, and instruct the debtor as to the date, time and place of the meeting.

9.   Advise the debtor of the necessity of maintaining liability, collision and comprehensive insurance on vehicles securing loans or leases.

10.   Timely prepare, file and serve the debtor's petition, plan, schedules, statement of financial affairs, and any necessary amendments thereto, which may be required.

11.   Provide an executed copy of the Rights and Responsibilities of Chapter 13 Debtors and their  Attorneys and a copy of the Court's Guidelines regarding Chapter 13 Attorney Fees to the  debtor.

12.   Appear and represent the debtor at the § 341(a) Meeting of Creditors and any confirmation hearings.

13.   Respond to the objections to plan confirmation, and where necessary, prepare, file and serve an amended plan.

14.   Provide Certification of Eligibility for Discharge pursuant to Local Bankruptcy Rule 4004-1.

15.   Provide such other legal services as are necessary for the administration of the case before the Bankruptcy Court, which include, but are not limited to, a continuing obligation to assist the debtor by returning telephone calls, answering questions and reviewing and sending correspondence.

***Additional services may be required, but are not included in the guideline "initial fees" of $3,900. If necessary and when appropriate, the attorney, at the debtor's request and only with the debtor's cooperation, must provide the following services for "additional fees" described below:***

1.   Prepare, file and serve necessary modifications to the plan post-confirmation, which may include suspending, lowering or increasing plan payments.

2.   Prepare, file and serve necessary motions to buy,sell or refinance real property and authorize use of cash collateral or assume executory contracts or unexpired leases.

3.   Object to improper or invalid claims.

4.   Represent the debtor in motions for relief from stay.

5.   Prepare, file and serve necessary motions to avoid liens on real or personal property.

6.   Prepare, file and serve necessary oppositions to motions for dismissal of case.

7.   Provide such other legal services as are necessary for the administration of the case before the Bankruptcy Court, which include but are not limited to, presenting appropriate legal pleadings and making appropriate court appearances.

2

***Should additional services be provided and "additional fees" requested, the attorney must:***

1.      Provide proper notice in accordance with Federal Rule of Bankruptcy Procedure 2002.
2.      Advise the debtor of all "additional fees" requested and file a declaration with the court stating that counsel has so advised the debtor of the fees requested and the debtor has no objection to the requested fees.

The "Guidelines Regarding Chapter 13 Attorney Fees" provide for "additional fees" within the United States Bankruptcy Court's parameters for "additional fees" in the following amounts and include all court appearances required to pursue described actions.

### Modified Plan (Post-Confirmation)                    $685

for fees and expenses for services rendered post-confirmation for opposing, preparing, filing, noticing, and attending hearings on any motion to modify debtor's plan under section 1329 of the Bankruptcy Code (including the preparation of amended income and expenses statements and providing proof of income). (These fees should be less for modification due to clerical error or other administrative issues.)

### Opposition to Motions for Relief from Stay

**$500 (Personal property)**                    for fees and expenses of all services rendered
**$675 (Real property)**                         in opposition to motions to modify or vacate automatic stay.

### Obtaining Orders re: Sale or Refinance of Real Property

**$570 (By stipulation or**              for fees and expenses of all services rendered for
   **noticed hearing)**             order authorizing the sale or refinancing of real estate,
                                           but not including loan modifications.

### Objections to Claim

**$270 (Uncontested objections**          for fees and expenses of all services rendered for
   **without hearing)**              preparing, filing and noticing objections
**$400 (Contested objections**            to a claim. (Fees must not exceed 50% of the
   **with a hearing)**               amount the trustee would have otherwise paid.)

### Oppositions to Dismissal/Motions to Avoid Lien/ Loan Modifications/Other Routine Pleadings                    $515

for fees and expenses of all services rendered for preparing, filing, noticing, and attending hearings in opposition to a motion to dismiss the case, for motions to avoid lien or to approve a loan modification, and for other routine pleadings.

### Motions to Value Real Property, Treat Claim as Unsecured and Avoid Junior Lien (Lien Strips)                    $655

for fees and expenses of all services rendered for preparing, filing, noticing, and attending hearings when there is opposition to a motion to value real property, treat claim as unsecured and avoid junior lien.

### Motions to Impose/Extend Automatic Stay

**$390 (Unopposed)**                     for fees and expenses for all services rendered for
**$575 (Opposed)**                       preparing, filing, noticing and attending hearings
                                             on motion to impose or extend the automatic stay.

### Novel and Complex Motions and Oppositions to Motions

These types of motions and oppositions may be billed at hourly rates, and counsel must file a fee application in compliance with Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rules 2002 and 2016.

***Requirements for a fee application:***

3

Once the attorney receives any guideline fee in the case, a later fee application must be based on atypicality. That requires showing that the case presented issues more difficult than those faced by Chapter 13 practitioners on a regular basis. *See Law Offices of David A. Boone v. Derham-Burk (In re Eliapo)*, 468 F.3d 592 (9th Cir. 2006). Filing a novel and complex motion, or opposing one, may meet that description. All fee applications must comply with applicable rules, including Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rules 2002 and 2016, and all United States Trustee guidelines.

*Debtor's objection to a fee application:*

The debtor has the right to timely object to a fee application, and may be heard in connection with any other party's fee objection. If the debtor disputes the legal services provided or the fees charged by the attorney, the debtor may file an objection with the court and set the matter for hearing.

*Dismissal or withdrawal of the attorney:*

Any change of debtor's attorney must be approved by court order. This requirement applies to all substitutions and withdrawals of counsel, including where: (1) debtor seeks to discharge the attorney; (2) the attorney seeks permission to withdraw as counsel; and (3) debtor and their attorney file a stipulation to substitute or withdraw counsel.

*Payment of fees:*

By signing this document, debtor agrees that their attorney can be paid guideline fees in the amounts listed above, if guideline fees have been chosen. All post-filing fees will be paid through the plan unless either the court orders otherwise, or the attorney: (1) holds in their client trust account all additional fees paid by the debtor; (2) promptly discloses receipt of those fees; and (3) promptly seeks court approval. Such fees may be disbursed from the attorney's client trust account only after the court awards them. The bankruptcy judge has discretion in approving fees, and may allow less than the requested amount.

The initial guideline fee may not exceed $3,900 in consumer cases. The initial fee charged in this case is $  **3,900.00**  .

I acknowledge the foregoing.

Dated:  **June 28, 2019**                               **/s/ Steven Michael Moehling**
                                                        **Steven Michael Moehling**
                                                        Debtor

Dated:  **June 28, 2019**                               **/s/ Andrew A. Moher**
                                                        **Andrew A. Moher 257605**
                                                        Attorney for Debtor(s)

4

# Notice Required by 11 U.S.C. § 342(b) for Individuals Filing for Bankruptcy (Form 2010)

---

**This notice is for you if:**

> **You are an individual filing for bankruptcy,** and
>
> **Your debts are primarily consumer debts.** *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

**The types of bankruptcy that are available to individuals**

Individuals who meet the qualifications may file under one of four different chapters of Bankruptcy Code:

> Chapter 7 - Liquidation
>
> Chapter 11 - Reorganization
>
> Chapter 12 - Voluntary repayment plan for family farmers or fishermen
>
> Chapter 13 - Voluntary repayment plan for individuals with regular income

**You should have an attorney review your decision to file for bankruptcy and the choice of chapter.**

---

**Chapter 7:**      **Liquidation**

---

|   |   |   |
|---|---|---|
|   | $245 | filing fee |
|   | $75 | administrative fee |
| + | $15 | trustee surcharge |
|   | $335 | total fee |

Chapter 7 is for individuals who have financial difficulty preventing them from paying their debts and who are willing to allow their nonexempt property to be used to pay their creditors. The primary purpose of filing under chapter 7 is to have your debts discharged. The bankruptcy discharge relieves you after bankruptcy from having to pay many of your pre-bankruptcy debts. Exceptions exist for particular debts, and liens on property may still be enforced after discharge. For example, a creditor may have the right to foreclose a home mortgage or repossess an automobile.

However, if the court finds that you have committed certain kinds of improper conduct described in the Bankruptcy Code, the court may deny your discharge.

You should know that even if you file chapter 7 and you receive a discharge, some debts are not discharged under the law. Therefore, you may still be responsible to pay:

> most taxes;
>
> most student loans;
>
> domestic support and property settlement obligations;

---

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                                                         Best Case Bankruptcy

most fines, penalties, forfeitures, and criminal restitution obligations; and

certain debts that are not listed in your bankruptcy papers.

You may also be required to pay debts arising from:

fraud or theft;

fraud or defalcation while acting in breach of fiduciary capacity;

intentional injuries that you inflicted; and

death or personal injury caused by operating a motor vehicle, vessel, or aircraft while intoxicated from alcohol or drugs.

If your debts are primarily consumer debts, the court can dismiss your chapter 7 case if it finds that you have enough income to repay creditors a certain amount. You must file *Chapter 7 Statement of Your Current Monthly Income* (Official Form 122A–1) if you are an individual filing for bankruptcy under chapter 7. This form will determine your current monthly income and compare whether your income is more than the median income that applies in your state.

If your income is not above the median for your state, you will not have to complete the other chapter 7 form, the *Chapter 7 Means Test Calculation* (Official Form 122A–2).

If your income is above the median for your state, you must file a second form —the *Chapter 7 Means Test Calculation* (Official Form 122A–2). The calculations on the form— sometimes called the *Means Test*—deduct from your income living expenses and payments on certain debts to determine any amount available to pay unsecured creditors. If

your income is more than the median income for your state of residence and family size, depending on the results of the *Means Test*, the U.S. trustee, bankruptcy administrator, or creditors can file a motion to dismiss your case under § 707(b) of the Bankruptcy Code. If a motion is filed, the court will decide if your case should be dismissed. To avoid dismissal, you may choose to proceed under another chapter of the Bankruptcy Code.

If you are an individual filing for chapter 7 bankruptcy, the trustee may sell your property to pay your debts, subject to your right to exempt the property or a portion of the proceeds from the sale of the property. The property, and the proceeds from property that your bankruptcy trustee sells or liquidates that you are entitled to, is called *exempt property*. Exemptions may enable you to keep your home, a car, clothing, and household items or to receive some of the proceeds if the property is sold.

Exemptions are not automatic. To exempt property, you must list it on *Schedule C: The Property You Claim as Exempt* (Official Form 106C). If you do not list the property, the trustee may sell it and pay all of the proceeds to your creditors.

---

**Chapter 11: Reorganization**

---

|   | $1,167 | filing fee |
|---|--------|------------|
| + | $550   | administrative fee |
|   | $1,717 | total fee |

Chapter 11 is often used for reorganizing a business, but is also available to individuals. The provisions of chapter 11 are too complicated to summarize briefly.

---

**Notice Required by 11 U.S.C. § 342(b) for Individuals Filing for Bankruptcy (Form 2010)**                    page **2**

**Read These Important Warnings**

**Because bankruptcy can have serious long-term financial and legal consequences, including loss of your property, you should hire an attorney and carefully consider all of your options before you file. Only an attorney can give you legal advice about what can happen as a result of filing for bankruptcy and what your options are. If you do file for bankruptcy, an attorney can help you fill out the forms properly and protect you, your family, your home, and your possessions.**

**Although the law allows you to represent yourself in bankruptcy court, you should understand that many people find it difficult to represent themselves successfully. The rules are technical, and a mistake or inaction may harm you. If you file without an attorney, you are still responsible for knowing and following all of the legal requirements.**

**You should not file for bankruptcy if you are not eligible to file or if you do not intend to file the necessary documents.**

**Bankruptcy fraud is a serious crime; you could be fined and imprisoned if you commit fraud in your bankruptcy case. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.**

---

## Chapter 12: Repayment plan for family farmers or fishermen

|   | $200 | filing fee |
|---|------|------------|
| + | $75  | administrative fee |
|   | $275 | total fee |

Similar to chapter 13, chapter 12 permits family farmers and fishermen to repay their debts over a period of time using future earnings and to discharge some debts that are not paid.

---

## Chapter 13: Repayment plan for individuals with regular income

|   | $235 | filing fee |
|---|------|------------|
| + | $75  | administrative fee |
|   | $310 | total fee |

Chapter 13 is for individuals who have regular income and would like to pay all or part of their debts in installments over a period of time and to discharge some debts that are not paid. You are eligible for chapter 13 only if your debts are not more than certain dollar amounts set forth in 11 U.S.C. § 109.

Under chapter 13, you must file with the court a plan to repay your creditors all or part of the money that you owe them, usually using your future earnings. If the court approves your plan, the court will allow you to repay your debts, as adjusted by the plan, within 3 years or 5 years, depending on your income and other factors.

After you make all the payments under your plan, many of your debts are discharged. The debts that are not discharged and that you may still be responsible to pay include:

domestic support obligations,

most student loans,

certain taxes,

debts for fraud or theft,

debts for fraud or defalcation while acting in a fiduciary capacity,

most criminal fines and restitution obligations,

certain debts that are not listed in your bankruptcy papers,

certain debts for acts that caused death or personal injury, and

certain long-term secured debts.

---

## Warning: File Your Forms on Time

Section 521(a)(1) of the Bankruptcy Code requires that you promptly file detailed information about your creditors, assets, liabilities, income, expenses and general financial condition. The court may dismiss your bankruptcy case if you do not file this information within the deadlines set by the Bankruptcy Code, the Bankruptcy Rules, and the local rules of the court.

For more information about the documents and their deadlines, go to: http://www.uscourts.gov/bkforms/bankruptcy_forms.html#procedure.

**Bankruptcy crimes have serious consequences**

If you knowingly and fraudulently conceal assets or make a false oath or statement under penalty of perjury—either orally or in writing—in connection with a bankruptcy case, you may be fined, imprisoned, or both.

All information you supply in connection with a bankruptcy case is subject to examination by the Attorney General acting through the Office of the U.S. Trustee, the Office of the U.S. Attorney, and other offices and employees of the U.S. Department of Justice.

**Make sure the court has your mailing address**

The bankruptcy court sends notices to the mailing address you list on *Voluntary Petition for Individuals Filing for Bankruptcy* (Official Form 101). To ensure that you receive information about your case, Bankruptcy Rule 4002 requires that you notify the court of any changes in your address.

A married couple may file a bankruptcy case together—called a *joint case*. If you file a joint case and each spouse lists the same mailing address on the bankruptcy petition, the bankruptcy court generally will mail you and your spouse one copy of each notice, unless you file a statement with the court asking that each spouse receive separate copies.

**Understand which services you could receive from credit counseling agencies**

The law generally requires that you receive a credit counseling briefing from an approved credit counseling agency. 11 U.S.C. § 109(h). If you are filing a joint case, both spouses must receive the briefing. With limited exceptions, you must receive it within the 180 days *before* you file your bankruptcy petition. This briefing is usually conducted by telephone or on the Internet.

In addition, after filing a bankruptcy case, you generally must complete a financial management instructional course before you can receive a discharge. If you are filing a joint case, both spouses must complete the course.

You can obtain the list of agencies approved to provide both the briefing and the instructional course from: http://justice.gov/ust/eo/hapcpa/ccde/cc_approved.html.

In Alabama and North Carolina, go to: http://www.uscourts.gov/FederalCourts/Bankruptcy/BankruptcyResources/ApprovedCreditAndDebtCounselors.aspx.

If you do not have access to a computer, the clerk of the bankruptcy court may be able to help you obtain the list.

B2030 (Form 2030) (12/15)

# United States Bankruptcy Court
## Southern District of California

In re __Steven Michael Moehling__           Case No. _____
Debtor(s)         Chapter __13__ _____

# DISCLOSURE OF COMPENSATION OF ATTORNEY FOR DEBTOR(S)

1. Pursuant to 11 U.S.C. § 329(a) and Fed. Bankr. P. 2016(b), I certify that I am the attorney for the above named debtor(s) and that compensation paid to me within one year before the filing of the petition in bankruptcy, or agreed to be paid to me, for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case is as follows:

| | | |
|---|---|---|
| For legal services, I have agreed to accept | $ | 3,900.00 |
| Prior to the filing of this statement I have received | $ | 0.00 |
| Balance Due | $ | 3,900.00 |

2. The source of the compensation paid to me was:

   ■ Debtor      ☐ Other (specify):

3. The source of compensation to be paid to me is:

   ■ Debtor      ☐ Other (specify):

4. ■ I have not agreed to share the above-disclosed compensation with any other person unless they are members and associates of my law firm.

   ☐ I have agreed to share the above-disclosed compensation with a person or persons who are not members or associates of my law firm. A copy of the agreement, together with a list of the names of the people sharing in the compensation is attached.

5. In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:

   a. Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;
   b. Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;
   c. Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;
   d. [Other provisions as needed]
      **Negotiations with secured creditors to reduce to market value; exemption planning; preparation and filing of reaffirmation agreements and applications as needed; preparation and filing of motions pursuant to 11 USC 522(f)(2)(A) for avoidance of liens on household goods.**
      **United States Trustee Southern District of California Rights and Responsibilities of Chapter 13 Debtors and Their Attorney incorporated herein by reference.**

6. By agreement with the debtor(s), the above-disclosed fee does not include the following service:
   **Representation of the debtors in any dischargeability actions, judicial lien avoidances, relief from stay actions or any other adversary proceeding.**

---

## CERTIFICATION

I certify that the foregoing is a complete statement of any agreement or arrangement for payment to me for representation of the debtor(s) in this bankruptcy proceeding.

| | |
|---|---|
| **June 28, 2019** | /s/ Andrew A. Moher |
| *Date* | **Andrew A. Moher 257605** |
| | *Signature of Attorney* |
| | **Moher Law Group** |
| | **5560 La Jolla Blvd, Suite D** |
| | **La Jolla, CA 92037** |
| | **619-269-6204  Fax: 619-923-3303** |
| | **amoher@moherlaw.com** |
| | *Name of law firm* |

---

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

CSD 1008 [08/21/00]
Name, Address, Telephone No. & I.D. No.

**Andrew A. Moher 257605**
**5560 La Jolla Blvd, Suite D**
**La Jolla, CA 92037**
**619-269-6204**
**257605 CA**

### UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF CALIFORNIA
325 West "F" Street, San Diego, California 92101-6991

In Re
**Steven Michael Moehling**

BANKRUPTCY NO.

Debtor.

## VERIFICATION OF CREDITOR MATRIX

<u>PART I</u> (check and complete one):

■ New petition filed. Creditor <u>diskette</u> required.         TOTAL NO. OF CREDITORS:   **8**

☐ Conversion filed on _____. *See instructions on reverse side.*
    ☐ Former Chapter 13 converting. Creditor <u>diskette</u> required.         TOTAL NO. OF CREDITORS:____
    ☐ Post-petition creditors added. <u>Scannable</u> matrix required.
    ☐ There are no post-petition creditors. No matrix required.

☐ Amendment or Balance of Schedules filed concurrently with this original <u>scannable</u> matrix affecting Schedule of Debts and/or Schedule of Equity Security Holders. *See instructions on reverse side.*
    ☐ Names and addresses are being ADDED.
    ☐ Names and addresses are being DELETED.
    ☐ Names and addresses are being CORRECTED.

<u>PART II</u> (check one):

■ The above-named Debtor(s) hereby verifies that the list of creditors is true and correct to the best of my (our) knowledge.

☐ The above-named Debtor(s) hereby verifies that there are no post-petition creditors affected by the filing of the conversion of this case and that the filing of a matrix is not required.

Date:   **June 28, 2019**

**/s/ Steven Michael Moehling**
**Steven Michael Moehling**
Signature of Debtor

### REFER TO INSTRUCTIONS ON REVERSE SIDE

CSD 1008

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                                        Best Case Bankruptcy

**CSD 1008 (Page 2)** [08/21/00]

## INSTRUCTIONS

1)      Full compliance with <u>Special Requirements for Mailing Addresses</u> (CSD 1007) is required.

2)      A creditors matrix with <u>Verification</u> is required whenever the following occurs:

    a)      A new petition is filed.  Diskette required.

    b)      A case is converted on or after SEPTEMBER 1, 2000. (See paragraph 4b concerning post-petition creditors.)

    c)      An amendment to a case on or after SEPTEMBER 1, 2000, which adds, deletes or changes creditor address information on the debtor's Schedule of Debts and/or Schedule of Equity Security Holders.  Scannable matrix format required.

3)      The scannable matrix must be <u>originally</u> typed or printed. It may not be a copy.

4)      CONVERSIONS:

    a)      When converting a Chapter 13 case filed before SEPTEMBER 1, 2000, to another chapter, <u>ALL</u> creditors must be listed on the mailing matrix at the time of filing and accompanied by a <u>Verification</u>.  Diskette required.

    b)      For Chapter 7, 11, or 12 cases converted on or after SEPTEMBER 1, 2000, <u>only post-petition creditors need be listed on the mailing matrix</u>. The matrix and <u>Verification</u> must be filed with the post-petition schedule of debts and/or schedule of equity security holders. If there are no post-petition creditors, only the verification form is required.  Scannable matrix format required.

5)      AMENDMENTS AND BALANCE OF SCHEDULES:

    a)      <u>Scannable matrix format required.</u>

    b)      The matrix with <u>Verification</u> is a document separate from the amended schedules and may not be used to substitute for any portion of the schedules. IT MUST BE SUBMITTED WITH THE AMENDMENT/BALANCE OF SCHEDULES.

    c)      Prepare a separate page for each type of change required: ADDED, DELETED, or CORRECTED. On the **REVERSE** side of each matrix page, indicate which category that particular page belongs in. Creditors falling in the same category should be placed on the same page in alphabetical order.

6)      Please refer to CSD 1007 for additional information on how to avoid matrix-related problems.

**CSD 1008**

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                                                Best Case Bankruptcy

California Housing Finance Age
500 Capitol Mall, Ste. 1400 (M
Sacramento, CA 95814

Capital One
Carol Stream, IL 60197

Cavalry SPV I, LLC
500 Summit Lake Drive Ste 400
Valhalla, NY 10595

Franchise Tax Board
P.O. Box 2952
Sacramento, CA 95812-2952

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Rancho San Geronimo Homeowners
825 College Blvd Ste 102-422
Oceanside, CA 92057

Select Portfolio Servicing Inc
Attn: Bankruptcy
Po Box 65250
Salt Lake City, UT 84165

Toyota Financial Services
Attn: Bankruptcy Dept
Po Box 8026
Cedar Rapids, IA 52409

# Exhibit "5"

CSD 1300 [12/01/17]

**United States Bankruptcy Court**
**SOUTHERN DISTRICT OF CALIFORNIA**

Debtor(s):    **Steven Michael Moehling**

Case Number: _____

☐    Check if this is an amended plan, and list below the sections of the plan that have been changed.

_____

**Mandatory Chapter 13 Plan**
**Dated:**  **June 24, 2019** _____

| Part 1: | Notices |

**To All Parties in Interest:**

   **The court has provided guidelines for use of this form that can be found in CSD 1300A.**

   **This plan does not provide for avoidance of a lien which impairs an exemption. This must be sought by separate motion.**

**To Debtors:**

   **In some places this form provides you with options. You should carefully consider whether you need to elect among the options. If you do, you should carefully consider which option is appropriate.**

   *In the following notice to creditors, you must check each box that applies.*

**To Creditors:**

   **Your rights may be affected by this plan. Your claim may be reduced, modified, or eliminated.**

   You should read this plan carefully and discuss it with your attorney, if you have one in this bankruptcy case. If you do not have an attorney, you may wish to consult one.

   If you oppose the plan's treatment of your claim or any provision of this plan, you or your attorney must file an objection to confirmation in accordance with Southern District of California Local Bankruptcy Rule 3015-5 within 7 days after the filing of the Notice of Meeting of Creditors Held and Concluded. Untimely objections may not be considered. Any such objections must be noticed for hearing at least 28 days after filing the objection. The Court may confirm this plan without further notice if no objection to confirmation is filed. See Bankruptcy Rule 3015(f). In addition, you may need to file a timely proof of claim in order to be paid under any plan.

   The following matters may be of particular importance. *Debtors must check one box on each line to state whether or not the plan includes each of the following items. If an item is checked as "Not Included" or if both boxes are checked, the provision will be ineffective if set out later in the plan.*

1.1    A limit on the amount of a secured claim, set out in § 3.2, which may result in a partial payment or no payment at all to the secured creditor    ☐ Included ☑ Non included

1.2    Nonstandard provisions, set out in Part 9    ☐ Included ☑ Not included

CSD 1300 (12/01/17)    **Chapter 13 Plan**    Page 1

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com    Best Case Bankruptcy

CSD 1300 (12/01/17)     **Debtor(s)**   **Steven Michael Moehling**            Case number _____

| Part 2: | **Plan Payments and Length of Plan** |
|---|---|

**2.1 Regular payments**

Debtor(s) will make regular payments to the trustee as follows:

*Complete one.*

$_____ per _____ for 36 months (Applicable commitment period for below median debtor(s))


$_____ per _____ for 60 months (Applicable commitment period for above median debtor(s))


$__578.00__ per __month__ for __60__ months (Despite applicable commitment period of 36 months, debtor(s) seek additional time to cure secured or priority arrearage or to make necessary payments to meet the liquidation test specified in § 5.2.2.)

**2.2 Irregular payments.**


Debtor(s) will change the payment amount at different time periods as follows:

| $ | | per | | from | | to | |
|---|---|---|---|---|---|---|---|

*Insert additional payments as needed.*

**2.3 Manner of payments.**


Regular payments must be made directly to the trustee from future earnings unless the court issues an earnings withholding order. Any other manner of payment must be specified by checking the box below.

    ☐   Other (specify method of payment): _____ .

**2.4 Income tax issues.**

*Check all that apply.*

    ☑   Debtor(s) will retain any federal or state tax refunds received during the plan term.

    ☐   Debtor(s) will supply the trustee with a copy of each federal and state tax return filed during the plan term within 14 days of filing the return.

    ☐   Debtor(s) will turn over to the trustee all federal and state income tax refunds, other than earned income or child care tax credits, received during the plan term.

    ☐   Debtor(s) will supply the trustee with federal and state tax returns filed during the plan term and will turn over to the trustee a portion of any federal and state income tax refunds received during the plan term as specified below.




      **Debtor(s) must not change their withholding exemptions during the plan term unless there is an appropriate change in circumstances and will timely pay all post-confirmation tax liabilities directly to the appropriate taxing authority as they become due.**


**2.5 Additional payments.**

*Check one. If neither box is checked, "None" applies.*

    ☑   **None.** *If "None" is checked, the rest of § 2.5 need not be completed or reproduced.*

**2.6 The total amount of estimated payments to the trustee provided for in §§ 2.1 through 2.5 is $34,680.00 .**


CSD 1300 (12/01/17)                              **Chapter 13 Plan**                              Page 2

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                                        Best Case Bankruptcy

CSD 1300 (12/01/17)     **Debtor(s)**     <u>**Steven Michael Moehling**</u>          **Case number**     _____

| Part 3: | **Treatment of Secured Claims** |
|---|---|

### 3.1 Maintenance of payments and cure of any default.

*Check one. If neither box is checked, "None" applies.*

☐ **None.** *If "None" is checked, the rest of § 3.1 need not be completed or reproduced.*

☑ The debtor(s) will maintain the contractual installment payments on the claims listed below, with any changes required by the applicable contract, and cure any default in payments on the secured claims listed below. The allowed claim for any arrearage amount will be paid under the plan, with interest, if any, at the rate stated. Unless otherwise ordered by the court, the amounts listed on a proof of claim or amended proof of claim filed before the filing deadline under Bankruptcy Rule 3002(c) control over any contrary amounts listed below. A tardily filed proof of claim will be disallowed unless it is estimated below or unless the debtor(s) brings a motion to allow the claim. If relief from the automatic stay is ordered as to any item of collateral listed in this paragraph, then, unless otherwise ordered by the court, all payments under this paragraph as to that collateral will cease and all secured claims based on that collateral will no longer be treated by the plan. The final column includes only payments disbursed by the trustee rather than by the debtor.

| Name of creditor with last 4 digits of account number | Collateral | Amount of arrearage | Interest rate on arrearage (if applicable) | Monthly plan payment on arrearage | Estimated total payments by trustee |
|---|---|---|---|---|---|
| **Select Portfolio Servicing Inc 9180** | **5420 Old Ranch Road Oceanside, CA 92057 San Diego County** | **$13,000.00** | **0.00%** | **$500.00** | **$13,000.00** |

*Insert additional claims as needed.*

### 3.2 Request for valuation of security and claim modification.

**To determine the proper valuation of real estate secured claims, the debtor(s) must timely file a motion in accordance with Local Bankruptcy Rule 3015-8 in addition to including the creditor in this section of the plan. No such motion is necessary for valuation determinations for personal property secured claims.**

The portion of any allowed claim that exceeds the amount of the secured claim will be treated as an unsecured claim under Part 5 of this plan unless the claim is entitled to priority status, in which case it will be provided in Part 4. If the amount of a creditor's secured claim is listed below as having no value, the creditor's allowed claim will be treated in its entirety as an unsecured claim under Part 5 of this plan. Unless otherwise ordered by the court, the amount of the creditor's total claim listed on the proof of claim controls over any contrary amounts listed in this paragraph.

The holder of any claim listed below as having value in the column headed *Amount of secured claim* will retain the lien until the earlier of the following events as applicable to the particular secured creditor: 1) payment of the underlying debt determined under nonbankruptcy law; 2) discharge under 11 U.S.C. § 1328, or 3) completion of payments under the plan if the debtors(s) are not entitled to a discharge. After the date applicable to termination of the lien, it will be released by the creditor unless the claim is a nondischargeable claim owed to a governmental entity. See Local Bankruptcy Rule 3015-8.

*Check one. If neither box is checked, "None" applies.*

☑ **None.** *If "None" is checked, the rest of § 3.2 need not be completed or reproduced.*

### 3.3 Secured claims excluded from 11 U.S.C. § 506.

*Check one. If neither box is checked, "None" applies.*

☑ **None**. *If "None" is checked, the rest of § 3.3 need not be completed or reproduced.*

### 3.4 Surrender of collateral to secured creditors.

*Check one. If neither box is checked, "None" applies.*

☑ **None.** *If "None" is checked, the rest of § 3.4 need not be completed or reproduced.*

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

CSD 1300 (12/01/17)      **Debtor(s)**   Steven Michael Moehling      **Case number**

**3.5 Intentional exclusion of claim from treatment under the plan.**

*Secured and partially secured creditors who received proper notice but who do not timely file a proof of claim, and who are not provided for elsewhere in the plan, will be considered excluded creditors and treated in this section.*

*Check one. If neither box is checked, "None" applies.*

☐      **None.** *If "None" is checked, the rest of § 3.5 need not be completed or reproduced.*

☑      The claims held by creditors listed below will not be provided for under the plan, and the plan will not affect any of the claimant's rights under applicable law.

| Name of creditor and description of claim | Description of claim |
|---|---|
| California Housing Finance Age | 5420 Old Ranch Road Oceanside, CA 92057 San Diego County |
| Rancho San Geronimo Homeowners | 5420 Old Ranch Road Oceanside, CA 92057 San Diego County |

*Insert additional claims as needed.*

**Part 4:**   **Treatment of Priority Claims**

**4.1 Treatment of priority claims.**

All allowed priority claims other than those treated in §§ 4.5 and 4.6 of the plan will be paid in full without interest.

**4.2 Interest exception.**

If the plan provides interest to unsecured nonpriority creditors, that same rate of interest will be paid to all creditors for which interest is not otherwise specifically provided under this plan.

**4.3 Trustee's fees.**

The trustee will receive a fee, the percentage of which is set by the United States Trustee in accordance with applicable law. Trustee's fees are estimated to be **10.00%** of plan payments; and during the plan term, they are estimated to total **$3,468.00**.

**4.4 Adequate protection payments.**

The trustee will make pre-confirmation adequate protection payments to secured creditor, identified in General Order 175-F, from plan payments received from the debtor(s), as this order may be amended from time to time.

**4.5 Domestic support obligations.**

*Check one. If neither box is checked, "None" applies.*

☑      **None.** *If "None" is checked, the rest of § 4.5 need not be completed or reproduced.*

**4.6 Assigned domestic support obligations.**

Even if a domestic support obligation claim is not listed here, debtor(s) must nevertheless pay it in full to receive a discharge.

*Insert additional claims as needed.*

**4.7 Attorney's fees**

The total amount of attorney's fees to be paid under the plan is estimated to be **$3,900.00**. The balance  of the fees awarded by court order to professionals for debtor(s) under 11 U.S.C. § 330 will be paid as follows:

CSD 1300 (12/01/17)                          **Chapter 13 Plan**                          Page 4

CSD 1300 (12/01/17)      **Debtor(s)**   **Steven Michael Moehling**            Case number _____

*Check one.*

☑        on a *priority* basis before other priority claims other than trustee's fees and adequate protection payments.

☐        in installment payments of  $_____ .

**4.8 Other priority claims and secured portion of federal and state tax claims.**

All priority claims identified in 11 U.S.C. § 507, including unsecured priority tax claims, are included in this section of the plan. The secured portion of a federal or state tax claim is also included in this section unless specifically provided for elsewhere in this plan.

*Check one. <u>If neither box is checked, "None" applies.</u>*

☐       **None**. *If "None" is checked, the rest of § 4.8 need not be completed or reproduced.*

☑       The debtor(s) estimate the total amount of priority and secured tax claims to be paid under this section of the the plan to be $ **5,500.00**. This sum is a total of all of the payments listed below to be paid in accordance with this section. Priority claim payments are owed to the following creditors in the following amounts:

*Check all that apply.*

☑        Internal Revenue Service in the estimated amount of          $**4,500.00**

☑        Franchise Tax Board in the estimated amount of             $**1,000.00**

☐        California Department of Tax and Fee Administration in the estimated amount of          $_____

☐        Employment Development Department in the estimated amount of          $_____

☐        County Property Tax Assessor (not real property taxes) in the estimated amount of          $_____

☐        Other in the estimated amount of          $_____

| Part 5: | Treatment of Nonpriority Unsecured Claims |
|---|---|

**5.1 General.**

Nonpriority unsecured claims will be paid to the extent allowed as specified in this Part.

**5.2 Nonpriority unsecured claims not separately classified.**

Allowed nonpriority unsecured claims that are not separately classified in this plan will be paid, pro rata, all funds remaining after payment of all other creditors provided under the plan. Payments to unsecured creditors will be allowed to the extent paid if an allowed amended, late filed, or late added claim reduces the amount available to unsecured creditors under this section.

**5.2.1 Projected payment to nonpriority unsecured creditors.**

Based upon the total payments to the trustee listed in § 2.6 of the plan, minus the payments under the plan on the claims scheduled by the debtor(s) that are provided for in §§ 3.1 through 3.3, Part 4, §§ 5.3 through 5.5, and Part 6 of the plan, the estimated payment to allowed nonpriority unsecured claims not separately classified under the plan is **$8,762.00**. This amount will be shared on a pro-rata basis on these claims. This amount will not be reduced by claims arising under 11 U.S.C. § 1305 and §§ 507(a)(1)(A) and (B) that are not fully addressed in the plan, but may otherwise increase or decrease.

CSD 1300 (12/01/17)                          **Chapter 13 Plan**                          Page 5

CSD 1300 (12/01/17)      **Debtor(s)**    **Steven Michael Moehling**      **Case number** _____

**5.2.2 Required payment to nonpriority unsecured creditors under the liquidation test.**

If the estate of the debtor(s) were liquidated under chapter 7, nonpriority unsecured claims would be paid approximately **$0.00**. The total of the payments on allowed nonpriority unsecured claims will be made in at least this amount, and debtor(s) will be required to make payments in addition to those specified in Part 2 to prevent the plan from going into default.

**5.3 Interest on allowed nonpriority unsecured claims not separately classified.**

*Check one. If neither box is checked, "None" applies.*

☑ **None.** *If "None" is checked, the rest of § 5.3 need not be completed or reproduced.*

**5.4 Non-filing co-debtor claim treatment for maintenance of payments and cure of any default on nonpriority unsecured claims.**

*Check one. If neither box is checked, "None" applies.*

☑ **None.** *If "None" is checked, the rest of § 5.4 need not be completed or reproduced.*

**5.5 Other separately classified nonpriority unsecured claims.**

*Check one. If neither box is checked, "None" applies.*

☑ **None.** *If "None" is checked, the rest of § 5.5 need not be completed or reproduced.*

---

| Part 6: | **Executory Contracts and Unexpired Leases** |

The executory contracts and unexpired leases listed below are assumed and will be treated as specified. All other executory contracts and unexpired leases are rejected.

*Check one. If neither box is checked, "None" applies.*

☑ **None.** *If "None" is checked, the rest of § 6.1 need not be completed or reproduced.*

---

| Part 7: | **Order of Distribution of Trustee Payments** |

Trustee will have discretion to determine the order of distribution within the requirements of applicable law and whether to reserve payment to claims that are subject to a pending objection.

---

| Part 8: | **Vesting of Property of the Estate** |

Property of the estate will not revest in the debtor(s) until a Chapter 13 discharge is granted or the case is dismissed or closed without a Chapter 13 discharge. Before then, the debtor(s) must seek approval of the court to purchase, sell, or refinance property of a material value, or to enter into loan modifications. Revestment will be subject to all liens and encumbrances in existence when the case was filed, except those liens avoided by court order or extinguished by operation of law. In the event the case is converted to a case under chapter 7, 11, or 12 of the Bankruptcy Code, the property of the estate will vest in accordance with applicable law.

---

| Part 9: | **Nonstandard Plan Provisions** |

Check "None" or List Nonstandard Plan Provisions

☑ **None.** *If "None" is checked, the rest of Part 9 need not be completed or reproduced.*

---

CSD 1300 (12/01/17)                      **Chapter 13 Plan**                      Page 6

| CSD 1300 (12/01/17] | Debtor(s) | Steven Michael Moehling | Case number | |
|---|---|---|---|---|

## Part 10:   Signatures

**Signatures of Debtor(s) and Debtor(s)' Attorney**

*If the Debtor(s) do not have an attorney, the Debtor(s) must sign below; otherwise the Debtor(s)' signatures are optional. The attorney for the Debtor(s), if any, must sign below.*

**/s/ Andrew A. Moher**                                        Date   **June 24, 2019**
**Andrew A. Moher**
Signature of Attorney for Debtor(s)

**/s/ Steven Michael Moehling**                              Date   **June 24, 2019**
**Steven Michael Moehling**
Signature of Debtor

By filing this document, the Debtor(s), if not represented by an attorney, or the Attorney for Debtor(s) also certify(ies) that the wording and order of the provisions in this Chapter 13 plan are identical to those contained in CSD 1300, other than any nonstandard provisions included in Part 9.

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

# Notice Recipients

District/Off: 0974−3      User: Admin.      Date Created: 7/1/2019

Case: 19−03857−LT13      Form ID: pdf913      Total: 11

**Recipients of Notice of Electronic Filing:**

tr      Thomas H. Billingslea      Billingslea@thb.coxatwork.com

aty      Andrew Moher      amoher@moherlaw.com

                                                     TOTAL: 2

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**

db      Steven Michael Moehling      5420 Old Ranch Road      Oceanside, CA 92057

14609450      California Housing Finance Age      500 Capitol Mall, Ste. 1400 (M      Sacramento, CA 95814

14609451      Capital One      Carol Stream, IL 60197

14609452      Cavalry SPV I, LLC      500 Summit Lake Drive Ste 400      Valhalla, NY 10595

14609453      Franchise Tax Board      P.O. Box 2952      Sacramento, CA 95812−2952

14609454      Internal Revenue Service      P.O. Box 7346      Philadelphia, PA 19101−7346

14609455      Rancho San Geronimo Homeowners      825 College Blvd Ste 102−422      Oceanside, CA 92057

14609456      Select Portfolio Servicing Inc      Attn: Bankruptcy      Po Box 65250      Salt Lake City, UT 84165

14609457      Toyota Financial Services      Attn: Bankruptcy Dept      Po Box 8026      Cedar Rapids, IA 52409

                                                     TOTAL: 9

# Exhibit "6"

CSD 1159A [11/15/04]

Name, Address, Telephone No. & I.D. No.

Tiffany & Bosco, P.A.
MEGAN E. LEES (SBN 277805)
mel@tblaw.com
ROBERT P. ZAHRADKA (SBN 282706)
rpz@tblaw.com
1455 Frazee Road, Suite 820
San Diego, CA 92108
Phone: (619) 501-3503

**Order Entered on**
April 27, 2020
**by Clerk U.S. Bankruptcy Court**
**Southern District of California**

### UNITED STATES BANKRUPTCY COURT
#### SOUTHERN DISTRICT OF CALIFORNIA
325 West "F" Street, San Diego, California 92101-6991

In Re

Steven Michael Moehling aka Steve Michael Moehling

Debtor.

BANKRUPTCY NO. 19-03857-LT13

Wells Fargo Bank, National Association as Trustee for Securitized Asset Backed Receivables LLC Trust 2006-FR1 Mortgage Pass-Through Certificates, Series 2006-FR1

Movant(s)

RS NO. RPZ-1                        rjp

Steven Michael Moehling aka Steve Michael Moehling, Debtor
Thomas H. Billingslea, Trustee

Respondent(s)

Date of Hearing: April 28, 2020
Time of Hearing: 2:00 p.m.
Name of Judge: Hon. Laura S. Taylor

## ORDER ON
### STIPULATION GRANTING ADEQUATE PROTECTION

IT IS ORDERED THAT the relief sought as set forth on the continuation pages attached and numbered two (2)

through __2__ with exhibits, if any, for a total of __11__ pages, is granted.  Motion/Application Docket Entry No. __17/23__

//

//

//

//

DATED:     April 24, 2020

Judge, United States Bankruptcy Court

Signature by the attorney constitutes a certification under Fed. R. of Bankr. P. 9011 that the relief in the order is the relief granted by the court.

Submitted by:

Tiffany & Bosco, P.A.
(Firm name)

By: /s/ Robert P. Zahradka
        Attorney for ☑ Movant ☐ Respondent

CSD 1159A

**CSD 1159A** [11/15/04] **(Page 2)**
ORDER ON STIPULATION GRANTING ADEQUATE PROTECTION
DEBTOR: Steven Michael Moehling aka Steve Michael Moehling

CASE NO: 19-03857-LT13
RS NO.: RPZ-1                    rjp

Wells Fargo Bank, National Association as Trustee for Securitized Asset Backed Receivables LLC Trust 2006-FR1 Mortgage Pass-Through Certificates, Series 2006-FR1, Movant, by and through its attorney of record, Tiffany & Bosco, P.A., and Steven Michael Moehling aka Steve Michael Moehling, Debtor, by and through his attorney of record Andrew Moher, hereby agree to the Stipulation Granting Adequate Protection in regards to the subject property located at 5420 Old Ranch Rd, Oceanside, California 92057; San Diego County, CA that is fully described in Exhibit A hereto. The signed stipulation is attached as Exhibit B hereto.

IT IS HEREBY ORDERED:

1) Debtor shall tender regular monthly payments in the amount of $1,682.19, which is subject to change, pursuant to the terms of the subject Note (the "Note"), commencing May 1, 2020, and continuing until such outstanding amounts under the Note are paid in full. Payments are to be remitted to: Select Portfolio Servicing, Inc., Attn: Remittance Processing, P.O. Box 65450, Salt Lake City UT 84165-0450.

2) The post-petition arrears are calculated as follows:
Five (5) Monthly Payments @ $1,682.19 (12/1/2019 – 4/1/2020): $8,410.95
Less Debtor's Suspense: ($189.05)
TOTAL: $8,221.90

3) The post-petition arrears in the amount of $8,221.90 shall be tendered in equal monthly installments of $913.55 commencing May 15, 2020 and continuing thereafter through and including December 15, 2020, and a payment of $913.50 due on or before January 15, 2021.

4) If applicable, Debtor shall maintain real property taxes and real property hazard insurance paid current for the Real Property, and provide proof of said insurance on a timely basis.

5) In the event of any future default on any of the above-described provisions, inclusive of this Stipulation, Movant shall provide written notice to Debtor at 5420 Old Ranch Road, Oceanside, CA 92057, and to Debtor's attorney of record Andrew Moher at Moher Law Group, 418 3rd Avenue, Suite E, San Diego, CA 92101, indicating the nature of the default. If Debtor fails to cure the default with certified funds after the passage of ten (10) calendar days from the date said written notice is placed in the mail, then Movant may file an Ex Parte Declaration of Non-Cure and an Order Terminating the Automatic Stay with the court. Upon entry of said Order Terminating the Automatic Stay, the automatic stay shall be immediately terminated as to Movant, and Movant may proceed to foreclose its security interest in the Real Property under the terms of the Note and Deed of Trust and pursuant to applicable state law and thereafter commence any action necessary to obtain complete possession of the Real Property without further order or proceeding of this Court.

6) Movant shall comply with the above provisions as to the first three (3) defaults. Upon the fourth (4th) default, Movant may file an Ex Parte Declaration of Default and an Order Terminating the Automatic Stay with the court. Upon entry of said Order Terminating the Automatic Stay, the automatic stay shall be immediately terminated as to Movant, and Movant may proceed to foreclose its security interest in the Real Property under the terms of the Note and Deed of Trust and pursuant to applicable state law and thereafter commence any action necessary to obtain complete possession of the Real Property without further order or proceeding of this Court.

7) The acceptance by Movant of a late or partial payment shall not act as a waiver of Movant's right to proceed hereunder.

8) In the event that Movant is granted relief from the automatic stay, the parties hereby stipulate that the 14-day stay provided by Bankruptcy Rule 4001 (a)(3) is waived.

9) The foregoing terms and conditions shall be binding only during the pendency of this bankruptcy case. If, at any time, the stay is terminated with respect to the Real Property by court order or by operation of law, the foregoing terms and conditions shall cease to be binding and Movant may proceed to enforce its remedies under applicable non-bankruptcy law against the Real Property and/or against the Debtor(s).

10) Any notice that Movant shall give to Debtor(s), or attorney for Debtor(s), pursuant to this Order shall not be construed as a communication under the Fair Debt Collection Practices Act, 15 U.S.C. 1692.

11) In the event of termination of the automatic stay pursuant to the terms herein, and upon entry of an order termination the automatic stay, the parties agree that Trustee shall cease payment on Movant's Claim No. 5.

12) The guideline fee of $675.00 for Debtor's Counsel's opposition to the Motion for Relief is approved to be paid as an administrative claim, subject to funds on hand.

IT IS SO ORDERED.

**CSD 1159A**

Signed by Judge Laura Stuart Taylor April 24, 2020

# EXHIBIT "A"

Signed by Judge Laura Stuart Taylor April 24, 2020

# Exhibit "A"

All that certain real property situate in the County of San Diego, State of
California, described as follows:

Lot 39 of Rancho San Geronimo Unit No. 1, in the City of Oceanside, County of
San Diego, State of California, according to Map thereof No. 8579, filed in the
Office of the County Recorder of San Diego County, May 19, 1977.


Assessor's Parcel Number

Signed by Judge Laura Stuart Taylor April 24, 2020

# EXHIBIT "B"

Signed by Judge Laura Stuart Taylor April 24, 2020

# TIFFANY & BOSCO
### P.A.

MEGAN E. LEES (SBN 277805)
mel@tblaw.com
ROBERT P. ZAHRADKA (SBN 282706)
rpz@tblaw.com
1455 Frazee Road, Suite 820
San Diego, CA 92108
Phone: (619) 501-3503

Attorneys for Creditor: Wells Fargo Bank, National Association as Trustee for Securitized Asset
Backed Receivables LLC Trust 2006-FR1 Mortgage Pass-Through Certificates, Series 2006-FR1
TB File No.: 19-81212

## UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| In re: | CASE NO.: 19-03857-LT13 |
|---|---|
| Steven Michael Moehling aka Steve Michael Moehling, | CHAPTER 13 |
| Debtor. | RS NO: RPZ-1 |
| | **STIPULATION GRANTING ADEQUATE PROTECTION** |
| | **HEARING:** |
| | DATE: April 28, 2020<br>TIME: 2:00 p.m.<br>DEPT: 3<br>ROOM: 129 |

This Stipulation is entered into by and between the Secured Creditor, Wells Fargo Bank, National Association as Trustee for Securitized Asset Backed Receivables LLC Trust 2006-FR1 Mortgage Pass-Through Certificates, Series 2006-FR1 (hereinafter "Movant"), and Steven Michael Moehling aka Steve Michael Moehling (hereinafter "Debtor") by and through his respective attorneys of record.

The property which is the subject of this matter is commonly known as 5420 Old Ranch Rd, Oceanside, California 92057, which is more fully described as follows:

SEE LEGAL DESCRIPTION ATTACHED AS EXHIBIT A TO MOTION FOR RELIEF
FROM STAY, DOCKET ENTRY NO. 17

THE PARTIES STIPULATE AS FOLLOWS:

1)    Debtor shall tender regular monthly payments in the amount of $1,682.19, which is subject to change, pursuant to the terms of the subject Note (the "Note"), commencing May 1, 2020, and continuing until such outstanding amounts under the Note are paid in full. Payments are to be remitted to: Select Portfolio Servicing, Inc., Attn: Remittance Processing, P.O. Box 65450, Salt Lake City UT 84165-0450.

2)    The post-petition arrears are calculated as follows:

| | |
|---|---|
| Five (5) Monthly Payments @ $1,682.19 (12/1/2019 – 4/1/2020): | $8,410.95 |
| Less Debtor's Suspense: | ($189.05) |
| TOTAL: | $8,221.90 |

3)    The post-petition arrears in the amount of $8,221.90 shall be tendered in equal monthly installments of $913.55 commencing May 15, 2020 and continuing thereafter through and including December 15, 2020, and a payment of $913.50 due on or before January 15, 2021.

4)    If applicable, Debtor shall maintain real property taxes and real property hazard insurance paid current for the Real Property, and provide proof of said insurance on a timely basis.

5)    In the event of any future default on any of the above-described provisions, inclusive of this Stipulation, Movant shall provide written notice to Debtor at 5420 Old Ranch Road, Oceanside, CA 92057, and to Debtor's attorney of record Andrew Moher at Moher Law Group, 418 3rd Avenue, Suite E, San Diego, CA 92101, indicating the nature of the default. If Debtor fails to cure the default with certified funds after the passage of ten (10) calendar days from the date said written notice is placed in the mail, then Movant may file an Ex Parte Declaration of Non-Cure and an Order Terminating the Automatic Stay with the court.  Upon entry of said Order Terminating the Automatic Stay, the automatic stay shall be immediately terminated as to Movant, and Movant may proceed to foreclose its security interest in the Real Property under the terms of the Note and Deed of Trust and pursuant to applicable state law and thereafter commence any action necessary to obtain complete possession of the Real Property without further order or proceeding of this Court.

Signed by Judge Laura Stuart Taylor April 24, 2020

6)    Movant shall comply with the above provisions as to the first three (3) defaults. Upon the fourth (4th) default, Movant may file an Ex Parte Declaration of Default and an Order Terminating the Automatic Stay with the court. Upon entry of said Order Terminating the Automatic Stay, the automatic stay shall be immediately terminated as to Movant, and Movant may proceed to foreclose its security interest in the Real Property under the terms of the Note and Deed of Trust and pursuant to applicable state law and thereafter commence any action necessary to obtain complete possession of the Real Property without further order or proceeding of this Court.

7)    The acceptance by Movant of a late or partial payment shall not act as a waiver of Movant's right to proceed hereunder.

8)    In the event that Movant is granted relief from the automatic stay, the parties hereby stipulate that the 14-day stay provided by Bankruptcy Rule 4001(a)(3) is waived.

9)    The foregoing terms and conditions shall be binding only during the pendency of this bankruptcy case. If, at any time, the stay is terminated with respect to the Real Property by court order or by operation of law, the foregoing terms and conditions shall cease to be binding and Movant may proceed to enforce its remedies under applicable non-bankruptcy law against the Real Property and/or against the Debtor(s).

10)    Any notice that Movant shall give to Debtor(s), or attorney for Debtor(s), pursuant to this Order shall not be construed as a communication under the Fair Debt Collection Practices Act, 15 U.S.C. 1692.

11)    In the event of termination of the automatic stay pursuant to the terms herein, and upon entry of an order termination the automatic stay, the parties agree that Trustee shall cease payment on Movant's Claim No. 5.

/././

/././

/././

/././

/././

STIPULATION GRANTING ADEQUATE PROTECTION    3    Case No: 19-03857-LT13

Signed by Judge Laura Stuart Taylor April 24, 2020

Case 19-03857-LT13    Filed 04/24/20    Entered 04/24/20 07:59:05    Doc 73    Pg. 9 of 11

12) The guideline fee of $675.00 for Debtor's Counsel's opposition to the Motion for Relief is approved to be paid as an administrative claim, subject to funds on hand.

IT IS SO STIPULATED:

DATED: __4/24/2020__        Tiffany & Bosco, P.A.

                           /s/ Robert P. Zahradka

                           Robert P. Zahradka
                           Attorney for Movant

DATED: __4/23/2020__        Moher Law Group

                           /s/ Andrew Moher

                           Andrew Moher
                           Attorney for Debtor

STIPULATION GRANTING ADEQUATE PROTECTION     4             Case No: 19-03857-LT13

Signed by Judge Laura Stuart Taylor April 24, 2020

Case 19-03857-LT13 Filed 04/24/20 Entered 04/24/20 07:30:04 Doc 25 Pg. 5 of 6

CSD 3010 [12/01/15]
Name, Address, Telephone No. & I.D. No.

Tiffany & Bosco, P.A.
MEGAN E. LEES (SBN 277805)
mel@tblaw.com
ROBERT P. ZAHRADKA (SBN 282706)
rpz@tblaw.com
1455 Frazee Road, Suite 820
San Diego, CA 92108
Tel.: (619) 501-3503

## UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF CALIFORNIA
325 West F Street, San Diego, California 92101-6991

| | |
|---|---|
| In Re<br>Steven Michael Moehling aka Steve Michael Moehling<br><br>Debtor. | BANKRUPTCY NO. 19-03857-LT13 |
| <br><br>Plaintiff(s) | ADVERSARY NO. |
| v.<br><br>Defendant(s) | |

# PROOF OF SERVICE

I, __Ashley Ballenger__ am a resident of the State of California, over the age of 18 years, and not a party to this action.

On __April 24, 2020__ , I served the following documents:

STIPULATION GRANTING ADEQUATE PROTECTION

1. **To Be Served by the Court via Notice of Electronic Filing ("NEF"):**

Under controlling Local Bankruptcy Rules(s) ("LBR"), the document(s) listed above will be served by the court via NEF and hyperlink to the document. On __April 24, 2020__ , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the e-mail address(es) indicated and/or as checked below:

☐   Chapter 7 Trustee:

| ☐ For Chpt. 7, 11, & 12 cases: | ☑ For ODD numbered Chapter 13 cases: | ☐ For EVEN numbered Chapter 13 cases: |
|---|---|---|
| UNITED STATES TRUSTEE<br>ustp.region15@usdoj.gov | THOMAS H. BILLINGSLEA, JR., TRUSTEE<br>Billingslea@thb.coxatwork.com | DAVID L. SKELTON, TRUSTEE<br>admin@ch13.sdcoxmail.com<br>dskelton13@ecf.epiqsystems.com |

CSD 3010

Signed by Judge Laura Stuart Taylor April 24, 2020

Case 19-03857-LT13    Filed 04/24/20    Entered 04/24/20 07:30:04    Doc 25    Pg. 6 of 6

CSD 3010 [12/01/15] (Page 2)

2.    **Served by United States Mail or Overnight Mail**:

On   April 24, 2020   ,I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail via 1) first class, postage prepaid, 2) certified mail with receipt number or 3) overnight mail service, addressed as follows:

DEBTOR: Steven Michael Moehling aka Steve Michael Moehling, 5420 Old Ranch Road, Oceanside, CA 92057
DEBTOR'S ATTORNEY: Andrew Moher, Moher Law Group, 5560 La Jolla Blvd, Suite D, La Jolla, CA 92037
LEINHOLDER: California Housing Finance Age, 500 Capitol Mall, Ste. 1400 (M, Sacramento, CA 95814

3.    **Served by Personal Delivery, Facsimile Transmission or Electronic Mail**:

Under Fed.R.Civ.P.5 and controlling LBR, on   _____   , I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or electronic mail as follows:

I declare under penalty of perjury under the laws of the United States of America that the statements made in this proof of service are true and correct.

Executed on   April 24, 2020  
(Date)

Ashley Ballenger /s/ Ashley Ballenger
(Typed Name and Signature)

1455 Frazee Road, Suite 820
(Address)

San Diego, CA 92108
(City, State, ZIP Code)

CSD 3010

# Notice Recipients

District/Off: 0974−3                    User: Admin.                    Date Created: 4/27/2020

Case: 19−03857−LT13                    Form ID: pdfO1                    Total: 4

**Recipients of Notice of Electronic Filing:**
tr        Thomas H. Billingslea          Billingslea@thb.coxatwork.com
aty       Andrew Moher         amoher@moherlaw.com
aty       Robert Zahradka         caecf@tblaw.com

                                                                    TOTAL: 3

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**
db        Steven Michael Moehling          5420 Old Ranch Road          Oceanside, CA 92057

                                                                    TOTAL: 1

# Exhibit "7"

Michael Koch, Trustee  State Bar No. 131892
**OFFICE OF THE CHAPTER 13 TRUSTEE**
402 West Broadway, Suite 1450
San Diego, CA 92101-8544
Telephone (619) 338-4006
Facsimile (619) 239-5242

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF CALIFORNIA

In re:

STEVEN MICHAEL MOEHLING

Debtor.

) Case No. 19-03857-LT13
)
) NOTICE OF FINAL CURE PAYMENT AND
) COMPLETION OF PAYMENTS UNDER THE
) PLAN
)
)
)

**TO THE HEREIN NAMED CREDITOR, DEBTOR, AND DEBTOR'S COUNSEL:**

Pursuant to Federal Bankruptcy Rule 3002.1(f), the Trustee files Notice that the amount required to cure the

default in the below claim has been paid in full and that Debtor has completed all payments under the confirmed

Chapter 13 Plan.

Creditor Name:   SELECT PORTFOLIO SERVICING

Court Claim No:   005

Account No:   9180

Amount of Allowed Pre-Petition Arrears:   $16,424.69

Principal Paid by Trustee:   $16,424.69

Interest Paid by Trustee:   $0.00

Monthly ongoing mortgage payments are paid directly by Debtor.

Within 21 days of the service of this Notice, the creditor must file and serve Debtor, Debtor's counsel, and the

Trustee pursuant to Fed. Bankr. Rule 3002.1(g), a statement indicating whether, consistent with §1322(b)(5),

Debtor is otherwise current on all payments, or be subject to further action of the court including possible

sanctions.

Date:  February 20, 2024

_/s/ Michael Koch_____
Chapter 13 Trustee

Michael Koch, Trustee  State Bar No. 131892
**OFFICE OF THE CHAPTER 13 TRUSTEE**
402 West Broadway, Suite 1450
San Diego, CA 92101-8544
Telephone (619) 338-4006
Facsimile (619) 239-5242

UNITED STATES BANKRUPTCY COURT

Southern District of California

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 19-03857-LT13 |
| | ) | |
| STEVEN MICHAEL MOEHLING | ) | CERTIFICATE OF SERVICE |
| | ) | |
| Debtor. | ) | |
| | ) | |

I certify that I am, and at all times during the service of process was, not less than 18 years of age and not a party to the matter concerning which service of process was made. I further certify that I served a copy of the following documents (described below):

**Trustee's Notice of Final Cure Payment and Completion of Payments Under the Plan**

[**XXX**] Mail Service - Regular, First Class United States Mail, postage fully pre-paid, addressed to:

STEVEN MICHAEL MOEHLING
5420 OLD RANCH ROAD
OCEANSIDE, CA 92057-0000

ANDREW A. MOHER
MOHER LAW GROUP
424 F Street, Suite 203
SAN DIEGO, CA 92101-0000

SELECT PORTFOLIO SERVICING
MC 240 BOX 65450
SALT LAKE CITY, UT 84165-0000

Under penalty of perjury, I declare that the foregoing is true and correct.

DATE:  February 20, 2024                    /s/ Sunao Tashima
                                                              Clerk for the office of
                                                              Michael Koch, Trustee
                                                              402 West Broadway, Suite 1450
                                                              San Diego, CA 92101-8544

# Exhibit "8"

| Fill in this information to identify the case: | |
|---|---|
| Debtor1 | Steven Michael Moehling aka Steve Michael Moehling |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the : SOUTHERN District of California (State) | |
| Case number 19-03857-LT13 | |

Form 4100R
# Response to Notice of Final Cure

10/15

According to Bankruptcy Rule 3002.1(g), the creditor responds to the trustee's notice of final cure payment.

## Part 1:     Mortgage Information

**Name of creditor:**  Wells Fargo Bank, National Association as Trustee for Securitized Asset Backed Receivables LLC Trust 2006-FR1 Mortgage Pass-Through Certificates, Series 2006-FR1

**Last 4 digits** of any number you use to identify the debtor's account: 9180

**Court claim no.** (if known): 5-1

**Property address:**      5420 OLD RANCH RD ,
                           Number            Street

                           OCEANSIDE, CA 92057
                           City                        State        ZIP Code

## Part 2:    Prepetition Default Payments

*Check one:*

[X]      Creditor agrees that the debtor(s) have paid in full amount required to cure the prepetition default on the creditor's claim

[  ]     Creditor disagrees that the debtor(s) have paid in full the amount required to cure the prepetition default on the creditor's claim. Creditor asserts that the total prepetition amount remaining unpaid as of the date of this response is:                    $_____

## Part 3:     Postpetition Mortgage

*Check one:*

[  ]     Creditor states that the debtor(s) are current with all postpetition payments consistent with § 1322(b)(5) of the Bankruptcy Code, including all fees, charges, expenses, escrow, and costs.

         The next postpetition payment from the debtor(s) is due on:          ____/____/_____
                                                                                  MM/DD/YYYY

[X]      Creditor states that the debtors are not current on all postpetition payments consistent with § 1322 (b)(5) of the Bankruptcy Code, including all fees charges expenses, escrow, and costs.

         Creditor asserts that the total amount remaining unpaid as of the date of this response is:

         a. Total postpetition ongoing payments due:                                    (a) $7,342.05

         b. Total Suspense:                                                           - (b) $1,320.88

         c. Total. Subtract lines a and b.                                              (c) $6,021.17

         Creditor asserts that the debtor(s) are contractually obligated for the postpetition payment(s) that first became due on:                                         12   / 01   / 2023____
                                                                                   MM/   DD/   YYYY

Form 4100R                      **Response to Notice of Final Cure Payment**                      page 1

**Debtor 1**    Steven Michael Moehling aka Steve Michael Moehling    **Case number** *(if known)*    19-03857-LT13
First Name          Middle Name            Last Name

---

| Part 4: | Itemized Payment History |
|---|---|

If the creditor disagrees in Part 2 that the prepetition arrearage has been paid in full or states in Part 3 that the debtor(s) are not current with all postpetition payments, including all fees, charges expenses, escrow, and costs, the creditor must attach an itemized payment history disclosing the following amounts from the date of the bankruptcy filing through the date of this response:

[X]  all payments received;
[X]  all fees, costs, escrow, and expenses assessed to the mortgage; and
[X]  all amounts the creditor contends remain unpaid

---

| Part 5: | Sign Here |
|---|---|

**The person completing this response must sign it. The response must be filed as a supplement to the creditor's proof of claim**

*Check the appropriate box:*

[  ] I am the creditor.
[X] I am the creditor's authorized agent.

**I declare under penalty of perjury that the information provided in this response is true and correct to the best of my knowledge, information, and reasonable belief.**

Sign and print your name and your title, if any, and state your address and telephone number if different from the notice address listed on the proof of claim to which this response applies.

X    /s/ Sean Ferry                                            Date March 11, 2024
     Signature

Print    Sean Ferry                                            Title Authorized Agent
         First Name    Middle Name    Last Name

Company    Robertson, Anschutz, Schneid & Crane LLP

If different from the notice address listed on the proof of claim to which this response applies:

Address    350 10th Avenue, Suite 1000
           Number            Street

           San Diego, CA 92101
           City            State            ZIP Code

Contact    470-321-7112                                Email sferry@raslg.com

---

Form 4100R                **Response to Notice of Final Cure Payment**                page 2

Sean Ferry (SBN 310347)
sferry@raslg.com
**Robertson, Anschutz, Schneid & Crane LLP**
350 10th Avenue, Suite 1000
San Diego, CA 92101
Telephone: (561) 241-6901 Ext. 2036

Attorneys for Creditor
Wells Fargo Bank, National Association as Trustee for Securitized Asset Backed Receivables LLC Trust 2006-FR1 Mortgage Pass-Through Certificates, Series 2006-FR1

## UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA – SAN DIEGO DIVISION

|  |  |
|---|---|
| In re | Case No. 19-03857-LT13 |
| Steven Michael Moehling aka Steve Michael Moehling, | Chapter 13 |
| Debtor. | **CERTIFICATE OF SERVICE** |

I, Sean C. Ferry hereby declare as follows:

I am an active member of the State Bar of California and I am not a party to the above-captioned case; my business address is 350 10th Avenue, Suite 1000, San Diego, CA 92101.

On March 11, 2024, I caused copies of the following document(s) to be served:

1. **Response to Notice of Final Cure**

in the following manner on the parties listed below:

- **BY FIRST CLASS MAIL**: Pursuant to Federal Rule of Bankruptcy Procedure 7004(b), I enclosed said document(s) in a sealed envelope addressed to the persons at the address(es) listed below, placed first class postage fully prepaid thereon, and deposited said envelope in a United States mailbox.

-1-

**DEBTOR**
Steven Michael Moehling
5420 Old Ranch Road
Oceanside, CA 92057

- **BY ELECTROIC SERVICE (ECF):**

**TRUSTEE**
Michael Koch
Chapter 13 Trustee
402 W. Broadway
Ste 1450
San Diego, CA 92101

**US TRUSTEE**
United States Trustee
Office of the U.S. Trustee
880 Front Street
Suite 3230
San Diego, CA 92101

**DEBTOR'S COUNSEL**
Andrew Moher
Moher Law Group
424 F Street
Suite 203
San Diego, CA 92101

I declare under penalty of perjury under the laws of the United States of America that the forgoing is true and correct.

Executed on this 11th day of March, 2024.

/s/ Sean C. Ferry
Sean C. Ferry

-2-



**SPS SELECT PORTFOLIO SERVICING, INC.**

Preparation Date:

Prepared by:

| 03/05/24 |
| --- |
| Bhargav S |

**Loan Information:**

| Loan Number | X X X X X X 9180 |
| --- | --- |
| Debtors Name - 1 | STEVEN MOEHLING |
| Debtors Name - 2 | |
| Property Address | 5420 OLD RANCH RD |
| Property State | CA |

**Bankruptcy Information:**

| Bankruptcy Case # | 19-03857 |
| --- | --- |
| Filing Date | 6/28/2019 |
| Person filing | M1 |
| Number of previous filings | 2 |

**Post petition due**

| Post petition due date | 12/01/23 |
| --- | --- |
| Post petition $$$ due: | $6,021.17 |
| Post petition insurance | $0.00 |
| Post petition taxes: | $0.00 |
| | |
| | |
| Total Post petition due | $6,021.17 |

| Comment |
| --- |
| Post-petition taxes and insurance included in annual escrow analysis and added to monthly payments |

**Post-Petition Payment History Detail**

| Date Pmt Rcvd | Post Due Dt | System PMT | Filed PMT | $ Received | Comments |
| --- | --- | --- | --- | --- | --- |
| 08/28/19 | 07/01/19 | $1,682.19 | $1,682.19 | $1,700.00 | |
| 10/10/19 | 08/01/19 | $1,682.19 | $1,682.19 | $1,700.00 | |
| 12/02/19 | 09/01/19 | $1,682.19 | $1,682.19 | $1,700.00 | |
| 01/27/20 | 10/01/19 | $1,682.19 | $1,682.19 | $1,800.00 | |
| 02/24/20 | 11/01/19 | $1,682.19 | $1,682.19 | $1,700.00 | |
| 05/04/20 | partial payment | 0.00 | $0.00 | $1,300.00 | Partial Payment |
| 05/19/20 | 12/01/19 | $1,682.19 | $1,682.19 | $1,300.00 | |
| 05/30/20 | 01/01/20 | $1,682.19 | $1,682.19 | $913.55 | |
| 05/30/20 | partial payment | 0.00 | $0.00 | $386.45 | Partial Payment |
| 06/15/20 | 02/01/20 | $1,682.19 | $1,682.19 | $1,300.00 | |
| 07/13/20 | partial payment | 0.00 | $0.00 | $813.55 | Partial Payment |
| 07/13/20 | 03/01/20 | $1,682.19 | $1,682.19 | $1,286.45 | |
| 07/22/20 | partial payment | 0.00 | $0.00 | $450.00 | Partial Payment |
| 08/10/20 | 04/01/20 | $1,682.19 | $1,682.19 | $913.55 | |
| 08/10/20 | 05/01/20 | $1,682.19 | $1,682.19 | $1,686.45 | |
| 09/14/20 | partial payment | 0.00 | $0.00 | $913.55 | Partial Payment |
| 09/14/20 | 06/01/20 | $1,682.19 | $1,682.19 | $1,706.45 | |
| 10/12/20 | 07/01/20 | $1,682.19 | $1,682.19 | $913.55 | |
| 10/12/20 | 08/01/20 | $1,682.19 | $1,682.19 | $1,706.45 | |
| 11/16/20 | partial payment | 0.00 | $0.00 | $913.55 | Partial Payment |
| 11/16/20 | 09/01/20 | $1,701.11 | $1,701.11 | $1,706.45 | |
| | Reversal | | -$1,701.11 | | |
| 12/08/20 | partial payment | 0.00 | $0.00 | $913.55 | Partial Payment |
| 12/08/20 | 09/01/20 | $1,701.11 | $1,701.11 | $1,706.45 | |
| 01/15/21 | 10/01/20 | $1,701.11 | $1,701.11 | $913.50 | |
| 01/15/21 | 11/01/20 | $1,701.11 | $1,701.11 | $1,706.50 | |
| 02/12/21 | 12/01/20 | $1,701.11 | $1,701.11 | $1,702.00 | |
| 03/19/21 | 01/01/21 | $1,701.11 | $1,701.11 | $1,702.00 | |
| 04/19/21 | 02/01/21 | $1,701.11 | $1,701.11 | $1,701.11 | |
| 06/02/21 | 03/01/21 | $1,701.11 | $1,701.11 | $1,702.00 | |
| 06/28/21 | 04/01/21 | $1,701.11 | $1,701.11 | $1,702.00 | |
| 07/27/21 | 05/01/21 | $1,701.11 | $1,701.11 | $1,707.00 | |
| 09/07/21 | 06/01/21 | $1,701.11 | $1,701.11 | $1,701.11 | |
| 09/30/21 | 07/01/21 | $1,706.83 | $1,706.83 | $1,701.11 | |
| 11/02/21 | 08/01/21 | $1,706.83 | $1,706.83 | $1,715.00 | |
| 11/30/21 | 09/01/21 | $1,706.83 | $1,706.83 | $1,715.00 | |
| 12/28/21 | 10/01/21 | $1,706.83 | $1,706.83 | $1,720.00 | |
| 01/25/22 | 11/01/21 | $1,706.83 | $1,706.83 | $1,720.00 | |
| 02/24/22 | 12/01/21 | $1,706.83 | $1,706.83 | $1,720.00 | |
| 03/21/22 | 01/01/22 | $1,706.83 | $1,706.83 | $1,720.00 | |
| 04/18/22 | 02/01/22 | $1,706.83 | $1,706.83 | $1,720.00 | |
| 05/18/22 | 03/01/22 | $1,706.83 | $1,706.83 | $1,742.46 | |
| 07/12/22 | 04/01/22 | $1,706.83 | $1,706.83 | $1,742.46 | |
| 08/09/22 | 05/01/22 | $1,742.46 | $1,742.46 | $1,742.46 | |
| 08/16/22 | NSF | -$1,742.46 | -$1,742.46 | -$1,742.46 | |
| 08/19/22 | 05/01/22 | $1,742.46 | $1,742.46 | $1,742.46 | |
| 09/19/22 | 06/01/22 | $1,742.46 | $1,742.46 | $1,742.46 | |
| 10/17/22 | 07/01/22 | $1,742.46 | $1,742.46 | $1,742.46 | |
| 11/29/22 | 08/01/22 | $1,742.46 | $1,742.46 | $1,742.46 | |
| 12/28/22 | 09/01/22 | $1,742.46 | $1,742.46 | $1,742.46 | |
| 01/24/23 | 10/01/22 | $1,742.46 | $1,742.46 | $1,746.42 | |
| 02/23/23 | 11/01/22 | $1,742.46 | $1,742.46 | $1,746.42 | |
| 03/16/23 | 12/01/22 | $1,742.46 | $1,742.46 | $1,744.20 | |
| 04/18/23 | 01/01/23 | $1,742.46 | $1,742.46 | $1,744.20 | |
| 05/10/23 | 02/01/23 | $1,742.46 | $1,742.46 | $1,744.20 | |
| 06/26/23 | 03/01/23 | $1,744.20 | $1,744.20 | $1,744.20 | |
| 07/19/23 | 04/01/23 | $1,744.20 | $1,744.20 | $1,746.20 | |
| 08/22/23 | 05/01/23 | $1,744.20 | $1,744.20 | $1,750.00 | |
| 09/25/23 | 06/01/23 | $1,744.20 | $1,744.20 | $1,750.00 | |
| 10/23/23 | 07/01/23 | $1,744.20 | $1,744.20 | $1,750.00 | |
| 11/30/23 | 08/01/23 | $1,744.20 | $1,744.20 | $1,750.00 | |
| 01/02/24 | 09/01/23 | $1,744.20 | $1,744.20 | $1,750.00 | |
| 01/19/24 | 10/01/23 | $1,744.20 | $1,744.20 | $1,850.00 | |
| | NSF | -$1,744.20 | -$1,744.20 | -$1,850.00 | |
| 01/30/24 | 10/01/23 | $1,744.20 | $1,744.20 | $1,866.00 | |
| 03/27/24 | 11/01/23 | $1,744.20 | $1,744.20 | $1,865.95 | |

| | | | | | |
|---|---|---|---|---|---|
| Due | | | $1,865.95 | $1,865.95 | 0.00 |
| Due | | | $1,865.95 | $1,865.95 | 0.00 |
| Due | | | $1,865.95 | $1,865.95 | |
| Due | | | $1,865.95 | $1,865.95 | 0.00 |
| | | | | $0.00 | |
| | | | | $0.00 | |
| | | | | $0.00 | |
| | | | | $0.00 | |
| | | | | $0.00 | |
| | | | | $0.00 | |
| | | | | $0.00 | |
| | | | | $0.00 | |
| | | | | $0.00 | |
| | | | | $0.00 | |
| | | | | $0.00 | |
| | | | | $0.00 | |
| | | | | $0.00 | |

| | | | |
|---|---|---|---|
| Total Due | | $99,795.62 | $98,094.51 |
| Total Received | | | $94,693.34 |

The contents of this document are RESTRICTED to authorized individuals. Any unauthorized access, use or duplication is strictly prohibited.

# Exhibit "9"

**Information to identify the case:**

| | | |
|---|---|---|
| Debtor 1 | Steven Michael Moehling | Social Security number or ITIN   xxx−xx−8925 |
| | First Name   Middle Name   Last Name | EIN   _ _−_ _ _ _ _ _ _ |
| Debtor 2 (Spouse, if filing) | First Name   Middle Name   Last Name | Social Security number or ITIN  _ _ _ _ |
| | | EIN   _ _−_ _ _ _ _ _ _ |
| United States Bankruptcy Court | Southern District of California | |
| Case number:   19−03857−LT13 | | |

# Order of Discharge

**12/18**

**IT IS ORDERED:** A discharge under 11 U.S.C. § 1328(a) is granted to:

Steven Michael Moehling
aka Steve Michael Moehling

4/4/24

**By order of the court:**   Michael Williams
Clerk of the Bankruptcy Court

---

**Explanation of Bankruptcy Discharge in a Chapter 13 Case**

This order does not close or dismiss the case.

**Creditors cannot collect discharged debts**

This order means that no one may make any attempt to collect a discharged debt from the debtors personally. For example, creditors cannot sue, garnish wages, assert a deficiency, or otherwise try to collect from the debtors personally on discharged debts. Creditors cannot contact the debtors by mail, phone, or otherwise in any attempt to collect the debt personally. Creditors who violate this order can be required to pay debtors damages and attorney's fees.

However, a creditor with a lien may enforce a claim against the debtors' property subject to that lien unless the lien was avoided or eliminated. For example, a creditor may have the right to foreclose a home mortgage or repossess an automobile.

This order does not prevent debtors from paying any debt voluntarily. 11 U.S.C. § 524(f).

**Most debts are discharged**

Most debts are covered by the discharge, but not all. Generally, a discharge removes the debtors' personal liability for debts provided for by the chapter 13 plan.

In a case involving community property: Special rules protect certain community property owned by the debtor's spouse, even if that spouse did not file a bankruptcy case.

**Some debts are not discharged**

Examples of debts that are not discharged are:

- â !debts that are domestic support obligations;

- â !debts for most student loans;

- â !debts for certain types of taxes specified in 11 U.S.C. §§ 507(a)(8)( C), 523(a)(1)(B), or 523(a)(1)(C) to the extent not paid in full under the plan;

**For more information, see page 2**

Form 3180W                **Chapter 13 Discharge**                page 1

â !debts that the bankruptcy court has decided or will decide are not discharged in this bankruptcy case;

â !debts for restitution, or a criminal fine, included in a sentence on debtor's criminal conviction;

â !some debts which the debtors did not properly list;

â !debts provided for under 11 U.S.C. § 1322(b)(5) and on which the last payment or other transfer is due after the date on which the final payment under the plan was due;

â !debts for certain consumer purchases made after the bankruptcy case was filed if obtaining the trustee's prior approval of incurring the debt was practicable but was not obtained;

â !debts for restitution, or damages, awarded in a civil action against the debtor as a result of malicious or willful injury by the debtor that caused personal injury to an individual or the death of an individual; and

â !debts for death or personal injury caused by operating a vehicle while intoxicated.

In addition, this discharge does not stop creditors from collecting from anyone else who is also liable on the debt, such as an insurance company or a person who cosigned or guaranteed a loan.

---

**This information is only a general summary of a chapter 13 discharge; some exceptions exist. Because the law is complicated, you should consult an attorney to determine the exact effect of the discharge in this case.**

---

Form 3180W  **Chapter 13 Discharge**  page 2

# Notice Recipients

| | | |
|---|---|---|
| District/Off: 0974−3 | User: admin | Date Created: 04/04/2024 |
| Case: 19−03857−LT13 | Form ID: 3180W | Total: 19 |

**Recipients of Notice of Electronic Filing:**

ust    United States Trustee    ustp.region15@usdoj.gov
tr    Michael Koch    mkoch@ch13.sdcoxmail.com
aty    Andrew Moher    amoher@moherlaw.com

TOTAL: 3

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**

db    Steven Michael Moehling    5420 Old Ranch Road    Oceanside, CA 92057
smg    Franchise Tax Board    Attn: Bankruptcy    P.O. Box 2952    Sacramento, CA 95812−2952
14609450    California Housing Finance Age    500 Capitol Mall, Ste. 1400 (M    Sacramento, CA 95814
14609451    Capital One    Carol Stream, IL 60197
14609452    Cavalry SPV I, LLC    500 Summit Lake Drive Ste 400    Valhalla, NY 10595
14633802    Directv, LLC    by American InfoSource as agent    PO Box 5008    Carol Stream, IL 60197−5008
14961690    FRANCHISE TAX BOARD    BANKRUPTCY SECTION MS A340    PO BOX 2952    SACRAMENTO CA 95812−2952
14609453    Franchise Tax Board    P.O. Box 2952    Sacramento, CA 95812−2952
14609454    Internal Revenue Service    P.O. Box 7346    Philadelphia, PA 19101−7346
14609455    Rancho San Geronimo Homeowners    825 College Blvd Ste 102−422    Oceanside, CA 92057
14609456    Select Portfolio Servicing Inc    Attn: Bankruptcy    Po Box 65250    Salt Lake City, UT 84165
14616368    Select Portfolio Servicing, Inc.    P.O. Box 65250    Salt Lake City UT 84165−0250
14616367    Tiffany & Bosco, P.A.    1455 Frazee Road    Suite 820    San Diego, CA 92108
14609457    Toyota Financial Services    Attn: Bankruptcy Dept    Po Box 8026    Cedar Rapids, IA 52409
14633246    Toyota Motor Credit Corporation    c/o Becket and Lee LLP    PO Box 3001    Malvern PA 19355−0701
14640542    Wells Fargo Bank, National Association as Trustee    P.O. Box 65250    Salt Lake City, UT 84165−0250

TOTAL: 16

# Exhibit "10"

**CSD 1183** [12/01/23]
Name, Address, Telephone No. & I.D. No.

Steven Michael Moehling
5420 Old Ranch Road
Oceanside, CA 92057
760-689-0966

Debtor / Movant (Pro Se)

FILED

2025 NOV 18 AM 9:43

CLERK
U.S. BANKRUPTCY CT
SO. DIST. OF CALIF.

## UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF CALIFORNIA
325 West F Street, San Diego, California 92101-6991

In Re

Steven Michael Moehling

Debtor

BANKRUPTCY NO. 19-03857-CL13

Tax I.D.(EIN)#: _____ /S.S.#:XXX-XX- 8925___   Debtor(s)

NOTICE OF HEARING AND MOTION *To Enforce Discharge Injunction*

TO: Wells Fargo Bank, N.A.; Select Portfolio Servicing, Inc.; Tiffany & Bosco, P.A.; Kutak Rock, LLC; Office of the United States Trustee

**You are hereby notified** that on _January 26, 2026_____, at __8:30 a.m, in Department _1_, Room __118__ of the Jacob Weinberger United States Courthouse, located at 325 West F Street, San Diego, California 92101-6991, there will be a hearing regarding the motion of _Steven Michael Moehling_____, Movant, for

Motion to Enforce Discharge Injunction

Any opposition or other response to this motion must be served upon the undersigned and the original and one copy of such papers with proof of service must be filed with the Clerk of the U.S. Bankruptcy Court at 325 West F Street, San Diego, California 92101-6991, **not later than fourteen (14)[1] days from the date of service.**

DATED: November 18, 2025

_____
[Attorney for] Moving Party

[1]Depending on how you were served, you may have additional time for response. See FRBP 9006.

SPGS 88   3857 NOT

**CSD 1183 (Page 2)** [05/01/23]

## CERTIFICATE OF SERVICE

I, the undersigned whose address appears below, certify:

That I am, and at all relevant times was, more than 18 years of age;

That on __18th__ day of __November_____, 20__25__, I served a true copy of the within NOTICE OF MOTION AND HEARING, together with the following pleadings [describe any other papers] on the following persons listed below by the mode of service shown below:

List additional papers:

Updated Certificate of Service, Motion to Enforce Discharge Injunction (Previously filed)

1. **To Be Served by the Court via Notice of Electronic Filing ("NEF"):**

   Under controlling Local Bankruptcy Rules(s) ("LBR"), the document(s) listed above will be served by the court via NEF and hyperlink to the document. On _____ , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the e-mail address(es) indicated and/or as checked below:

   ☐ Attorney for Debtor (or Debtor), if required:

   ☐ Chapter 7 Trustee:

   ☐ For Chpt. 7, 11, & 12 cases:

   UNITED STATES TRUSTEE
   ustp.region15@usdoj.gov

   ☐ For Chapter 13 cases assigned to:

   MICHAEL KOCH, TRUSTEE
   mkoch@ch13.sdcoxmail.com

2. **Served by United States Mail:**

   On __November 18, 2025_____ , I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing accurate copies in a sealed envelope in the United States Mail via 1) first class, postage prepaid or 2) certified mail with receipt number, addressed as follows:

   ☐ Attorney for Debtor (or Debtor), if required:

   See attached Service List

**CSD 1183 (Page 3)** [05/01/23]

3.      **Served by Personal Delivery, Facsimile Transmission, Overnight Delivery, or Electronic Mail:**

Under Fed.R.Civ.P.5 and controlling LBR, on _____ , I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission, by overnight delivery and/or electronic mail as follows:

☐      Attorney for Debtor (or Debtor), if required:

I declare under penalty of perjury under the laws of the United States of America that the statements made in this proof of service are true and correct.

Executed on   November 18, 2025 _____
                          (Date)

Steven Michael Moehling _____
(Typed Name and Signature)

5420 Old Ranch Road _____
(Address)

Oceanside CA, 92057 _____
(City, State, ZIP Code)

## SERVICE LIST

*Attachment to Certificate of Service – CSD 1183*
*In re: Steven Michael Moehling – Case No. 19-03857-CL13*
*Motion to Enforce Discharge Injunction*
*Hearing Date: January 26, 2026, at 8:30 a.m.*

---

### Creditor / Beneficial Owner

**Wells Fargo Bank, N.A.**
c/o CSC – Lawyers Incorporating Service
2710 Gateway Oaks Drive, Suite 150N
Sacramento, CA 95833

---

### Mortgage Servicer

**Select Portfolio Servicing, Inc.**
c/o CSC – Lawyers Incorporating Service
2710 Gateway Oaks Drive, Suite 150N
Sacramento, CA 95833

---

### Corporate Correspondence

**Select Portfolio Servicing, Inc.**
c/o CSC – Lawyers Incorporating Service
2710 Gateway Oaks Drive, Suite 150N
Sacramento, CA 95833

---

### Servicer's Bankruptcy Counsel of Record

**Tiffany & Bosco, P.A.**
2525 East Camelback Road, Suite 700
Phoenix, AZ 85016

---

**Current Litigation Counsel for SPS**

**Kutak Rock, LLP**
Attn: Steven Dailey
5 Park Plaza, Suite 1500
Irvine, CA 92614

---

**Office of the United States Trustee**
880 Front Street, Suite 3230
San Diego, CA 92101

---

**Courtesy Notices**

**Michael Koch, Chapter 13 Trustee**
402 W. Broadway, Ste 1450
San Diego, CA 92101-8544
Notice purposes only, No appearance is required

**Andrew Moher, Original Debtor Counsel**
Moher Law Group
424 F Street #203
San Diego, CA 92101
Notice purposes only, No appearance is required

---

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: November 18, 2025

Steven Michael Moehling, Debtor – Pro Se

# Exhibit "11"

Steven M. Dailey (SBN 163857)
Jennifer L. Andrews (SBN 222807)
KUTAK ROCK LLP
5 Park Plaza, Suite 1500
Irvine, CA 92614-8595
Telephone: (949) 417-0999
Facsimile: (949) 417-5394
Authorized E-Service Address: irvineintake@KutakRock.com
Email: Steven.dailey@kutakrock.com

Attorneys for Respondents
WELLS FARGO BANK, NATIONAL ASSOCIATION AS
TRUSTEE FOR SECURITIZED ASSET BACKED
RECEIVABLES LLC TRUST 2006-FR1 MORTGAGE PASS-
THROUGH CERTIFICATES, SERIES 2006-FR1 (erroneously
named as "WELLS FARGO BANK, N.A."); SELECT
PORTFOLIO SERVICING, INC.; and KUTAK ROCK LLP
(erroneously named as "Kutak Rock, LLC")

# UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE STEVEN MOEHLING,<br><br>Debtor. | Case No. 19-03857-CL13<br><br>Assigned to: Christopher B. Latham<br><br>**OPPOSITION TO DEBTOR'S MOTION TO ENFORCE DISCHARGE INJUNCTION UNDER 11 U.S.C. §§ 524(a)(2) § 524(i) AND 105(a)**<br><br>(Filed and served concurrently with Request for Judicial Notice)<br><br>Date: January 26, 2026<br>Time: 10:00 AM<br>Courtroom: 1, Room 218 |

///

///

///

///

///

- 1 -

OPPOSITION TO DEBTOR'S MOTION TO ENFORCE DISCHARGE INJUNCTION
UNDER 11 U.S.C. §§ 524(a)(2) § 524(i) AND 105(a)

WELLS FARGO BANK, NATIONAL ASSOCIATION AS TRUSTEE FOR SECURITIZED ASSET BACKED RECEIVABLES LLC TRUST 2006-FR1 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-FR1 ("WELLS FARGO, as Trustee"), SELECT PORTFOLIO SERVICING, INC. ("SPS"), and KUTAK ROCK LLP ("Kutak Rock") (collectively, "Respondents") hereby oppose the Motion to Enforce Discharge Injunction under 11 U.S.C. §§ 524(a)(2) § 524(i), and 105(a) ("Motion") filed by Debtor Steven Moehling ("Debtor").

## I.     INTRODUCTION.

Debtor filed the instant Motion, claiming a violation of the discharge injunction based on his contention that his lender and loan servicer have purportedly misapplied mortgage loan payments and made "potential inaccuracies in accounting and reporting," relating to the March 11, 2024 Notice of Final Cure. Debtor notably recently filed, and dismissed, a case in California state court based on the same contention, but now seeks the relief in his closed bankruptcy case. Respondents submit that the Motion should be denied for multiple reasons.  First, the relief Debtor seeks is not a determination that the discharge injunction has been violated, and adjudicating his contentions would necessarily involve reopening his bankruptcy case.  He has not procedurally or substantively presented a basis to reopen to this Court. Second, the Debtor cannot obtain the relief sought by Motion, but the contentions would appropriately be brought through an adversary proceeding. Third, the Debtor misapplied bankruptcy law as the postpetition payments were not discharged.  Fourth, the Debtor fails to demonstrate a willful violation.  Fifth, the Debtor ignores the exception to Section 524(i) because his Plan payments were in default.  For these, and the other reasons addressed herein, Respondents respectfully submit the Motion should be denied.

## II.    FACTUAL AND PROCEDURAL BACKGROUND.

Debtor owns the real property located at 5420 Old Ranch Rd., Oceanside, California 92057 ("Property").  On September 2, 2005, Debtor obtained a loan from

OPPOSITION TO DEBTOR'S MOTION TO ENFORCE DISCHARGE INJUNCTION
UNDER 11 U.S.C. §§ 524(A)(2) § 524(I) AND 105(A)

Fremont Investment & Loan in the amount of $484,500.00 that was secured by a Deed of Trust recorded on the Property on September 22, 2005 in the San Diego Recorder's Office, Doc. No. 2005-0818446 ("Deed of Trust"). (Deed of Trust, RJN, Ex. "1".) MERS was the original beneficiary of that Deed of Trust. (RJN, Ex. "1".) On April 19, 2011, an Assignment of Deed of Trust was recorded reflecting the Deed of Trust was assigned to WELLS FARGO, as Trustee. (RJN, Ex. "2".) SPS is the servicer for WELLS FARGO, as Trustee.

Debtor filed his Chapter 13 Bankruptcy Petition on June 28, 2019 ("Petition Date"). (Dkt. 1). On Debtor's Schedules and Statement of Financial Affairs (Dkt. 1), the Debtor indicated that the Noteholder maintains a first priority lien on the Property and that as of the date of filing, he was indebted on the loan secured by the Deed of Trust in the amount of $371,954. (Dkt. 1.) On the Petition Date, the Debtor also filed a Chapter 13 Plan (Dkt. 2). In his Plan, Debtor proposed to cure his past due arrearage of $13,000 to the Noteholder, by making monthly payments of $500, with such payments to be remitted through the Chapter 13 Trustee. (Dkt. 2.) The Plan was confirmed on August 16, 2019. (Dkt. 14).

On September 6, 2019, WELLS FARGO, as Trustee timely filed a Proof of Claim (Claim No. 5-1) (the "Claim") pursuant to which it asserted an outstanding balance of $373,904.70 and an arrearage of $16,424.69 (the "Prepetition Arrearage") as of the Petition Date. On April 1, 2020, WELLS FARGO, as Trustee filed a Motion for Relief from Automatic Stay ("Motion for Relief"), in which it asserted that the Prepetition Arrearage remained outstanding, along with a post-petition arrearage of $6,557.52 ("Postpetition Arrearage"). (Dkt. 17.) In response, the Debtor acknowledged that he fell behind on his payments. (Dkt. 20.) On April 24, 2020, the Court entered the Order on Stipulation Granting Adequate Protection in which the Court ordered the Debtor to tender his monthly payments and cure the Postpetition Arrearage over 9 months. (Dkt. 25.) On May 5, 2023, the Debtor filed an amended Plan ("Amended Plan") through which he increased his monthly

payments to reflect the accurate Prepetition Arrearage due and owing to WELLS FARGO, as Trustee. (Dkt. 30.) The Amended Plan was approved on July 20, 2023. (Dkt. 37.)

On February 20, 2024, the Chapter 13 Trustee filed a Notice of Final Cure Payment and Completion of Payments Under the Plan ("Cure Notice") in which he asserted the Prepetition Arrearage had been paid in full. (Dkt. 42.) In its Response to Notice of Final Cure WELLS FARGO, as Trustee, indicated that while the Prepetition Arrearage had been paid in full, there was an outstanding Postpetition Arrearage of $6,021.17. (Dkt. 48.)

On April 4, 2024, the Court entered the Order of Discharge ("Discharge Order"). (Dkt. 49.) The Discharge Order provides that, among other things, it does not discharge a debtor from certain long-term debt obligations, like those owed to WELLS FARGO, as Trustee, pursuant to 11 U.S.C. § 1322(b)(5). (Dkt. 49.) On April 29, 2024, the Court entered the Order Approving Account, Discharging Chapter 13 Trustee and Closing Estate, which effectively closed the case. (Dkt. 53.)

On August 4, 2025, Debtor filed a Claim against SPS in the Small Claims Court in the Superior Court of California, County of San Diego, Case No. 25SC0354C. (RJN, Ex. "3".) Through that Claim debtor alleged that SPS claimed post-petition delinquency despite his alleged full compliance with the Stipulation. (RJN, Ex. "3".) On September 25, 2025, Debtor dismissed the Claim. (RJN, Ex. "4".)

Debtor filed the instant Motion on November 18, 2025. (Dkt. 61.)

III.    **ARGUMENT: DEBTOR'S MOTION SHOULD BE DENIED.**

Through his Motion, Debtor seeks to enforce the discharge injunction under 11 U.S.C. § 524(a)(2) and (i) asserting that SPS misapplied payments, among other things. Debtor's Motion should be denied on multiple grounds.

///

///

OPPOSITION TO DEBTOR'S MOTION TO ENFORCE DISCHARGE INJUNCTION UNDER 11 U.S.C. §§ 524(A)(2) § 524(I) AND 105(A)

**A.     The Debtor Has Not Demonstrated a Basis to Reopen the Bankruptcy Case.**

The relief Debtor seeks through his Motion is not a true determination that the discharge injunction has been violated, and adjudicating his claims would necessarily involve the reopening of his bankruptcy case.  The Debtor's bankruptcy proceeding was closed on April 29, 2024, over a year and half prior to his filing of the instant Motion.  Rule 5010 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") and Rule 5010 of the Local Rules for the United States Bankruptcy Court of the Southern District of California (the "Local Rules"), both require that a case can only be reopened upon motion of the debtor or a party in interest, under 11 U.S.C § 350(b).  Under Section 350(b), a case may be reopened to "accord relief to the debtor, or for other cause."  Prior to adjudicating an alleged violation of the discharge injunction, the case must be reopened.  (*See In re Cohn*, 2008 WL 8013412, at *3 (Bankr. S.D. Cal. 2008) (finding that the reopening of a case is a necessary procedural hurdle that must be overcome before the Court can consider the substance of any underlying matters.)  Ultimately, requests to reopen lie within the sound discretion of the bankruptcy court.  (*See Matter of Seats,* 537 F.2d 1176 (4th Cir. 1976).)  The Debtor has not sought to reopen the case nor set forth a basis for doing so.

Debtor argues that a reopening of the case is not necessary for this Court to hear the Motion.  (Motion, p. 4.)  The Debtor argues that if necessary, the Court should do so for the limited purpose of considering the Motion.  The Debtor, however, has wholly failed to address the standard set forth in 11 U.S.C. § 350.  Absent a proper and fully supported motion to reopen and the granting of such relief, the Court should not consider the Motion.  (*See id.*). Debtor has not moved to reopen the cases, and not demonstrated a sufficient basis to do so.

The issues here relate to the application of postpetition and potentially post-closing payments.  The Debtor previously sought to adjudicate the matters in

KUTAK ROCK LLP
ATTORNEYS AT LAW
IRVINE

- 5 -

OPPOSITION TO DEBTOR'S MOTION TO ENFORCE DISCHARGE INJUNCTION
UNDER 11 U.S.C. §§ 524(A)(2) § 524(I) AND 105(A)

California state court, but then dismissed that action. (RJN, Exs. "3", "4".)   It appears the Debtor did so simply because he chose to adjudicate this matter in bankruptcy court. However, the Debtor's desire to litigate in this Court, as opposed to California state court, which also has jurisdiction, does not constitute "cause" for reopening the bankruptcy case. (*See In re Dabbs*, 72 B.R. 73, 74-75 (Bankr N.D. Ala. 1987).)  This is the case because state courts also have concurrent jurisdiction. (*See id, see also In re Strano*, 248 B.R. 492 (Bankr. D.N.J. 2000), *In re Brice*, 79 B.R. 310 (Bankr. S.D. Ohio 1987).)  This is the case even when the underlying issue pertains to a discharge. (*See Dabbs*, 72 B.R. at 74-75.)  Any request to reopen should be denied.

**B.      The Debtor Cannot Obtain the Relief Sought by Motion, but the Claims Must Be Brought by an Adversary Proceeding.**

The Debtor's request relates to the scope of an injunction, not the enforcement of an injunction and as such, must be brought by adversary proceeding. This matter is not a simple contempt proceeding seeking damages arising from the violation of a discharge injunction. (*See Barrientos v. Wells Fargo Bank, Na.*, 633. F.3d. 1186 (9th Cir. 2011).)   In contrast, it is effectively a proceeding to determine whether the injunction of 524 applies in the first instance (which Respondents assert it does not). "Determinations regarding the scope of the discharge require a declaratory judgment obtained in an adversary proceeding. (*In re Munoz*, 287 B.R. 546, 551 (B.A.P. 9th Cir. 2002) (citing Fed. R. Bankr.P. 7001(9); *Ung v. Boni (In re Boni)*, 240 B.R. 381, 385–86 (9th Cir. BAP 1999).)  "It is long-settled that an action asking a court that is administering an injunction whether it applies to proposed conduct is justiciable notwithstanding that the ruling is advisory in nature. (*Id.* (citing *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 15–16, 65 S.Ct. 478, 89 L.Ed. 661 (1945); *Hendrix v. Page (In re Hendrix)*, 986 F.2d 195, 200 (7th Cir. 1993).) "It is error to circumvent the requirement of an adversary proceeding by using a 'contested matter' motion under Federal Rule of Bankruptcy

Procedure 9014." (*Id.* (citing *Bear v. Coben (In re Golden Plan)*, 829 F.2d 705, 711–12 (9th Cir.1986); *GMAC Mortgage Corp. v. Salisbury (In re Loloee)*, 241 B.R. 655, 660 (9th Cir. BAP 1999); *Boni*, 240 B.R. at 385–86.) In this case, there is no forgone conclusion that the discharge applies to the actions complained of by the Debtor, which include a non-dischargeable debt owed to WELLS FARGO, as Trustee, and a payment reconciliation which arose a year and a half after the bankruptcy case closed. To the extent the Court does not find that 524 does not apply for the reasons set forth below, this matter should be dismissed as procedurally improper.

**C.     The Debtor Misapplies Bankruptcy Law as the Postpetition Payments Were Not Discharged.**

The discharge injunction of Section 524 precludes, among other things, creditors from trying to collect any such debt as a personal liability of the debtor, after a debtor has received a discharge. (11 U.S.C. § 524(a)(2).) Under 11 U.S.C. Section 1328(a), a debtor is entitled to discharge in a Chapter 13 proceeding upon the completion of "all payments under the plan . . .." Pursuant to the Plan, the only payments provided for thereunder were the curing of the Prepetition Arrearage. The Chapter 13 Trustee alleged and SPS did not dispute, that the Debtor remitted such payments in full. In contrast, what the Debtor disputes, relates to other, non-cure payments, allegedly made in connection with the debt owed to WELLS FARGO, as Trustee. Such payments were not discharged and are therefore, not subject to 11 U.S.C. § 524(a)(2).

Long-term debts, like those owed to the Noteholder, are nondischargeable. As similar courts have previously held, "[m]ortgage-related debts are generally non-dischargeable under Chapter 13 because Chapter 13 bankruptcy plans cannot modify any claims secured by a debtor's principal residence." (*See Demay v. Wells Fargo Home Mortgage, Inc.*, 279 F. Supp. 3d 1004, 1009 (N.D. Cal. 2017) (citing 11 U.S.C. § 1322(b)(2); *In re Zimmer*, 313 F.3d 1220, 1222 (9th Cir. 2002); *In re*

*Rodriguez*, 421 B.R. 356, 364 (Bankr. S.D. Tex. 2009) ("[C]laims held by home mortgage lenders are not discharged at the conclusion of a successful chapter 13 bankruptcy case.")) As the District Court in *Demay* went on to note:

> Although § 1322(b)(5) provides an exception for the 'curing of any default' and 'maint[aning] of payments' on claims due after the Chapter 13 proceeding, the scope of § 1322(b)(5) is still narrow. *See In re Rodriguez*, 421 B.R. at 365. Section 1328(a)(1) explicitly states that modifications under § 1322(b)(5) do not discharge the underlying debt. *See id*.; *see also In re Dukes*, No. 9:09–bk–02778–FMD, 2015 WL 3856335, at *4 (Bankr. M.D. Fla. 2015). In light of this statutory framework, numerous courts have concluded that debts secured by a principal residence survive a Chapter 13 discharge. *See, e.g., In re Rodriguez*, 421 B.R. at 366 (finding that "no statutory basis exists for discharging home mortgage debt"); *In re Hunt*, No. 14-02212-5-DMW, 2015 WL 128048, at *4 (Bankr. E.D. N.C. 2015) (holding that discharging home mortgage debt would be an impermissible loan modification under § 1322(b)(2)); *In re Wagner*, No. 06-30919, 2011 WL 2636841, at *3 (Bankr. S.D. Tex. 2011) ("[T]he rights of a secured home mortgage lender are generally unaffected by the discharge.").

(*Demay* 279 F. Supp. 3d at 1009.) Furthermore, a discharge under 11 U.S.C. § 1328(a) is granted only after there is a finding the debtor has completed its payments under the plan per Bankruptcy Rules 3002 and 5009. Such discharge orders equate to a finding that all payments have been made. (*See In re Valdellon,* 665 B.R. 420, 432 (B.A.P. 9th Cir. 2024).) WELLS FARGO, as Trustee objected to the Cure Notice in this case, indicating that all postpetition payments had not been made. The Debtor did not dispute nor seek adjudication of such assertions. Accordingly, under 11 U.S.C. § 524(a)(2), the Debtor cannot demonstrate a violation of the discharge injunction because no discharge was granted with respect to the non-arrearage debt owed to WELLS FARGO, as Trustee.

The Debtor also ignores that WELLS FARGO, as Trustee is entitled to the safe harbor provisions of 11 U.S.C. § 524(j). Under Section 524(j), the injunction provisions of 524 do not apply when: (i) such creditor holds a secured claim; (ii) secured by the debtor's principal residence; (iii) the underlying act in the ordinary

course of business; and (iv) such act relates to seeking or obtaining period payments in lieu of *in rem* relief. There is no dispute here that WELLS FARGO, as Trustee's claim is against the Debtor's residence. The act complained of by the Debtor relates to a reconciliation of payments allegedly made by the Debtor and his ongoing default. Respondents have previously provided a reconciliation of this to the Debtor. Regardless, these types of actions are in the ordinary course of SPS's business and directly relate to their efforts to collect payments that are past due. As such, SPS clearly falls within the safe harbor of Section 524(j).

### D.    The Debtor Fails to Demonstrate a Willful Violation.

The Debtor has also failed to demonstrate he is entitled to relief under 11 U.S.C. § 524(i). Section 524(i) address the "willful failure of a creditor to credit payments received under a plan…." To obtain such relief, there must be a demonstration that such failure by the creditor was willful. Willful is typically defined to callous or reckless disregard. (*In re Breul*, 533 B.R. 782, 797 (Bankr. C.D. Cal. 2015).) Simply asserting a dispute over the application of payments is not a "willful failure."

### E.    The Debtor Ignores the Exception to Section 524(i) as His Plan Was in Default.

Section 524(i) provides that there is not a violation if the "plan is in default, or the creditor has not received payments required to be made under the plan in the manner required by the plan..." Whether the monthly mortgage payments which the Debtor was obligated to make directly constitute payments under the Plan or not, the Debtor's requested relief fails. If the postpetition monthly payments are not payments under the Plan, then 524(i) is inapplicable. If the monthly postpetition payments are considered payments under the Plan, the exception applies because the Debtor was in default. Specifically, as set forth in the Motion for Relief from the Automatic Stay, the Debtor's response, and the response to the Cure Notice, it is apparent that the Debtor failed to maintain his postpetition monthly payments.

KUTAK ROCK LLP
ATTORNEYS AT LAW
IRVINE

OPPOSITION TO DEBTOR'S MOTION TO ENFORCE DISCHARGE INJUNCTION
UNDER 11 U.S.C. §§ 524(A)(2) § 524(I) AND 105(A)

Even the Debtor's own Motion acknowledges this.  As a result, the Plan was in default and/or the Debtor was not making the Plan payments as required.  The Debtor did not dispute such default for over a year and a half and only now raises the issue. Beyond this, at least a portion of the Debtor's alleged misapplied payments or accounting discrepancies relate to a post-closing matter for which Section 524 would not apply in any event.  (*See In re Valdellon*, 655 B.R. 420 (B.A.P. 9th Cir. 2024).)  Given that the Plan was in default, even if the direct payments were "payments under the plan", Section 524(i) does not apply in light of such payments.  If the Debtor disputes the application of payments by SPS, his recourse is to pursue his relief in state court, not under Section 524.

## IV.    CONCLUSION.

Respondents respectfully request this Court deny the Debtor's Motion.

Dated:  December 9, 2025

KUTAK ROCK LLP

By:  /s/ Steven M. Dailey
Steven M. Dailey
Jennifer L. Andrews
Attorneys for Respondents
WELLS FARGO BANK, NATIONAL ASSOCIATION AS TRUSTEE FOR SECURITIZED ASSET BACKED RECEIVABLES LLC TRUST 2006-FR1 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-FR1, SELECT PORTFOLIO SERVICING, INC., and KUTAK ROCK LLP

KUTAK ROCK LLP
ATTORNEYS AT LAW
IRVINE

- 10 -

Steven M. Dailey, Bar No. 163857
Jennifer L. Andrews, Bar No. 222807
**KUTAK ROCK LLP**
5 Park Plaza, Suite 1500
Irvine, California  92614-8595
Telephone:   (949) 417-0999
Facsimile:    (949) 417-5394
Authorized E-Service Address:  irvineintake@KutakRock.com
Email:  Steven.dailey@kutakrock.com

Attorneys for Claimant
SELECT PORTFOLIO SERVICING, INC.

# UNITED STATES BANKRUPTCY COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| In re: | Case No. 19-03857-CL13 |
|---|---|
| STEVEN MOEHLING, | Chapter 13 |
| Debtor. | Assigned to: Christopher B. Latham |
| | **CERTIFICATE OF SERVICE** |

///

///

///

///

///

///

///

///

///

///

///

KUTAK ROCK LLP
ATTORNEYS AT LAW
IRVINE

CERTIFICATE OF SERVICE

4920-9114-1499.1

# CERTIFICATE OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the city of Irvine in the County of Orange, State of California. I am over the age of 18 and not a party to the within action. My business address is 5 Park Plaza, Suite 1500, Irvine, California 92614-8595.

On December 9, 2025, I served on all interested parties as identified on the below mailing list the following document(s) described as:

**1.** **OPPOSITION TO DEBTOR'S MOTION TO ENFORCE DISCHARGE INJUNCTION UNDER 11 U.S.C. §§ 524(a)(2) § 524(i) AND 105(a)**

**[X]** **(BY FIRST CLASS MAIL)** I deposited such envelope in the mail at Irvine, California. The envelope was mailed with postage thereon fully prepaid. I am readily familiar with the firm's practice for collection and processing correspondence for mailing. Under that practice, this(these) document(s) will be deposited with the U.S. Postal Service on this date with postage thereon fully prepaid at Irvine, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

**Steven Michael Moehling**
5420 Old Ranch Road
Oceanside, CA 92057

In addition to any paper copies served by U.S. Mail, registered ECF participants, including parties who have requested Special Notice in this case, will receive an electronic copy of the foregoing document when it has been filed with the Court.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on December 9, 2025, at Irvine, California.

_____
Wendy G. Bonsall

# Exhibit "12"

Steven M. Dailey (SBN 163857)
Jennifer L. Andrews (SBN 222807)
KUTAK ROCK LLP
5 Park Plaza, Suite 1500
Irvine, CA  92614-8595
Telephone:   (949) 417-0999
Facsimile:    (949) 417-5394
Authorized E-Service Address:  irvineintake@KutakRock.com
Email:          Steven.dailey@kutakrock.com

Attorneys for Respondents
WELLS FARGO BANK, NATIONAL ASSOCIATION AS
TRUSTEE FOR SECURITIZED ASSET BACKED
RECEIVABLES LLC TRUST 2006-FR1 MORTGAGE PASS-
THROUGH CERTIFICATES, SERIES 2006-FR1 (erroneously
named as "WELLS FARGO BANK, N.A."); SELECT
PORTFOLIO SERVICING, INC.; and KUTAK ROCK LLP
(erroneously named as "Kutak Rock, LLC")

## UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE STEVEN MOEHLING, Debtor. | Case No.  19-03857-CL13 |
| | Assigned to: Christopher B. Latham |
| | **REQUEST FOR JUDICIAL NOTICE** |
| | Filed and served concurrently with Opposition to Motion to Enforce Discharge Injunction |
| | Date:            January 26, 2026<br>Time:            10:00 AM<br>Courtroom:  1, Room 218 |

///

///

///

///

///

///

- 1 -

REQUEST FOR JUDICIAL NOTICE

4877-5610-6877.2

WELLS FARGO BANK, NATIONAL ASSOCIATION AS TRUSTEE FOR SECURITIZED ASSET BACKED RECEIVABLES LLC TRUST 2006-FR1 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-FR1 ("WELLS FARGO, as Trustee"), SELECT PORTFOLIO SERVICING, INC. ("SPS"), and KUTAK ROCK LLP ("Kutak Rock") (collectively, "Respondents") hereby request this Court take judicial notice, pursuant to Federal Rules of Evidence, Rule 201, of the following documents. [*Lee v. City of L.A.*, 250 F.3d 668, 688–89 (9th Cir. 2001); see also *Fernandez v. Wells Fargo Bank, N.A.*, 2012 WL 5350256, at *2 (N.D. Cal. Oct. 29, 2012) (taking judicial notice of similar documents).

| **Exhibit** | **Document** |
|---|---|
| "**1**" | Deed of Trust recorded September 22, 2005 in Official Records, County of San Diego as Document Number 2005-0818446.  A true and correct copy is attached as Exhibit "**1**". |
| "**2**" | Assignment of Deed of Trust recorded April 19, 2011 in Official Records, County of San Diego as Document Number .  A true and correct copy is attached as Exhibit "**2**". |
| "**3**" | Claim filed August 4, 2025 regarding *Moehling vs. Select Portfolio Servicing Inc.*, Small Claims Court, Superior Court of California, County of San Diego, Case No. 25SC0354C. A true and correct copy is attached as Exhibit "**3**". |
| "**4**" | Dismissal of Claim filed September 25, 2025 regarding *Moehling vs. Select Portfolio Servicing Inc.,* Small Claims Court, Superior Court of California, County of San Diego, Case No. 25SC0354C. A true and correct copy is attached as Exhibit "**4**". |

KUTAK ROCK LLP
ATTORNEYS AT LAW
IRVINE

REQUEST FOR JUDICIAL NOTICE

4877-5610-6877.2

Dated:  December 9, 2025                KUTAK ROCK LLP


                                        By: /s/ Steven M. Dailey
                                           Steven M. Dailey
                                           Jennifer L. Andrews
                                           Attorneys for Respondents
                                           WELLS FARGO BANK,
                                           NATIONAL ASSOCIATION AS
                                           TRUSTEE FOR SECURITIZED
                                           ASSET BACKED RECEIVABLES
                                           LLC TRUST 2006-FR1
                                           MORTGAGE PASS-THROUGH
                                           CERTIFICATES, SERIES 2006-
                                           FR1, SELECT PORTFOLIO
                                           SERVICING, INC., and KUTAK
                                           ROCK LLP

KUTAK ROCK LLP
ATTORNEYS AT LAW
IRVINE

REQUEST FOR JUDICIAL NOTICE

4877-5610-6877.2

# Exhibit "1"

COMMONWEALTH LAND TITLE ,

15392058

Recording Requested By:

Return To:
**FREMONT INVESTMENT & LOAN**
**P.O. BOX 34078**
**FULLERTON, CA  92834-34078**

Prepared By:
**BARBARA LICON**

7000165009

DOC #   2005-0818446

SEP 22, 2005      8:00 AM
OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
GREGORY J. SMITH, COUNTY RECORDER
FEES:         63.00
PAGES:         19      DA:      1

2005-0818446



──────────── [Space Above This Line For Recording Data] ────────────

# DEED OF TRUST

MIN  **1001944-7000165009-1**

## DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) **"Security Instrument"** means this document, which is dated **September 2, 2005**                    , together with all Riders to this document.
(B) **"Borrower"** is **STEVEN MOEHLING, A SINGLE MAN**

Borrower's address is **5420 OLD RANCH ROAD   , OCEANSIDE, CA 92057**
. Borrower is the trustor under this Security Instrument.
(C) **"Lender"** is   **FREMONT INVESTMENT & LOAN**

Lender is a   **CORPORATION**
organized and existing under the laws of   **CALIFORNIA**

**CALIFORNIA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**   Form 3005  1/01



**-6A(CA)** (0207)

Page 1 of 15          Initials

VMP MORTGAGE FORMS · (800)521-7291

Lender's address is
**2727 EAST IMPERIAL HIGHWAY, BREA CA 92821**
(D) "Trustee" is   **FREMONT GENERAL CREDIT CORPORATION, A CALIFORNIA CORPORATION**

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated   **September 2, 2005**
The Note states that Borrower owes Lender **Four Hundred Eighty-Four Thousand, Five Hundred and No/100 ----------------------------------** Dollars
(U.S. $      **484,500.00**      ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than   **October 1, 2035**

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials:

-6A(CA) (0207)                                    Page 2 of 15                                    Form 3005  1/01

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the **County** of **SAN DIEGO**

[Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]

**SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART THEREOF**

| | |
|---|---|
| Parcel ID Number: **15735039**<br>**5420 OLD RANCH RD**<br>**OCEANSIDE**<br>("Property Address"): | which currently has the address of<br>[Street]<br>[City], California **92057**   [Zip Code] |

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

Initials: _____

-6A(CA) (0207)                    Page 3 of 15                    Form 3005  1/01

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

Initials: _____

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10

Initials: _____

-6A(CA) (0207)                          Page 5 of 15                          Form 3005  1/01

days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

Initials: _____

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

Initials:

-6A(CA) (0207)                            Page 7 of 15                            Form 3005  1/01

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage**

Initials: _____

-6A(CA) (0207)                    Page 8 of 15                    Form 3005  1/01

Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or

Initials: _____

-6A(CA) (0207)                    Page 9 of 15                    Form 3005  1/01

any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict

Initials: _____

shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

Initials: _____

-6A(CA) (0207)                 Page 11 of 15                 Form 3005   1/01

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Initials: _____

-6A(CA) (0207)                    Page 12 of 15                    Form 3005   1/01

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

Initials: _____

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____

_____ (Seal)
STEVEN MOEHLING                    -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)     _____ (Seal)
                       -Borrower                            -Borrower

_____ (Seal)     _____ (Seal)
                       -Borrower                            -Borrower

_____ (Seal)     _____ (Seal)
                       -Borrower                            -Borrower

State of California
County of San Diego
On ~~9-605-CA~~
9-6-2005

before me, Edgar Allen Harris
Steven Moehling    personally appeared

{ ss.

, ~~personally-known-to-me~~
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_Edgar Allen Harris_ (Seal)

EDGAR ALLEN HARRIS
Commission # 14111??
Notary Public - California
San Diego County
My Comm. Expires Apr 14, 2007

EDGAR ALLEN HARRIS
Commission # 1411168
Notary Public - California
San Diego County
My Comm. Expires Apr 14, 2007

Initials:

# ADJUSTABLE RATE RIDER

THIS ADJUSTABLE RATE RIDER is made this **2nd** day of **September**, **2005**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to **FREMONT INVESTMENT & LOAN**

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:
**5420 OLD RANCH ROAD   OCEANSIDE, CA 92057**

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A.    Sections 3 and 4 of the Note state as follows:

3.    PAYMENTS
(A)  Time and Place of Payments
I will make a payment on the first day of every month, beginning on **November 1, 2005**. Before the First Principal and Interest Payment Due Date, as described in Section 4 of this Note, my payment will equal one-twelfth of one year's interest that would be due on an amount equal to the unpaid principal balance of the Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.
I will make monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal, interest and any other charges that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before principal. If, on **October 1, 2035**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at **2727 EAST IMPERIAL HIGHWAY, BREA CA 92821**
or at a different place if required by the Note Holder.

(B)  Amount of My Initial Monthly Payments
My initial monthly payment will be in the amount of U.S. $ **2,624.37**. However, if I make a partial principal prepayment prior to the first Change Date, my monthly payment will decrease for the remainder of the term that my scheduled payments consist only of interest.

(C)  Monthly Payment Changes
Beginning with the First Principal and Interest Due Date, my monthly payment will change, as described in Section 4 of this Note. The Note Holder will notify me prior to the date of changes in my monthly payment.

4.    ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A)  Change Dates
The initial fixed interest rate I will pay will change to an adjustable interest rate on the first

Page 1 of 3

IOARMP1  jxn  06/06/03

day of **October 1, 2007** , and the adjustable interest rate I will pay may change on that date every sixth month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of Interbank offered rates for six-month U.S. dollar-denominated deposits in the London market based on quotations of major banks based on the London Interbank Offered Rate ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index and adjust the Margin, as defined below. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Five and Forty-Two Hundredths** percentage points (**5.4200** %) (the "Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4 (D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **8.500** % or less than **6.5000** %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than **One and One-Half** percentage point(s) (**1.5000** %) from the rate of interest I have been paying for the preceding month. My interest rate will never be greater than **12.5000** % or less than **6.5000** %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after each Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the telephone number of a person who will answer any question I may have regarding the notice.

**(G) Date of First Principal and Interest Payment**

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be the first monthly payment date after the first Change Date.

**B.    TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument is amended to read as follows:

Page 2 of 3

IOARMP2  jxn 06/10/03

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not an natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____     9/6/05
Borrower **STEVEN MOEHLING**              Date

_____     _____
Borrower                                  Date

_____     _____
Borrower                                  Date

_____     _____
Borrower                                  Date

_____     _____

IOARMP3  TG  03/24/04                  Page 3 of 3

# Exhibit "A"

All that certain real property situate in the County of San Diego, State of California, described as follows:

Lot 39 of Rancho San Geronimo Unit No. 1, in the City of Oceanside, County of San Diego, State of California, according to Map thereof No. 8579, filed in the Office of the County Recorder of San Diego County, May 19, 1977.

Assessor's Parcel Number      **157-350-39-00**

# Exhibit "2"

DOC # 2011-0202579

APR 19, 2011      8:00 AM
OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE 1522
Ernest J. Dronenburg, Jr., COUNTY RECORDER
FEES:              22.00
                              DA:      1
**PAGES:**      **2**

*RECORDING REQUESTED BY:*

**RETURN TO**
Prepared by: Cory Messer
Ocwen Loan Servicing, LLC
1661 Worthington Road, Suite 100
West Palm Beach, Florida, 33409
Phone Number: 561-682-8835
6770604923615
Attorney Code: 24110

2011-10405

2110125

**ASSIGNMENT OF DEED OF TRUST**
**CALIFORNIA**

This **ASSIGNMENT OF DEED OF TRUST** entered into as of the 1ST day of SEPTEMBER, 2010, from **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS)**, as nominee for FREMONT INVESTMENT & LOAN, whose address 1901 E Voorhees Street, Suite C, Danville, IL 61834, its successors and assigns, ("Assignor) to **WELLS FARGO BANK, NATIONAL ASSOCIATION, TRUSTEE POOLING AND SERVICING AGREEMENTDATED AS OF FEBRUARY 1, 2006 SECURITIZED ASSET BACKED RECEIVABLES LLC TRUST 2006-FR1 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-FR1**, whose address is c/o Ocwen Loan Servicing, LLC, 1661 Worthington Road, Suite 100, West Palm Beach, Florida, 33409, (Assignee) its successors and assigns, all its rights, title and interest in and to a certain mortgage duly recorded in the Office of the County Recorder of **SAN DIEGO** County, State of **CALIFORNIA**, as follows;

Trustor: STEVEN MOEHLING
Trustee: FREMONT GENERAL CREDIT CORPORATION
Beneficiary: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ACTING SOLELY AS NOMINEE FOR FREMONT INVESTMENT & LOAN
Document Date: SEPTEMBER 02, 2005
Amount: $ 484,500.00
Date Recorded: SEPTEMBER 22, 2005
Document/Instrument/Entry Number: 2005-0818446
Page: 2463
Property Address: 5420 OLD RANCH ROAD, OCEANSIDE, CA

*Property more particularly described in the above referenced recorded Deed of Trust*

This Assignment is made without recourse, representation or warranty.

DATED: APRIL 06, 2011 .

1523

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC. ("MERS")

BY: _____

NAME: Christina Carter

TITLE: Vice President


State of FLORIDA
County of PALM BEACH

Lesli Goodman

On APRIL 06, 2011, before me, _____, personally Christina Carter personally known to me to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the
entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Florida that the foregoing paragraph is true
and correct.

WITNESS my hand and official seal.

_____
Signature of Notary –

Notary Public State of Florida
Lesli D Goodman
My Commission EE025748
Expires 09/13/2014

MIN: 100194470001650091

MERS Ph.#:  (888) 679 – 6377

Exhibit "3"

## SC-100

# Plaintiff's Claim and ORDER
# to Go to Small Claims Court

## Notice to the person being sued:

* You are the defendant if your name is listed in ② on page 2 of this form or on form SC-100A. The person suing you is the plaintiff, listed in ① on page 2.

* You and the plaintiff must go to court on the trial date listed below. If you do not go to court, you may lose the case. If you lose, the court can order that your wages, money, or property be taken to pay this claim.

* Bring witnesses, receipts, and any evidence you need to prove your case.

* Read this form and all pages attached to understand the claim against you and to protect your rights.

## Aviso al Demandado:

* Usted es el Demandado si su nombre figura en ② de la página 2 de este formulario, o en el formulario SC-100A. La persona que lo demanda es el Demandante, la que figura en ① de la página 2.

* Usted y el Demandante tienen que presentarse en la corte en la fecha del juicio indicada a continuación. Si no se presenta, puede perder el caso. Si pierde el caso, la corte podría ordenar que le quiten de su sueldo, dinero u otros bienes para pagar este reclamo.

* Lleve testigos, recibos y cualquier otra prueba que necesite para probar su caso.

* Lea este formulario y todas las páginas adjuntas para entender la demanda en su contra y para proteger sus derechos.

*Clerk stamps date here when form is filed.*

F I L E D
Clerk of the Superior Court

AUG 0 4 2025

By: A. Santillan-Celedon, Deputy

*Fill in court name and street address:*

**Superior Court of California, County of San Diego**

CENTRAL DIVISION, SMALL CLAIMS,
330 W. BROADWAY, SAN DIEGO, CA 92101

*Court fills in case number when form is filed.*

**Case Number:**

25SC03543C

**Case Name:**

Moehling vs Select
Portfolio Servicing Inc

## Order to Go to Court

**The people in ① and ② must attend court:** *(Clerk fills out section below.)*

| Trial Date | Date | Time | Department | Name and address of court, if different from above |
|---|---|---|---|---|
| | 1. 11/19/2025 | 8:30 AM | 1401 | For Hearing Appearance Information-Visit www.sdcourt.ca.gov 1100 Union St San Diego CA 92101 |
| | 2. | | | |

3. Written request for continuance must include a $10.00 fee and be submitted at least 10 days before trial date.

Date: AUG 0 5 2025   Clerk, by _____ , Deputy A. Ramirez Gonzalez

## Instructions for the person suing:

Do not use this form to recover COVID-19 rental debt, which is unpaid rent or other financial obligations under a tenancy due between March 1, 2020, and September 30, 2021. (See Code of Civil Procedure, §1179.02.) To recover COVID-19 rental debt, use form SC-500, *Plaintiff's Claim and ORDER to Go to Small Claims Court.*

* You are the plaintiff. The person you are suing is the defendant.

* Before you fill out this form, read form SC-100-INFO, *Information for the Plaintiff,* to know your rights. You can get form SC-100-INFO at any courthouse or county law library, or go to *www.courts.ca.gov/forms.*

* Fill out pages 2, 3, and 4 of this form. Make copies of all the pages of this form and any attachments—one for each party named in this case and an extra copy for yourself. Take or mail the original and the copies to the court clerk's office and pay the filing fee. The clerk will write the date of your trial in the box above. Your court may allow electronic filing. Check your local court website for information: *www.courts.ca.gov/find-my-court.htm.*

* You must have someone at least 18—not you or anyone else listed in this case—give each defendant a court-stamped copy of all pages of this form and any pages this form tells you to attach. There are special rules for "serving," or delivering, this form to public entities, associations, and some businesses. See forms SC-104, SC-104B, and SC-104C.

* Go to court on your trial date listed above. Bring witnesses, receipts, and any evidence you need to prove your case.

Judicial Council of California, www.courts.ca.gov
Rev. January 1, 2024, Mandatory Form
Code of Civil Procedure, §§ 116.110 et seq.,
116.220(c), 116.340(g)

**Plaintiff's Claim and ORDER
to Go to Small Claims Court**

SC-100, Page 1 of 6

→

Plaintiff *(list names):*

| | Case Number: |
|---|---|
| | 25SC03543C |

**(1)** **The plaintiff (the person, business, or public entity that is suing) is:**

Name: STEVEN MOEHLING                     Phone: 760-689-0966

Street address: 5420 OLD RANCH ROAD      Oceanside      CA      92057
      *Street*                                                  *City*          *State*  *Zip*

Mailing address *(if different):*
      *Street*                                                  *City*          *State*  *Zip*

Email address *(if available):* sandiegan760@gmail.com

**If more than one plaintiff, list next plaintiff here:**

Name:                                     Phone:

Street address:
      *Street*                                                  *City*          *State*  *Zip*

Mailing address *(if different):*
      *Street*                                                  *City*          *State*  *Zip*

Email address *(if available):*

☐ *Check here if more than two plaintiffs and attach form SC-100A.*

☐ *Check here if either plaintiff listed above is doing business under a fictitious name and attach form SC-103.*

☐ *Check here if any plaintiff is a "licensee" or "deferred deposit originator" (payday lender) under Financial Code sections 23000 et seq.*

**(2)** **The defendant (the person, business, or public entity being sued) is:**

Name: SELECT PORTFOLIO SERVICING, INC.       Phone: 801-594-6000

Street address: 3217 S. DECKER LAKE DR.      SALT LAKE CITY    UT    84119
      *Street*                                                  *City*          *State*  *Zip*

Mailing address *(if different):*
      *Street*                                                  *City*          *State*  *Zip*

**If the defendant is a corporation, limited liability company, or public entity, list the person or agent authorized for service of process here:**

Name: CSC - LAWYERS INCORPORATING SERVICE    Job title, if known: AGENT FOR SERVICE

Address: 2710 GATEWAY OAKS DRIVE, SUITE 150N    SACRAMENTO    CA    95833
      *Street*                                                  *City*          *State*  *Zip*

☐ *Check here if your case is against more than one defendant and attach form SC-100A.*

☐ *Check here if any defendant is on active military duty and write defendant's name here:*

**(3)** **The plaintiff claims the defendant owes $** 12,500        . *(Explain below and on next page.)*

*(Note: A claim for COVID-19 rental debt cannot be made on this form. Use form SC-500, Plaintiff's Claim and ORDER to Go to Small Claims Court (COVID-19 Rental Debt).)*

a   Why does the defendant owe the plaintiff money?
Defendant submitted false and misleading information to the Bankruptcy Court on March 11, 2024, claiming post petition delinquency on Plaintiff's mortgage despite full compliance with a court-ordered Stipulation, causing financial, emotional, and physical harm. Over the following months, Defendant repeatedly misrepresented payment history, filed false and damaging credit reports in violation of CFCRA, responsible for multiple FDCPA violations, as well a multiple violations in US vs Select Portfolio Servicing 03-12219-DPW, Negligence, Breach of Contract, FTC violations, and deceptive/non-responsive Resolution Letters.

| Plaintiff *(list names):* | Case Number: |
|---|---|
| STEVEN MOEHLING | 25SC03543C |

**(3)** b. When did this happen? *(Date):* _____

If no specific date, give the time period: *Date started:* 3/112024 _____  *Through:* Present _____

c. How did you calculate the money owed to you? *(Do not include court costs or fees for service.)*
Violations and associated penalties sought by Plaintiff exceed the maximum allowable relief for redress.

Penalties and taxes imposed on a retirement plan withdrawal to halt a potential illegal foreclosure in the amount
$1,100.00.

☐ *Check here if you need more space. Attach one sheet of paper or form MC-031 and write "SC-100, Item 3" at the top.*

**(4)** **You must ask the defendant (in person, in writing, or by phone) to pay you before you sue. If your claim is for possession of property, you must ask the defendant to give you the property. Have you done this?**

☑ Yes    ☐ No    If no, explain why not:

_____
_____
_____
_____

**(5)** **Why are you filing your claim at this courthouse?**
**This courthouse covers the area** *(check the one that applies):*

a. ☑ (1) Where the defendant lives or does business.
    (2) Where the plaintiff's property was damaged.
    (3) Where the plaintiff was injured.

    (4) Where a contract (written or spoken) was made, signed, performed, or broken by the defendant *or* where the defendant lived or did business when the defendant made the contract.

b. ☐ Where the buyer or lessee signed the contract, lives now, or lived when the contract was made, if this claim, is about an offer or contract for personal, family, or household goods, services, or loans. (Code Civ. Proc., § 395(b).)

c. ☐ Where the buyer signed the contract, lives now, or lived when the contract was made, if this claim is about a retail installment contract (like a credit card). (Civ. Code, § 1812.10.)

d. ☐ Where the buyer signed the contract, lives now, or lived when the contract was made, or where the vehicle is permanently garaged, if this claim is about a vehicle finance sale. (Civ. Code, § 2984.4.)

e. ☐ Other *(specify):* _____

**(6)** **List the zip code of the place checked in (5) above** *(if you know):* 92057

**(7)** **Is your claim about an attorney-client fee dispute?** ☐ Yes    ☑ No
*If yes, and if you have had arbitration, fill out form SC-101, attach it to this form, and check here:* ☐

**(8)** **Are you suing a public entity?** ☐ Yes    ☑ No
*If yes, you must file a written claim with the entity first.* ☐ *A claim was filed on (date):* _____
*If the public entity denies your claim or does not answer within the time allowed by law, you can file this form.*

---

Rev. January 1, 2024      **Plaintiff's Claim and ORDER to Go to Small Claims Court**      SC-100, Page 3 of 6
→

| Plaintiff *(list names):* | Case Number: |
|---|---|
| | 25SC03543C |

**(9) Have you filed more than 12 other small claims within the last 12 months in California?**
☐ Yes   ☑ No   *If yes, the filing fee for this case will be higher.*

**(10) Is your claim for more than $2,500?**   ☑ Yes   ☐ No
*If you answer yes, you also confirm that you have not filed, and you understand that you may not file, more than two small claims cases for more than $2,500 in California during this calendar year.*

**(11) I understand that by filing a claim in small claims court, I have no right to appeal this claim.**

I declare under penalty of perjury under the laws of the State of California that the information above and on any attachments to this form is true and correct.

Date: 7/21/2025

Steven Moehling
*Plaintiff types or prints name here*

▶ _____
*Plaintiff signs here*

Date: _____

_____
*Second plaintiff types or prints name here*

▶ _____
*Second plaintiff signs here*



### Requests for Accommodations

Assistive listening systems, computer-assisted real-time captioning, or sign language interpreter services are available if you ask at least five days before the trial. For these and other accommodations, contact the clerk's office for form MC-410, *Disability Accommodation Request.* (Civ. Code, § 54.8.)

## SC-100 — Information for the defendant (the person being sued)

**"Small claims court"** is a special court where claims for $12,500 or less are decided. Individuals, including "natural persons" and sole proprietors, may claim up to $12,500. Corporations, partnerships, public entities, and other businesses are limited to claims of $6,250. (See below for exceptions.*) The process is quick and cheap. The rules are simple and informal. You are the *defendant*—the person being sued. The person who is suing you is the *plaintiff*.

**Do I need a lawyer?** You may talk to a lawyer before or after the case. But you *may not* have a lawyer represent you in court (unless this is an appeal from a small claims case).

**How do I get ready for court?** You don't have to file any papers before your trial, unless you think this is the wrong court for your case. But bring to your trial any witnesses, receipts, and evidence that support your case. And read "Be Prepared for Your Trial" at *www.courts.ca.gov/smallclaims/prepare*.

**What if I need an accommodation?** If you have a disability or are hearing impaired, fill out form MC-410 *Disability Accommodation Request*. Give the form to your court clerk or the ADA/Access Coordinator.

**What if I don't speak English well?** Ask the court clerk as soon as possible for a court-provided interpreter. You may use form INT-300 *Request for Interpreter (Civil)* or a local court form to request an interpreter. If a court interpreter is unavailable for your trial, it may be necessary to reschedule your trial. You cannot bring your own interpreter for the trial unless the interpreter has been approved by the court as a certified, registered, or provisionally qualified interpreter. (See Cal. Rules of Court, rule 2.893, and form INT-140.)

**Where can I get the court forms I need?** Go to any courthouse or your county law library, or print forms at *www.courts.ca.gov/forms*.

**What happens at the trial?** The judge will listen to both sides. The judge may make a decision at your trial or mail the decision to you later.

**What if I lose the case?** If you lose, you may appeal. You'll have to pay a fee. (Plaintiffs cannot appeal their own claims.)

- If you were at the trial, file form SC-140, *Notice of Appeal*. You must file within 30 days after the clerk hands or mails you the judge's decision (judgment) on form SC-200 or form SC-130 *Notice of Entry of Judgment*.

- If you were *not* at the trial, fill out and file form SC-135 *Notice of Motion to Vacate Judgment and Declaration*, to ask the judge to cancel the judgment (decision). If the judge does not give you a new trial, you have 10 days to appeal the decision. File form SC-140.

For more information on appeals, see *www.courts.ca.gov/smallclaims/appeals*.

**Do I have options?** Yes. If you are being sued you can:

- **Settle your case before the trial.** If you and the plaintiff agree on how to settle the case before the trial, the plaintiff must file form CIV-110, *Request for Dismissal* or a written and signed settlement agreement with the clerk. Ask the Small Claims Advisor for help.

- **Prove this is the wrong court.** Send a letter to the court *before* your trial explaining why you think this is the wrong court. Ask the court to dismiss the claim. You must serve (give) a copy of your letter (by mail or in person) to all parties. (Your letter to the court must say you have done so.)

- **Go to the trial and try to win your case.** Bring witnesses, receipts, and any evidence you need to prove your case. To have the court order a witness to go to the trial, fill out form SC-107, *Small Claims Subpoena and Declaration*, and have it served on the witness.

- **Sue the person who is suing you.** If you have a claim against the plaintiff, and the claim is appropriate for small claims court as described on this form, you may file *Defendant's Claim* (form SC-120) and bring the claim in this action. If your claim is for *more* than allowed in small claims court, you may still file it in small claims court if you give up the amount over the small claims value amount, or you may file a claim for the full value of the claim in the appropriate court. If your claim is for more than allowed in small claims court *and* relates to the same contract, transaction, matter, or event that is the subject of the plaintiff's claim, you may file your claim in the appropriate court and file a motion to transfer the plaintiff's claim to that court to resolve both matters together. You can see a description of the amounts allowed in the paragraph above, titled **"Small Claims Court."**

- **Agree with the plaintiff's claim and pay the money.** Or, if you can't pay the money now, go to your trial and say you want to make payments.

- **Let the case "default."** If you don't settle and do not go to the trial (default), the judge may give the plaintiff what he or she is asking for plus court costs. If this happens, the plaintiff can legally take your money, wages, and property to pay the judgment.

**What if I need more time?**
You can change the trial date if:

- You cannot go to court on the scheduled date (you will have to pay a fee to postpone the trial), *or*
- You did not get served (receive this order to go to court) at least 15 days before the trial (or 20 days if you live outside the county).

Ask the Small Claims Clerk about the rules and fees for postponing a trial. Or fill out form SC-150 (or write a letter) and mail it to the court *and* to all other people listed on your court papers before the deadline. Enclose a check for your court fees, unless a fee waiver was granted.



**Need help?**
Your county's Small Claims Advisor can help for free.

(858) 634-1777 Advisor's Number
(858) 634-1900 Recorded Information

Or go to *www.courts.ca.gov/smallclaims/advisor*.

* Exceptions: Different limits apply in an action against a defendant who is a guarantor. (See Code Civ. Proc., § 116.220(c).) Limits do not apply in an action to recover COVID-19 rental debt. (See Code Civ. Proc., §§ 116.223 & 1179.02; form SC-500.)

# SC-100 Información para el demandado (la persona demandada)

La "Corte de reclamos menores" es una corte especial donde se deciden casos por $12,500 o menos. Los individuos, o sea las "personas físicas" y los propietarios por cuenta propia, pueden reclamar hasta $12,500. Las corporaciones, asociaciones, entidades públicas y otras empresas solo pueden reclamar hasta $6,250. (Vea abajo para las excepciones.*) El proceso es rápido y económico. Las reglas son sencillas e informales. Usted es el Demandado—la persona que se está demandando. La persona que lo está demandando es el Demandante.

**¿Necesito un abogado?** Puede hablar con un abogado antes o después del caso. Pero no puede tener a un abogado que lo represente ante la corte (a menos que se trate de una apelación de un caso de reclamos menores).

**¿Cómo me preparo para ir a la corte?** No tiene que presentar ningún documento antes del juicio, a menos que piense que ésta es la corte equivocada para su caso. Pero lleve al juicio cualquier testigos, recibos y pruebas que apoyan su caso. Y lea "Esté preparado para su juicio" en *www.courts.ca.gov/reclamosmenores/preparese.*

**¿Qué hago si necesito una modificación?** Si tiene una discapacidad o tiene impedimentos de audición, llene el formulario MC-410, *Solicitud de modificaciones para discapacidad.* Entregue el formulario al secretario de la corte o al Coordinador de Acceso/ADA de su corte.

**¿Qué pasa si no hablo bien inglés?** Solicite un intérprete al secretario de la corte lo más pronto posible. Puede usar el formulario INT-300 o un formulario de su corte local. Si no está disponible un intérprete de la corte para su juicio, es posible que se tenga que cambiar la fecha de su juicio. No puede llevar su propio intérprete para el juicio a menos que el intérprete haya sido aprobado por la corte como un intérprete certificado, registrado, o provisionalmente calificado. (Vea la regla 2.893 de las Reglas de la Corte de California, y el formulario INT-140.)

**¿Dónde puedo obtener los formularios de la corte que necesito?** Vaya a cualquier edificio de la corte, la biblioteca legal de su condado, o imprima los formularios en *www.courts.ca.gov/smallclaims/forms* (página está en inglés).

**¿Qué pasa en el juicio?** El juez escuchará a ambas partes. El juez puede tomar su decisión durante la audiencia o enviársela por correo después.

**¿Qué pasa si pierdo el caso?** Si pierde, puede apelar. Tendrá que pagar una cuota. (El Demandante no puede apelar su propio reclamo.)

- Si estuvo presente en el juicio, llene el formulario SC-140, *Aviso de apelación* (Notice of Appeal). Tiene que presentarlo dentro de 30 días después de que el secretario le entregue o envíe la decisión (fallo) del juez en el formulario SC-200 o SC-130, *Aviso de publicación del fallo* (Notice of Entry of Judgment).

- Si *no* estuvo en el juicio, llene y presente el formulario SC-135, *Aviso de petición para anular el fallo y Declaración* para pedirle al juez que anule el fallo (decisión). Si la corte no le otorga un nuevo juicio, tiene 10 días para apelar la decisión. Presente el formulario SC-140.

Para obtener más información sobre las apelaciones, vea *www.courts.ca.gov/reclamosmenores/apelaciones.*

**¿Tengo otras opciones?** Sí. Si lo están demandando, puede:

- **Resolver su caso antes del juicio.** Si usted y el Demandante se ponen de acuerdo en cómo resolver el caso antes del juicio, el Demandante tiene que presentar el formulario CIV-110 Solicitud de desestimación (Request for Dismissal) o un acuerdo de resolución escrito y firmado al secretario de la corte. Pídale al Asesor de Reclamos Menores que lo ayude.

- **Probar que es la corte equivocada.** Envíe una carta a la corte *antes* del juicio explicando por qué cree que es la corte equivocada. Pídale a la corte que despida el reclamo. Tiene que entregar (dar) una copia de su carta (por correo o en persona) a todas las partes. (Su carta a la corte tiene que decir que hizo la entrega.)

- **Ir al juicio y tratar de ganar el caso.** Lleve testigos, recibos y cualquier prueba que necesite para probar su caso. Si desea que la corte emita una orden de comparecencia para que los testigos vayan al juicio, llene el formulario SC-107, *Citatorio de reclamos menores* (Small Claims Subpoena) y entrégueselo legalmente al testigo.

- **Demandar a la persona que lo demandó.** Si tiene un reclamo contra el Demandante, y el reclamo se puede presentar en la corte de reclamos menores, tal como se describe en este formulario, puede presentar el formulario SC-120, *Reclamo del demandado* (Defendant's Claim) y presentarlo en este mismo caso. Si su reclamo excede el límite permitido en la corte de reclamos menores, puede igualmente presentarlo en la corte de reclamos menores si está dispuesto a limitar su reclamo al máximo permitido, o puede presentar un reclamo por el monto total en la corte apropiada. Si su reclamo excede el límite permitido en la corte de reclamos menores y está relacionado con el mismo contrato, transacción, asunto o acontecimiento que el reclamo del Demandante, puede presentar su reclamo en la corte apropiada y presentar una moción para transferir el reclamo del Demandante a dicha corte, para poder resolver los dos reclamos juntos. Puede ver una descripción de los montos permitidos en el párrafo anterior titulado "Corte de reclamos menores".

- **Aceptar el reclamo del Demandante y pagar el dinero.** O, si no puede pagar en ese momento, vaya al juicio y diga que quiere hacer los pagos a plazos.

- **No ir al juicio y aceptar el fallo por falta de comparecencia.** Si no llega a un acuerdo con el Demandante y no va al juicio (fallo por falta de comparecencia), el juez le puede otorgar al Demandante lo que está reclamando más los costos de la corte. En ese caso, el Demandante legalmente puede tomar su dinero, su sueldo o sus bienes para cobrar el fallo.

**¿Qué hago si necesito más tiempo?** Puede cambiar la fecha del juicio si:

- No puede ir a la corte en la fecha programada (tendrá que pagar una cuota para aplazar el juicio), o

- No le entregaron los documentos legalmente (no recibió la orden para ir a la corte) por lo menos 15 días antes del juicio (ó 20 días si vive fuera del condado).

Pregúntele al secretario de reclamos menores sobre las reglas y las cuotas para aplazar un juicio. O llene el formulario SC-150 (o escriba una carta) y envíelo antes del plazo a la corte y a todas las otras personas que figuran en sus papeles de la corte. Adjunte un cheque para pagar los costos de la corte, a menos que le hayan dado una exención.

 **¿Necesita ayuda?** El Asesor de Reclamos Menores de su condado le puede ayudar sin cargo.

(858) 634-1777 Numero de Asesor
(858) 634-1900 Información registrada

O visite *www.courts.ca.gov/reclamosmenores/asesores.*

\* **Excepciones:** Existen diferentes límites en un reclamo contra un garante. (Vea el Código de Procedimiento Civil, sección 116.220 (c).) Los límites no se aplican a las acciones para reclamar una deuda de alquiler del COVID-19. (Vea el Código de Procedimiento Civil, secciones 116.223 y 1179.02; y el formulario SC-500.)

# Exhibit "4"

| PARTY WITHOUT ATTORNEY (Name and address): | FOR COURT USE ONLY |
|---|---|
| Steven Moehling<br>5420 Old Ranch Road<br>Oceanside, CA 92057<br><br>TELEPHONE NO.: 760-689-0966     FAX NO.(Optional):<br>EMAIL ADDRESS (Optional): sandiegan760@gmail.com | **F I L E D**<br>Clerk of the Superior Court<br><br>SEP 2 5 2025<br><br>By: R. Harmon, Deputy |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**
CENTRAL DIVISION, SMALL CLAIMS, 330 W. BROADWAY, ROOM 225, SAN DIEGO, CA 92101

PLAINTIFF(S)

Steven Moehling

DEFENDANT(S)

Select Portfolio Servicing, Inc.

| **REQUEST FOR DISMISSAL – SMALL CLAIMS** | CASE NUMBER<br>25SC03543C |
|---|---|

To the clerk of the court:

I am the ☒ plaintiff ☐ defendant in this case and I am asking the court to dismiss *(select one of the following)*:

   ☒ all claims I have in this case as to all parties.

   ☐ the claim I have in this case as to _____ only.
                                                   *(name of party)*

I am asking the court to dismiss the claim or party above *(select one of the following)*:

   ☒ Without prejudice *(disposes of the lawsuit and any claim about the same facts or dispute can only be filed before the legal deadline)*. You may wish to seek legal advice for clarification.

   ☐ With prejudice *(disposes of the lawsuit permanently)*. I understand that I am giving up the right to file another claim against defendant(s) about the same facts or dispute. You may wish to seek legal advice for clarification.

Date: 9/23/2025 _____

Steven Moehling
Type or Print Name _____

_____
Signature of Party *(or authorized agent, including title)*

Date: _____

_____
Type or Print Name

_____
Signature of Party *(or authorized agent, including title)*

**NOTE: IF A CLAIM OF DEFENDANT HAS BEEN FILED, DISMISSAL OF THE PLAINTIFF'S CLAIM WILL NOT DISMISS THE CLAIM OF THE DEFENDANT, NOR WILL THE DISMISSAL OF A CLAIM OF DEFENDANT DISMISS A PLAINTIFF'S CLAIM.**

**DO NOT USE THIS DISMISSAL FORM IF JUDGMENT HAS BEEN RENDERED. YOU MAY WISH TO SEEK LEGAL ADVICE.**

Steven M. Dailey, Bar No. 163857
Jennifer L. Andrews, Bar No. 222807
**KUTAK ROCK LLP**
5 Park Plaza, Suite 1500
Irvine, California  92614-8595
Telephone:   (949) 417-0999
Facsimile:    (949) 417-5394
Authorized E-Service Address:  irvineintake@KutakRock.com
Email:  Steven.dailey@kutakrock.com

Attorneys for Claimant
SELECT PORTFOLIO SERVICING, INC.

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

| In re: | Case No. 19-03857-CL13 |
|---|---|
| STEVEN MOEHLING, | Chapter 13 |
| Debtor. | Assigned to: Christopher B. Latham |
|  | **CERTIFICATE OF SERVICE** |

///

///

///

///

///

///

///

///

///

///

KUTAK ROCK LLP
ATTORNEYS AT LAW
IRVINE

CERTIFICATE OF SERVICE

4920-9114-1499.1

# CERTIFICATE OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the city of Irvine in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 5 Park Plaza, Suite 1500, Irvine, California  92614-8595.

On December 9, 2025, I served on all interested parties as identified on the below mailing list the following document(s) described as:

**1.     REQUEST FOR JUDICIAL NOTICE**

**[X]     (BY FIRST CLASS MAIL)**  I deposited such envelope in the mail at Irvine, California.  The envelope was mailed with postage thereon fully prepaid.  I am readily familiar with the firm's practice for collection and processing correspondence for mailing.  Under that practice, this(these) document(s) will be deposited with the U.S. Postal Service on this date with postage thereon fully prepaid at Irvine, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

**Steven Michael Moehling**
5420 Old Ranch Road
Oceanside, CA 92057

In addition to any paper copies served by U.S. Mail, registered ECF participants, including parties who have requested Special Notice in this case, will receive an electronic copy of the foregoing document when it has been filed with the Court.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on December 9, 2025, at Irvine, California.

Wendy G. Bonsall

KUTAK ROCK LLP
ATTORNEYS AT LAW
IRVINE

- 2 -

CERTIFICATE OF SERVICE

4920-9114-1499.1

# Exhibit "13"

Steven M. Dailey (SBN 163857)
Jennifer L. Andrews (SBN 222807)
KUTAK ROCK LLP
5 Park Plaza, Suite 1500
Irvine, CA  92614-8595
Telephone: (949) 417-0999
Facsimile:  (949) 417-5394
Authorized E-Service Address:  irvineintake@KutakRock.com
Email:        Steven.dailey@kutakrock.com

Attorneys for Respondents
WELLS FARGO BANK, NATIONAL ASSOCIATION AS
TRUSTEE FOR SECURITIZED ASSET BACKED
RECEIVABLES LLC TRUST 2006-FR1 MORTGAGE PASS-
THROUGH CERTIFICATES, SERIES 2006-FR1 (erroneously
named as "WELLS FARGO BANK, N.A."); SELECT
PORTFOLIO SERVICING, INC.; and KUTAK ROCK LLP
(erroneously named as "Kutak Rock, LLC")

# UNITED STATES BANKRUPTCY COURT

# SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| IN RE STEVEN MOEHLING,<br><br>Debtor. | Case No.  19-03857-CL13 |
|  | Judge: Hon. Jacob Weinberger |
|  | **SUPPLEMENTAL BRIEF IN OPPOSITION TO DEBTOR'S MOTION TO ENFORCE DISCHARGE INJUNCTION UNDER 11 U.S.C. §§ 524(a)(2) § 524(i) AND 105(a)** |
|  | Date: March 23, 2026 |
|  | Hearing Time: 10:00 AM |
|  | Courtroom: 1, 218 |

///

///

///

///

///

- 1 -

SUPPLEMENTAL BRIEF IN OPPOSITION TO DEBTOR'S MOTION TO ENFORCE
DISCHARGE INJUNCTION UNDER 11 U.S.C. §§ 524(a)(2) § 524(i) AND 105(a)

WELLS FARGO BANK, NATIONAL ASSOCIATION AS TRUSTEE FOR SECURITIZED ASSET BACKED RECEIVABLES LLC TRUST 2006-FR1 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-FR1 ("WELLS FARGO, as Trustee"), SELECT PORTFOLIO SERVICING, INC. ("SPS"), and KUTAK ROCK LLP ("Kutak Rock") (collectively, "Respondents") hereby files this Supplemental Brief in opposition to the Motion to Enforce Discharge Injunction under 11 U.S.C. §§ 524(a)(2) § 524(i), and 105(a) [Dkt. 61] ("Motion") filed by Debtor Steven Moehling ("Debtor").

## I.       CONDENSED BACKGROUND.

Debtor owns the real property located at 5420 Old Ranch Rd., Oceanside, California 92057 ("Property") and in connection therewith, is indebted to WELLS FARGO, as Trustee in connection with a loan dated September 2, 2005 in the original amount of $484,500. SPS is the servicer for WELLS FARGO, as Trustee.

Debtor filed his Chapter 13 Bankruptcy Petition on June 28, 2019 ("Petition Date"). (Dkt. 1). The Debtor sought to cure his arrearage and maintain his ongoing monthly obligations through his Chapter 13 Plan (Dkt. 2). The Debtor defaulted on his payment obligations, admitted such default (Dkt. 20) and sought to cure the same through a Stipulation Granting Adequate Protection in which the Court ordered the Debtor to tender his monthly payments and cure the Postpetition Arrearage over nine months. (Dkts. 23 and 25.) On May 5, 2023, the Debtor filed an amended Plan ("Amended Plan") through which he increased his monthly payments to reflect the accurate Prepetition Arrearage due and owing to WELLS FARGO, as Trustee. (Dkt. 30.) The Amended Plan was approved on July 20, 2023. (Dkt. 37.)

The Debtor's payment defaults continued over the course of the Debtor's bankruptcy proceeding, but ultimately, on February 20, 2024, the Chapter 13 Trustee filed a Notice of Final Cure Payment and Completion of Payments Under the Plan ("Cure Notice") in which he asserted the Prepetition Arrearage had been

- 2 -

paid in full. (Dkt. 42.)  In its Response to Notice of Final Cure WELLS FARGO, as Trustee, indicated that while the Prepetition Arrearage had been paid in full, there was an outstanding Postpetition Arrearage of $6,021.17.  (Dkt. 48.)

On April 4, 2024, the Court entered the Order of Discharge ("Discharge Order").  (Dkt. 49.)  Debtor filed the instant Motion on November 18, 2025 (Dkt. 54), which WELLS FARGO has opposed [Dkts. 65, 66 and 69].  At the hearing held on January 26, 2026, this Court ordered that WELLS FARGO file a supplemental brief in support of its contention that no liability can exist by virtue of 11 U.S.C. § 524(i).  This supplemental brief is in furtherance of the same.

## II.   **SUPPLEMENTAL BRIEF.**

The Debtor is unable to meet his burden to establish a discharge violation under 11 U.S.C. § 524(i). A creditor is liable under section 524(i) if and only if the debtor can establish that (i) there was a willful refusal; (ii) to credit payments received; (iii) per the terms of the plan; and (iv) which resulted in a material injury to the debtor.  "In general, a party moving to hold another party in civil contempt has [the] burden of showing, by 'clear and convincing' evidence, that the alleged contemnor violated a specific and definite order of court." 107 Am. Jur. Proof of Facts 3d 97 (Originally published in 2009) (citing *In re Dyer*, 322 F.3d 1178, 41 Bankr. Ct. Dec. (CRR) 64, Bankr. L. Rep. (CCH) ¶ 78816 (9th Cir. 2003); *Fleet Mortg. Group, Inc. v. Kaneb*, 196 F.3d 265, 35 Bankr. Ct. Dec. (CRR) 45, Bankr. L. Rep. (CCH) ¶ 78044 (1st Cir. 1999)); *see also In re Englert*, 495 B.R. 266 (Bankr. W.D. Penn. 2013) (finding that debtors failed to meet their burden to establish mortgage servicer violated the discharge injunction).  The Debtor here has failed to establish what payments were not credited and/or that SPS refused to credit such payments to the debt.  In contravention and as set forth in the Declaration of Select Portfolio Servicing, Inc. in Support of Opposition to Debtor's Motion to Enforce Discharge Injunction Under 11 U.S.C. § 524(a)(2) § 524(i) and

105(a) (the "Declaration"), all payments received by SPS were credited to the obligations.

The Debtor has also failed to demonstrate he is entitled to relief under 11 U.S.C. § 524(i) because there is no evidence any non-application of payments. Section 524(i) is specific in that it covers only the failure to credit payments under a plan. In essence, section 524(i) is intended to cover those scenarios where a creditor refuses to accept a payment because of some perceived default in contravention of the plan terms. Had Congress intended for section 524(i) to cover misapplication as well as non-application of payment, it certainly could have included the requisite language. The specific language of the statute must be given its due.

The Debtor also fails to demonstrate any action taken by SPS was willful. Section 524(i) address the "willful failure of a creditor to credit payments received under a plan…." Willful is typically defined as callous or reckless disregard. (*In re Breul*, 533 B.R. 782, 797 (Bankr. C.D. Cal. 2015).) Courts have also defined it "as a showing that the creditor or collector 'deliberately carried out the prohibited act with knowledge of the debtor's bankruptcy case.'" 107 Am. Jur. Proof of Facts 3d 97 (Originally published in 2009) (citing *In re Stooksbury*, 2008 WL 2169452 (Bankr. E.D. Tenn. 2008); *But cf. In re Zilog*, Inc., 450 F.3d 996, 46 Bankr. Ct. Dec. (CRR) 179, 24 I.E.R. Cas. (BNA) 1121, Bankr. L. Rep. (CCH) ¶ 80626 (9th Cir. 2006), suggesting that knowledge of the discharge injunction should not be presumed from knowledge of the pendency of the case.)) Simply asserting a dispute over the application of payments is not a "willful failure."

The Debtor has also not established a material injury. Notwithstanding his 40 pages of seemingly AI-generated material, the Motion does not actually state what damages or injury has been sustained by the Debtor. Although assumptions could possibly be made, the burden is on the debtor to establish what damages have been incurred. Here the Debtor has not pled what his damages are and as such, cannot

KUTAK ROCK LLP
ATTORNEYS AT LAW
IRVINE

OPPOSITION TO DEBTOR'S MOTION TO ENFORCE DISCHARGE INJUNCTION
UNDER 11 U.S.C. §§ 524(A)(2) § 524(I) AND 105(A)

prevail on a section 524(i) claim. *See Englert*, 495 B.R. at 272-73. Even if the Debtor had plead damages, he has not met his burden of proving them. The burden is on the Debtor to "prove his actual damages for a violation of the discharge injunction." *See In re Barry*, 330 B.R. 28 (Bankr. D. Mass. 2005). Any award of damages must be based on actual evidence and not speculation. *See In re Haltermon*, 592 B.R. 311, 324 (Bankr. S.D. Ohio 2018). The Debtor has not and cannot meet his burden here.

Finally, section 524(i) contains a safe harbor when a default occurs under the plan. Specifically, section 524(i) provides that there is not a violation if the "plan is in default, or the creditor has not received payments required to be made under the plan in the manner required by the plan..." 11 U.S.C. § 524(i). Here, the payments the Debtor seemingly complains of came after numerous and ongoing defaults under the Plan and Amended Plan. As set forth above and in the Declaration, the Debtor defaulted under the original Plan, which defaults led to the execution of the Stipulation. The Stipulation altered the terms of the Plan by authorizing the Debtor to cure the arrearage over a nine-month period. That Stipulation set forth specific dates on which such payments were to be tendered. As set forth in the Declaration, the Debtor consistently failed to timely remit payments according to the Stipulation and his Amended Plan. As noted, certain payments were also returned. There was never a proper "cure" of those defaults. At most, they were tolerated. One-off missed or untimely payments may result in an alternative outcome, but courts have held that a debtor's repeated failure to make payments pursuant to the terms of a plan is a material default which can constitute cause for denying a discharge and/or dismissal. *See In re Formaneck*, 534 B.R. 29, 33 (Bankr. D. Colo. 2015); *see also In re Dennett*, 548 B.R. 733 (Bankr. N.D. Tex. 2016) (finding that where cure payments were timely paid to the trustee but debtor defaulted on direct payments to the lender, the debtor was in default). Although SPS did not seek to have the Debtor's case dismissed or his discharge denied, such nonaction does not meant he

- 5 -

KUTAK ROCK LLP
ATTORNEYS AT LAW
IRVINE

defaults were not present.  In fact, it is undisputed that there was a material default under the Amended Plan.  That default means that any alleged misapplication of payments falls within the safe harbor of 11 U.S.C. § 524(i).  Although the Debtor may have other recourse if he believes payments were misapplied or his loan balance has been incorrectly calculated, an alleged discharge violation under section 524(i) is not one of them.

## III.   CONCLUSION.

Respondents respectfully request this Court deny the Debtor's Motion.

Dated:  February 23, 2026                    KUTAK ROCK LLP


By:  /s/ Steven M. Dailey
    Steven M. Dailey
    Jennifer L. Andrews
    Attorneys for Respondents
    WELLS FARGO BANK,
    NATIONAL ASSOCIATION AS
    TRUSTEE FOR SECURITIZED
    ASSET BACKED RECEIVABLES
    LLC TRUST 2006-FR1
    MORTGAGE PASS-THROUGH
    CERTIFICATES, SERIES 2006-FR1,
    SELECT PORTFOLIO SERVICING,
    INC., and KUTAK ROCK LLP

KUTAK ROCK LLP
ATTORNEYS AT LAW
IRVINE

- 6 -

Steven M. Dailey, Bar No. 163857
Jennifer L. Andrews, Bar No. 222807
**KUTAK ROCK LLP**
5 Park Plaza, Suite 1500
Irvine, California  92614-8595
Telephone:   (949) 417-0999
Facsimile:    (949) 417-5394
Authorized E-Service Address:  irvineintake@KutakRock.com
Email:  Steven.dailey@kutakrock.com

Attorneys for Respondents WELLS FARGO BANK,
NATIONAL ASSOCIATION AS TRUSTEE FOR
SECURITIZED ASSET BACKED RECEIVABLES LLC
TRUST 2006-FR1 MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2006-FR1 (erroneously named as
"WELLS FARGO BANK, N.A."); SELECT PORTFOLIO
SERVICING, INC.; and KUTAK ROCK LLP (erroneously
named as "Kutak Rock, LLC")

# UNITED STATES BANKRUPTCY COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| In re: | Case No. 19-03857-CL13 |
|---|---|
| STEVEN MOEHLING, | Chapter 13 |
| Debtor. | Assigned to: Christopher B. Latham |
| | **CERTIFICATE OF SERVICE** |

///

///

///

///

///

///

///

///

**CERTIFICATE OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the city of Irvine in the County of Orange, State of California. I am over the age of 18 and not a party to the within action. My business address is 5 Park Plaza, Suite 1500, Irvine, California 92614-8595.

On February 23, 2026, I served on all interested parties as identified on the below mailing list the following document(s) described as:

**SUPPLEMENTAL BRIEF IN OPPOSITION TO DEBTOR'S MOTION TO ENFORCE DISCHARGE INJUNCTION UNDER 11 U.S.C. §§ 524(a)(2) § 524(i) AND 105(a)**

[X] **(BY FIRST CLASS MAIL)** I deposited such envelope in the mail at Irvine, California. The envelope was mailed with postage thereon fully prepaid. I am readily familiar with the firm's practice for collection and processing correspondence for mailing. Under that practice, this(these) document(s) will be deposited with the U.S. Postal Service on this date with postage thereon fully prepaid at Irvine, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

**Steven Michael Moehling**
5420 Old Ranch Road
Oceanside, CA 92057

In addition to any paper copies served by U.S. Mail, registered ECF participants, including parties who have requested Special Notice in this case, will receive an electronic copy of the foregoing document when it has been filed with the Court.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on February 23, 2026, at Irvine, California.

_Wendy G. Bonsall_

Wendy G. Bonsall

KUTAK ROCK LLP
ATTORNEYS AT LAW
IRVINE

- 2 -

CERTIFICATE OF SERVICE

4920-9114-1499.1

# Exhibit "14"

Steven M. Dailey (SBN 163857)
Jennifer L. Andrews (SBN 222807)
KUTAK ROCK LLP
5 Park Plaza, Suite 1500
Irvine, CA 92614-8595
Telephone: (949) 417-0999
Facsimile: (949) 417-5394
Authorized E-Service Address: irvineintake@KutakRock.com
Email: Steven.dailey@kutakrock.com

Attorneys for Respondents
WELLS FARGO BANK, NATIONAL ASSOCIATION AS TRUSTEE
FOR SECURITIZED ASSET BACKED RECEIVABLES LLC TRUST
2006-FR1 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES
2006-FR1 (erroneously named as "WELLS FARGO BANK, N.A.");
SELECT PORTFOLIO SERVICING, INC.; and KUTAK ROCK LLP
(erroneously named as "Kutak Rock, LLC")

# UNITED STATES BANKRUPTCY COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE STEVEN MOEHLING,<br><br>Debtor. | Case No. 19-03857-CL13<br><br>Judge: Hon. Christopher B. Latham<br><br>**DECLARATION OF SELECT PORTFOLIO SERVICING, INC. IN SUPPORT OF OPPOSITION TO DEBTOR'S MOTION TO ENFORCE DISCHARGE INJUNCTION UNDER 11 U.S.C. § 524(a)(2) § 524(i) and 105(a)**<br><br>Date: March 23, 2026<br>Hearing Time: 10:00 AM<br>Courtroom: 1, 218 |

## DECLARATION OF [SHERRY LARSEN]

I, Sherry Larsen, declare that if called as a witness I could and would be competent to attest to the validity of the following matters:

1. I am a [Document Control Officer] employed by Select Portfolio Servicing, Inc. ("SPS"). I have been employed by SPS since _2012_. SPS is servicing the subject Loan discussed below as attorney-in-fact for WELLS FARGO BANK, NATIONAL ASSOCIATION

KUTAK ROCK LLP
ATTORNEYS AT LAW
IRVINE

DECLARATION OF SELECT PORTFOLIO SERVICING, INC.

AS TRUSTEE FOR SECURITIZED ASSET BACKED RECEIVABLES LLC TRUST 2006-FR1 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-FR1 ("WELLS FARGO, as Trustee").

2. This Declaration is being submitted in support of WELLS FARGO, as Trustee's Opposition to Debtor's Motion to Enforce Discharge Injunction Under 11 U.S.C. §§ 524(a)(2), 524(i) and 105(a) and the Objection to New Matters Raised by Debtor in Reply to Opposition to Debtor's Motion to Enforce Discharge Injunction (collectively, the "Objection").

3. I am familiar with the procedures by which the business records, letters, and memoranda contained in SPS's files are prepared and maintained. SPS's business records, letters, and memoranda referenced herein and attached to this declaration were made by persons with knowledge of the matters they record and are made at or about the time the event is recorded. It is SPS's practice to maintain such business records, letters, and memoranda in the regular course of business. The documents referenced herein are SPS's business records that are prepared, produced, and maintained in the above-described matter. My personal knowledge is based on my review of SPS's business records that pertain to the subject Loan and the Nonbankruptcy Action identified more particularly in this declaration.

4. Steven Moehling (the "Debtor") owns the real property located at 5420 Old Ranch Rd., Oceanside, California 92057 ("Property"). On September 2, 2005, Debtor obtained a loan from Fremont Investment & Loan in the amount of $484,500.00 (the "Loan") that was secured by a Deed of Trust recorded on the Property on September 22, 2005 in the San Diego Recorder's Office, Doc. No. 2005-0818446 ("Deed of Trust"). (*See* Dkt. 66, Deed of Trust, RJN, Ex. "1".) MERS was the original beneficiary of that Deed of Trust. (*See* Dkt. 66, RJN, Ex. "1".) On April 19, 2011, an Assignment of Deed of Trust was recorded reflecting the Deed of Trust was assigned to WELLS FARGO, as Trustee. (*See* Dkt. 66, RJN, Ex. "2".) SPS is the servicer for WELLS FARGO, as Trustee.

5. No later than August 1, 2018, the Debtor was in default under the Loan. The Debtor failed to timely remit payment for all monthly obligations due between August 1, 2018

KUTAK ROCK LLP
ATTORNEYS AT LAW
IRVINE

2

DECLARATION OF SELECT PORTFOLIO SERVICING, INC.

through June 1, 2019. Specifically, the Debtor tendered the following late payments prior to the Petition Date (defined below):

| Due Date | Full Payment Date | Days Late |
|---|---|---|
| 8/1/2018 | 2/15/2019 | 198 |
| 9/1/2018 | 2/15/2019 | 167 |
| 8/1/2018 | 2/15/2019 | 198 |
| 10/1/2018 | 8/28/2019 | 331 |
| 11/1/2018 | 10/10/2019 | 343 |
| 12/1/2018 | 12/2/2019 | 366 |
| 1/1/2019 | 1/27/2020 | 391 |
| 2/1/2019 | 2/24/2020 | 388 |
| 3/1/2019 | 5/19/2020 | 445 |
| 4/1/2019 | 6/15/2020 | 441 |
| 5/1/2019 | 7/28/2020 | 454 |
| 6/1/2019 | 8/10/2020 | 436 |

6. The Debtor filed his Chapter 13 Bankruptcy Petition on June 28, 2019 ("Petition Date"). (Dkt. 1). On Debtor's Schedules and Statement of Financial Affairs (Dkt. 1), the Debtor indicated that the noteholder maintains a first priority lien on the Property and that as of the date of filing, he was indebted on the loan secured by the Deed of Trust in the amount of $371,954. (Dkt. 1.) On the Petition Date, the Debtor also filed a Chapter 13 Plan (Dkt. 2). In his Plan, Debtor proposed to cure his past due arrearage of $13,000 to the Noteholder, by making monthly payments of $500, with such payments to be remitted through the Chapter 13 Trustee. (Dkt. 2.) The Plan was confirmed on August 19, 2019. (Dkt. 14). On September 6, 2019, WELLS FARGO, as Trustee timely filed a Proof of Claim (Claim No. 5-1) (the "Claim") pursuant to which it asserted an outstanding balance of $373,904.70 and an arrearage of $16,424.69 (the "Prepetition Arrearage") as of the Petition Date.

7. Postpetition the Debtor also failed to maintain his regular monthly payments. Specifically, the Debtor tendered payment as follows:

| Due Date | Full Payment Date | Days Late |
|---|---|---|
| 07/01/19 | 08/28/19 | 58 |
| 08/01/19 | 10/10/19 | 70 |
| 09/01/19 | 12/02/19 | 92 |
| 10/01/19 | 01/27/20 | 118 |
| 11/01/19 | 02/24/20 | 115 |

8. On April 1, 2020, WELLS FARGO, as Trustee, filed a Motion for Relief from Automatic Stay ("Motion for Relief"), in which it asserted that the Prepetition Arrearage remained outstanding, along with a post-petition arrearage of $6,557.52 ("Postpetition Arrearage"). (Dkt. 17.) In response, the Debtor acknowledged that he fell behind on his payments. (Dkt. 20.) On April 24, 2020, the Court entered the Order on Stipulation Granting Adequate Protection in which the Court ordered the Debtor to tender his monthly payments and cure the Postpetition Arrearage over 9 months (the "Stipulation"). (Dkt. 25.) The Stipulation provides that, among other things, the Debtor was obligated to remit monthly payments of $1,682.19, starting May 1, 2020 and continuing until the debt was paid in full. The postpetition arrearage of $8,221.90 was to be cured with equal monthly payments of $913.55 commencing May 15, 2020 and continuing through December 15, 2020, with a final payment of $913.50 due January 15, 2021.

9. Subsequent to entering into the Stipulation, the Debtor again defaulted on his obligations to WELLS FARGO. Pursuant to the Stipulation, the Debtor was obligated to remit his regular monthly payments on the first of each month. Virtually none of the Debtor's regularly monthly payments were received by the first of each month. Specifically, the Debtor tendered payment as follows:

| Due Date | Full Payment Date | Days Late |
|---|---|---|
| 12/01/19 | 05/19/20 | 170 |
| 01/01/20 | 05/30/20 | 150 |
| 02/01/20 | 06/15/20 | 135 |
| 03/01/20 | 07/13/20 | 134 |
| 04/01/20 | 08/10/20 | 131 |
| 05/01/20 | 08/10/20 | 101 |
| 06/01/20 | 09/14/20 | 105 |
| 07/01/20 | 10/12/20 | 103 |
| 08/01/20 | 10/12/20 | 72 |
| 09/01/20 | 11/16/20 | 76 |
| 09/01/20 | 12/08/20 | 98 |
| 10/01/20 | 01/15/21 | 106 |
| 11/01/20 | 01/15/21 | 75 |
| 12/01/20 | 02/12/21 | 73 |

DECLARATION OF SELECT PORTFOLIO SERVICING, INC.

| Due Date | Full Payment Date | Days Late |
|----------|-------------------|-----------|
| 01/01/21 | 03/19/21 | 77 |
| 02/01/21 | 04/19/21 | 77 |
| 03/01/21 | 06/02/21 | 93 |
| 04/01/21 | 06/28/21 | 88 |
| 05/01/21 | 07/27/21 | 87 |
| 06/01/21 | 09/07/21 | 98 |
| 07/01/21 | 09/30/21 | 91 |
| 08/01/21 | 11/02/21 | 93 |
| 09/01/21 | 11/30/21 | 90 |
| 10/01/21 | 12/28/21 | 88 |
| 11/01/21 | 01/25/22 | 85 |
| 12/01/21 | 02/24/22 | 85 |
| 01/01/22 | 03/21/22 | 79 |
| 02/01/22 | 04/18/22 | 76 |
| 03/01/22 | 05/18/22 | 78 |
| 04/01/22 | 07/12/22 | 102 |
| 05/01/22 | 08/09/22 | 100 |
| 05/01/22 | 08/19/22 | 110 |
| 06/01/22 | 09/19/22 | 110 |
| 07/01/22 | 10/17/22 | 108 |
| 08/01/22 | 11/29/22 | 120 |
| 09/01/22 | 12/28/22 | 118 |
| 10/01/22 | 01/24/23 | 115 |
| 11/01/22 | 02/22/23 | 113 |
| 12/01/22 | 03/16/23 | 105 |
| 01/01/23 | 04/18/23 | 107 |
| 02/01/23 | 05/10/23 | 98 |
| 03/01/23 | 06/26/23 | 117 |
| 04/01/23 | 07/19/23 | 109 |

10.    Additional defaults occurred, including the following: (i) on December 7, 2020, the Debtor's payment of $1,701.11 was reversed and not otherwise timely remitted; (ii) on May 30, 2020, July 13, 2020, July 22, 2020, September 14, 2020, November 16, 2020 and December 8, 2020, the Debtor remitted only partial payments; (iii) on August 16, 2022, the Debtor's payment of $1742.46, made on August 9, 2022, was returned for insufficient funds and not otherwise timely made; and (iv) on January 26, 2024, the Debtor's payment of $1,744.20, made on January 19, 2024, was returned for insufficient funds and not otherwise timely made.

KUTAK ROCK LLP
ATTORNEYS AT LAW
IRVINE

5

DECLARATION OF SELECT PORTFOLIO SERVICING, INC.

11. On May 5, 2023, the Debtor filed an amended Plan ("Amended Plan") through which he increased his monthly payments to reflect the accurate Prepetition Arrearage due and owing to WELLS FARGO, as Trustee. (Dkt. 30.) The Amended Plan was approved on July 20, 2023. (Dkt. 37.)

12. Subsequent thereto, additional defaults occurred as follows:

| Due Date | Full Payment Date | Days Late |
|----------|-------------------|-----------|
| 05/01/23 | 08/22/23 | 113 |
| 06/01/23 | 09/25/23 | 116 |
| 07/01/23 | 10/23/23 | 114 |
| 08/01/23 | 11/30/23 | 121 |
| 09/01/23 | 01/02/24 | 123 |
| 10/01/23 | 01/19/24 | 110 |
| 10/01/23 | 01/30/24 | 121 |
| 11/01/23 | 02/27/24 | 118 |
| 12/01/23 | 03/25/24 | 115 |
| 01/01/24 | 04/22/24 | 112 |
| 02/01/24 | Payment Made from Suspense Account | |
| 03/01/24 | 05/15/24 | 75 |
| 04/01/24 | 06/12/24 | 72 |

13. Despite the Debtor's failure to timely remit payments, all payments received by Wells Fargo were properly credited to the outstanding obligations due and owing by the Debtor.

14. On February 20, 2024, the Chapter 13 Trustee filed a Notice of Final Cure Payment and Completion of Payments Under the Plan ("Cure Notice") in which he asserted the Prepetition Arrearage had been paid in full. (Dkt. 42.) In its Response to Notice of Final Cure WELLS FARGO, as Trustee, indicated that while the Prepetition Arrearage had been paid in full, there was an outstanding Postpetition Arrearage of $6,021.17. (Dkt. 48.)

15. On April 4, 2024, the Court entered the Order of Discharge ("Discharge Order"). (Dkt. 49.) The Discharge Order provides that, among other things, it does not discharge a debtor from certain long-term debt obligations, like those owed to WELLS FARGO, as Trustee, pursuant to 11 U.S.C. § 1322(b)(5). (Dkt. 49.) On April 29, 2024, the Court entered the Order

KUTAK ROCK LLP
ATTORNEYS AT LAW
IRVINE

6

DECLARATION OF SELECT PORTFOLIO SERVICING, INC.

Approving Account, Discharging Chapter 13 Trustee and Closing Estate, which effectively closed the case. (Dkt. 53.)

16.    After the entry of the Discharge Order, the Debtor generally remained in Default under the Loan as follows:

| Due Date | Full Payment Date | Days Late |
|----------|-------------------|-----------|
| 05/01/24 | 07/10/24 | 70 |
| 06/01/24 | 08/07/24 | 67 |
| 07/01/24 | 08/13/24 | 43 |
| 08/01/24 | **Payment Made from Suspense Account** | |
| 09/01/24 | 09/05/24 | 4 |
| 10/01/24 | 10/02/24 | 1 |
| 11/01/24 | 11/13/24 | 12 |
| 12/01/24 | 12/11/24 | 10 |
| 01/01/25 | 01/22/25 | 21 |
| 02/01/25 | 02/24/25 | 23 |
| 03/01/25 | 03/20/25 | 19 |
| 04/01/25 | 04/03/25 | 2 |
| 05/01/25 | 05/15/25 | 14 |
| 06/01/25 | 06/12/25 | 11 |
| 07/01/25 | 07/10/25 | 9 |
| 08/01/25 | 08/20/25 | 19 |
| 09/01/25 | 10/02/25 | 31 |
| 10/01/25 | 10/29/25 | 28 |
| 11/01/25 | 11/20/25 | 19 |
| 12/01/25 | 12/10/25 | 9 |
| 01/01/26 | 01/07/26 | 6 |
| 02/01/26 | | |

17.    On August 4, 2025, Debtor filed a Claim against SPS in the Small Claims Court in the Superior Court of California, County of San Diego, Case No. 25SC0354C.  (RJN, Ex. "3".) Through that Claim debtor alleged that SPS claimed post-petition delinquency despite his alleged full compliance with the Stipulation.  (*See* Dkt. 66, RJN, Ex. "3".)  On September 25, 2025, Debtor dismissed the Claim.  (*See* Dkt. 66, RJN, Ex. "4".)

KUTAK ROCK LLP
ATTORNEYS AT LAW
IRVINE

7

18. Debtor then filed the Motion to Enforce Discharge Injunction under 11 U.S.C. §§ 524(a)(2) § 524(i), and 105(a) ("Motion") on November 18, 2025. (Dkt. 64.)

19. A true and correct copy of the Chapter 13 Filed Payment Change Reconciliation from the inception of SPS's servicing of the loan through the February 2026 is attached as Exhibit "A". The top row of the Reconciliation identifies the date each payment was received ("Date Pmnt Rcvd"), the due date each payment was applied to ("Post Due Dt"), the contractual amount of each required payment for each month ("System PMT"), the amount received on that date ($ Received) and the running total of the suspense account ("Running Suspense".) When the Debtor overpaid or paid less than the contractual payment, that amount was not applied to the loan but instead was placed in the suspense account. Once the balance of the suspense account was sufficient to make an entire monthly payment, that amount was applied to a monthly payment and deducted from the suspense account. This occurred for the payments due on February 1, 2024 and August 1, 2024.

20. This declaration is submitted in opposition to the relief requested in the Motion.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed by me on February 23, 2026 at Salt Lake City, Utah .

Declarant
Sherry Larsen
Document Control Officer
Select Portfolio Servicing, Inc.

KUTAK ROCK LLP
ATTORNEYS AT LAW
IRVINE

8

DECLARATION OF SELECT PORTFOLIO SERVICING, INC.

# Exhibit "A"

Select Portfolio Servicing

| | | | | |
|---|---|---|---|---|
| Preparation Date: | **02/04/26** | | Update Date: | |
| Prepared by: | **Anusha Y** | | Updated By: | |

**Loan Information**

| | | | | |
|---|---|---|---|
| Loan Number | 0017539180 | Acquired Date | 5/29/2015 |
| Debtors Name - 1 | STEVEN MOEHLING | Note Type | VAR |
| Debtors Name - 2 | | Current Interest Rate | 4.75% |
| Property Address | 5420 OLD RANCH RD | Lien Position | 1st |
| Property State | CA | Last BPO Value | $910,000.00 |
| Contractual Due Date: | 2/1/2026 | Multiple Loans | $0.00 |

**Bankruptcy Information**

| | | | | |
|---|---|---|---|
| Bankruptcy Case # | 19-03857 | Previous MFR? | 7/1/2019 | **Comment on Previous Actions** |
| Filing Date: | 6/28/2019 | Previous Agreed Order? | 12/9/2025 | |
| Person filing: | M1 | Post Amounts in Plan? | No | |
| Number of previous filings: | 2 | TPA? | No | |

**Post Petition Default Information**

| | | | | |
|---|---|---|---|
| Post petition due date: | 02/01/26 | Post petition insurance: | $0.00 |
| Post petition amount due: | $1,942.38 | Post petition taxes: | $0.00 | Must be mentioned in any Agreed Order |
| **Total for Agreed Order** | **$1,942.38** | Total Post petition due: | $1,942.38 |

***All post petition amounts (including taxes and insurance) must be established as recoverable in any Agreed Order.

**Post Petition Payment History**

| Date Pmnt Rcvd | Post Due Dt | System PMT | Filed PMT | $ Received | Running Suspense | Comments |
|---|---|---|---|---|---|---|
| 08/28/19 | 07/01/19 | $1,682.19 | $1,682.19 | $1,700.00 | -$17.81 | |
| 10/10/19 | 08/01/19 | $1,682.19 | $1,682.19 | $1,700.00 | -$35.62 | |
| 12/02/19 | 09/01/19 | $1,682.19 | $1,682.19 | $1,700.00 | -$53.43 | |
| 01/27/20 | 10/01/19 | $1,682.19 | $1,682.19 | $1,800.00 | -$171.24 | |
| 02/24/20 | 11/01/19 | $1,682.19 | $1,682.19 | $1,700.00 | -$189.05 | |
| 05/04/20 | partial payment | $0.00 | $0.00 | $1,300.00 | -$1,489.05 | Partial Payment |
| 05/19/20 | 12/01/19 | $1,682.19 | $1,682.19 | $1,300.00 | -$1,106.86 | |
| 05/30/20 | 01/01/20 | $1,682.19 | $1,682.19 | $913.55 | -$338.22 | |
| 05/30/20 | partial payment | $0.00 | $0.00 | $386.45 | -$724.67 | Partial Payment |
| 06/15/20 | 02/01/20 | $1,682.19 | $1,682.19 | $1,300.00 | -$342.48 | |
| 07/13/20 | partial payment | $0.00 | $0.00 | $913.55 | -$1,256.03 | Partial Payment |
| 07/13/20 | 03/01/20 | $1,682.19 | $1,682.19 | $1,286.45 | -$860.29 | |
| 07/22/20 | partial payment | $0.00 | $0.00 | $450.00 | -$1,310.29 | Partial Payment |
| 08/10/20 | 04/01/20 | $1,682.19 | $1,682.19 | $913.55 | -$541.65 | |
| 08/10/20 | 05/01/20 | $1,682.19 | $1,682.19 | $1,686.45 | -$545.91 | |
| 09/14/20 | partial payment | $0.00 | $0.00 | $913.55 | -$1,459.46 | Partial Payment |
| 09/14/20 | 06/01/20 | $1,682.19 | $1,682.19 | $1,706.45 | -$1,483.72 | |
| 10/12/20 | 07/01/20 | $1,682.19 | $1,682.19 | $913.55 | -$715.08 | |
| 10/12/20 | 08/01/20 | $1,682.19 | $1,682.19 | $1,706.45 | -$739.34 | |
| 11/16/20 | partial payment | $0.00 | $0.00 | $913.55 | -$1,652.89 | Partial Payment |
| 11/16/20 | 09/01/20 | $1,701.11 | $1,701.11 | $1,706.45 | -$1,658.23 | |
| 12/07/20 | **Reversal** | -$1,701.11 | -$1,701.11 | -$2,620.00 | -$739.34 | |
| 12/08/20 | partial payment | $0.00 | $0.00 | $913.55 | -$1,652.89 | Partial Payment |
| 12/08/20 | **09/01/20** | **$1,701.11** | **$1,701.11** | $1,706.45 | -$1,658.23 | |
| 01/15/21 | 10/01/20 | $1,701.11 | $1,701.11 | $913.50 | -$870.62 | |
| 01/15/21 | 11/01/20 | $1,701.11 | $1,701.11 | $1,706.50 | -$876.01 | |
| 02/12/21 | 12/01/20 | $1,701.11 | $1,701.11 | $1,702.00 | -$876.90 | |
| 03/19/21 | 01/01/21 | $1,701.11 | $1,701.11 | $1,702.00 | -$877.79 | |
| 04/19/21 | 02/01/21 | $1,701.11 | $1,701.11 | $1,701.11 | -$877.79 | |
| 06/02/21 | 03/01/21 | $1,701.11 | $1,701.11 | $1,702.00 | -$878.68 | |
| 06/28/21 | 04/01/21 | $1,701.11 | $1,701.11 | $1,702.00 | -$879.57 | |
| 07/27/21 | 05/01/21 | $1,701.11 | $1,701.11 | $1,707.00 | -$885.46 | |
| 09/07/21 | 06/01/21 | $1,701.11 | $1,701.11 | $1,701.11 | -$885.46 | |
| 09/30/21 | **07/01/21** | **$1,706.83** | **$1,706.83** | $1,701.11 | -$879.74 | |
| 11/02/21 | 08/01/21 | $1,706.83 | $1,706.83 | $1,715.00 | -$887.91 | |
| 11/30/21 | 09/01/21 | $1,706.83 | $1,706.83 | $1,715.00 | -$896.08 | |
| 12/28/21 | 10/01/21 | $1,706.83 | $1,706.83 | $1,720.00 | -$909.25 | |
| 01/25/22 | 11/01/21 | $1,706.83 | $1,706.83 | $1,720.00 | -$922.42 | |
| 02/24/22 | 12/01/21 | $1,706.83 | $1,706.83 | $1,720.00 | -$935.59 | |
| 03/21/22 | 01/01/22 | $1,706.83 | $1,706.83 | $1,720.00 | -$948.76 | |
| 04/18/22 | 02/01/22 | $1,706.83 | $1,706.83 | $1,720.00 | -$961.93 | |
| 05/18/22 | 03/01/22 | $1,706.83 | $1,706.83 | $1,742.46 | -$997.56 | |
| 07/12/22 | 04/01/22 | $1,706.83 | $1,706.83 | $1,742.46 | -$1,033.19 | |
| 08/09/22 | **05/01/22** | **$1,742.46** | **$1,742.46** | $1,742.46 | -$1,033.19 | |
| 08/16/22 | **NSF** | -$1,742.46 | -$1,742.46 | -$1,742.46 | -$1,033.19 | NSF/Returned Check |
| 08/19/22 | 05/01/22 | $1,742.46 | $1,742.46 | $1,742.46 | -$1,033.19 | |
| 09/19/22 | 06/01/22 | $1,742.46 | $1,742.46 | $1,742.46 | -$1,033.19 | |
| 10/17/22 | 07/01/22 | $1,742.46 | $1,742.46 | $1,742.46 | -$1,033.19 | |

The contents of this document are RESTRICTED to authorized individuals.  Any unauthorized access, use or duplication is strictly prohibited.

| | | | | | | |
|---|---|---|---|---|---|---|
| 11/29/22 | | | | | | |
| 12/28/22 | 09/01/22 | $1,742.46 | $1,742.46 | $0.00 | -$1,033.19 | |
| 01/24/23 | 10/01/22 | $1,742.46 | $1,742.46 | $1,746.42 | -$1,037.15 | |
| 02/22/23 | 11/01/22 | $1,742.46 | $1,742.46 | $1,746.42 | -$1,041.11 | |
| 03/16/23 | 12/01/22 | $1,742.46 | $1,742.46 | $1,744.20 | -$1,042.85 | |
| 04/18/23 | 01/01/23 | $1,742.46 | $1,742.46 | $1,744.20 | -$1,044.59 | |
| 05/10/23 | 02/01/23 | $1,742.46 | $1,742.46 | $1,744.20 | -$1,046.33 | |
| 06/26/23 | **03/01/23** | **$1,744.20** | **$1,744.20** | $1,744.20 | -$1,046.33 | |
| 07/19/23 | 04/01/23 | $1,744.20 | $1,744.20 | $1,746.20 | -$1,048.33 | |
| 08/22/23 | 05/01/23 | $1,744.20 | $1,744.20 | $1,750.00 | -$1,054.13 | |
| 09/25/23 | 06/01/23 | $1,744.20 | $1,744.20 | $1,750.00 | -$1,059.93 | |
| 10/23/23 | 07/01/23 | $1,744.20 | $1,744.20 | $1,750.00 | -$1,065.73 | |
| 11/30/23 | 08/01/23 | $1,744.20 | $1,744.20 | $1,750.00 | -$1,071.53 | |
| 01/02/24 | 09/01/23 | $1,744.20 | $1,744.20 | $1,750.00 | -$1,077.33 | |
| 01/19/24 | 10/01/23 | $1,744.20 | $1,744.20 | $1,850.00 | -$1,183.13 | |
| 01/26/24 | **NSF** | -$1,744.20 | -$1,744.20 | -$1,850.00 | -$1,077.33 | NSF/Returned Check |
| 01/30/24 | 10/01/23 | $1,744.20 | $1,744.20 | $1,866.00 | -$1,199.13 | |
| 02/27/24 | 11/01/23 | $1,744.20 | $1,744.20 | $1,865.95 | -$1,320.88 | |
| 03/25/24 | 12/01/23 | $1,744.20 | $1,744.20 | $1,865.95 | -$1,442.63 | |
| 04/22/24 | 01/01/24 | **$1,865.95** | **$1,865.95** | $1,865.95 | -$1,442.63 | |
| | 02/01/24 | $1,442.63 | $1,865.95 | | $0.00 | |
| 05/15/24 | 03/01/24 | $1,865.95 | $1,865.95 | $1,865.95 | $0.00 | |
| 06/12/24 | 04/01/24 | $1,865.95 | $1,865.95 | $1,865.95 | $0.00 | |
| 07/10/24 | 05/01/24 | $1,865.95 | $1,865.95 | $1,865.95 | $0.00 | |
| 08/07/24 | 06/01/24 | $1,865.95 | $1,865.95 | $1,865.95 | $0.00 | |
| 08/13/24 | 07/01/24 | $1,865.95 | $1,865.95 | $3,731.90 | -$1,865.95 | |
| | 08/01/24 | $1,865.95 | $1,865.95 | | $0.00 | |
| 09/05/24 | 09/01/24 | $1,865.95 | $1,865.95 | $1,865.95 | $0.00 | |
| 10/02/24 | 10/01/24 | $1,865.95 | $1,865.95 | $1,865.95 | $0.00 | |
| 11/13/24 | 11/01/24 | $2,108.99 | $2,108.99 | $2,108.99 | $0.00 | |
| 12/11/24 | 12/01/24 | $2,108.99 | $2,108.99 | $2,108.99 | $0.00 | |
| 01/22/25 | 01/01/25 | $2,108.99 | $2,108.99 | $2,108.99 | $0.00 | |
| 02/24/25 | 02/01/25 | $2,108.99 | $2,108.99 | $2,108.99 | $0.00 | |
| 03/20/25 | 03/01/25 | $2,108.99 | $2,108.99 | $2,108.99 | $0.00 | |
| 04/03/25 | 04/01/25 | $2,108.99 | $2,108.99 | $2,108.99 | $0.00 | |
| 05/15/25 | 05/01/25 | $2,108.99 | $2,108.99 | $2,108.99 | $0.00 | |
| 06/12/25 | 06/01/25 | $2,108.99 | $2,108.99 | $2,108.99 | $0.00 | |
| 07/10/25 | 07/01/25 | $1,942.38 | $1,942.38 | $1,942.38 | $0.00 | |
| 08/20/25 | 08/01/25 | $1,942.38 | $1,942.38 | $1,942.38 | $0.00 | |
| 10/02/25 | 09/01/25 | $1,942.38 | $1,942.38 | $1,942.38 | $0.00 | |
| 10/29/25 | 10/01/25 | $1,942.38 | $1,942.38 | $1,942.38 | $0.00 | |
| 11/20/25 | 11/01/25 | $1,942.38 | $1,942.38 | $1,942.38 | $0.00 | |
| 12/10/25 | 12/01/25 | $1,942.38 | $1,942.38 | $1,942.38 | $0.00 | |
| 01/07/26 | 01/01/26 | $1,942.38 | $1,942.38 | $1,942.38 | $0.00 | |
| **Due** | 02/01/26 | $1,942.38 | $1,942.38 | $0.00 | $1,942.38 | |
| | | | | | $1,942.38 | |
| | | | | | $1,942.38 | |
| | | | | | $1,942.38 | |
| | | | | | $1,942.38 | |
| | | | | | $1,942.38 | |
| | | | | | $1,942.38 | |

| | | | | | |
|---|---|---|---|---|---|
| **Total Due** | | $143,143.80 | $143,567.12 | **Adjustments Needed** | **Total Pmts Due** |
| **Total Received** | | | $141,201.42 | **-$423.32** | $1,942.38 |

| **Comments** |
|---|
| |

The contents of this document are RESTRICTED to authorized individuals.  Any unauthorized access, use or duplication is strictly prohibited.

*Post Petition Insurance/Tax Advances*

| Post Insurance | | Post Ins Amt | Post Ins Total | | Comments **(Include the type of insurance being paid)** |
|---|---|---|---|---|---|
| | Disbursed | $0.00 | $0.00 | | |
| | Refund | $0.00 | $0.00 | | |
| | | $0.00 | $0.00 | | |
| | | $0.00 | $0.00 | | |
| | | $0.00 | $0.00 | | |
| | | $0.00 | $0.00 | | |
| **Post Petition Insurance Total** | | | **$0.00** | | |

| Post Tax | | Post Tax Amt | Post Tax Total | | Comments **(Include County paid and tax year paid)** |
|---|---|---|---|---|---|
| | Disbursed | $0.00 | $0.00 | | |
| | Refund | $0.00 | $0.00 | | |
| | | $0.00 | $0.00 | | |
| | | $0.00 | $0.00 | | |
| | | $0.00 | $0.00 | | |
| | | $0.00 | $0.00 | | |
| **Post Petition Taxes Total** | | | **$0.00** | | |

| **Post Petition Insurance/Tax Advance Comments** |
|---|
| N/A |

*Pre Petition claim information*

| Pre petition claim amount: | $16,424.69 |
|---|---|
| Pre petition received: | $16,424.69 |
| Pre petition remaining: | $0.00 |

| **Pre Petition Comments** |
|---|
| N/A |

The contents of this document are RESTRICTED to authorized individuals.  Any unauthorized access, use or duplication is strictly prohibited.

**SPS SELECT Portfolio SERVICING, inc.**

Preparation Date:

Prepared by:

| 02/04/26 |
| Anusha Y |

**Loan Information:**

| Loan Number | X X X X X X 9180 |
| Debtors Name - 1 | STEVEN MOEHLING |
| Debtors Name - 2 | |
| Property Address | 5420 OLD RANCH RD |
| Property State | CA |

**Bankruptcy Information:**

| Bankruptcy Case # | 19-03857 |
| Filing Date: | 6/28/2019 |
| Person filing: | M1 |
| Number of previous filings: | 2 |

**Post petition due**

| Post petition due date: | 02/01/26 |
| Post petition $$$ due: | $1,942.38 |
| Post petition insurance: | $0.00 |
| Post petition taxes: | $0.00 |
| | |
| Total Post petition due | **$1,942.38** |

| **Comment** |
| Post-petition taxes and insurance included in annual escrow analysis and added to monthly payments. |

**Post-Petition Payment History Detail**

| Date Pmnt Rcvd | Post Due Dt | System PMT | Filed PMT | $ Received | Comments |
|---|---|---|---|---|---|
| 08/28/19 | 07/01/19 | $1,682.19 | $1,682.19 | $1,700.00 | |
| 10/10/19 | 08/01/19 | $1,682.19 | $1,682.19 | $1,700.00 | |
| 12/02/19 | 09/01/19 | $1,682.19 | $1,682.19 | $1,700.00 | |
| 01/27/20 | 10/01/19 | $1,682.19 | $1,682.19 | $1,800.00 | |
| 02/24/20 | 11/01/19 | $1,682.19 | $1,682.19 | $1,700.00 | |
| 05/04/20 | partial payment | 0.00 | $0.00 | $1,300.00 | Partial Payment |
| 05/19/20 | 12/01/19 | $1,682.19 | $1,682.19 | $1,300.00 | |
| 05/30/20 | 01/01/20 | $1,682.19 | $1,682.19 | $913.55 | |
| 05/30/20 | partial payment | 0.00 | $0.00 | $386.45 | Partial Payment |
| 06/15/20 | 02/01/20 | $1,682.19 | $1,682.19 | $1,300.00 | |
| 07/13/20 | partial payment | 0.00 | $0.00 | $913.55 | Partial Payment |
| 07/13/20 | 03/01/20 | $1,682.19 | $1,682.19 | $1,286.45 | |
| 07/22/20 | partial payment | 0.00 | $0.00 | $450.00 | Partial Payment |
| 08/10/20 | 04/01/20 | $1,682.19 | $1,682.19 | $913.55 | |
| 08/10/20 | 05/01/20 | $1,682.19 | $1,682.19 | $1,686.45 | |
| 09/14/20 | partial payment | 0.00 | $0.00 | $913.55 | Partial Payment |
| 09/14/20 | 06/01/20 | $1,682.19 | $1,682.19 | $1,706.45 | |
| 10/12/20 | 07/01/20 | $1,682.19 | $1,682.19 | $913.55 | |
| 10/12/20 | 08/01/20 | $1,682.19 | $1,682.19 | $1,706.45 | |
| 11/16/20 | partial payment | 0.00 | $0.00 | $913.55 | Partial Payment |
| 11/16/20 | 09/01/20 | $1,701.11 | $1,701.11 | $1,706.45 | |
| 12/07/20 | Reversal | -$1,701.11 | -$1,701.11 | | |
| 12/08/20 | partial payment | 0.00 | $0.00 | $913.55 | Partial Payment |
| 12/08/20 | 09/01/20 | $1,701.11 | $1,701.11 | $1,706.45 | |
| 01/15/21 | 10/01/20 | $1,701.11 | $1,701.11 | $913.50 | |
| 01/15/21 | 11/01/20 | $1,701.11 | $1,701.11 | $1,706.50 | |
| 02/12/21 | 12/01/20 | $1,701.11 | $1,701.11 | $1,702.00 | |
| 03/19/21 | 01/01/21 | $1,701.11 | $1,701.11 | $1,702.00 | |
| 04/19/21 | 02/01/21 | $1,701.11 | $1,701.11 | $1,701.11 | |
| 06/02/21 | 03/01/21 | $1,701.11 | $1,701.11 | $1,702.00 | |
| 06/28/21 | 04/01/21 | $1,701.11 | $1,701.11 | $1,702.00 | |
| 07/27/21 | 05/01/21 | $1,701.11 | $1,701.11 | $1,707.00 | |
| 09/07/21 | 06/01/21 | $1,701.11 | $1,701.11 | $1,701.11 | |
| 09/30/21 | 07/01/21 | $1,706.83 | $1,706.83 | $1,701.11 | |
| 11/02/21 | 08/01/21 | $1,706.83 | $1,706.83 | $1,715.00 | |
| 11/30/21 | 09/01/21 | $1,706.83 | $1,706.83 | $1,715.00 | |
| 12/28/21 | 10/01/21 | $1,706.83 | $1,706.83 | $1,720.00 | |
| 01/25/22 | 11/01/21 | $1,706.83 | $1,706.83 | $1,720.00 | |
| 02/24/22 | 12/01/21 | $1,706.83 | $1,706.83 | $1,720.00 | |
| 03/21/22 | 01/01/22 | $1,706.83 | $1,706.83 | $1,720.00 | |
| 04/18/22 | 02/01/22 | $1,706.83 | $1,706.83 | $1,720.00 | |
| 05/18/22 | 03/01/22 | $1,706.83 | $1,706.83 | $1,742.46 | |
| 07/12/22 | 04/01/22 | $1,706.83 | $1,706.83 | $1,742.46 | |
| 08/09/22 | 05/01/22 | $1,742.46 | $1,742.46 | $1,742.46 | |
| 08/16/22 | NSF | -$1,742.46 | -$1,742.46 | -$1,742.46 | NSF/Returned Check |
| 08/19/22 | 05/01/22 | $1,742.46 | $1,742.46 | $1,742.46 | |
| 09/19/22 | 06/01/22 | $1,742.46 | $1,742.46 | $1,742.46 | |
| 10/17/22 | 07/01/22 | $1,742.46 | $1,742.46 | $1,742.46 | |
| 11/29/22 | 08/01/22 | $1,742.46 | $1,742.46 | $1,742.46 | |
| 12/28/22 | 09/01/22 | $1,742.46 | $1,742.46 | $1,742.46 | |
| 01/24/23 | 10/01/22 | $1,742.46 | $1,742.46 | $1,746.42 | |
| 02/22/23 | 11/01/22 | $1,742.46 | $1,742.46 | $1,746.42 | |
| 03/16/23 | 12/01/22 | $1,742.46 | $1,742.46 | $1,744.20 | |
| 04/18/23 | 01/01/23 | $1,742.46 | $1,742.46 | $1,744.20 | |
| 05/10/23 | 02/01/23 | $1,742.46 | $1,742.46 | $1,744.20 | |
| 06/26/23 | 03/01/23 | $1,744.20 | $1,744.20 | $1,744.20 | |
| 07/19/23 | 04/01/23 | $1,744.20 | $1,744.20 | $1,746.20 | |
| 08/22/23 | 05/01/23 | $1,744.20 | $1,744.20 | $1,750.00 | |
| 09/25/23 | 06/01/23 | $1,744.20 | $1,744.20 | $1,750.00 | |
| 10/23/23 | 07/01/23 | $1,744.20 | $1,744.20 | $1,750.00 | |
| 11/30/23 | 08/01/23 | $1,744.20 | $1,744.20 | $1,750.00 | |
| 01/02/24 | 09/01/23 | $1,744.20 | $1,744.20 | $1,750.00 | |
| 01/19/24 | 10/01/23 | $1,744.20 | $1,744.20 | $1,850.00 | |
| 01/26/24 | NSF | -$1,744.20 | -$1,744.20 | -$1,850.00 | NSF/Returned Check |
| 01/30/24 | 10/01/23 | $1,744.20 | $1,744.20 | $1,866.00 | |
| 02/27/24 | 11/01/23 | $1,744.20 | $1,744.20 | $1,865.95 | |
| 03/25/24 | 12/01/23 | $1,744.20 | $1,744.20 | $1,865.95 | |
| 04/22/24 | 01/01/24 | $1,865.95 | $1,865.95 | $1,865.95 | |
| | 02/01/24 | $1,442.63 | $1,865.95 | | |

The contents of this document are RESTRICTED to authorized individuals. Any unauthorized access, use or duplication is strictly prohibited.

| Date | Date | Amount | Amount | Amount |
|------|------|--------|--------|--------|
| 05/15 | | | | |
| 06/12/24 | 04/01/24 | $1,865.95 | $1,865.95 | $1,865.95 |
| 07/10/24 | 05/01/24 | $1,865.95 | $1,865.95 | $1,865.95 |
| 08/07/24 | 06/01/24 | $1,865.95 | $1,865.95 | $1,865.95 |
| 08/13/24 | 07/01/24 | $1,865.95 | $1,865.95 | $3,731.90 |
| | 08/01/24 | $1,865.95 | $1,865.95 | |
| 09/05/24 | 09/01/24 | $1,865.95 | $1,865.95 | $1,865.95 |
| 10/02/24 | 10/01/24 | $1,865.95 | $1,865.95 | $1,865.95 |
| 11/13/24 | 11/01/24 | $2,108.99 | $2,108.99 | $2,108.99 |
| 12/11/24 | 12/01/24 | $2,108.99 | $2,108.99 | $2,108.99 |
| 01/22/25 | 01/01/25 | $2,108.99 | $2,108.99 | $2,108.99 |
| 02/24/25 | 02/01/25 | $2,108.99 | $2,108.99 | $2,108.99 |
| 03/20/25 | 03/01/25 | $2,108.99 | $2,108.99 | $2,108.99 |
| 04/03/25 | 04/01/25 | $2,108.99 | $2,108.99 | $2,108.99 |
| 05/15/25 | 05/01/25 | $2,108.99 | $2,108.99 | $2,108.99 |
| 06/12/25 | 06/01/25 | $2,108.99 | $2,108.99 | $2,108.99 |
| 07/10/25 | 07/01/25 | $1,942.38 | $1,942.38 | $1,942.38 |
| 08/20/25 | 08/01/25 | $1,942.38 | $1,942.38 | $1,942.38 |
| 10/02/25 | 09/01/25 | $1,942.38 | $1,942.38 | $1,942.38 |
| 10/29/25 | 10/01/25 | $1,942.38 | $1,942.38 | $1,942.38 |
| 11/20/25 | 11/01/25 | $1,942.38 | $1,942.38 | $1,942.38 |
| 12/10/25 | 12/01/25 | $1,942.38 | $1,942.38 | $1,942.38 |
| 01/07/26 | 01/01/26 | $1,942.38 | $1,942.38 | $1,942.38 |
| **Due** | 02/01/26 | $1,942.38 | $1,942.38 | 0.00 |

| Total Due | | $143,143.80 | $143,567.12 | |
| Total Received | | | | $143,821.42 |

The contents of this document are RESTRICTED to authorized individuals. Any unauthorized access, use or duplication is strictly prohibited.

Steven M. Dailey, Bar No. 163857
Jennifer L. Andrews, Bar No. 222807
**KUTAK ROCK LLP**
5 Park Plaza, Suite 1500
Irvine, California 92614-8595
Telephone: (949) 417-0999
Facsimile: (949) 417-5394
Authorized E-Service Address: irvineintake@KutakRock.com
Email: Steven.dailey@kutakrock.com

Attorneys for Respondents WELLS FARGO BANK,
NATIONAL ASSOCIATION AS TRUSTEE FOR
SECURITIZED ASSET BACKED RECEIVABLES LLC
TRUST 2006-FR1 MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2006-FR1 (erroneously named as
"WELLS FARGO BANK, N.A."); SELECT PORTFOLIO
SERVICING, INC.; and KUTAK ROCK LLP (erroneously
named as "Kutak Rock, LLC")

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | Case No. 19-03857-CL13 |
| STEVEN MOEHLING, | Chapter 13 |
| Debtor. | Assigned to: Christopher B. Latham |
| | **CERTIFICATE OF SERVICE** |

///

///

///

///

///

///

///

///

KUTAK ROCK LLP
ATTORNEYS AT LAW
IRVINE

CERTIFICATE OF SERVICE

4920-9114-1499.1

**CERTIFICATE OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the city of Irvine in the County of Orange, State of California. I am over the age of 18 and not a party to the within action. My business address is 5 Park Plaza, Suite 1500, Irvine, California 92614-8595.

On February 23, 2026, I served on all interested parties as identified on the below mailing list the following document(s) described as:

**DECLARATION OF SELECT PORTFOLIO SERVICING, INC. IN SUPPORT OF OPPOSITION TO DEBTOR'S MOTION TO ENFORCE DISCHARGE INJUNCTION**

**[X]  (BY FIRST CLASS MAIL)** I deposited such envelope in the mail at Irvine, California. The envelope was mailed with postage thereon fully prepaid. I am readily familiar with the firm's practice for collection and processing correspondence for mailing. Under that practice, this(these) document(s) will be deposited with the U.S. Postal Service on this date with postage thereon fully prepaid at Irvine, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

**Steven Michael Moehling**
5420 Old Ranch Road
Oceanside, CA 92057

In addition to any paper copies served by U.S. Mail, registered ECF participants, including parties who have requested Special Notice in this case, will receive an electronic copy of the foregoing document when it has been filed with the Court.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on February 23, 2026, at Irvine, California.

_____
Wendy G. Bonsall

# Exhibit "15"

Order Entered on
March 26, 2026
by Clerk U.S. Bankruptcy Court
Southern District of California

**UNITED STATES BANKRUPTCY COURT**
SOUTHERN DISTRICT OF CALIFORNIA
325 West "F" Street, San Diego, California 92101-6991

In re:

STEVEN MICHAEL MOEHLING,

Debtor.

BANKRUPTCY NO.    19-03857-CL13
Date of Hearing:    March 23, 2026
Time of Hearing:    10:00 a.m.
Name of Judge:    Christopher B. Latham

## ORDER ON DEBTOR'S MOTION TO ENFORCE THE DISCHARGE INJUNCTION

IT IS HEREBY ORDERED as set forth on the continuation page(s) attached, numbered two (2) through five (5).

DATED:    March 25, 2026

_____
Judge, United States Bankruptcy Court

Page 2  | ORDER ON DEBTOR'S MOTION TO ENFORCE THE DISCHARGE INJUNCTION

IN RE STEVEN MICHAEL MOEHLING                                    Case No. 19-03857-CL13

The court has considered Debtor's motion to enforce the discharge injunction (ECF No. 54), Creditors' opposition and request for judicial notice (ECF Nos. 65 & 66), Debtor's reply (ECF Nos. 67 & 68), the parties supplemental briefing (ECF Nos. 71, 72 & 73), oral argument at the hearings on the matter, and its own docket. It will **deny** the motion as follows.

## Background

Debtor filed for chapter 13 relief on Juny 28, 2019 (ECF No. 1). The initial plan was confirmed on August 16, 2019 (ECF No. 14), then modified (ECF Nos. 30 & 37). Under the plan, prepetition mortgage arrears were to be paid by the Trustee, and Debtor was to continue making regular contractual payments directly to the loan servicer, Select Portfolio Servicing, Inc. ("SPS") (ECF No. 2).

Debtor fell behind on his payments early in the bankruptcy, with post-petition arrears growing to $8,221.90 (ECF No. 25). The court entered an adequate protection order ("APO") requiring him to make all future contractual payments of $1,682.19 on the first day of each monthly beginning May 1, 2020. *Id.* And he was to pay off the post-petition arrears in equal payments of $913.55 each on the 15th day of each month beginning on May 15, 2020 and continuing through January 1, 2021. *Id.* The APO expressly stated that accepting late or partial payments would not be deemed a waiver of any rights. *Id.*

It is undisputed that all prepetition arrears were cured through the plan as of February 20, 2024 (ECF Nos. 42 & 48). But in Wells Fargo's response to the Trustee's Notice of Final Cure Payment, it explained that although prepetition arrears were cured, Debtor was delinquent $6,021.17 in post-petition payments (ECF No. 48). Discharge was then entered on April 4, 2024 (ECF No. 49). Debtor says that on June 18, 2024 Creditors issued a notice of default alleging the account was two payments behind and threatening acceleration unless cured (ECF No. 54).

Debtor argues that Creditors Wells Fargo Bank, SPS, and Counsel Kutak Rock LLP violated the discharge injunction by misapplying post-confirmation plan payments. *Id.*

## Legal Standards

### *Discharge Injunction Generally*

The bankruptcy discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any [prepetition] debt as a personal liability of the debtor . . . ." 11 U.S.C. § 524(a)(2); *see also In re Ybarra*, 424 F.3d 1018, 1022 (9th Cir. 2005) ("A Chapter 7 bankruptcy discharge releases the debtor from personal liability for her pre-bankruptcy debts."). "[W]hether initiated by the debtor or creditor, the creditor may not use a [post-discharge] contact to 'coerce' or 'harass' the debtor." *In re Nash*, 464 B.R. 874, 881 (B.A.P. 9th Cir. 2012). And "[w]hether a creditor has 'coerced' a debtor is determined by reference to the affirmative acts the creditor took during the contact with the debtor, or afterwards, to collect the debt." *Id.*

Page 3  | ORDER ON DEBTOR'S MOTION TO ENFORCE THE DISCHARGE INJUNCTION

IN RE STEVEN MICHAEL MOEHLING                                    Case No. 19-03857-CL13

There "is no private right of action for violation of a § 524 discharge injunction and . . . an order of contempt under § 105 to enforce an existing injunction must be sought via motion in the bankruptcy" court. *Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186, 1191 (9th Cir. 2011). A party who "knowingly violates the discharge injunction can be held in contempt under section 105(a) . . . ." *Zilog, Inc. v. Corning (In re Zilog, Inc.)*, 450 F.3d 996, 1007 (9th Cir. 2006). The Supreme Court has gone on to clarify that "a court may hold a creditor in civil contempt for violating a discharge order if there is *no fair ground of doubt* as to whether the order barred the creditor's conduct." *Taggart v. Lorenzen*, 587 U.S. 554, 556 (2019) (emphasis in original).

The court's § 105(a) contempt authority is civil in nature. *In re Moreno*, 479 B.R. 553, 569 (Bankr. E.D. Cal. 2012) (citing *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1192 (9th Cir. 2003)). Civil sanctions are thus the appropriate remedy for a willful discharge injunction violation. *Id.* "Civil sanctions must either be compensatory or designed to coerce compliance." *Id.* And for a discharge injunction violation, "compensatory civil contempt allows an aggrieved debtor to obtain compensatory damages, attorneys fees, and the offending creditor's compliance with the discharge injunction." *Id.* (quoting *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 507 (9th Cir. 2002)).

Debtor bears the burden of demonstrating, by clear and convincing evidence, that "the creditor (1) knew the discharge injunction was applicable and (2) intended the actions which violated the injunction." *In re Zilog, Inc.*, 450 F.3d at 1007 (quoting *Renwick v. Bennett (In re Bennett)*, 298 F.3d 1059, 1069 (9th Cir. 2002)). Once Debtor has done so, the burden "then shifts to the contemnors to demonstrate why they were unable to comply." *In re Bennett*, 298 F.3d at 1069.

### 11 U.S.C. § 524(i)

Debtor argues Creditors violated § 524(i), which treats a creditor's willful failure to credit payments under the confirmed plan as a discharge injunction violation. Notably, a discharge violation under § 524(i) can be based on the creditor's actions before discharge. *In re Anderson*, 382 B.R. 496, 500 (Bankr. D. Or. 2008). There are two requirements to establish a violation under that section: (1) a willful failure to credit payments received under a confirmed plan; and (2) the act of the creditor to collect and failure to credit payments in the plan-mandated manner caused material injury to the debtor. *In re Valdellon*, No. 2:21-CV-01840-DJC, 2024 WL 404404, at *5 (E.D. Cal. Feb. 2, 2024). Willfulness only requires that the creditor intended to apply the payments received in the manner it applied them. *In re Bivens*, 625 B.R. 843, 848 (Bankr. M.D.N.C. 2021). It does not require bad faith or a specific intent to violate the Code or plan provisions. *Id.*

The statute also contains a safe harbor provision that renders it inapplicable if the order confirming the plan is revoked, the plan is in default, or the creditor has not received payments required to be made in the manner the plan calls for (including crediting the amounts required under the plan). 11 U.S.C. § 524(i).

Signed by Judge Christopher B. Latham March 25, 2026

Page 4  | ORDER ON DEBTOR'S MOTION TO ENFORCE THE DISCHARGE INJUNCTION

IN RE STEVEN MICHAEL MOEHLING                                    Case No. 19-03857-CL13

## Analysis & Discussion

### *No Requirement to Reopen the Case or File an Adversary Proceeding*

Creditors argue the motion should not be considered because Debtor did not move to reopen the underlying case (ECF No. 65). Debtor argues that it is not mandatory, but requests reopening if necessary (ECF No. 54). A bankruptcy case can be reopened "to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). Reopening is generally appropriate to enforce or address a discharge injunction violation. *See In re Hicks*, 184 B.R. 954, 962 (Bankr. C.D. Cal. 1995). But the court sees no binding authority holding that it *must* reopen the case for the limited purpose of enforcing its discharge injunction. And it will not elect to do so here.

Creditors further claim this dispute would need to be brought by an adversary proceeding because it raises a question as to whether the scope of the injunction covers its alleged conduct under § 524(i). But the plain language of § 524(i) brings misapplied plan payments within the scope of the injunction by direct reference to § 524(a)(2). And a motion to enforce the discharge injunction is not otherwise required to be brought as an adversary. *See* FED. R. CIV. PROC. 7001.

### *11 U.S.C. § 524(a)(2)*

There is no direct violation under § 524(a)(2) (protecting collection of prepetition debts that were discharged) because only post-petition mortgage payments are at issue. It is undisputed that prepetition arrears were paid in full through the plan (ECF No. 42). So the payments at issue are non-dischargeable post-petition debts not subject to the discharge injunction. However, as noted above, the willful misapplication of payments under the plan – even those occurring pre-discharge – may violate the injunction under § 524(a)(2). 11 U.S.C. § 524(i).

### *11 U.S.C. § 524(i)*

#### Direct Payments to SPS Are Payments Under the Plan

Creditors assert that § 524(i) is inapplicable because regular monthly mortgage payments were not "payments under the plan" since the latter only contemplated curing prepetition arrearages (ECF No. 65). *See* 11 U.S.C. § 524(i).

Section 3.1 of the modified plan called for the Trustee to pay $16,424.69 in prepetition arrearages (ECF No. 30). But it also obliged Debtor to maintain contractual installment payments directly to SPS. *Id.* When a chapter 13 plan provides for the curing of prepetition mortgage arrears along with the debtor's direct payment of post-petition maintenance payments in accordance with § 1322(b)(5), such direct payments are payments under the plan. *In re Mrdutt*, 600 B.R. 72, 77-78 (B.A.P. 9th Cir. 2019). So Debtor's contractual monthly payments to SPS were indeed payments under the plan and subject to § 524(i)'s protection.

Signed by Judge Christopher B. Latham March 25, 2026

Page 5  | ORDER ON DEBTOR'S MOTION TO ENFORCE THE DISCHARGE INJUNCTION

IN RE STEVEN MICHAEL MOEHLING                                    Case No. 19-03857-CL13

Debtor's Default

Creditors further contend that even if the contractual mortgage payments within the scope of § 524(i), the claim still fails because Debtor defaulted (ECF No. 65).

The APO modified the parties' rights and waived Creditors' right to rely on § 524(i)'s safe harbor provision as to those defaults preceding April 1, 2020 (ECF No. 25).  So the period of review covers the four years between April 2, 2020 and the April 4, 2024 discharge (ECF No. 49).

Creditors submitted a full accounting of Debtor's mortgage payments (ECF No. 71).  It shows he defaulted on his APO obligations on the very first payments following its entry.  Specifically, he failed to timely remit the full $1,682.19 due May 1, 2020. *Id.*  Rather, Debtor paid $1,300 on May 4, 2020, reflecting a partial payment three days late – a breach of the APO and default on the loan.[1] And Debtor generally remained in default for the plan's duration (ECF No. 71).  Creditor identified multiple other instances of payments that were reversed or returned for insufficient funds, such that at the plan's conclusion Debtor had accrued $6,021.17 in post-petition arrears (ECF No. 48).

Debtor argues that – despite his failure to make regular payments on time for that four-year period – he was not in default because Creditors failed to give notice, issue written warnings, or file notices (ECF No. 73).  But those procedures are to obtain stay relief under the APO, not to preserve default.  Nor does the decision not to seek stay relief constitute a waiver of default.

So § 524(i)'s safe harbor provision applies, and the court need not reach whether Creditors willfully misapplied any payments under the plan.

**Conclusion**

In sum, Debtor cannot maintain that Creditors violated § 524(a)(2) through § 524(i) because he was in default on payments under the plan.  Consequently, he has not met his burden of showing by clear and convincing evidence that Creditors Wells Fargo Bank, SPS, and Counsel Kutak Rock LLP willfully violated the discharge injunction.  The motion is accordingly **denied**.

IT IS SO ORDERED.

---

[1] Debtor claims he satisfied his May 2020 APO obligations by paying $1,300 on May 4, 2020 and $1,300 on May 19, 2020 (ECF No. 54).  While his collective monthly APO obligation was $2,605.74, that consisted of two separate payments: (i) the $1,692.19 contractual amount due on May 1, 2020; and (ii) the $913.55 for post-petition arrears due May 15, 2020 (ECF No. 37).  Debtor defaulted on both of those.

Signed by Judge Christopher B. Latham March 25, 2026

# Notice Recipients

| | | |
|---|---|---|
| District/Off: 0974−3 | User: Admin. | Date Created: 3/26/2026 |
| Case: 19−03857−CL13 | Form ID: pdfO1 | Total: 8 |

**Recipients of Notice of Electronic Filing:**
tr      Michael Koch         mkoch@ch13.sdcoxmail.com
aty     Andrew Moher          amoher@moherlaw.com
aty     Chad L. Butler         caecf@tblaw.com
aty     Robert Zahradka          rzahradka@nationalfunding.com
aty     Sean C Ferry        sferry@raslg.com
aty     Steven M. Dailey         steven.dailey@kutakrock.com

TOTAL: 6

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**
db      Steven Michael Moehling        5420 Old Ranch Road        Oceanside, CA 92057
cr      Wells Fargo Bank, National Association as Trustee for Securitized Asset Backed Receivables LLC Trust 2006−FR1 Mortgage Pass−Through Certificates, Series 2006−FR1        Tiffany and Bosco        1455 Frazee Road        Suite 820        San Diego, CA 92108

TOTAL: 2