Steven M. Moehling

5420 Old Ranch Road

Oceanside, CA 92057

760-689-0966

sandiegan760@gmail.com

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA


| | |
|---|---|
| STEVEN M. MOEHLING, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| SELECT PORTFOLIO SERVICING, INC., | ) |
| | ) |
| Defendant. | ) |
| _____ | ) Case No.: 26-cv-1399-TWR-VET |


PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND MOTION TO

STRIKE UNDER RULE 12(b)(6)

**Moehling v. Select Portfolio Servicing, Inc.**
**Case No.: 26-cv-1399-TWR-VET**                    **Plaintiff's Opposition to Defendant's Motion to Dismiss**

TABLE OF CONTENTS

I. INTRODUCTION…………………………………………..……………….……1-3

II. LEGAL STANDARD UNDER RULE 12(b)(6)…………………….................3-4

III. ARGUMENT.................................................................................................4

A. Overview: The Structural Chronology of "Life 1" vs. "Life 2"…………………….4-5

B. Collateral Estoppel Does Not Apply Because the Bankruptcy
Court's Summary Order Was Expressly Limited to a Narrow
Payment-Application …………………………………………………………….5-7

C. The Reality of the Dual Accounts: Defendant Maintained
Fundamentally Conflicting Ledgers Throughout Plaintiff's
Bankruptcy Proceedings………………………………………………………….7-10

D. The Institutional Discrepancy Between Billing Statements
and Post-Hoc Litigation Ledgers Pleads an Actionable Statutory
Violation…………………………………………………………………………….10-11

E. SPS Cannot Establish a Prima Facie Delinquency to Defeat
Plausibility Because Its Accompanying Accounting Evidence
is Structurally Inadequate……………………………………………...…………11-12

F. Defendant's Weaponization of Administrative Form 4100R
to Initiate Foreclosure Violates Statutory Consumer Protections……………....……12-13

**Moehling v. Select Portfolio Servicing, Inc.**
**Case No.: 26-cv-1399-TWR-VET**          **Plaintiff's Opposition to Defendant's Motion to Dismiss**

G. The Plausibility of Plaintiff's Claims under the

Twombly/Iqbal Pleading Standard…………………………………..……………...13-16


H. Defendant Lacked an Objectively Reasonable Basis

for Post-Discharge Enforcement Under the Taggart Standard………..…………….16-20


I. Defendant's Abusive Collection Campaign Satisfies

the Rosenthal Act (Cal. Civ. Code § 1788.17)………………………..…........……..20-21


J. Defendant's Failure to Conduct a Meaningful Investigation

Violates RESPA (12 U.S.C. § 2605)………………………………..…………21-22


K. Defendant's Willful, Bad-Faith Conduct Directly Caused

Material Financial and Physical Injury Under Extreme

Economic Duress…………………………………………………………..…….23-24


L. Actionable FCRA and Credit Reporting Violations……………..……………....24-25


IV. CONCLUSION AND PRAYER FOR RELIEF................................................. 25

**Moehling v. Select Portfolio Servicing, Inc.**
**Case No.: 26-cv-1399-TWR-VET**                    **Plaintiff's Opposition to Defendant's Motion to Dismiss**

TABLE OF AUTHORITIES

Cases

*Ashcroft v. Iqbal, 556 U.S. 662 (2009)*............................................................................ [Page 3]

*Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)*..................................................... [Page 3, 13]

*Taggart v. Lorenzen, 587 U.S. 554, 139 S. Ct. 1795 (2019)*...................... [Page 16, 18, 19, 22]

*Valdellon v. PHH Mortgage Corp*., BAP No. EC-24-1086

(9th Cir. BAP Dec. 20, 2024), aff'd, No. 25-538, 2026 U.S. App.

LEXIS 11084 (9th Cir. Apr. 20, 2026)...............................................................[Page 7, 9, 14, 21]

*In re Farrell*, 580 B.R. 181 (Bankr. D.S.C. 2017) .......................................................[Page 17]

*In re Gravel*, 556 B.R. 561 (Bankr. D. Vt. 2016) ..................................................... [Page 17, 20]

*In re Rains*, 428 F.3d 893 (9th Cir. 2005) ........................................................... [Page 1]

*In re Tollios*, 491 B.R. 886 (Bankr. N.D. Ill. 2013) .................................................. [Page 8, 20]

Regulations

12 C.F.R. § 1024.35...........................................................................................................[Page 21]

State Statutes

Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788.17................[Page 1, 20]

Federal Statutes

11 U.S.C. § 524(a)(2) (Discharge Injunction) ................................................................. [Page 5]

11 U.S.C. § 1328 (Chapter 13 Discharge) ................................................................. [Page 16]

11 U.S.C. § 524(i) ...............................................................................................[5-7, 14-15]

**Moehling v. Select Portfolio Servicing, Inc.**
**Case No.: 26-cv-1399-TWR-VET**          **Plaintiff's Opposition to Defendant's Motion to Dismiss**

11 U.S.C. § 1322(b)(5) ............................................................................................ [Page 2, 8]

12 U.S.C. § 2605………………………………………………………..[Page 1, 18, 21]

15 U.S.C. § 1681……………………………………………………….…..[Page 1]

28 U.S.C. § 158(a)(1) ...……………………………………..…...………[Page 1]

28 U.S.C. § 1331……………………………………………………...…………[Page 1]

28 U.S.C. § 1337……………………………………………………...…………[Page 1]

28 U.S.C. § 1367……………………………………………….…………….…[Page 1]

Rules

Federal Rule of Civil Procedure 12(b)(6) .............................................................. [Page 1, 3, 25]

Federal Rule of Bankruptcy Procedure 3002.1 ......................................... [Page 4, 7-9, 17-18]

Southern District of California Local Civil Rule 7.1 ..................................................... [Page 1]

Bankruptcy Forms

Official Bankruptcy Form 410S1 ………………………………….…………………[Page 14, 19]

**Moehling v. Select Portfolio Servicing, Inc.**
**Case No.: 26-cv-1399-TWR-VET**                 **Plaintiff's Opposition to Defendant's Motion to Dismiss**

**JURISDICTIONAL STATEMENT**

This Court possesses original subject-matter jurisdiction over the instant action pursuant to **28 U.S.C. § 1331**, as Plaintiff's claims arise directly under the laws of the United States, specifically the Real Estate Settlement Procedures Act (RESPA), **12 U.S.C. § 2605**, and the Fair Credit Reporting Act (FCRA), **15 U.S.C. § 1681**. This Court exercises supplemental jurisdiction over Plaintiff's related state-law statutory claims under the Rosenthal Fair Debt Collection Practices Act (Cal. Civ. Code § 1788.17) pursuant to **28 U.S.C. § 1337** and **28 U.S.C. § 1367**, as they arise from a common nucleus of operative fact and form part of the same constitutional case or controversy.

**BASIS FOR JURISDICTION AND BRIEFING**

Venue is proper in the United States District Court for the Southern District of California pursuant to **28 U.S.C. § 1391(b)** because the real property securing the underlying loan obligations is situated in Oceanside, California, and the material debt collection, loan servicing, and statutory violations detailed herein occurred entirely within this judicial district. This Opposition Brief is respectfully submitted in full compliance with the formatting, page-limitation, and filing requirements set forth under Southern District of California Local Civil Rule 7.1.

**I.    INTRODUCTION**

Plaintiff Steven M. Moehling, proceeding pro se, respectfully submits this Opposition to Defendant Select Portfolio Servicing, Inc.'s ("SPS") Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). Defendant's motion relies upon an incomplete, one-sided narrative that ignores key administrative realities and material facts. While an initial payment variance occurred early in Plaintiff's Chapter 13 bankruptcy, Defendant's Motion for Relief from Stay was fully resolved via a court-approved Stipulation. Rather than a temporary pause, this binding agreement established reciprocal obligations and a structural contractual

1

**Moehling v. Select Portfolio Servicing, Inc.**
**Case No.: 26-cv-1399-TWR-VET**                    **Plaintiff's Opposition to Defendant's Motion to Dismiss**

reset via a bifurcated payment framework commencing May 1, 2020. This formal order redefined the account's operational baselines and operational framework for the remainder of the four-year Plan, **constituting the only noticed and preserved default during the active bankruptcy case**.

Defendant effectively asks this Court to ignore the well-pleaded factual allegations in the Complaint, accept an internal litigation ledger that completely omits twelve (12) mortgage payments including the entire pre-petition arrears ledger as absolute truth, and disregard post-discharge servicing actions that generated a conflicting account posture long after the variances were contractually settled. The bankruptcy court fell into this exact trap, improperly narrowing a comprehensive dispute over systemic payment misapplications, notification failures, and structural stipulation preservation into a singular, isolated missed payment inquiry. This flawed determination is currently under active review before the Ninth Circuit Bankruptcy Appellate Panel (*In re Moehling*, BAP Case No. 26-1081).

SPS's manufactured delinquency narrative relies entirely on a structural accounting illusion. Both Form 4100R and the evolving ECF 71 Declaration omit pre-petition transactions and the transaction-level detail necessary to track funds during the critical May 2020 through January 15, 2021, arrears cure period. While SPS uses these summary documents to present a veneer of a post-petition shortage, SPS actually accumulated $8,619.19 in suspense funds during this critical period which was the equivalent of five (5) mortgage payments. SPS's ledgers conceal a fatal truth: those same key suspense funds explicitly intended for the post-petition cure under Provisions 2 and 3 of the Stipulation were systematically diverted to pre-petition obligations contrary to the terms of the Stipulation and a 1322(b)(5) Cure and Maintain Plan. Because these summary filings cannot account for the internal allocation of unapplied funds, they are woefully inadequate to support a default narrative in any era.

Furthermore, Defendant attempts to obscure an erratic post-discharge narrative characterized

**Moehling v. Select Portfolio Servicing, Inc.**
**Case No.: 26-cv-1399-TWR-VET**                    Plaintiff's Opposition to Defendant's Motion to Dismiss

by fluid calculations, explicit admissions of internal routing failures, and the strategic omission of key pre-foreclosure correspondence from its corporate summaries. While Defendant attempts to minimize this chaos as a series of isolated events, SPS's own management team was forced to repeatedly reopen the original dispute when confronted with Plaintiff's unassailable payment tracking. SPS remained in sustained internal conflict with its own records, issuing seven (7) contradictory "resolution" letters that represent a systemic breakdown of corporate tracking rather than a reasonable investigation.

Under Rule 12(b)(6), the Court must accept the Complaint's factual allegations as true and construe them favorably to the non-moving party. Because the Complaint alleges a highly plausible basis for statutory violations under the Rosenthal Act (RFDCPA) and RESPA resulting from Defendant's post-discharge enforcement actions and statutory response violations, Defendant's motion should be denied.

**For the Court's convenience, the associated exhibits within Plaintiff's Request for Judicial Notice have been structurally aligned to facilitate an efficient, direct review of these underlying structural appellate records should the Court elect to examine the matter.**

## II. LEGAL STANDARD UNDER RULE 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a complaint survives a motion to dismiss if it states a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court must accept all well-pleaded factual allegations as true and construe them in the light most favorable to the non-moving party. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Dismissal is improper if the factual allegations allow the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Because a pro se complaint must be liberally construed, *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010), the sole inquiry is whether the underlying facts plausibly state statutory violations under RESPA

**Moehling v. Select Portfolio Servicing, Inc.**
**Case No.: 26-cv-1399-TWR-VET**          Plaintiff's Opposition to Defendant's Motion to Dismiss

and the RFDCPA.

## III. ARGUMENT

### A.  Overview: The Structural Chronology of "Life 1" vs. "Life 2"

The claims brought forth in this matter do not rely on dense, ambiguous accounting disputes. Instead, as exposed in both the underlying bankruptcy proceeding and on appeal, the Defendant's systematic compliance failure is laid bare by examining the account's radical transformation between two contradictory corporate positions: "Life 1" and "Life 2."

By maintaining this dual-ledger framework, the record reveals a stark contrast between how the Defendant treated the account during the life of the Plan versus how it re-engineered the history for litigation:

- **"Life 1" (The Performing Account Era):** Spanning from the May 2020 Court-Approved Stipulation through nearly four years of multi-year servicer silence. During this phase, the Plaintiff demonstrated performance, and the Defendant's internal records explicitly verified an **unpaid balance of $0.00**. The Defendant silently accepted all payments, issued zero notices of default, and raised no accounting disputes while the bankruptcy neared its successful completion.

- **"Life 2" (The Reconstructed Litigation Position):** Triggered abruptly at the tail end of the case during the Rule 3002.1(g) response window. Here, the Defendant woke up, retroactively manipulated unapplied suspense funds, historical payment records, and adopted a completely manufactured financial position. It weaponized a flawed pre-discharge billing dispute ($6,021) to suddenly breathe "new life" into a liability it cannot reconcile to this day, executing the unlawful post-discharge collection and foreclosure acceleration activities at issue.

**Moehling v. Select Portfolio Servicing, Inc.**
**Case No.: 26-cv-1399-TWR-VET**                    Plaintiff's Opposition to Defendant's Motion to Dismiss

When stripped of corporate jargon, the chronology reveals that the Defendant did not suffer from a simple math error; they maintained a "Life 1" ledger to induce performance and then constructed a "Life 2" ledger to evade the discharge injunction.

**B. Collateral Estoppel Does Not Apply Because the Bankruptcy Court's Summary Order Was Expressly Limited to a Narrow Payment-Application**

When Plaintiff initiated the prior proceeding by filing a Motion to Enforce the Discharge Injunction (ECF No. 54), the matter was handled strictly as a contested matter under Federal Rule of Bankruptcy Procedure 9014. This is a streamlined, summary motion process intended to resolve narrow administrative compliance issues, rather than a full-blown civil adversary proceeding. In the very order Defendant relies upon to support dismissal, the bankruptcy court explicitly agreed with Plaintiff regarding this procedural boundary, openly acknowledging the true statutory scope of the motion:

"*Creditors further claim this dispute would need to be brought by an adversary proceeding because it raises a question as to whether the scope of the injunction covers its alleged conduct under § 524(i). But the plain language of § 524(i) brings misapplied plan payments within the scope of the injunction by direct reference to § 524(a)(2). And a motion to enforce the discharge injunction is not otherwise required to be brought as an adversary. See FED. R. BANKR. P. 7001.*" (Docket 75, Pg. 4).

This is a critical distinction. The bankruptcy court expressly recognized that while the plain language of § 524(i) addresses misapplied payments, the matter before it was handled strictly as a limited, motion-based summary proceeding rather than a full civil lawsuit.

Plaintiff intentionally utilized this restricted motion process because Defendant's payment misapplications were causing immediate financial harm. To ensure that broader state and federal consumer protection claims remained fully protected—and to establish clearly for

5

**Moehling v. Select Portfolio Servicing, Inc.**
**Case No.: 26-cv-1399-TWR-VET**          **Plaintiff's Opposition to Defendant's Motion to Dismiss**

the record that the summary motion was not a full adjudication of the wider dispute, Plaintiff consistently embedded protective jurisdictional reservations across a continuous trilogy of lower court filings (ECF 54, ECF 68, ECF 73). Plaintiff included a "Protective Jurisdiction Clarification" in Section III of the original moving papers (ECF 54, Pg. 4), explicitly stating that the action sought intervention *"solely to ensure that the record... is accurate"* and was not intended to expand jurisdiction beyond that narrow purpose. Plaintiff subsequently reinforced this operational boundary in his ECF 68 Addendum prior to the hearing and formally locked it down in his ECF 73 Invited Response following the Court's minute order. This ECF 73 filing serves as definitive, contemporaneous proof establishing that the summary directive was strictly limited to a narrow administrative payment inquiry, expressly leaving Plaintiff's broader statutory consumer claims unadjudicated and fully preserved for District Court review.

This explicit reservation of rights, reinforced by the bankruptcy court's own finding that the matter was a summary motion rather than an adversary lawsuit, completely undermines Defendant's preclusion arguments. The record proves the original motion was confined strictly to verifying plan payment applications under Sections 524(i) and 105(a). Defendant cannot now plausibly claim that Plaintiff's independent state and federal consumer rights were "fully and completely litigated" for preclusion purposes.

The fundamental operational conflict in the prior proceeding is that despite acknowledging the statutory coverage of § 524(i), the bankruptcy court subsequently narrowed Plaintiff's narrow accounting motion into a binary math exercise. As documented in the complete, unedited transcript of the January 26, 2026, hearing, the court restricted the scope of the record, stating: *"...so we need to know whether any payments were missed, and that's as far as this inquiry needs to go..."* while simultaneously noting that *"...it might be satisfying to know the other things..."* (Exhibit 1, Jan. 26, 2026, Tr. 10:25–11:5). The "other things" being the misapplication of

6

**Moehling v. Select Portfolio Servicing, Inc.**
**Case No.: 26-cv-1399-TWR-VET**                    Plaintiff's Opposition to Defendant's Motion to Dismiss

payments required for review before granting safe harbor. The judge further noted the narrow statutory friction by asking on the record, **"does 524(i) apply even in the face of the stipulation?"** (Exhibit 1, Tr. 7:3-5).

In its final ruling (Docket 75), the bankruptcy court applied an internally inconsistent standard. The court ruled that the Adequate Protection Order (APO) framework was strictly an option for the lender and did not independently preserve defaults despite the clear language refuting this position. However, the Court subsequently used that same order retroactively to construct a "breach" out of Plaintiff's very first May 2020 account reset payment—an obligation that was fully satisfied within days under the parties' agreed reset schedule and funds applied in accordance with the Defendant's suspense policy (Exhibit 6).

By reducing Section 524(i) to a localized tracking exercise that overlooks a mortgage servicer's silence regarding cured account variances, the lower court's ruling conflicts with the core logic of Ninth Circuit precedent. Under *In re Valdellon*, a mortgage servicer cannot maintain a non-compliant, non-disclosed internal ledger, omit its mandatory notice obligations under Bankruptcy Rule 3002.1, and then utilize a case-closing disclosure mechanism (Official Form 4100R) to unravel a completed Chapter 13 administration. Because the bankruptcy court explicitly declined to hear or rule upon the distinct state and federal consumer protection violations alleged in the present Complaint—and because Plaintiff explicitly restricted the bankruptcy court's scope in the moving papers—that summary order cannot legally bar this action.

**C. The Reality of the Dual Accounts: Defendant Maintained Fundamentally Conflicting Ledgers Throughout Plaintiff's Bankruptcy Proceedings**

To demonstrate the plausibility of Plaintiff's consumer protection claims and clarify why issue preclusion is inapplicable, the record must be viewed through the two parallel,

conflicting account histories Defendant maintained during and after the Chapter 13 administration.

### 1. "Life 1": The Operational Reality (May 2020 – April 2024)

For forty-six consecutive months following the execution of the Stipulation, Defendant operationally treated Plaintiff's account as fully performing and current. The Stipulation (Exhibit 7) itself was an exceptionally creditor-friendly agreement; it provided Defendant with streamlined default capabilities not found in standard 11 U.S.C. § 1322(b)(5) cure-and-maintain frameworks. Specifically, it granted Defendant the right to issue a simple 10-day written notice of default and, upon a failure to cure, the right to seek *ex parte* relief from the automatic stay without filing a standard formal motion.

Despite possessing these immediate enforcement mechanisms, Defendant never once initiated a default or notice protocol during the entire four-year window. Operationally, Defendant accepted and processed Plaintiff's bifurcated payments for the disputed May 2020 installment using its own declared suspense application policy (Exhibit 6)) while dismissing its own subsequent monthly mortgage statement issued to Plaintiff's residence reflecting current account status (Exhibit 5). Most notably, the February 2021 mortgage statement (Exhibit 18)—the first post-Stipulation arrears statement—explicitly reflected a $0.00 past-due balance, confirming the completion and satisfaction of the arrears schedule, and a March 1, 2021, again reflecting account currency. It was at that moment that SPS would remain completely silent for the next three years and four months leading up to the 3002.1(g) Life 2 reconstruction.

Plaintiff reasonably relied upon Defendant's contemporaneous billing records, maintained consistent performance, and finalized concrete plans to retire on July 1, 2024. The logic articulated in *In re Tollios*, 491 B.R. 886 (Bankr. N.D. Ill. 2013)

**Moehling v. Select Portfolio Servicing, Inc.**
**Case No.: 26-cv-1399-TWR-VET**          **Plaintiff's Opposition to Defendant's Motion to Dismiss**

reinforces that a secured creditor must timely assert, notice, and preserve its default positions during the active administration of a case. A servicer cannot remain completely silent during years of plan performance, and then, upon plan completion, retroactively recharacterize old transactions to manufacture a default narrative that was never previously declared.

**2. "Life 2": The Litigation Position and Post-Plan Reconstruction (April 2024 – Present)**

The second account history is a retroactive accounting reconstruction engineered by Defendant only after the Chapter 13 plan had been completed and the case had entered the Rule 3002.1(g) reconciliation phase. Upon Trustee's Notice of Final Cure and Plan completion, Defendant departed entirely from the four-year operational record of "Life 1."

Defendant utilized a standard, administrative case-closing disclosure—Official Form 4100R—to retroactively assert that Plaintiff had been in a continuous state of delinquency during the plan, a claim directly contradicted by its own historical billing statements. When Plaintiff sought administrative enforcement in the bankruptcy court to correct this disclosure, Defendant constructed a post-hoc spreadsheet exclusively for litigation purposes (Exhibit 4, Docket 71) to create the appearance of a perpetual delinquency based on "days late" calculations and bypassing the reset schedule.

The fundamental error in the bankruptcy court's summary order (Docket 75) is that it focused exclusively on the retroactive fiction of "Life 2." By treating a complex servicing dispute as a localized mathematical tracking exercise, the lower court accepted Defendant's post-hoc litigation ledger and overlooked both the four-year operational reality of "Life 1" and the binding notice mandates set forth in *In re Valdellon*.

9

**Moehling v. Select Portfolio Servicing, Inc.**
**Case No.: 26-cv-1399-TWR-VET**                    **Plaintiff's Opposition to Defendant's Motion to Dismiss**

Plaintiff's distinct claims under the Rosenthal Act and RESPA are not an attempt to relitigate a narrow bankruptcy contested matter. Rather, they address the independent, actionable misconduct of a mortgage servicer maintaining fundamentally conflicting accounts that mislead a consumer, weaponizing a summary disclosure mechanism to resurrect unpreserved, disputed defaults, and using that unverified administrative form as the sole baseline to launch post-discharge foreclosure acceleration.

**D. The Institutional Discrepancy Between Billing Statements and Post-Hoc Litigation Ledgers Pleads an Actionable Statutory Violation**

The foundation of Plaintiff's consumer protection and statutory debt collection claims rests on the irreconcilable contradiction between the official billing disclosures Defendant issued to Plaintiff during the plan and the retroactive accountings subsequently fabricated for the court.

Upon execution of the Stipulation, Defendant issued its first official mortgage statement under the new agreement (Exhibit 5). That statement explicitly established and confirmed Plaintiff's post-petition operational baseline with a **"Post Petition Due Date" of May 1, 2020**. Operating precisely as instructed, Plaintiff timely remitted two split payments of $1,300.00 on May 1 and May 18, 2020. Defendant accepted these funds and applied them in accordance with its internal suspense application policy (Exhibit 6). This performance completely satisfied both the ongoing post-petition contractual monthly mortgage installment and the first installment of the newly established arrears schedule for May 2020. Yet, the decision in ECF 75 would impose this very transaction, cured in days as a dispositive breach. For nearly four consecutive years thereafter, Defendant systematically accepted and applied every subsequent monthly remittance, with its own internal operational data reflecting structural plan performance and completion and again remaining completely silent.

However, the post-hoc litigation ledger Defendant subsequently filed with the court (Docket 71) completely disregarded its own acknowledgement and recording of the May 15, 2020, billing disclosure and the operational baseline it created. Instead, **Defendant took that exact same May 1, 2020, due date and retroactively reported to the bankruptcy court that Plaintiff was "170 days late" on that precise installment (Exhibit 4)**.

The bankruptcy court relied extensively on this Docket 71 spreadsheet, adopting Defendant's retroactive, post-hoc calculations to determine that Plaintiff was broadly in default. The maintenance of dual, irreconcilable financial accounts—wherein one operational record is presented to the consumer to signal compliance and induce ongoing performance, while an unaligned, secondary ledger is quietly preserved to assert a default narrative in judicial proceedings—constitutes a patently deceptive and misleading debt collection practice under both the Rosenthal Act and the Fair Debt Collection Practices Act (FDCPA). Because these conflicting disclosures directly impaired Plaintiff's ability to assess the true state of his account and forced reliance on inaccurate billing statements, Plaintiff has fully pled the requisite elements of statutory deceptiveness.

**E. SPS Cannot Establish a Prima Facie Delinquency to Defeat Plausibility Because Its Accompanying Accounting Evidence is Structurally Inadequate**

To defeat the plausibility of Plaintiff's statutory claims, SPS attempts to introduce an absolute defense of delinquency, relying on its standard Form 4100R and the evolving ECF 71 Declaration introduced two years after discharge. However, as a matter of law, these summary documents are structurally incapable of proving the delinquency they allege. They constitute an accounting "black box" that explicitly omits a **full year** of payments and the transaction-level detail necessary to audit the account during the critical May 2020 through January 15, 2021, arrears cure period and balance of the plan spanning

a near four year period.

Under Provisions 2 and 3 of the court-approved Stipulation, the parties established a strict, bifurcated payment framework governing post-petition cure funds. While SPS's summary filings create the superficial veneer of a post-petition shortage, they completely mask the **$8,619.19** balance maintained in the Debtor Suspense account tracking. The facial invalidity of this accounting is laid bare by an irreconcilable conflict within SPS's own **4100R Post Petition Report.** SPS officially reports a concurrent "Running Suspense" balance hovering at a mere negative **-$1,658.23** for that exact same period. This blatant, unexplained discrepancy between parallel accounting systems is entirely dismantled by the Chapter 13 Trustee's Periodic Report Dated November 13, 2020 (Exhibit 16), which establishes an absolute hard ceiling on available trust funds: the Trustee's ledger details that the maximum aggregate amount disbursed to SPS throughout the life of the bankruptcy up to that date was exactly **$3,184.77**. Because it is a mathematical impossibility for SPS to process a multi-payment transaction cluster out of a $3,184.77 aggregate allocation, the Trustee's official ledger proves that SPS actively intercepted and diverted Plaintiff's ongoing, direct post-petition maintenance payments to satisfy old obligations, manufacturing an artificial default.

Because a moving party cannot sustain a Motion to Dismiss by presenting a financial narrative that omits the underlying transactional math, a profound dispute of material fact exists. Taking the well-pleaded facts of the Complaint as true, SPS's summary accounting is woefully inadequate to support its delinquency defense, and dismissal must be denied.

**F. Defendant's Weaponization of Administrative Form 4100R to Initiate Foreclosure Violates Statutory Consumer Protections**

The primary catalyst for this federal civil action is Defendant's immediate, extrajudicial enforcement campaign launched upon the closing of Plaintiff's bankruptcy case—a

**Moehling v. Select Portfolio Servicing, Inc.**
**Case No.: 26-cv-1399-TWR-VET**                    **Plaintiff's Opposition to Defendant's Motion to Dismiss**

campaign anchored entirely upon an impermissible application of Official Form 4100R.Official Form 4100R is a standard, administrative disclosure designed exclusively to facilitate the administrative closure of a Chapter 13 case file by providing the trustee with a closing statement. It does not carry the weight of a judicial order, it does not constitute a verified debt ledger, and it cannot legally vest a mortgage servicer with the unilateral authority to resurrect historical intra-plan or pre-petition disputed accounting variances that were never noticed or contractually preserved during the life of the plan.

The moment Plaintiff's bankruptcy protections expired, Defendant immediately utilized this unverified administrative disclosure as the sole operative baseline to launch foreclosure acceleration proceedings against Plaintiff's primary residence. By treating an administrative disclosure form as an automatic right to collect unpreserved, disputed balances, Defendant bypassed the binding terms of Plaintiff's Chapter 13 confirmation, the explicit terms of the parties' prior Stipulations, and the clear statutory mandates governing post-discharge debt collection. Because Defendant utilized an unverified, retroactively modified disclosure form to demand payment under threat of foreclosure, Plaintiff has sufficiently pled a non-compliant and actionable debt collection practice under both state and federal consumer protection frameworks.

**G. The Plausibility of Plaintiff's Claims under the Twombly/Iqbal Pleading Standard**

A complaint is plausible under the *Twombly/Iqbal* standard when it contains sufficient factual content to allow the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. Plaintiff's claims are anchored not in speculation, but in uncontroverted documents within the public record and a clear, explicit administrative history.

13

**1. Express Breach of the Court-Approved 2020 Stipulation (Exhibit 7)**

Defendant argues that Plaintiff's breach of contract claim is speculative. However, the operational baseline of the contract was explicitly defined by the court-approved April 2020 Adequate Protection Order (APO):

- **The Factual Baseline**: Provisions 1 through 3 mandated a strict financial

- reset, establishing a regular monthly payment "commencing" May 1, 2020, and a precise allocation of post-petition arrears to be paid in installments.

- **The Breach**: Defendant completely bypassed the mandatory, exclusive notice-and-cure frameworks detailed in Provisions 5 and 6. Instead of issuing the contractually required 10-day written notice of default to allow for a cure, Defendant ran an undisclosed internal ledger for 46 months while accepting full performance.

- **The Plausibility**: Provision 8 explicitly states that state-law enforcement or foreclosure acceleration can only occur "*In the event that Movant is granted relief from the automatic stay*" through those explicit, bargained-for notice-and-cure protocols. By failing to utilize these exclusive contractually mandated steps, and instead manufacturing and preserving secret accounting variances, Defendant committed an active, non-speculative breach of the express terms of the agreement.

**2. Affirmed Violation of the Discharge Injunction Under 11 U.S.C. § 524(i)**

Defendant asserts that any accounting variances fall within a statutory "safe harbor" due to an alleged continuous default. This defense is entirely dismantled by Defendant's own active administrative filings, which leave no plausible ground for a safe harbor defense:

**Moehling v. Select Portfolio Servicing, Inc.**
**Case No.: 26-cv-1399-TWR-VET**                    Plaintiff's Opposition to Defendant's Motion to Dismiss

- **The Public Record**: Between July 2020 and September 2023, Defendant actively filed five separate, formal Notices of Mortgage Payment Change (Official Form 410S1) under penalty of perjury.

- **The Certification**: In each of these five distinct filings spanning four years, Defendant explicitly checked the box marking "No" to indicate there were no other outstanding payment changes, operational variances, or intra-plan deficiencies.

- **The Binding Precedent**: Under the governing mandate of *In re Valdellon*, a mortgage servicer is strictly prohibited from running a non-compliant, non-disclosed internal ledger during a Chapter 13 case and then weaponizing a case-closing disclosure mechanism to collect unnotified variances. Because Defendant repeatedly certified under penalty of perjury that no variances existed, its post-plan attempt to accelerate foreclosure based on unnotified intra-plan accounting claims constitutes a willful, actionable violation of 11 U.S.C. § 524(i).

### 3. Material Evidentiary Omissions and Accounting Defects

Plaintiff has identified concrete, verifiable accounting and mathematical defects in the administrative history that more than satisfy federal pleading standards:

- **Omission of 12 Full Payments**: The post-hoc litigation ledger relied upon by Defendant completely omits twelve full, verified payments made during the post-plan administration, demonstrating a systemic failure in account accuracy. *These 12 omitted transactions are summarized for the Court's convenience in Plaintiff's Demonstrative Addendum attached hereto*.

15

**Moehling v. Select Portfolio Servicing, Inc.**
**Case No.: 26-cv-1399-TWR-VET**                    Plaintiff's Opposition to Defendant's Motion to Dismiss

- **Violation of Internal Policy**: The immediate, month-one accounting variance manufactured by Defendant directly contradicts the explicit text and protective operational implementation of its own corporate suspense application policy. As sworn to by Defendant's own Document Control Officer, the corporate policy dictates that *"once the balance of the suspense account was sufficient to make an entire monthly payment, that amount was applied to a monthly payment"*. Critically, Defendant never once identified or asserted a "breach" or a default during the forty-six consecutive months of the Plan. The lower court retroactively applied a "breach" years later that Defendant's own Paragraph 19 policy had already contractually insulated, normalized, and neutralized in real-time.

- **Failure of Reasoned Investigation**: As detailed below, Defendant's own administrative record reveals that its internal management team had to repeatedly reopen and track the same ongoing dispute over seven separate iterations because the corporation could not reconcile its own conflicting ledger entries. This sustained internal gridlock establishes a plausible, active breakdown of their statutory duty to conduct a reasonable inquiry.

By pleading these specific, documented contradictions, Plaintiff has moved the claims well past the line from conceivable to plausible, fully surviving Defendant's Motion to Dismiss.

**H. Defendant Lacked an Objectively Reasonable Basis for Post-Discharge Enforcement Under the Taggart Standard**

Under the controlling standard set forth by the United States Supreme Court in *Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019), civil contempt sanctions for a violation of the discharge injunction as Defendant lacked an objectively reasonable basis for its post-

**Moehling v. Select Portfolio Servicing, Inc.**
**Case No.: 26-cv-1399-TWR-VET**          **Plaintiff's Opposition to Defendant's Motion to Dismiss**

discharge enforcement actions. Upon completion of the Chapter 13 plan, Plaintiff

received a formal bankruptcy discharge pursuant to **11 U.S.C. § 1328**, activating the

statutory protections of the discharge injunction —meaning there is "no fair ground of

doubt" as to whether the creditor's conduct was unlawful. In the present case, Defendant

possessed no fair ground of doubt that its post-discharge enforcement and foreclosure

acceleration actions were unlawful for two definitive reasons:

**1. Well-Settled Case Law Prohibits the Weaponization of Case-Closing Disclosures**

It is a well-established principle of bankruptcy law that closing case disclosure

mechanisms cannot be transformed into independent, post-discharge debt collection

or enforcement mechanisms:

- **The Procedural Limit**: As established in *In re Farrell* and *In re Gravel*, procedural rules and closing reconciliation disclosures are structured exclusively to provide administrative transparency and facilitate information-gathering.

- **No Retroactive Authority**: These summary disclosures do not serve as an independent, retroactive platform to resurrect unnotified intra-plan variances.

- **Objective Unreasonableness**: Defendant possessed no objectively reasonable basis to look at an administrative closing disclosure document, ignore four years of operational intra-plan compliance, and unilaterally determine it possessed the legal authority to accelerate foreclosure. Settled case law explicitly forecloses that interpretation.

**2. SPS Cannot Weaponize the Administrative Reconciliation Windows of Rule 3002.1 to Bar Independent Consumer Protection Claims.**

17

**Moehling v. Select Portfolio Servicing, Inc.**
**Case No.: 26-cv-1399-TWR-VET**                    **Plaintiff's Opposition to Defendant's Motion to Dismiss**

SPS attempts to construct a total procedural bar to dismissal by arguing that Plaintiff's failure to file a formal motion under Federal Rule of Bankruptcy Procedure 3002.1 operates as a total waiver or judicial bar against his current statutory claims. This argument fundamentally distorts the purpose and design of the bankruptcy rules. Federal courts have consistently recognized that Rule 3002.1 functions as an administrative reconciliation tool designed to facilitate data exchange and transparency between mortgage servicers and debtors during a Chapter 13 case. It is an information-forcing disclosure mechanism—not an absolute judicial bar meant to insulate loan servicers from independent liability under federal and state consumer protection laws. A debtor's standard administrative participation (or lack thereof) in a Rule 3002.1 procedural window does not strip them of the substantive right to sue a servicer under RESPA (12 U.S.C. § 2605) or the Rosenthal Act for subsequent, post-discharge deceptive collection practices.

Furthermore, a consumer cannot administratively or procedurally respond to a moving target. The record demonstrates that Defendant completely abdicated its own prior, mandatory disclosure obligations under Rules 3002.1(b) and (c) to provide timely, transaction-level notices of payment changes or fees during the life of the Plan. Defendant also ignores the record that the Plaintiff immediately disputed the 4100R and associated delinquency through the Defendant's Relationship Manager dispute process, acknowledged receipt, and produced multiple, erratic post-discharge narratives characterized in seven contradictory "resolution" letters over an 18 month period.

Because SPS's own internal management team was in a state of sustained conflict with its records—continually shifting the target debt figures and explicitly admitting internal routing failures—Defendant cannot logically argue that a definitive, auditable default was ever properly noticed to trigger a valid 21-day clock. To hold that a pro se

18

debtor waives his RESPA and Rosenthal Act protections by failing to object to a ledger that the servicer itself cannot stabilize or explain to this day would reward administrative concealment. Because Plaintiff vigorously disputed these moving calculations directly with the servicer upon discovery, Rule 3002.1 does not bar this action, and the material dispute of fact remains absolute.

**3. Defendant's Own Attested Certifications Negate Any Fair Ground of Doubt**

The *Taggart* standard focuses on whether an objective observer would find a reasonable basis for the creditor's belief that it was complying with the law. Here, an objective analysis of the public record completely dismantles any defense of operational uncertainty:

- **The Sworn Filings**: Between July 2020 and September 2023, Defendant actively filed five separate, formal Notices of Mortgage Payment Change (Official Form 410S1) under penalty of perjury.

- **The Certifications**: In each of these five distinct, docketed filings spanning four years, Defendant explicitly certified that "No" outstanding payment changes, operational variances, or intra-plan deficiencies existed.

- **The Absence of Doubt**: An objective creditor cannot systematically certify to a federal court for 48 consecutive months that an account has zero variances and then claim a "fair ground of doubt" when it suddenly introduces a secret, conflicting internal ledger during the post-plan reconciliation window.

- **Post-Hoc Fabrication**: Furthermore, Defendant did not rely on standard, contemporaneous business records to justify this action; instead, it sought to retroactively reshape that accounting baseline through ECF No. 71—a post-

**Moehling v. Select Portfolio Servicing, Inc.**
**Case No.: 26-cv-1399-TWR-VET**                    **Plaintiff's Opposition to Defendant's Motion to Dismiss**

hoc, litigation-driven spreadsheet manufactured two years after discharge to artificially construct an ongoing default narrative.

An objective servicer cannot actively certify an administrative record during the life of a plan, introduce an undisclosed internal ledger during the post-plan closing window, and then rely on belated, litigation-driven accounting arguments to evade statutory accountability. This reliance on shifting, post-plan reconstructions demonstrates that Defendant's enforcement actions were objectively unreasonable under *Taggart*.

**I. Defendant's Abusive Collection Campaign Satisfies the Rosenthal Act (Cal. Civ. Code § 1788.17)**

By maintaining fundamentally conflicting account records, systematically withholding mandatory default notices during the life of the plan and launching a coordinated foreclosure tracking campaign mere days after the entry of discharge, Defendant engaged in deceptive and misleading debt collection practices. These documented, high-speed enforcement actions easily satisfy the pleading requirements of California Civil Code § 1788.17, as they plausibly allege an abusive and non-compliant attempt to collect an unpreserved debt.

This misconduct is laid bare by a review of Defendant's erratic, shifting post-discharge narrative, which unfolded in three distinct phases of institutional non-compliance:

**1. The Three Phases of SPS's Fluid Post-Discharge Enforcement Campaign**

Immediately following Plaintiff's April 4, 2024, discharge, SPS launched a non-compliant collection campaign by weaponizing a Form 4100R ledger to resurrect disputed unpreserved liabilities in direct violation of *In re Gravel*, 6 F.4th 503 (2d Cir. 2021) and *In re Tollios*, 590 B.R. 493 (Bankr. N.D. Ill. 2018). On April 17, 2024, less than 24 hours after account

**Moehling v. Select Portfolio Servicing, Inc.**
**Case No.: 26-cv-1399-TWR-VET**                    **Plaintiff's Opposition to Defendant's Motion to Dismiss**

migration, SPS fast-tracked the property for foreclosure by issue Loss Mitigation communication, assessed foreclosure-related fees and designated foreclosure status on April 29, same day as the administrative closing of the bankruptcy case, and executed damaging credit reporting on May 31, 2024, prior to completing its mandatory dispute review. SPS then issued a chaotic series of shifting mathematical fictions over seven resolution letters, swinging erratically from an initial $6,021.17 delinquency claim, to a revised $3,731.90 delinquency. To a single $913.55 "missed June 2020 Stipulation payment, with no underlying transaction(s) to support this reframing, Notice of Default / Right to Cure date, to a sudden $2,526.21 shortage calculation on December 11, 2024. Because SPS refused to pause its July 21, 2024, foreclosure clock while its internal teams debated these unreconciled numbers, Plaintiff was placed under severe financial duress and forced to liquidate retirement assets to preserve his home. This administrative chaos culminated in a total statutory default when SPS blew past federal limits by delaying its mandatory dispute response for over 70 days until March 5, 2025, explicitly admitting to an internal routing failure.

**J. Defendant's Failure to Conduct a Meaningful Investigation Violates RESPA (12 U.S.C. § 2605)**

Select Portfolio Servicing, Inc.'s ("SPS") liability under RESPA is established by its failure to conduct the mandatory "reasonable investigations" required by 12 U.S.C. § 2605(e) and 12 C.F.R. § 1024.35. A servicer breaches this statutory duty when its own records expose a structural breakdown in information tracking. Specifically, SPS's internal Transaction History Report reveals the origin of its bad-faith "Life 2" default narrative: on July 28, 2020, SPS applied a payment from suspense, but later omitted this transaction from post-discharge credit calculations to artificially fabricate a delinquency. SPS similarly accepted physical funds on March 6, 2024, but completely ignored the transaction in its subsequent "Right to Cure" figures. Actively ignoring documented ledger discrepancies during a dispute review is

**Moehling v. Select Portfolio Servicing, Inc.**
**Case No.: 26-cv-1399-TWR-VET**                    **Plaintiff's Opposition to Defendant's Motion to Dismiss**

a *per se* failure to investigate. *See Valdellon v. PHH Mortgage Corp.*, No. 25-538, 2026 U.S. App. LEXIS 11084 (9th Cir. Apr. 20, 2026).

Furthermore, SPS committed a *per se* timeline violation by delaying its response to Plaintiff's December 18, 2024, dispute notice for over 70 days until March 5, 2025, well beyond the 30-business-day federal limit. In that untimely response, SPS explicitly admitted to a structural breakdown, stating: *"...the correspondence was not routed to the correct department for handling."* This internal routing failure does not absolve a servicer of its statutory duties and constitutes an independent violation. To insulate its narrative from judicial review, SPS's March 5 response deliberately omitted its critical June 17, 2024, letter, which initiated the false "June 2020 missed payment" claim. Rather than conducting a reasonable investigation, SPS remained in a state of sustained conflict with its own data, issuing seven contradictory "resolution" letters, including a September 12, 2024, letter that rubber-stamped the default using an inactive $1,701.11 escrow calculation—forcing its internal management team to repeatedly reopen the exact same dispute.

These actions stand in stark contrast to the non-coercive, protected informational communications in *Roth v. Nationstar Mortgage, LLC*, 935 F.3d 1270, 1277–78 (11th Cir. 2019). A formal Notice of Default, an active foreclosure countdown, shifting calculations, and severe statutory response delays carry intense, unlawful coercive pressure to pay. Under the objective standard in *Taggart v. Lorenzen*, 587 U.S. 554 (2019), a reasonable servicer would know that maintaining an active threat of foreclosure while its own departments are in active mathematical conflict leaves no "fair ground of doubt" that the collection action is unlawful. Deprived of an administrative resolution while SPS's "Life 2" foreclosure clock ticked uninterrupted, Plaintiff was under extreme financial duress and was compelled to liquidate retirement assets solely to mitigate damages and preserve his property. This mitigation payment does not validate the manufactured delinquency.

**Moehling v. Select Portfolio Servicing, Inc.**
**Case No.: 26-cv-1399-TWR-VET**          **Plaintiff's Opposition to Defendant's Motion to Dismiss**

**K. Defendant's Willful, Bad-Faith Conduct Directly Caused Material Financial and Physical Injury Under Extreme Economic Duress**

The loan-servicing and collection actions executed by Defendant extended far beyond a routine accounting disagreement. Knowing that Plaintiff had just successfully completed an arduous, four-year Chapter 13 plan, Defendant deliberately utilized unverified figures to manufacture a default and accelerate foreclosure proceedings. This targeted collection campaign directly disrupted Plaintiff's established life baselines, resulting in severe, foreseeable financial and physical injuries.

Prior to the entry of his discharge, Plaintiff had finalized concrete retirement plans to take effect on July 1, 2024. The operational viability of this retirement strategy depended entirely upon Plaintiff's ability to utilize his accumulated home equity immediately post-discharge by repairing, staging, and selling his primary residence. As documented in written communications with the Rancho San Geronimo Homeowners Association dated February 5, 2024, Plaintiff was actively coordinating extensive property upgrades—including a complete roof replacement and comprehensive exterior painting—expressly to position the asset for immediate market listing upon the closing of the bankruptcy case.

Defendant's sudden injection of a contradictory "Life 2" litigation ledger, the threat of foreclosure acceleration, and the subsequent derogatory credit reporting completely neutralized Plaintiff's ability to access his equity, secure bridging capital, or market the property effectively. This artificial cloud on the title and credit profile placed Plaintiff under extreme economic duress, creating a severe financial crisis entirely engineered by Defendant's non-compliant actions.

As a direct and proximate result of Defendant's bad-faith collection tactics, Plaintiff's planned retirement was structurally derailed. Plaintiff was compelled to abandon his retirement timeline and maintain active employment solely protect his home from an

23

**Moehling v. Select Portfolio Servicing, Inc.**
**Case No.: 26-cv-1399-TWR-VET**                    **Plaintiff's Opposition to Defendant's Motion to Dismiss**

illegitimate, non-preservation-backed mortgage demand—a liability that was contractually scheduled to be fully extinguished by the proceeds of the property sale.

The consequences of this forced return to the workforce were severe and concrete. Within weeks of his disrupted retirement date, Plaintiff suffered a catastrophic industrial workplace injury. As detailed in a Kaiser Permanente MRI report dated August 26, 2024, this severe injury required months of intensive, unsuccessful physical therapy and subsequent major corrective surgery to repair a 1.5 cm tear in Plaintiff's subscapularis tendon and a torn biceps tendon. This workplace trauma has resulted in a permanent partial disability, significant medical duress, and a substantial loss of income.

Had Defendant complied with the mandatory notice-and-cure protocols of the Stipulation, maintained an accurate operational accounting baseline under "Life 1," and respected the statutory dispute investigation mandates of federal law rather than burying its administrative failures behind misrouted mail and omitted records, Plaintiff would have safely retired as scheduled, avoiding the catastrophic economic, professional, and physical injuries detailed herein.

**L. Actionable FCRA and Credit Reporting Violations**: In tandem with arbitrary accounting shifts, Defendant willfully weaponized the credit reporting system by reporting and escalating the disputed June 2024 credit reporting delinquency to a punitive 90-day major default status to the CRAs—a severe delinquency tier that Defendant itself never actually identified or claimed within its own internal records or resolution correspondence. Despite Plaintiff lodging two formal CRA disputes, including a second dispute filed explicitly after this manufactured 90-day escalation—Defendant repeatedly and falsely verified the reporting's accuracy to the CRAs, maintaining this damaging data for several months. Underscoring the pretextual nature of this credit reporting campaign, Defendant only removed the 90-day escalation from the credit files a few days prior to issuing Resolution

**Moehling v. Select Portfolio Servicing, Inc.**
**Case No.: 26-cv-1399-TWR-VET**                    **Plaintiff's Opposition to Defendant's Motion to Dismiss**

Letter 6, wherein they abruptly closed their internal dispute process without providing any substantive accounting reconciliation.

## IV. CONCLUSION AND PRAYER FOR RELIEF

Defendant's Motion to Dismiss represents an impermissible attempt to compel this Court to resolve deeply disputed issues of material fact, mortgage accounting, and statutory loan-servicing misconduct at the absolute threshold of litigation. Because Plaintiff's Complaint sets forth highly detailed, factually grounded, and legally sound allegations that easily surpass the pleading bars established under Federal Rule of Civil Procedure 12(b)(6), dismissal is wholly unwarranted.

Plaintiff respectfully requests that this Court deny Defendant Select Portfolio Servicing, Inc.'s Motion to Dismiss in its entirety, direct Defendant to file its Answer within the contractually and statutorily prescribed timeframe and permit this matter to proceed to formal discovery.

Dated: June 29, 2026

Respectfully submitted,

/s/ Steven M. Moehling

Steven M. Moehling, Plaintiff Pro Se

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN M. MOEHLING, | ) Case No.: 26-cv-1399-TWR-VET |
| | ) |
| Plaintiff, | ) CERTIFICATE OF SERVICE |
| | ) |
| v. | ) |
| | ) |
| SELECT PORTFOLIO SERVICING, INC., | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

I, Steven M. Moehling, declare that I am over the age of 18 and a resident of Oceanside, California. My address is:

5420 Old Ranch Road

Oceanside, CA 92057

760-689-0966

sandiegan760@gmail.com

I, Steven M. Moehling, hereby certify that on **June 29, 2026**, I electronically filed the foregoing

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND**

**MOTION TO STRIKE UNDER RULE 12(b)(6)**, with the Clerk of the Court using the

CM/ECF system, which will automatically send notification of such filing to the following

registered CM/ECF participants:

**Kutak Rock, LLP**

**Steven M. Dailey**

**5 Park Plaza, Suite 1500**

**Irvine, CA 92614-8595**

Attorneys for Defendant Select Portfolio Servicing, Inc.

[**X**] BY ELECTRONIC MAIL / CM/ECF SYSTEM: I caused such document(s) to be

electronically filed with the Clerk of the Court using the CM/ECF system, which will send

notification of such filing to all registered participants.

[ ] BY FIRST-CLASS MAIL: I placed a true copy thereof enclosed in a sealed envelope with

postage thereon fully prepaid, in the United States mail at Oceanside, California.

I declare under penalty of perjury under the laws of the United States of America that

the foregoing is true and correct.

Dated: June 29, 2026

/s/ Steven M. Moehling

Steven M. Moehling, Plaintiff Pro Se