UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN M. MOEHLING, Plaintiff, v. SELECT PORTFOLIO SERVICING, INC., Defendant. | Case No.: 26-CV-1399 TWR (VET) **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT** (ECF No. 14) |

Presently before the Court is Defendant Select Portfolio Servicing, Inc.'s Motion to Dismiss Plaintiff's Complaint and Motion to Strike Portions of Plaintiff's Complaint ("Mot.," ECF No. 14), as well as Plaintiff Steven M. Moehling's Opposition to ("Opp'n," ECF No. 16) and Defendant's Reply in Support of ("Reply," ECF No. 18) the Motion. The Court took the Motion under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). (*See* ECF No. 15.) Having carefully considered Plaintiff's Complaint for Damages and Jury Demand ("Compl.," ECF No. 1), those documents properly subject to judicial notice, the Parties' arguments, and the relevant law, the Court **GRANTS** Defendant's Motion and **DISMISSES WITH PREJUDICE** Plaintiff's Complaint for the following reasons.

/ / /

/ / /

## BACKGROUND

### I. Factual Background[1]

#### *A. Plaintiff's Mortgage*

On September 2, 2005, Plaintiff obtained a mortgage in the amount of $484,500 (the "Mortgage") to purchase the real property located at 5420 Old Ranch Road, Oceanside, California, 92057 (the "Property"). (*See generally* ECF No. 14-3 at 1–20 ("Def.'s Ex. 1") (Deed of Trust); *see also* Compl. ¶ 8.) On April 6, 2011, the Deed of Trust was assigned to Wells Fargo Bank, National Association as Trustee for Securitized Asset Backed Receivables LLC Trust 2006-FR1 Mortgage Pass-Through Certificates, Series-FR1 ("Wells Fargo"). (*See generally* ECF No. 14-3 at 21–23 ("Def.'s Ex. 2") (Assignment of Deed of Trust).) Defendant serviced the loan. (*See* Compl. ¶ 9.)

---

[1] For purposes of Defendant's Motion, the facts alleged in Plaintiff's Complaint are accepted as true. *See Vasquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007) (holding that, in ruling on a motion to dismiss, the Court must "accept all material allegations of fact as true"). The Court also may consider materials that are proper subject of judicial notice under Federal Rule of Evidence 201(b). *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998–99 (9th Cir. 2018). Because Defendant's primary argument concerns collateral estoppel, (*see* Mot. at 2; ECF No. 14-1 ("Mem.") at 7–8), which requires the Court to "look[] to the record of the prior proceeding to determine whether an issue was in fact raised, contested, and submitted for determination," *Janjua v. Neufeld*, 933 F.3d 1061, 1065 (9th Cir. 2019), both Parties have filed requests for judicial notice. (*See* ECF Nos. 14-2 ("Def.'s RJN"), 17 ("Pl.'s RJN").) Defendant requests the Court take judicial notice of publicly recorded documents (*i.e.*, a Deed of Trust and Assignment of Deed of Trust), as well as the docket and filings in Plaintiff's Chapter 13 bankruptcy case, (*see generally* Def.'s RJN), both of which are proper subject of judicial notice. *See, e.g.*, *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record." (citing *Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998))). Plaintiff requests that the Court take judicial notice of a Consent Order in *United States v. Select Portfolio Servicing, Inc.*, D. Mass. Case No. 03-12219-DPW (entered Sept. 4, 2007); several documents from the Chapter 13 bankruptcy case that Plaintiff included in his excerpts of record in his pending bankruptcy appeal; and the Ninth Circuit's decision in *Valdellon v. PHH Mortgage Corp.*, No. 25-538 (9th Cir. Apr. 20, 2026). (*See generally* Pl.'s RJN.) Although "the Court need not take judicial notice of case law or other court orders to be able to consider them," *see Garcia v. Welcome El Segundo LLC*, No. CV 20-11442-DMG (JEMX), 2021 WL 12268304, at *1 (C.D. Cal. Nov. 17, 2021), Plaintiff's requests are otherwise proper. *See Reyn's Pasta Bella*, 442 F.3d at 746. The Court therefore **GRANTS** both Requests for Judicial Notice to the extent the Court relies on any documents therein in ruling on Defendant's Motion. The Court notes that, while it may take judicial notice that certain documents were filed, positions were taken, or arguments were made, it "cannot take judicial notice of disputed facts contained in such public records." *See Khoja*, 899 F.3d at 999 (citing *Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001)).

### *B. Plaintiff's Bankruptcy Case*

On June 28, 2019, Plaintiff filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the Southern District of California, *In re Moehling*, No. 19-bk-3857-CL13 (Bankr. S.D. Cal. filed June 28, 2019) (the "Bankruptcy Case"). (*See generally* ECF Nos. 14-3 at 24–31 ("Def.'s Ex. 3") (docket), 14-3 at 32–86 ("Def.'s Ex. 4") (petition).) Defendant was listed among Plaintiff's creditors with claims secured by property in Schedule D of the petition. (*See* Def.'s Ex. 4 at 50.) The Honorable Laura S. Taylor issued a Chapter 13 Plan (the "Plan") on June 24, 2019, (*see* ECF No. 14-3 at 87–95 ("Def.'s Ex. 5")), in which she ordered Plaintiff to "maintain the contractual installment payments on the" Mortgage with an additional $500 per month payment to Defendant toward Plaintiff's $13,000 pre-petition arrears on the Mortgage. (*See id.* at 90.)

In April 2020, Plaintiff stipulated that he had failed to pay his monthly payments of $1,682.19 on the Mortgage for the months of December 2019 through April 2020. (*See* ECF No. 14-3 at 96–108 ("Def.'s Ex. 6") at 103; *see also* Compl. ¶ 10.) Plaintiff therefore agreed to pay the post-petition arrears of $8,221.90 in equal monthly installments of $913.55 on the 15th of each month beginning on May 15, 2020. (*See* Def.'s Ex. 6 at 103; *see also* Compl. ¶ 11.) Judge Taylor approved the stipulation on April 24, 2020. (*See generally* Def.'s Ex. 6.)

Plaintiff contends that he "completed the stipulated arrears cure with [a] January 15, 2021[] Cashier's Check payment," (*see* Compl. ¶ 13), and that "[t]he subsequent February 12, 2021[] mortgage statement, the first post-arrears statement, reflected the account current . . . with $0.00 in past unpaid amounts demonstrating satisfaction of the arrears set forth in Provision 2 and 3 of the stipulation," (*see id.* ¶ 15), as well as "unapplied funds carried forward on the account." (*See id.* ¶ 16.)

On February 20, 2024, the Chapter 13 Trustee notified the bankruptcy court that Plaintiff had made all payments on allowed pre-petition arrears to Defendant required under the Plan. (*See* ECF No. 14-3 at 109–11 ("Def.'s Ex. 7").) In response, Wells Fargo informed the bankruptcy court that Plaintiff had not paid $6,021.17 in post-petition arrears.

(*See* ECF No. 14-3 at 112–18 ("Def.'s Ex. 8"); *see also* Compl. ¶ 18.) Plaintiff did not respond to Wells Fargo's filing or dispute Wells Fargo's representation to the bankruptcy court. (*See generally* Defs.' Ex. 3.)

On April 4, 2024, the clerk of the bankruptcy court entered an Order of Discharge, (*see* ECF No. 14-3 at 119-22 ("Def.'s Ex. 9"); *see also* Compl. ¶ 21), which explicitly excluded "debts provided for under 11 U.S.C. § 1322(b)(5)."[2] (*See* Def.'s Ex. 9 at 121.) On April 29, 2024, the bankruptcy court entered an "Order Approving Account, Discharging Chapter 13 Trustee[,] and Closing Estate." (*See* Def.'s Ex. 3 at 31.)

***C. Plaintiff's Dispute with Defendant***

On the same day he obtained the discharge, Plaintiff "submitted a written dispute challenging [Defendant]'s asserted delinquency." (*See* Compl. ¶ 22.) "On April 16, 2024, [Defendant] transitioned Plaintiff's account to standard servicing[,]" (*id.* ¶ 23), and "[o]n April 17, 2024, [Defendant] generated a loss mitigation letter relating to the account." (*Id.* ¶ 24.) Defendant "designated the account in foreclosure" on April 29, 2024. (*Id.* ¶ 25.)

"On June 17, 2024, [Defendant] issue a written response acknowledging receipt of Plaintiff's April 4, 2024[] dispute and maintaining that the asserted delinquency was valid, including asserting that a stipulated payment due in June 2020 had not been received, despite sufficient funds in suspense to complete that payment." (*Id.* ¶ 26.) The following day, Defendant "issued a Notice of Default asserting that payments were due including a Right to Cure Date of July 21, 2024, and demanding to cure the asserted default." (*Id.* ¶ 27.)

"On June 28, 2024, Plaintiff discovered that his credit score had declined significantly following [Defendant]'s reporting of delinquency information to Equifax." (*Id.* ¶ 28.) "In mid-July 2024, Plaintiff submitted regulatory complaints to the Consumer

---

[2] Section 1332(b)(5) provides, in relevant part, that "the plan may[] . . . provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any . . . secured claim on which the last payment is due after the date on which the final payment under the plan is due."

Financial Protection Bureau and the California Department of Financial Protection and Innovation regarding [Defendant]'s asserted delinquency," (*id.* ¶ 29), and "[o]n July 10, 2024, Plaintiff submitted a dispute to Equifax challenging the reported delinquency." (*Id.* ¶ 30.)

Defendant "verified the delinquency information as accurate," (*id.* ¶ 31), and "did not mark the account as disputed in reporting" it to Equifax. (*Id.* ¶ 32.) "On July 31, 2024, [Defendant] issued a written response repeating the delinquency position while copying the regulatory agencies." (*Id.* ¶ 33.) "Plaintiff submitted a second dispute to Equifax in October 2024," (*id.* ¶ 35), which Defendant "again verified . . . as accurate." (*Id.* ¶ 36.)

Defendant "continued furnishing delinquency information to Equifax through at least early 2025." (*Id.* ¶ 37.) "On December 18, 2024, Plaintiff sent a written Notice of Error and Request for Information to [Defendant]'s designated address for such correspondence, disputing the asserted delinquency and requesting documentation." (*Id.* ¶ 38.) Defendant "acknowledged receipt," (*id.* ¶ 39), but "did not provide written notice of any extension of time to respond," (*id.* ¶ 40), or "provide a substantive response within the statutory thirty-business-day period." (*Id.* ¶ 41.) Instead, Defendant responded on March 5, 2025, "reaffirm[ing] that its prior delinquency determination remained unchanged without addressing the detailed reconciliation issues raised in Plaintiff's correspondence." (*Id.* ¶ 42.) Defendant responded to Plaintiff's regulatory complaint in September 2025. (*See id.* ¶ 44.)

***D. Plaintiff's Motion to Enforce the Discharge Injunction***

On November 18, 2025, Plaintiff filed a motion to enforce the discharge injunction in the Bankruptcy Case, claiming that Defendant has misapplied mortgage loan payments. (*See* ECF No. 14-3 at 124–28 ("Def.'s Ex. 10").) Wells Fargo and Defendant filed an opposition on December 9, 2025, arguing for denial of Plaintiff's motion on several grounds, (*see* ECF No. 14-3 at 129–41 ("Def.'s Ex. 11")), accompanied by a request for judicial notice. (*See* ECF No. 14-3 at 142–79 ("Def.'s Ex. 12").)

/ / /

The Honorable Christopher B. Latham held a hearing on Plaintiff's motion on January 26, 2026. (*See generally* ECF No. 17-1 at 50–61 ("Pl.'s Ex. 1").) Judge Latham noted that there was "a dispute over whether a payment was missed" and that he was "going to need to see evidence of that." (*See id.* at 5:14–15.) Judge Latham therefore ordered supplemental briefing, (*see id.* at 7:16–25), "specifying which, if any, payments were missed in the time period of 08/16/19 – 04/04/24," (*see* ECF No. 17-2 at 1–2 ("Pl.'s Ex. 10") at 2), and continued the hearing to March 23, 2026. (*See* Pl.'s Ex. 1 at 10:11–12; Pl.'s Ex. 10.)

As ordered by Judge Latham, Wells Fargo and Defendant filed a supplemental brief on February 23, 2026, (*see* ECF No. 14-3 at 180–88 ("Def.'s Ex. 13")), as well as a declaration containing an accounting of Plaintiff's mortgage payments. (*See* ECF No. 14-3 at 189–205 ("Def.'s Ex. 14").) Plaintiff filed a response on February 26, 2026, and Judge Latham took the matter off calendar for March 23, 2026.[3]

On March 25, 2026, Judge Latham issued an order denying Plaintiff's motion. (*See generally* ECF No. 14-3 at 206–12 ("Def.'s Ex. 15").) Judge Latham concluded that there was no direct violation of 11 U.S.C. § 524(a)(2),[4] because "the payments at issue [we]re non-dischargeable post-petition debts not subject to the discharge injunction." (*See id.* at 210.) Judge Latham also found that Plaintiff's payments to Defendant "were indeed payments under the plan and subject to § 524(i)'s protection[,]"[5] (*see id.*), but that the

---

[3] Because the docket provided by Defendant is from August 18, 2025, (*see* Def.'s Ex. 3), the Court *sua sponte* takes judicial notice of the docket and filings in the Bankruptcy Case that neither Party included in its Requests for Judicial Notice.

[4] Section 524(a)(2) provides that "[a] discharge in a case under this title— . . . operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived[.]"

[5] Section 524(i) provides:

> The willful failure of a creditor to credit payments received under a plan confirmed under this title, unless the order confirming the plan is revoked, the plan is in default, or the

accounting of Plaintiff's mortgage payments "show[ed] [Plaintiff] defaulted on his [adequate protection order] obligations on the very first payments following its entry," (*see id.* at 211), meaning Section 524(i)'s safe harbor provision applied. (*See id.*) Judge Latham explicitly rejected Plaintiff's arguments that "he was not in default because Creditors [had] failed to give notice, issue written warnings, or file notices" because "those procedures are to obtain stay relief under the [adequate protection order]" and "the decision not to seek stay relief [did not] constitute a waiver of default." (*See id.*)

Plaintiff appealed Judge Latham's order to the Ninth Circuit Bankruptcy Appellant Panel. *See In re Moehling*, No. 26-1081 (B.A.P. 9th Cir. filed Apr. 3, 2026). Although the appeal is fully briefed, a decision has not issued.

## II. Procedural History

Plaintiff initiated this case on March 5, 2026, by filing his operative Complaint alleging nine causes of action for (1) violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2(b); (2) violation of the California Consumer Credit Reporting Agencies Act ("CCCRAA"), Cal. Civ. Code § 1785.25(a); (3) violation of the Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), Cal. Civ. Code §§ 1788 *et seq.*; (4) violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605; (5) negligence; (6) defamation; (7) breach of contract; (8) breach of the implied covenant of good faith and fair dealing; and (9) violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.* (*See generally* ECF No. 1.) Plaintiff seeks "[a]ctual damages . . . , including but not limited to credit impairment, loss of access to credit, financial loss, lost income, medical expenses, tax consequences, permanent impairment, and emotional distress." (*See id.* Prayer ¶ A.) Plaintiff also seeks statutory

---

> creditor has not received payments required to be made under the plan in the manner required by the plan (including crediting the amounts required under the plan), shall constitute a violation of an injunction under subsection (a)(2) if the act of the creditor to collect and failure to credit payments in the manner required by the plan caused material injury to the debtor.

damages, (*see id.* ¶¶ B–D); punitive damages, (*see id.* ¶ E); and "reasonable attorney's fees." (*See id.* ¶ F.)

The instant Motion followed on June 12, 2026. (*See generally* ECF No. 14.)

## LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). "A district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Id.* at 1242 (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

"If a complaint is dismissed for failure to state a claim, leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). "A district court does not err in denying leave to amend where the amendment would be futile." *Id.* (citing *Reddy v. Litton Indus.*, 912 F.2d 291, 296 (9th Cir. 1990), *cert. denied*, 502 U.S. 921 (1991)).

## ANALYSIS

Through the instant Motion, Defendant seeks dismissal of each of Plaintiff's nine causes of action under Rule 12(b)(6).[6] (*See* Mot. at 2–5; *see also generally* Mem.) The Court begins with Defendant's global argument concerning collateral estoppel before turning to any individual claims.

### I. Collateral Estoppel

"Issue preclusion, also known as collateral estoppel, 'bars the relitigation of issues actually adjudicated in previous litigation.'" *Janjua*, 933 F.3d at 1065 (quoting *Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1320 (9th Cir. 1992)). "The preclusive effect of the prior decision of the bankruptcy court is determined under federal res judicata standards." *McClain v. Apodaca*, 793 F.2d 1031, 1033 (9th Cir. 1986).

> Collateral estoppel applies . . . when four conditions are met: (1) the issue at stake was identical in both proceedings; (2) the issue was actually litigated and decided in the prior proceedings; (3) there was a full and fair opportunity to litigate the issue; and (4) the issue was necessary to decide the merits.

*Oyeniran v. Holder*, 672 F.3d 800, 806 (9th Cir.), *as amended* (May 3, 2012) (citing *Montana v. United States*, 440 U.S. 147, 153–54 (1979); *Clark*, 966 F.2d at 1320). "The party asserting preclusion has the burden of showing that the issue as to which estoppel is claimed was actually adjudicated in a prior proceeding." *Chew v. Gates*, 27 F.3d 1432, 1438 (9th Cir. 1994) (citing *Hernandez v. City of L.A.*, 624 F.2d 935, 937 (9th Cir. 1980)).

Here, Defendant contends that Plaintiff is collaterally estopped from asserting claims premised on his not being in default when the bankruptcy discharge issued. (*See* Mem. at 7–8; Reply at 3.) Judge Latham considered whether Plaintiff was in default on his post-petition Mortgage payments in ruling on Plaintiff's motion to enforce the discharge

---

[6] Defendant also seeks to strike Plaintiff's allegations regarding punitive damages, emotional distress, and attorneys' fees pursuant to Rule 12(f). Although "Rule 12(f) does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law," *see Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974–75 (9th Cir. 2010), the Court need not reach the adequacy of Plaintiff's damages allegations because the Court concludes that each of Plaintiff's causes of action is subject to dismissal with prejudice.

injunction. (*See, e.g.*, Pl.'s Ex. 1 at 5:14–15; Pl.'s Ex. 10 at 2; Def.'s Ex. 15 at 2.) Except for Plaintiff's RESPA claim, this same issue is at stake in each of Plaintiff's causes of action, all of which hinge on allegations that Defendant falsely represented after the discharge injunction that Plaintiff was delinquent on his Mortgage. (*See, e.g.*, Compl. ¶¶ 64, 67 (first cause of action for violation of the FCRA: "SPS furnished information to Equifax indicating that Plaintiff was delinquent on his mortgage loan" and "verified the delinquency information as accurate"); ¶¶ 82, 84 (second cause of action for violation of the CCCRAA: "SPS furnished information to Equifax indicating that Plaintiff was delinquent" and "continued reporting the delinquency and verified the information as accurate"); ¶¶ 91–92 (third cause of action for violation of the Rosenthal Act: "SPS engaged in debt collection activity by asserting that Plaintiff was delinquent, . . . furnishing delinquency information to Equifax, and demanding payment to cure the asserted default."); ¶¶ 114–15 (fifth cause of action for negligence: "SPS breached its duty of reasonable care by, among other things: . . . Verifying disputed delinquency information."); ¶¶ 119, 121 (sixth cause of action for defamation: "SPS published statements to Equifax and other consumer reporting agencies asserting that Plaintiff was delinquent on his mortgage obligation."); ¶¶ 128–30 (seventh cause of action for breach of contract: "The loan agreement further required that SPS provide accurate statements regarding the status of the loan and refrain from initiating default or foreclosure procedures absent an actual default under the terms of the agreement."); ¶¶ 135, 137 (eighth cause of action for breach of the implied covenant of good faith and fair dealing: "The benefits of Plaintiff's loan agreement included . . . accurate reporting of loan status, and protection from unwarranted default and foreclosure activity, absent an actual contractual default."); ¶ 142 (ninth cause of action for violation of the UCL: "SPS engaged in unlawful, unfair, and/or fraudulent business acts/practices by verifying inaccurate delinquency post-discharge.").) Defendant therefore has shown that one of the main issues at stake in this case—which is also central to eight of his nine causes of action—is identical to one that was before Judge Latham in the Bankruptcy Case.

Further, the issue was actually litigated and decided by Judge Latham, who—after reviewing "[Plaintiff]'s motion to enforce the discharge injunction . . . , [Wells Fargo and Defendant's] opposition and request for judicial notice . . . , [Plaintiff]'s reply . . . , the parties['] supplemental briefing . . . , oral argument at the hearings on the matter, and its own docket," (*see* Def.'s Ex. 15 at 2)—concluded that Plaintiff had "defaulted on his [adequate protection order] obligations on the very first payments following its entry" and had "generally remained in default for the plan's duration." (*See id.* at 5.) In his Opposition, Plaintiff contends that the issue was adjudicated in "a streamlined, summary motion process intended to resolve narrow administrative compliance issues, rather than a full-blown civil adversary proceeding." (*See* Opp'n at 5.) But the Ninth Circuit has held that "an issue is actually litigated when an issue is raised, contested, and submitted for determination," *Janjua*, 933 F.3d at 1066, regardless of the process used or nature of the underlying proceeding. Indeed, Judge Latham explicitly rejected the arguments that Plaintiff's motion should not be considered because Plaintiff had failed to move to reopen the Bankruptcy Case or to raise the issue in an adversary proceeding. (*See* Def.'s Ex. 15 at 4.) Judge Latham therefore actually litigated and decided the issue.

Defendant has also shown that there was a full and fair opportunity to litigate the issue, which both Plaintiff and Defendant thoroughly briefed. (*See* Def.'s Ex. 10 (Plaintiff's motion to enforce the discharge injunction); Pl.'s Ex. 1 at 5:14–15 (January 26, 2026 hearing transcript in which Judge Latham noted that there was "a dispute over whether a payment was missed" and that he was "going to need to see evidence of that"); Pl.'s Ex. 10 (minute entry for January 26, 2026 hearing ordering supplemental briefing "specifying which, if any, payments were missed in the time period of 08/16/19 – 04/04/24"); Def.'s Ex. 13 (Wells Fargo and Defendant's supplemental brief); Def.'s Ex. 14 (Wells Fargo and Defendant's declaration containing an accounting of Plaintiff's Mortgage payments)); Debtor's Reply Regarding SPS's Updated Plan Accounting, Request for Determination Under Rule 3002.1(h), and Related Relief Under 11 U.S.C. § 524(i) at 5–7, *In re Moehling* (Bankr. S.D. Cal. filed Feb. 26, 2026), ECF No. 73 [hereinafter "Pl.'s Bk.

Reply"]. Not only did Plaintiff raise the issue in the Bankruptcy Case, but he had an opportunity to argue before Judge Latham, who then ordered Defendant to file supplemental briefing identifying specific, missed payments, to which Plaintiff filed a response. Plaintiff was therefore afforded a full and fair opportunity to litigate whether he had defaulted on any post-petition Mortgage payments. *Cf. Weaver v. Checkr Inc.*, No. C 22-04135 WHA, 2022 WL 17970194, at *2–3 (N.D. Cal. Dec. 27, 2022) (dismissing FCRA complaint under doctrine of collateral estoppel where court in a virtually identical suit had dismissed the case after ordering the plaintiff to arbitration).

Finally, the issue was necessary to decide the merits. Plaintiff argued that Defendant had violated the post-discharge injunction under 11 U.S.C. § 524(i) by willfully failing to credit payments toward his Mortgage. (*See* Def.'s Ex. 10; Def.'s Ex. 15 at 3); *see also* Pl.'s Bk. Reply. Judge Latham concluded that Plaintiff's Mortgage payments to Defendant "were indeed payments under the plan and subject to § 524(i)'s protection," (*see* Def.'s Ex. 15 at 4), but that § 524(i)'s safe harbor provision applied because Plaintiff was in default. (*See id.* at 5.) Determining whether Plaintiff was in default on his post-petition Mortgage payments was therefore necessary to Judge Latham's adjudication of Plaintiff's motion to enforce the discharge injunction.

Accordingly, Defendant has shown that the four conditions for applying collateral estoppel are met as to all of Plaintiff's causes of action except for Plaintiff's fourth cause of action for violation of RESPA.[7] Nonetheless, Plaintiff attempts to escape the preclusive effect of Judge Latham's order by arguing that the "Reservation of Non-Bankruptcy Statutory Claims" in his Bankruptcy Reply—in which he "reserve[d] all rights to pursue any separate and distinct causes of action arising under non-bankruptcy federal or state law in a court of competent jurisdiction," *see* Pl.'s Bk. Reply at 4—"expressly le[ft] Plaintiff's

---

[7] The fact that Judge Latham's decision is on appeal is not relevant to the Court's analysis. *See Robi v. Five Platters, Inc.*, 838 F.2d 318, 327 (9th Cir. 1988) (holding that pending "appeals in no way affect the 'firmness' of the [relevant decisions] for purposes of issue preclusion).

broader statutory consumer claims unadjudicated and fully preserved for District Court review." (*See* Opp'n at 6.) But this argument "mistakes the nature of issue preclusion" because "[t]he point of the doctrine is to bar the relitigation of an issue already litigated and resolved 'even if the issue recurs in the context of a different claim.'" *Hansen v. Musk*, 122 F.4th 1162, 1174 (9th Cir. 2024) (quoting *Howard v. City of Coos Bay*, 871 F.3d 1032, 1041 (9th Cir. 2017) (quoting *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008))), *cert. denied*, 145 S. Ct. 2850 (2025). Plaintiff also has not identified—and the Court has not found—any case in which a court considered, much less endorsed, such a reservation of rights.

The Court therefore concludes that Plaintiff's causes of action for violation of the FCRA, violation of the CCCRAA, violation of the Rosenthal Act, negligence, defamation, breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of the UCL (the "Estopped Claims") are precluded as a matter of law. *See, e.g.*, *Aniel v. PHH Mortg. Corp.*, No. 4:21-CV-6071-YGR, 2022 WL 1601405, at *5 (N.D. Cal. Jan. 13, 2022) (dismissing claims for violation of the FDCPA and declaratory relief premised on the plaintiff's belief that loan had been paid off where bankruptcy court had previously determined that the plaintiff had made no payments on loan for a year after entering into the loan); *Kipling v. Carrington Mortg. Servs., LLC*, No. 20cv1340 JM (MSB), 2021 WL 242968, at *4–5 (S.D. Cal. Jan. 25, 2021) (concluding the plaintiff was judicially estopped from bringing Rosenthal Act, FCRA, and CCCRAA claims where he had failed to respond to mortgagor's response to trustee's notice of final cure payment indicating that the plaintiff was not current on post-petition payments because the "[p]laintiff was aware of the potentially incorrect past due payments during the duration of his bankruptcy proceedings"). Having concluded that Plaintiff is collaterally estopped from asserting the Estopped Claims, the Court **GRANTS** Defendant's Motion and **DISMISSES WITH PREJUDICE** Plaintiff's first through third and fifth through ninth causes of action. *See, e.g.*, *Turner v. Reno Police Dep't*, No. 2:24-CV-01516-CDS-EJY, 2025 WL 1088128, at *2 (D. Nev. Apr. 10, 2025) (concluding that dismissal with prejudice was appropriate where the plaintiff was collaterally estopped from asserting claims).

## II. Violation of RESPA

The only cause of action Plaintiff is not collaterally estopped from asserting is his eighth cause of action under RESPA, in which Plaintiff alleges that Defendant "did not meaningfully address or reconcile the specific errors identified in Plaintiff's December 18, 2024, correspondence." (*See* Compl. ¶ 106.) "RESPA requires the servicer of a federally related mortgage loan to provide a timely written response to inquiries from borrowers regarding the servicing of their loans." *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 665 (9th Cir. 2012) (citing 12 U.S.C. §§ 2605(e)(1)(A), (e)(2)). "If the servicer fails to respond properly to such a request, the statute entitles the borrower to recover actual damages and, if there is a 'pattern or practice of noncompliance,' statutory damages of up to $[2],000." *Id.* (quoting 12 U.S.C. § 2605(f)[8]). Defendant argues that Plaintiff's RESPA claim must be dismissed because he fails adequately to allege either actual or statutory damages.[9] (*See* Mem. at 13–14.)

With regard to actual damages, "RESPA . . . authorizes 'actual damages to the borrower *as a result of* the failure [to comply with RESPA requirements].'" *Hueso v. Select Portfolio Servicing, Inc.*, 527 F. Supp. 3d 1210, 1223 (S.D. Cal. 2021) (emphasis and alterations in original) (quoting *Lal v. Am. Home Servicing, Inc.*, 680 F. Supp. 2d 1218, 1223 (E.D. Cal. 2010)). "Accordingly, 'a number of courts have read the statute as requiring a showing of pecuniary damages in order to state a claim.'" *Id.* (quoting *Allen v. United Fin. Mortg. Corp.*, 660 F. Supp. 2d 1089, 1097 (N.D. Cal. 2009)). "A plaintiff's failure to allege a pecuniary loss attributable to a servicer's failure to respond to [qualified written requests ("QWRs")] has therefore been found to be fatal to the claim." *Id.* (citing

---

[8] RESPA was amended in 2010 to change the amount of statutory damages from $1,000 to $2,000. *See* Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. 111-203, 124 Stat. 1376, 2184 (2010).

[9] Although Defendant also argues that Plaintiff fails sufficiently to allege in what way it violated RESPA, (*see* Mem. at 13), the Court need not reach that argument given its conclusion that Plaintiff has not adequately alleged damages.

*Ghuman v. Wells Fargo Bank, N.A.*, 989 F. Supp. 2d 994, 1007 (E.D. Cal. 2013); *Mekani v. Homecomings Fin., LLC*, 752 F. Supp. 2d 785, 795 (E.D. Mich. 2010)).

Here, Plaintiff alleges that, "[a]s a direct and proximate result of [Defendant]'s violations of RESPA, Plaintiff suffered damages including financial harm, credit impairment, and emotional distress." (Compl. ¶ 110.) Not only are these allegations conclusory, but "Plaintiff has not alleged harm that derives from any failure to respond to the QWRs, rather than from h[is] own default." *Tamburri v. Suntrust Mortg., Inc.*, 875 F. Supp. 2d 1009, 1015 (N.D. Cal. 2012) (citing *Allen v. United Fin. Mortg. Corp.*, 660 F. Supp. 2d 1089, 1097 (N.D. Cal. 2009)). Nor can he—as discussed above, *see supra* Section I, Judge Latham determined that Plaintiff had been in default well before the discharge injunction issued on April 4, 2024. Plaintiff therefore sent the QWR to Defendant only *after* he had already defaulted on the Mortgage. Because Plaintiff's "allegations indicate that [P]laintiff sent [the QWR] after []he had already defaulted on h[is] loan . . . [it] fail[s] to allege facts plausibly showing that any claimed damages for fees, interest, and penalties incurred because of h[is] default were the consequence of any alleged RESPA violation." *See Tamburri*, 875 F. Supp. 2d at 1015 (first, second, and fifth through seventh alterations in original) (quoting *Obot v. Wells Fargo Bank, N.A.*, C11-00566 HRL, 2011 WL 5243773, at *3 (N.D. Cal. Nov. 2, 2011)) (citing *Durland v. Fieldstone Mortg. Co.*, 10CV125 JLS CAB, 2011 WL 805924, at *3 (S.D. Cal. Mar. 1, 2011)). Plaintiff therefore cannot allege actual damages under RESPA.

As for statutory damages, they are available only "in the case of a pattern or practice of noncompliance with the requirements of" RESPA. *See* 12 U.S.C. § 2605(f)(1)(B). Plaintiff alleges only a single violation of RESPA, (*see* Compl. ¶¶ 97–110), and "one potential instance of non-responsiveness [cannot] constitute a 'pattern or practice of noncompliance' warranting statutory damages." *Petrovich v. Ocwen Loan Servicing, LLC*, 716 F. App'x. 614, 618 (9th Cir. 2017) (quoting 12 U.S.C. § 2605(f)(1)(B)). Accordingly, Plaintiff also fails to allege that he is entitled to statutory damages under RESPA.

/ / /

Because Plaintiff fails sufficiently to allege his entitlement to either actual or statutory damages under RESPA, the Court **GRANTS** Defendant's Motion and **DISMISSES** Plaintiff's fourth cause of action. Further, the Court concludes that, because Plaintiff is collaterally estopped from alleging any actual damages under RESPA and Plaintiff alleges he sent only one QWR to Defendant, Plaintiff's RESPA claim cannot be cured by the allegation of other facts. The Court's dismissal of Plaintiff's RESPA cause of action is therefore **WITH PREJUDICE**.

## CONCLUSION

In light of the foregoing, the Court **GRANTS** Defendant's Motion (ECF No. 14) and **DISMISSES WITH PREJUDICE** Plaintiff's Complaint (ECF No. 1). Accordingly, the Clerk of Court **SHALL CLOSE** the case.

**IT IS SO ORDERED.**

Dated: October 5, 2026

Honorable Todd W. Robinson
United States District Judge